**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>        Plaintiff,<br><br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>        Defendants. | Adv. Proc. No. 20-08049 (AST) |

## MOTION OF DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT INC. FOR PARTIAL SUMMARY JUDGMENT DISMISSING CLAIMS ASSERTED IN THE COMPLAINT UNDER 11 U.S.C. § 544

By this motion (the "**Motion**"), defendants Arvind Walia ("**Walia**") and Niknim Management Inc. ("**Niknim**") (together, the "**Defendants**"), by their co-counsel, Rosen & Associates, P.C, and the Law Offices of Eugene R. Scheiman, PLLC, move for entry of an order granting them partial

---

[1] The debtors in these chapter 11 cases are: Orion Healthcorp, Inc.; Constellation Healthcare Technologies, Inc.; NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice Plus Holdings, LLC; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; and New York Network Management, LLC.

summary judgment dismissing the claims asserted in the complaint under 11 U.S.C. § 544, and in support of the Motion, Defendants respectfully state as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.      This Court has jurisdiction to hear and determine this Motion under 28 U.S.C. §§ 157 and 1334 and the standing orders of reference in effect in this district, and venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicate for the relief requested herein is Bankruptcy Code sections 105, 544, and Rule 7056 of the Federal Rules of Bankruptcy Procedure.

## SUMMARY JUDGMENT STANDARD

3.      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of proving that no genuine issue of material fact exists. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quotation omitted).

4.      At the summary judgment stage the court must determine only whether there is a genuine issue for trial, not weigh evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party." *Tolan v. Cotton*, 572 U.S.

650, 657 (2014); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)*, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the records as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

## PROCEDURAL BACKGROUND

5.      On March 13, 2020, Howard M. Ehrenberg, in his Capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. ("**Plaintiff**" or "**Liquidating Trustee**") filed the *Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11 U.S.C. §§ 502, 544, 547, 548, and 550* [Dkt. No. 1] against Defendants.

6.      On June 17, 2020, Defendants filed their *Answer and Affirmative Defenses* to the Complaint [Dkt. No. 6].

7.      On May 21, 2021, the parties filed the *Stipulation and Order re: Filing of First Amended Complaint and Entering of Scheduling Order* [Dkt. No. 19], which was entered by the Court on May 26, 2021 [Dkt. No. 20].

8.      On May 28, 2021, Plaintiff filed the *First Amended Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11 U.S.C. §§ 502, 544, 547, 548, and 550* [Dkt. No. 22] (the "**First Amended Complaint**").  A copy of the First Amended Complaint is annexed hereto as *Exhibit "A"*.

9.      On June 9, 2021, Defendants filed their *Answer to First Amended Complaint and Affirmative Defenses* [Dkt. No. 23] (the "**Answer**").  A copy of the Answer is annexed hereto as *Exhibit "B"*.

10.     On September 21, 2021, the parties filed the *Stipulation Requesting Amendment to Case Management and Discovery Plan* [Dkt. No. 26], which was entered by the Court on October 5, 2021. [Dkt. No. 27].

11.     On December 30, 2021, fact discovery closed.

12.     On January 10, 2022, Plaintiff designated experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and produced expert reports.   Pursuant to the above-referenced *Scheduling Order and Amendment to Case Management and Discovery Plan*, any rebuttal or responsive expert report was due not later than February 9, 2022.

13.     On or about January 25, 2022, the parties filed the *Stipulation to Attend Mediation and Toll Remaining Deadlines* [Dkt. No. 34], which was entered by the Court on March 7, 2022; however, mediation was not successful, and the parties are proceeding with the litigation of this adversary proceeding.

14.     A separate joint statement of non-disputed material facts as to which the Defendants contend there is no genuine issue to be tried and Defendants' statement of additional fact is annexed hereto as *Exhibit "C"*.

## THE PARTIES

15.     On March 16, 2018, each of the above-captioned debtors (collectively, the "**Debtors**") except New York Network Management, LLC ("**NYNM**") filed voluntary petitions for relief with the United States Bankruptcy Court for the Eastern District of New York under chapter 11 of the Bankruptcy Code. NYNM filed its voluntary petition on July 5, 2018. The Debtors' cases were jointly consolidated for administrative purposes only.

16.     On February 26, 2019, the Honorable Alan S. Trust, Chief United States Bankruptcy Judge for the Eastern District of New York, entered an order [Dkt. No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "**Plan**").

17.     The Plan provides, among other things, for the formation of a Liquidating Trust[2] and the appointment of a Liquidating Trustee on the Effective Date to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates. The Effective Date occurred on March 1, 2019.

18.     The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action.

19.     Plaintiff is the Liquidating Trustee under that certain Liquidating Trust Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc. ("**Constellation Healthcare**"), and their debtor affiliates.

20.     Defendant Walia is an individual residing in the State of New York.  Walia is the former President and Chief Executive Officer of Orion HealthCorp, Inc..

21.     Defendant Niknim is a corporation formed under the laws of the State of New York with its principal address at 27 Kettlepond Road, Jericho, New York.  Walia is the sole officer, director, and shareholder of Niknim.

## PLAINTIFF'S CLAIMS

**Background Allegations**

22.     In or about 2015 and earlier, Walia was the majority owner and Chief Executive Officer of Porteck Corporation ("**Porteck**").

23.     On or about March 2015, the Debtor Physicians Practice Plus, LLC ("**Physicians Practice**"), acquired the assets of Porteck pursuant to an asset purchase agreement made and entered into as of March 2015 (the "**Porteck Asset Purchase Agreement**").

---

[2] Capitalized terms not otherwise defined herein shall have the meanings attributed to them in the Liquidating Trust and the Plan.

24.    Pursuant to Section 1.6(a) of the Porteck Asset Purchase Agreement, Physicians Practice agreed to pay a purchase price for the assets consisting of the sum of $12,800,000, of which sum $12,300,000 was paid by Physicians Practice at closing and $500,000 was deemed paid through Physicians Practice causing the cancellation of Porteck's obligation to Constellation Healthcare pursuant to that certain Promissory Note dated February 9, 2015.

25.    In addition, pursuant to Section 1.7 of the Porteck Asset Purchase Agreement, Physicians Practice agreed to pay the Post-Closing Payment, as such term is defined in the Porteck Asset Purchase Agreement.

26.    Section 1.6(e) of the Porteck Asset Purchase Agreement provides:

> "For the purpose of partially securing Seller's obligations pursuant, and without limiting Seller's obligations thereunder, the amount of two million five hundred thousand Dollars ($2,500,000) in cash (the "**Escrow Amount**") shall be delivered by Buyers [sic] at the Closing to the Escrow Agent by wire transfer of immediately available funds to an account (the "**Escrow Account**") to be designated and administered by the Escrow Agent pursuant to an escrow agreement substantially in the form of Exhibit A (the "**Escrow Agreement**"), which Escrow Agreement shall provide, among other things, that any amounts remaining in the Escrow Account shall be released to Seller twelve (12) months after the Closing, to the extent not subject to any claims made prior to that time. Seller and Buyer agree that for all Tax purposes, any amounts in the Escrow Account released to the Seller pursuant to this Section 2.7 [sic] shall be treated as additional purchase price, unless otherwise required by applicable Law.  The Escrow Payment Working Capital Deficiency [sic]."[3]

27.    In or about June 2017, Walia owned membership interests in Objectech Holdings, LLC ("**Objectech**").  At about that time, Physicians Healthcare Network Management Solutions LLC ("**Physicians Healthcare**"), a non-debtor, acquired Walia's membership interests in Objectech pursuant to a Membership Interests Purchase Agreement made and entered into as of June 2017 (the "**Objectech Membership Purchase Agreement**").

28.    Section 1.1 of the Objectech Membership Purchase Agreement provides that:

---

[3] Upon information and belief, the Escrow Agreement was never prepared.

"On the Closing Date and subject to the terms and conditions set forth in this Agreement, [Walia] will sell, assign, and transfer to [Physicians Healthcare], and [Physicians Healthcare ] will purchase and acquire, all of the Interests, free and clear of all Liens, for and in consideration of (A) (1) the sum of those amounts actually paid to one or more of the Selling Parties and Selling Member Representative (i) as Closing Payment, (ii) any Earn-Out payments, and (iii) in respect of the adjustment of the Company's working capital in accordance with Section 1.5, less (B) any Required Repayments paid in accordance with Section 1.6 (collectively, the "Purchase Price")."

29.     Section 1.2 of the Objectech Membership Purchase Agreement provides that the Closing Payment of $1,520,000 (the "**Closing Payment**") shall be paid at the closing, as defined therein.

30.     Section 1.7 of the Objectech Membership Purchase Agreement provides for the payment of certain additional sums denominated as "Earn-Out Payments."  However, no such Earn-Out Payments were ever made under the Objectech Membership Purchase Agreement.

The Transfer

31.     On or about June 23, 2017, within one (1) year prior to the commencement of the bankruptcy cases, certain of the Debtors[4] made two payments to Niknim; one for $1,500,000.00 and another for $20,000 (together, the "**One-Year Transfers**"), representing the Closing Payment pursuant to the terms of the Objectech Membership Purchase Agreement.

32.     On or about April 15, 2016, within two (2) years prior to the commencement of the bankruptcy cases, Constellation Healthcare, paid Niknim $2,500,000.00 (the "**Two-Year Transfer**") (together with the One-Year Transfers, the "**Transfers**") pursuant to Section 1.6(e) of the Porteck Asset Purchase Agreement.

**The Basis for Recovery of the Transfers**

---

[4] In fact, the One Year Transfers were made by the Debtors' counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C. from their IOLA Account, which the Plaintiff alleges were maintained for the Debtors without identifying a particular Debtor(s) for whose benefit the account was maintained.

First Claim for Relief

33.     Plaintiff alleges the Transfers were made by the Debtors[5] with actual intent to hinder or delay or defraud their creditors.  Accordingly, Plaintiff alleges the Transfers are avoidable as intentionally fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law.

34.     Plaintiff alleges that at all relevant times, the Debtors: (a) were insolvent, or became insolvent as a result of the Transfers; (b) were engaged in or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; (c) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due; or (d) made such Transfers to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Second Claim for Relief

35.     Plaintiff alleges that Defendants[6] did not give the Debtors, and the Debtors did not otherwise receive, reasonably equivalent value in exchange for the Transfers and that as a result, the Debtors paid and received either nothing of value  or less than reasonably equivalent value from Defendants.  Accordingly, Plaintiff alleges the Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law.

Third Claim for Relief

36.     Plaintiff alleges that the One-Year Transfers were preferential, and therefore avoidable under section 547(b) of the Bankruptcy Code.

Fourth Claim for Relief

---

[5] In fact, as mentioned, Constellation Healthcare made the Two-Year Transfers, not the Debtors.
[6] In fact, Defendant Niknim was the only transferee.

37.    Plaintiff alleges that because Defendants are the initial, immediate, or mediate transferees of the Transfers, Plaintiff may recover for the benefit of the estate the property transferred or the value of such property from (a) the initial transferee of each transfer or the entity for whose benefit each transfer was made or (b) any immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code and the New York Debtor and Creditor Law.

Fifth Claim for Relief

38.    Finally, Plaintiff seeks to (i) strike the Walia Claim, as defined in the Complaint because it was not filed with evidentiary support and is contradicted by the Debtors' books and records, or alternatively, (ii) disallow the Walia Claim pursuant to section 502(d) of the Bankruptcy Code unless and until Walia pays to the Plaintiff an amount equal to each preferential or fraudulent transfer that is avoided including pre- and post-judgment interest on the avoided amount.

## THE MOTION

### As to the First, Second and Fourth Claims for Relief

39.    Plaintiff's First, Second and Fourth Claims for Relief (alleging fraudulent conveyance) are predicated upon both the Bankruptcy Code and the New York Debtor and Creditor Law. Plaintiff invokes the New York Debtor and Creditor Law pursuant to section 544(b)(1) of the Bankruptcy Code, which provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b)(1).

40.    Section 544(b)(1) of the Bankruptcy Code grants a trustee the avoidance rights of an unsecured creditor in existence at the commencement of the case. The rights are limited to those of an

existing, unsecured creditor; they are "completely derivative of those of an actual unsecured creditor." *Lippe v. Bainco Corp.*, 225 B.R. 846, 852 (S.D.N.Y. 1998), *quoting, In re Wingspread Corp.*, 178 B.R. 938, 945 (Bkrtcy.S.D.N.Y.1995). Moreover, a plaintiff seeking recovery under section 544(b) will only be able to attack transfers "to the extent that a creditor with an allowable claim might avoid the transfer under applicable state or federal law" and "only if the benefits of the action inure to all creditors ratably." *Lippe v. Bairnco Corp.*, 225 B.R. at 852, *quoting*, *In re Colonial Realty Co.*, 168 B.R. 506, 510 (Bankr. D. Conn. 1994) (citation omitted).

41.    A trustee or debtor in possession seeking the rights which section 544(b) affords must plead the existence of a creditor who could have avoided the transfer at issue at the commencement of the bankruptcy case. *Leibowitz v. Parkway Bank & Trust Co.* (*In re Image Worldwide, Ltd.*), 139 F.3d 574, 577 (7th Cir. 1998); It is well established that "[b]efore a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer in question occurred could have, under applicable local law, attacked and set aside the transfer under consideration." *Young v. Paramount Commc'ns, Inc. (In re Wingspread Corp.),* 178 B.R. 938, 946 (Bankr. S.D.N.Y.1995) (citation omitted).

42.    Plaintiff, by the First Amended Complaint, fails to allege the existence of a creditor who could have attacked and set aside the Transfers.  Although Plaintiff's standing derives from and is dependent upon the rights of such a qualifying creditor, Plaintiff merely seeks relief pursuant to Section 544(b), and fails to allege the existence of any creditor into whose shoes Plaintiff intends to step.

43.    Therefore, Defendants respectfully submit that Plaintiff has no standing to assert the claims under the New York Debtor and Creditor Law and they must now be dismissed.

**NOTICE**

44.     Bankruptcy Rule 2002(a)(3) requires that notice of this Motion be given on 21 days' notice. In accordance therewith, Movant provided notice of this Motion to counsel to the Plaintiff.

45.     No previous application for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court (i) enter an order, substantially in the form annexed hereto as Exhibit "D", dismissing the claims asserted in the First Amended Complaint under 11 U.S.C. § 544; and (ii) grant them such other and further relief as is just and proper.

Dated: New York, NY
　　　January 18, 2023

<div style="margin-left:40%">

Respectfully Submitted,
*Counsel to Arvind Walia and*
　*Niknim Management Inc.*

By: /s/ Sanford P. Rosen
　　　　Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100

**Law Offices of Eugene R. Scheiman, PLLC**
*Co-counsel to Arvind Walia and*
　*Niknim Management Inc.*
570 Lexington Avenue
Suite 1600
New York, NY 10022
(646) 280-9000

</div>

11