**Objection Deadline: February 22, 2023**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| ORION HEALTHCORP, INC.[1] | : Case No. 18-71748 (AST) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

------------------------------------------

| | |
|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY | : Adv. Pro. No. 20-08049 (AST) |
| AS LIQUIDATING TRUSTEE OF ORION | : |
| HEALTHCORP, INC., ET AL., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | : |
| | : |
| Defendants. | : |
| | : |

------------------------------------------

### NOTICE OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC.

**PLEASE TAKE NOTICE THAT** Plaintiff, Howard M. Ehrenberg in his capacity as

Liquidating Trustee of Orion Healthcorp, Inc., *et al.*, (the "<u>Plaintiff</u>" or the "<u>Liquidating</u>

<u>Trustee</u>"), for the estates of the above-captioned debtors ("<u>Plaintiff</u>"), by and through his

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

attorneys, Pachulski Stang Ziehl & Jones LLP, hereby files *Plaintiff's Motion For Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and NIKNIM Management, Inc.*

**PLEASE TAKE FURTHER NOTICE THAT** that any responses or objections ("Objections") to the relief requested in the Motion, if any, must conform with the Bankruptcy Code and the Bankruptcy Rules, shall be in writing, shall set forth the nature of the objector's interest in the Debtors' Estates and the reasons and legal basis for the objection, and be served upon counsel for the Plaintiff, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024 (Attn.: Jeffrey P. Nolan, Esq.), no later than **February 22, 2023** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSES TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY ENTER THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: January 18, 2023

PACHULSKI STANG ZIEHL & JONES LLP

By:    */s/ Jeffrey P. Nolan*
     Ilan D. Scharf, Esq.
     Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
     780 Third Avenue, 34th Floor
     New York, New York 10017
     Telephone:    (212) 561-7700
     Facsimile:    (212) 561-7777

     Counsel for the Plaintiff,
     Howard M. Ehrenberg in his capacity as
     Liquidating Trustee of Orion Healthcorp, Inc.,
     *et al.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
| ‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐ | : |  |
|  | : |  |
|  | : | Adv. Pro. No. 20-08049 (AST) |
|  | : |  |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | [Joint Separate Statement of Uncontroverted & Additional Facts; Plaintiff's Separate Statement of |
|  | : | Additional Facts; Affidavits of Edith |
| Plaintiff, | : | Wong, Frank Lazarra, and Jeffrey Nolan; and Request For Judicial |
|  | : | Notice Filed Concurrently Herewith] |
| v. | : |  |
|  | : |  |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | : |  |
|  | : |  |
| Defendants. | : |  |
| ‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐ | : |  |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
<u>DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC.</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Pages**

I.    SUMMARY OF ARGUMENT ..........................................................................1

II.   STANDING .................................................................................................3

III.  PROCEDURAL STATEMENT ...................................................................4

IV.  STATEMENT OF FACTS ...........................................................................5

     A.    The Parties ......................................................................................5

     B.    The March 2015 Acquisition Of Porteck By The Debtor Misstated The Purchase Price In Order To Divert 3MM To Parmar .................................6

     C.    The April 15, 2016 Transfer Of $2,500,000 To Defendants Based on An Email Between Two Insiders ...........................................................8

     D.    The June 23, 2017 Transfer Of $1,520,000 To Defendants For The Sale of Objecttech To A Non-Debtor Based On A Fabricated Purchase Agreement ............9

     E.    The Debtors CHT And Orion Moved Millions Of Dollars Into The Debtors' IOLA Account Including Funds From The CHT Go-Private Transaction ...............11

     F.    At The Time Defendants Received In Excess Of 4MM, Claimants, Lawsuits And Judgment Creditors Existed Against The Debtors Orion and CHT Who Remained Unpaid At The Petition Date ...................................................11

V.    LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION...................12

     A.    The Transfers Were A Diversion Of Funds Of The Debtors And Which Could Have Been Used To Pay Judgment Creditors .................................................13

VI.  BOTH THE FIRST AND SECOND TRANSFER ARE AVOIDABLE PURSUANT TO §548(A)(1)(A) AND NYDCL AS INTENTIONALLY FRAUDULENT CONVEYANCES AS THE BASIS FOR EACH TRANSACTION WERE FALSIFIED DOCUMENTS DESIGNED TO MISLEAD CREDITORS ...........................15

     A.    The APA Executed By Parmar and Walia in 2015 Was A Fraudulent Document, And The First Transfer Was Designed to Divert Millions To The Insiders.......................................................................................18

     B.    The Second Transfer, Resulting In Payment Of $1,520,000 To Defendant Walia In 2017, Is An Intentionally Fraudulent Conveyance As The Evidence Demonstrates Walia Sold To A Non-Debtor, A Defunct Company, With No Earnings As Supported By A Fictitious Purchase Agreement.............................23

     C.    Walia's Refusal To Produce Financial Documents For The Company He Claims The Second Transfer Purchased Triggers The Application Of The Adverse Inference Doctrine ...............................................................26

VII.    THE TRANSFERS VIOLATE NYDCL §273-A AS CONSTRUCTIVELY FRAUDULENT TRANSFERS AS JUDGMENT CREDITORS EXISTED BEFORE THE TRANSFERS AND THE TRANSFERS WERE TO AN OFFICER AND INSIDER ................................................................................................................ 27

    A.    The First And Second Transfers Were Not Made For Fair Consideration As Transfers To Insiders Violate NYDCL 273-a As A Matter Of Law ........................ 29

VIII.   JUDGMENT IS PROPER AGAINST DEFENDANTS WALIA AND NIKNIM AND BOTH OF THEM .................................................................................................. 31

    A.    Defendants Walia And NIKNIM Are The Alter Ego Of One Another And Equity Demands They Be Held Jointly And Severally Responsible For Any Judgment ................................................................................................................ 32

IX.     CONCLUSION .................................................................................................... 36

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Adelphia Recovery Trust v. Bank of Am., N.A.*
624 F. Supp. 2d 292 (S.D.N.Y. 2009) ...................................................................18

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)............................................13

*Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*
135 AD3d 477, 22 N.Y.S.3d 437 (1st Dept 2016......................................................30

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...........................................13

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*
373 B.R. 262 (Bankr. S.D.N.Y. 2007)....................................................................17

*Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*
187 Conn. 544, 447 A.2d 406 (1982) ....................................................................34

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*
531 F.3d 1272 (10th Cir. 2008) ...........................................................................30

*AQ Asset Mgt. LLC v. Levine*
2013 N.Y. Misc. LEXIS 2054, *28 (N.Y. Sup. Ct., Mar. 28, 2013) .........................21

*Austin Powder Co. v. McCullough*
216 A.D.2d 825, 628 N.Y.S.2d 855 (N.Y. App. Div. 1995) ....................................35

*Baby Phat Holding Co., LLC v Kellwood Co.*
123 AD3d 405, 997 N.Y.S.2d 67............................................................................32, 34

*Balmer v. 1716 Realty LLC*
No. 05 CV 839 (NG)(MDG), 2008 U.S. Dist. LEXIS 38113, 2008 WL 2047888
(E.D.N.Y. May 9, 2008) ....................................................................................35

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*
396 B.R. 810 (Bankr. S.D.N.Y. 2008)....................................................................17

*Begier v. IRS*
496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990)...........................................14

*Berlenbach v. Bischoff*
137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930) .....................19

*Berman v. Pavano (In re Michael S. Goldberg, LLC)*
2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020 ................................................29

*Berner Trucking, Inc. v. Brown*

281 AD2d 924, 722 N.Y.S.2d 656 (1st Dept. 2001) .................................................29

*Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A.*
    *(In re USA Diversified Prods., Inc.)*
    100 F.3d 53 (7th Cir. 1996) .......................................................14

*Brown v. Dellinger (In re Brown)*
    734 F.2d 119 (2d Cir. 1984) .......................................................14

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*
    435 B.R. 819 (N.D. NY, 2010).......................................................17

*Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716
    (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) .............................28

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*
    *(In re Bayou Group, LLC)*
    439 B.R. 284 (S.D.N.Y. 2010) .......................................................16

*City of Almaty v. Ablyazov*
    2019 U.S. Dist. LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019).................................32

*Consove v. Cohen (In re Roco Corp.)*
    701 F.2d 978 (1st Cir. 1983).......................................................31

*DER Travel Servs. v. Dream Tours & Adventures*
    No. 99 Civ. 2231 (HBP), 2005 U.S. Dist. LEXIS 25861, 2005 WL 2848939
    (S.D.N.Y. Oct. 28, 2005) .......................................................35

*Deutsche Financial Services Corp. v. Osborne (In re Osborne)*
    257 B.R. 14 (Bankr. C.D. Cal. 2000) .......................................................26

*Dixie Yarns, Inc. v. Forman*
    906 F. Supp. 929 (S.D.N.Y. 1995) .......................................................28

*EAC of N.Y., Inc. v. Capri 400, Inc.*
    49 AD3d 1006, 853 N.Y.S.2d 419 (3d Dept. 2008) ....................................30

*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*
    66 AD3d 122, 884 NYS2d 94 (2009).......................................................32

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*
    794 F.3d 297 (2d Cir. 2015) .......................................................18

*Farm Stores, Inc. v. Sch. Feeding Corp.*
    102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dept.1984) ....................................30

*FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*
    581 B.R. 116 (Bankr. DE, 2018) .......................................................15

*First Horizon Bank v. Moriarty-Gentile*
    2015 U.S. Dist. LEXIS 165695, *20 (Bankr. E.D.N.Y, 2015)................................33

*Friehling v. Nielson (In re F & C Servs., Inc.)*
    44 B.R. 863 (Bankr. S.D. Fla. 1984) .................................................................. 31

*Gardiners Bay Landscape v. Postiglione (In re Postiglione)*
    2019 Bankr. LEXIS 1887, *10 (Bankr. E.D.N.Y 2019) ........................................ 34

*Geltzer v. Soshkin (In re Brizinova)*
    588 B.R. 311 (Bankr. EDNY, 2018) .................................................................... 15

*Golden State Bottling Co. v. NLRB*
    414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) ............................................ 26

*Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.)*
    2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008) ................................................ 26

*Grace v. BankLeumi Trust Co. of N.Y.*
    443 F.3d 180 (2d Cir. 2006) ............................................................................... 27

*Greenidge v. HRH Constr. Corp.*
    279 A.D.2d 400, 720 N.Y.S.2d 46 (1st Dept. 2001) ............................................ 35

*HBE Leasing Corp. v. Frank*
    48 F.3d 623 (2d Cir. 1995) ................................................................................. 30

*HBE Leasing Corp. v. Frank*
    61 F.3d 1054 (2d Cir. 1995) ............................................................................... 17

*In re Actrade Fin. Techs. Ltd.*
    337 B.R. 791 (Bankr. SDNY 2005) .................................................................... 22

*In re Bruce*
    2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005) ............................................ 26

*In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
    2017 Bankr. LEXIS 4145 ................................................................................... 15

*Keller v. Keller (In re Keller)*
    185 B.R. 796 (9th Cir. BAP 1995) ..................................................................... 14

*Kiobel v. Royal Dutch Petroleum*
    621 F.3d 111 (2d Cir. 2010) ............................................................................... 32

*Korea Deposit Ins. Corp. v. Mina Jung*
    59 Misc. 3d 442 (Sup. Ct., New York County, 2017) .......................................... 21

*Kramer v. Mahia (In re Khan)*
    2014 Bankr. LEXIS 4205 (Bankr. E.D.N.Y. 2016) .............................................. 28

*Krohn v. Orta*
    153 B.R. 391 (E.D.N.Y., 1993) .......................................................................... 20

*Leonard v. Coolidge, (In re Nat'l Audit Def. Network)*
    367 B.R. 220 (Bankr. S.D.N.V, 2022) ................................................................ 31

*Lyman Commerce Solutions, Inc. v. Lung*
  2015 U.S. Dist. LEXIS 51447, 2015 WL 1808693, at *5
  (S.D.N.Y. Apr. 20, 2015)................................................................................27, 29

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).....................................13

*Matter of Morris v New York State Dept. of Taxation & Fin.*
  82 NY2d 135, 623 NE2d 1157, 603 NYS2d 807 (1993)...........................................32

*Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*
  92 F.3d 139 (3d Cir. 1996) ............................................................................22

*Millennium Constr., LLC v Loupolover*
  44 AD3d 1016, 1016-1017, 845 NYS2d 110 (2007)................................................32

*Mitchell v. Garrison Protective Servs., Inc.*
  579 F. App'x 18 (2d Cir. 2014)........................................................................28

*New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*
   2008 U.S. Dist. LEXIS 40517, 2008 WL 2115225 ..............................................25

*Nisselson v. Salim (In re Big Apple Volswagen, LLC)*
  2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016).......................................13, 14

*Orr v. Kinderhill Corp.*
  991 F.2d 31 (2d Cir. 1993) ............................................................................16

*P.R. Mallory Co. v. NLRB*
  400 F.2d 956 (7th Cir.1968), cert. denied, 394 U.S. 918,
  89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969)........................................26

*People v. Hankin*
  175 Misc. 2d 83, Ft 4 (Crim Ct Kings County 1997) ............................................21

*Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*
  2011 U.S. Dist. LEXIS 97647 (S.D.N.Y. 2011).....................................................16

*Picard v. Taylor (In re Park S. Secs., LLC)*
  326 B.R. 505 (Bankr. S.D.N.Y. 2005)................................................................17

*Prabir v. Bukhara Indian Cuisine, Inc.*
  2018 U.S. Dist. LEXIS 94563, *9 (S.D.N.Y. 2018)...............................................23

*Priestley v. Panmedix Inc.*,
  18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) ..........................................................27

*Rovo by Ravo v. Rogatnick*
  70 N.Y.2d 305, 514 N.E.2d 1104, 520 N.Y.S.2d 533, 538 (1987)..............................35

*Salim v. VW Credit, Inc.*
  577 B.R. 615 (E.D.N.Y. 2017) .......................................................................20

*Salomon v. Kaiser (In re Kaiser)*
  722 F.2d 1574 (2d Cir. 1983). .................................................21

*Sardis v. Frankel*
  113 AD3d 135, 978 N.Y.S.2d 135 (1st Dept 2014 ...................29

*Schnelling v. Crawford (In re James River Coal Co.)*
  360 B.R. 139, 2007 Bankr. LEXIS 159, 2007 Westlaw 438244, at 13
  (Bankr. E.D. Va., Feb. 8, 2007) ................................................31

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*
  403 F.3d 43 (2d Cir. 2005) .......................................................30

*State Farm Mut. Auto Ins. Co. v. Grafman,*
  No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290,
  2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017....................... 14

*Tronox v. Anadarko Petroleum (In re Tronox Inc.)*
  429 B.R. 73 (Bankr. S.D.N.Y. 2010) ........................................22

*U.S. v. Spencer*
  2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7 .........23

*United States v. McCombs*
  30 F.3d 310 (2d Cir. 1994) .......................................................21

*Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*
  577 Fed. Appx. 58, 60 (2nd Cir. 2014) .....................................35

*Westchester Cnty. v. Welton Becket Assocs.*
  102 A.D.2d 34, 478 N.Y.S.2d 305, 315 (2d Dep't 1984) ..........35

*Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*
  2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259 .............22

## Statutes

11 U.S.C. §101(31)(B)..................................................................30

11 U.S.C. §502.............................................................................5

11 U.S.C. §541(a)(1).....................................................................13

11 U.S.C. §544.......................................................................5, 14, 16

11 U.S.C. §547.......................................................................5, 14, 17

11 U.S.C. §548.....................................................................passim

11 U.S.C. §550.......................................................................5, 16

11 U.S.C. §551.............................................................................16

## Other Authorities

13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§ 85-29 & 85-30 (2002) .......................................................................................... 19

N.Y. Debt. & Cred. Law § 273 ................................................................................... passim

N.Y. Debt. & Cred. Law §276 ........................................................................... 16, 21, 36

N.Y. Debt. & Cred. Law 272 ......................................................................................... 30

N.Y. Jud. Law § 497(1) ................................................................................................. 14

## Rules

Fed R. Civ. Proc. 56 .................................................................................................... 1, 12

Fed. R. Bankr. P. 2056 ................................................................................................. 5, 12

This Brief is filed pursuant to Fed R. Civ. Proc. 56 (a) and (d), by Plaintiff, Howard M.

Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al.* (the "Plaintiff" or

the "Liquidating Trustee"), in support of Plaintiff's Motion For Summary Judgment, Or In The

Alternative, Summary Adjudication (the "Motion"), with supporting documents filed concurrently

herewith as against Defendants Arvind Walia and NIKNIM Management, Inc. (the "Defendants").

## I.

## SUMMARY OF ARGUMENT

1.      In March 2015, as part of selling his solely controlled company, Porteck

Corporation ("Porteck") to the Debtor, Defendant Arvin Walia ("Walia") agreed to misstate the

purchase price which enabled Paul Parmar ("Parmar") to divert $3,000,000 to himself.   As long as

Walia got what he was owed for Porteck, which was $6,800,000 for assets with a stated acquisition

value of $1,824,000, Walia admits he was good with looking the other way.  One year later on April

15, 2016, Walia installed by Parmar as the CEO of the Debtor OrionHealth Corp. Inc. ("Orion")

and the Chief Technology Officer of Constellation Health Technologies, Inc. ("CHT") received

another payment this time for $2,500,000 (the "First Transfer").  The Trustee challenges the First

Transfer as an intentionally fraudulent conveyance as the purchase agreement from 2015 was

designed to conceal and mislead creditors.  Walia claims he was owed the First Transfer in

satisfaction of an antecedent debt outlined in Section 1.6(e) of the same fraudulent asset purchase

agreement he executed with Parmar in 2015.  Section 1.6(e) required an escrow be established and

funded on condition of certain events occurring.  However, the facts are not in dispute that no

escrow was established, no funds deposited into escrow, and the First Transfer made the same day

as Parmar advised Walia, the CEO of Orion, that he would forward payment if Walia would again

look the other way.  The explanation proffered by Walia is refuted by the documents and does not support the claim of an antecedent debt.

2.      The Motion also seeks to recover a payment of $1,520,000, made on June 23 and June 28, 2017 (collectively the "<u>Second Transfer</u>"), as an intentionally fraudulent conveyance, based off yet another fraudulent purchase agreement entered between Parmar and Walia.  The purchase agreement contained fabricated asset, earnings and capital schedules.  A due diligence report to support the sale prepared by Walia and Parmar was filled with fictitious figures which the duo never completed.  In fact, the deal was conceived so hastily, Parmar asked Walia only weeks prior for the identity of the company and what it produced.  The Debtor paid for membership interests of a shell company owned by Walia, Objecttech Holdings, LLC ("<u>Objecttech</u>"), which was given to a <u>non-debtor</u> third party.

3.      With respect to both Transfers, the Debtors' books and records evidence no legitimate debt, no satisfaction of an antecedent debt, or increase in net assets as a result of the Transfers. Preparation of false and misleading documents or the reckless indifference to the truth of what was prepared is intentional fraud in New York and under federal law.  Walia's explanation that Parmar was to blame is not a legally cognizable defense especially in light of Defendants' participation in both schemes and enrichment.

4.      During the time frame of 2016 and 2017, the Debtors were subject to multiple lawsuits wherein legitimate creditors were forced to sue CHT and Orion to obtain judgments. These lawsuits and judgments went unsatisfied as they were stayed after the filing of the petition in bankruptcy by the debtors.

5.      The Trustee also challenges both Transfers as constructively fraudulent conveyances.  Insiders are not allowed to elevate their interests above legitimate creditors. New York Debt and Creditor Law ("NYDCL") stigmatizes as constructively fraudulent under NYDCL §273-a, conveyances made between a Debtor and its officers/insiders where lawsuits and judgment creditors exist at the time of the transfer.  It is an undisputed fact Walia was an insider and an officer of both Orion and CHT.  Transfers to officers/insiders are not made in "good faith" when lawsuits and judgments exist and the Transfers are constructively fraudulent as a matter of law.

6.      Defendants' myriad of twisting self-serving explanations are not a cognizable defense.   Documents that are the basis for the Transfers are replete with mistruths and inaccuracies designed to conceal Parmar's diversion of millions of dollars from the estate.  The Motion is ripe for determination.

## II.

## STANDING

7.      On March 16, 2018, each of the Debtors except New York Network Management, LLC ("NYNM") filed a voluntary petition (the "Petition Date") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code (NYNM commenced its voluntary petition on July 5, 2018) (collectively, the "Debtors).  The Debtors' cases are jointly administered for administrative purposes only.  [Dkt. Nos. 34 and 381]

8.      On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, entered an order (the "Confirmation

Order") [Dkt. No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

9.      The Plan provides, among other things, for the formation of the Liquidating Trust and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

10.     The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action, of the Debtors as well as making distributions to creditors with Allowed claims.  (Plan, §6.3)

### III.

### PROCEDURAL STATEMENT

11.     Plaintiff filed the complaint (the "Complaint") in this action on March 13, 2020.  [Dkt. No. 1]  The Complaint sought to recover alleged intentional and constructively fraudulent transfers under applicable provisions of the Bankruptcy Code and New York Debt and Creditor Law ("NYDCL").

12.     On May 21, 2021 the Parties filed the Stipulation and Order re: Filing of First Amended Complaint; And Entering of Scheduling Order [Dkt. No. 19], which was entered by the Court on May 26, 2021. [Dkt. No. 20]

13.     On May 28, 2021, Plaintiff filed its First Amended Complaint For Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided

Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11U.S.C. §§502, 544, 547, 548, and 550. [Dkt. No. 22] On June 9, 2021, Defendants filed their Answer to First Amended Complaint and Affirmative Defenses. [Dkt. No. 23]

14. On September 21, 2021 the Parties filed the Stipulation Requesting Amendment to Case Management and Discovery Plan [Dkt. No. 26], which was entered by the Court on October 5, 2021. [Dkt. No. 27] On December 30, 2021, fact discovery closed.

15. The parties participated in mediation but did not reach a resolution. [Dkt. No. 41] Expert discovery closed on October 10, 2022. [Dkt. No. 41]

16. Pursuant to 7056-1(a), Plaintiff requested permission from the Court to file a motion for summary judgment or summary adjudication. [Dkt. No. 45] At the Pre-trial Hearing, the Court heard and granted Plaintiff's request to move for summary judgment on certain causes of action.

## IV.

## STATEMENT OF FACTS

17. Based upon the affidavits attached to the Motion, the documents submitted herewith, the Request for Judicial Notice and the pleadings in this case, there is no genuine issue concerning the following material facts:

**A.     The Parties**

18. The Debtors were a consolidated enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices. (*See* Joint Statement of Uncontroverted Facts ("JSOF") #1)

19.     Defendant Walia resides in the State of New York and does business in New York.  Defendant NIKNIM Management, Inc. ("NIKNIM") is a Limited Liability Corporation. NIKNIM was incorporated in 2015, and at all times Walia owned, managed and acted as the sole employee of NIKNIM for the purpose of investing Walia's monies and the monies of his family trust.  (JSOF #8, 9) NIKNIM's principle place of business is Walia's residence. (JSOF #5)

**B.      The March 2015 Acquisition Of Porteck By The Debtor Misstated The Purchase Price In Order To Divert 3MM To Parmar**

20.     Parmar and Defendant Walia met in 2011 at Parmar's Colts Neck residence years prior to the Transfers at issue in the Complaint.  (JSOF #25) According to Walia, in late 2014, Parmar was looking to acquire a medical billing company and interested in purchasing Porteck. (JSOF #26)  Porteck was a technology services company in the healthcare industry incorporated, owned and controlled by Walia who acted as its CEO. (JSOF #27)  Porteck consisted of two business lines: (a) AHMS and (b) PC Advantage ("PCA"), both medical billing companies Porteck acquired prior to 2015. (JSOF #40)

21.     On December 1, 2014, Parmar characterized Porteck as "a joke" to his broker as Porteck had acquired PCA only one month prior to December and a portion of its revenue was from India. See Additional Statement of Fact ("ASOF"), #84)  At the time of the acquisition of Porteck, the net asset value of AHMS was **1.35MM** as calculated by total assets of $2,350,000 less a 1MM liability (a promissory note) paid off by the Debtor at acquisition.  (JSOF #41)  The value of acquired total assets of PCA in 2014 was equal to $2,546,246.55. (JSOF #43)  However, Porteck funded the acquisition of PCA with 1.9MM in loans which loans the Debtor paid off or took over payment of at the time of acquisition in 2015. (JSOF #44)  The net asset value of PCA recorded at

time of purchase by the Debtor was **$474,000.** (JSOF #45)  The recorded value of Porteck in

February 2015 was $1,824,000.

22.    Walia retained a broker, Abstract Business Advisors ("<u>Abstract</u>"), to sell

Porteck. (JSOF #29) Notwithstanding the comment of Parmar, the Debtor acquired Porteck in

February 2015. On February 20, 2015, Abstract documented the sale of Porteck to the Debtor as a

purchase price of **7.8MM**, with 5.5MM to be paid in cash to Defendants at closing. (JSOF #30)

According to Walia, the purchase price of Porteck to the Debtor was **10.8 MM**.  (JSOF# 32)  On

March 2015, Walia on behalf of the sellers, Walia, the Walia Trust and the Janaminder Trust, sold

Porteck to the Buyer, Debtor, Physicians Practice Plus, LLC, and ("<u>PPP</u>") as executed by Paul

Parmar. (JSOF #33)   As memorialized by the Asset Purchase Agreement ("<u>APA</u>"), the purchase

price is reflected as **12.8MM**. (JSOF #35) The Walia Trust never signed the APA. (JSOF #34)

23.    Walia testified that Parmar misstated the purchase price to Abstract because

Parmar told Walia "he could get a better deal for us". (JSOF #31) Walia testified that Parmar told

him he needed to add 2MM in additional deal fees to the APA. (JSOF #36) Representing the

purchase price as 12.8MM rather than 10.8MM did not concern Walia as long as Walia's share of

the purchase price did not change. (JSOF #37)

24.    Bank records memorialize the wire in of **9.8MM** by the Debtor CHT to the

IOLA Account for the closing of the Porteck sale.  (ASOF #85) According to the IOLA Account,

3MM of the purchase price was paid to First United Health ("<u>FUH</u>"), a Parmar controlled entity,

and 6.8MM was disbursed to Walia in accordance with the closing documents. (ASOF #86, 87 )

Approximately 7MM in total consideration was disbursed to the sellers of Porteck at the closing.

(JSOF #39)

      25.    Following the acquisition of Porteck, Walia served as the Chief Executive

Officer ("CEO") of the Debtors' main operating company, Orion, and the Chief Technology Officer

("CTO") of the Debtor CHT from June 2015 until his departure in the Fall of 2018. (JSOF #4)

      26.    During Wala's tenure as an officer of CHT and Orion, CHT purportedly

acquired MDRX Medical Billing, LLC ("MDRX") and its businesses for 28MM on February 10,

2016.  (JSOF #20) MDRX was a sham transaction as it had no assets, employees, and conducted no

business.  (JSOF #21)  Ted Brindamour ("Brindamour") of Sage Consulting, a company owned by

Parmar's brother-in-law Salil Sharma, prepared the due diligence reports to support each

acquisitions by the Debtors.  (JSOF #53) Brindamour prepared the due diligence reports to support

the two acquisitions in the present adversary. (JSOF ##52-54)

**C.**    **The April 15, 2016 Transfer Of $2,500,000 To Defendants Based on An Email Between Two Insiders**

      27.    On April 15, 2016, one year later, Parmar issued an email to Walia stating, "I

am willing to give you 3.5MM in return for you to allow me to structure it properly internally

which requires I close the file with a 2M payment." (ASOF #90)

      28.    On April 15, 2016, the Debtor CHT transferred 2.5MM via wire from the

M&T bank account of CHT to the JP Morgan Chase bank account of Defendant NIKNIM at the

direction of Walia (the "First Transfer"). (JSOF ##6, 17)

      29.    Walia asserts the 2.5MM Transfer was paid to him by CHT pursuant to

section 1.6(e) of the APA. (JSOF #47) Section 1.6(e) of the APA references the establishment of an

escrow account, escrow agreement and monies to be deposited into escrow in 2015. (See Aff. of Wong, §9, Ex. F)  No escrow was established in 2015 by the parties to the APA and no monies deposited in escrow. (JSOF #48)  No escrow agreement was executed by Walia and Parmar and no discussion between Walia and Parmar to select an escrow. (JSOF #48, 49)  According to Section 1.6(b), all sums owed to Defendant were to be disbursed at closing (JSOF #46)

30.    At year-end, December 31, 2015, the Debtors' books and records did not evidence a 2.5MM antecedent debt owed to any of the sellers of Porteck. (ASOF #88) The Debtors' books and records do not evidence the satisfaction of an antecedent debt or increase in net assets as a result of the Debtors' payment of 2.5MM to Defendants on April 15, 2016. (ASOF #89)

**D.    The June 23, 2017 Transfer Of $1,520,000 To Defendants For The Sale of Objecttech To A Non-Debtor Based On A Fabricated Purchase Agreement**

31.    According to Walia, he agreed in 2017 to sell Parmar a software company he owned, AllRad Direct, LLC ("AllRad"). (JSOF #50)   Objecttech, a shell company owned by Walia, allegedly controlled AllRad. (JSOF #50)

32.    On May 17, 2017, Brindamour forwarded to Parmar and Walia a draft Due Diligence Findings Report ("Due Diligence Report") dated May 18, 2017 which was incomplete. (JSOF #52)  Brindamour wanted Walia to insert the factual information with respect to AllRad, its operations and assets. (JSOF #54)

33.    On May 31, 2017, Walia emailed Parmar to push forward the acquisition of Objecttech. (JSOF #55)  Parmar responded and asked Walia "who was the company to be acquired and what product did it make". (JSOF #56)  On the same day, Walia forwarded to Parmar the draft Due Diligence Report and asked for a contract. (JSOF #57)   Parmar responded that "accurate

figures" be inputted into the Due Diligence Report. (JSOF #58)   Parmar reached out to the law firm of Robinson Brog same day and directed they quickly create a shell company. (ASOF #93)  Neither Parmar nor Defendant considered any other competing software or put the contract out for a competitive bid.  (JSOF #70)

34.     On June 8, 2017, Walia advised Parmar he may need to convert the agreement to an asset purchase agreement as he was meeting his accountants.  (JSOF #63)

35.     On June 15, 2017, Walia advised Parmar the price for the acquisition was 1.52MM. (JSOF #64) Walia was attempting to maximize the price the Debtor would have to pay for AllRad. (JSOF #65)  The sale was memorialized by a Membership Interests Purchase Agreement ("MIPA') dated June 2017, between Objecttech, seller, and Physicians Healthcare Network Management Solutions, LLC ("PHNMS"), the buyer.  (JSOF #51)  PHNMS is a non-debtor entity. (JSOF #67)  The various schedules referenced throughout the MIPA for the acquisition of AllRad were never completed or attached to the MIPA. (JSOF ##61-62)  No revenue projections, working capital, balance sheets or statement of assets and liabilities referenced in the MIPA were attached. (JSOF ##62, 68)  The Orion board of directors' resolution approving the sale, as required by the MIPA, was never obtained. (JSOF #69)  The Due Diligence report was never finalized. (JSOF #60)

36.     On June 23, 2017, and June 28, 2017, the Debtors transferred via wire $1,520,000 from its Robinson Brog IOLA account (the "IOLA Account") to the JPMorgan Chase bank account of NIKNIM (collectively the "Second Transfer"). (JSOF #7)[2]

37.     For 2017, the Debtor's books and records do not evidence a $1,520,000 antecedent debt owed to Defendants to acquire Objecttech or AllRad. (ASOF #91) In 2017, the

---

[2] The First Transfer and the Second Transfer are referenced collectively as "the Transfers."

Debtor's books and records do not evidence the satisfaction of any antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech, AllRad or PHNMS for $1,520,000. (ASOF #92)

E.    **The Debtors CHT And Orion Moved Millions Of Dollars Into The Debtors' IOLA Account Including Funds From The CHT Go-Private Transaction**

38.    For the fiscal year 2014, the 23MM borrowed by Orion was deposited and appeared in the IOLA Account which debt was reflected in the audited Consolidated Financial Statements of the Debtors as "net proceeds from long term debt". (ASOF #78)  On February 19, 2016, $5,058,408.81, was transferred out of the Debtor CHT's bank account and deposited into the IOLA Account (ASOF #79)   On August 10, 2016, $12,740,000 was transferred out of the Debtor CHT's bank account and deposited into the IOLA Account. (ASOF #80)  To fund the Go-Private Transaction, a Credit Agreement was entered into with BOFA wherein BOFA advanced 130MM to the Debtors.  (JSOF #22) The Credit Agreement with BOFA was executed by all the Debtors and was secured by substantially all the Debtors' assets.  (JSOF #23)  BOFA is the Debtors' largest creditor with an outstanding secured claim in the amount of $158,200,710.89.  (JSOF #24)  On March 10, 2017, $5,590,000 was transferred out of the Debtor Orion's bank account to the IOLA Account. (ASOF #81)

39.    On January 30, 2017, approximately 46MM that resulted from the CHT Go-Private Transaction was transferred into the Debtors' IOLA Account and listed under a line item that states "Constellation Health/CHT Closing".  (ASOF #82)

**F.    At The Time Defendants Received In Excess Of 4MM, Claimants, Lawsuits And Judgment Creditors Existed Against The Debtors Orion and CHT Who Remained Unpaid At The Petition Date**

40.    On December 16, 2015, the United States District Court for the Southern District of Texas issued a Judgment in the amount of $194,185 against Debtor Orion in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  (JSOF #73)  The Judgment was filed as a proof of claim in Case 8-18-71748, and assigned claim no. 10001.  (JSOF #73)  The filed claim remained unsatisfied as of the Petition Date.  (JSOF #73)

41.    On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a complaint, case no. DC-16-02365, against the Debtors Medical Billing Services, Inc. and Orion in the District Court of Dallas County, Texas for monetary relief in excess of 1MM. (JSOF #71) On March 23, 2018, a Suggestion of Bankruptcy of the Debtors was filed in the District Court of Dallas County, Texas advising of the triggering of the automatic stay of the proceedings. (JSOF #72)

42.    On March 9, 2016, a lawsuit was initiated in the Supreme Court of the State of New York by Criterions, LLC, against Debtors PPP and CHT.  (JSOF #74)  Judgment was entered on November 30, 2017, against Debtors PPP and CHT in the amount of $77,767.26.  (JSOF #75)  On March 23, 2018, a Suggestion of Bankruptcy was filed by the Debtors to stay the proceedings in state court.  (JSOF #76)

**V.**

**LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION**

43.    Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary proceeding.  Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion".  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  However, once there is a showing of the absence of an issue of fact, the opposing party must produce specific evidence that raises a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing substantive law, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

44.    Summary judgment is designed to pierce the pleadings and expose arguments not supported by the law or lacking evidentiary support.  The Motion is ripe for determination.

**A.    The Transfers Were A Diversion Of Funds Of The Debtors And Which Could Have Been Used To Pay Judgment Creditors**

45.    Monies in the CHT and Orion bank accounts transferred into the IOLA Account prior to the Transfers could have satisfied legitimate creditors forced to file lawsuits and obtain judgments.  Instead, these monies went to insiders such as Defendant who now proffer fairy-tale explanations for receiving the funds.

46.    Section 541(a)(1) of the Bankruptcy Code's broad definition of "[p]roperty of the estate" includes "all legal and equitable interests of the debtor in property *wherever located or by whomever held*." [Emphasis added] 11 U.S.C. §541(a)(1); *Nisselson v. Salim (In re Big Apple*

*Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016).  "The phrase 'all legal or equitable interests of the debtor in property' has been given the broadest possible interpretation and the term equitable interest has generally not been interpreted as limited to a debtor's equity in property." See *Brown v. Dellinger (In re Brown)*, 734 F.2d 119, 123 (2d Cir. 1984). The §544(b) requirement of a transfer of "an interest of the debtor in property," which is a phrase common to §§544(b), 547, and 548, refers to property that would have been part of the estate had it not been transferred before bankruptcy. See, *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990); *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799 (9th Cir. BAP 1995).

47.    It is not disputed that the Debtors' property was involved in both Transfers. (JSOF 6, 7)  The First Transfer of 2.5 MM, was paid directly to Defendants from the Debtor CHT's bank account in 2016. (JSOF 6)  Money in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate. *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *30 (Bankr. S.D.N.Y. 2016); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 55 (7th Cir. 1996) ("Property of the debtor . . . includes the interest that a depositor the debtor has in the money in his account . . .").

48.    The Second Transfer was issued from the Debtors' IOLA Account at Robinson Brog.  (JSOF #7)  An Interest on Lawyers Account is an unsegregated interest-bearing deposit account… for the deposit by an attorney of "qualified funds".  N.Y. Jud. Law §497(1). "Qualified funds" are monies received by an attorney in a fiduciary capacity from a client or beneficial owner.  The debtor's funds sitting in an IOLA account are the funds of the debtor as they are not property of the law firm who has no dominion or control over them.  See *State Farm Mut.*

*Auto Ins. Co. v. Grafman*, No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017). See *In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 Bankr. LEXIS 4145, pg. 11 [law firm was not free to use the client's funds in escrow for its own benefit, and had it done so, the guilty attorneys undoubtedly would have been disciplined and possibly prosecuted for stealing client funds. Hence, the law firm was not a transferee]. *Id.* In the present case, the Debtors' Orion and CHT deposited from their bank accounts millions of dollars directly into the IOLA Account only months before the Second Transfer. (ASOF ##79-81) Funds of CHT and Orion deposited into the IOLA Account do not lose their color simply because they are transferred into the IOLA Account. See *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 326 (Bankr. E.D.N.Y, 2018) ( the change in an asset's form from one type, such as real estate or shares of a corporation, to another, such as cash, should not lead to a change in whether it is a part of a debtor's bankruptcy estate). Once a trustee establishes that a transfer was made from a debtor-owned account over which the debtor normally exercises control, the trustee "makes a preliminary showing of an avoidable transfer 'of an interest of the debtor'." *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018). CHT and Orion were the only Debtors to deposit monies directly in the IOLA Account. (ASOF #83) Both the First and Second Transfer would have been part of the estate. The facts establish the IOLA Account as "an interest of property" of each Debtor CHT and Orion which funds could have satisfied creditors of CHT or Orion.

## VI.

### BOTH THE FIRST AND SECOND TRANSFER ARE AVOIDABLE PURSUANT TO §548(A)(1)(A) AND NYDCL AS INTENTIONALLY FRAUDULENT CONVEYANCES AS THE BASIS FOR EACH TRANSACTION WERE FALSIFIED DOCUMENTS DESIGNED TO MISLEAD CREDITORS

49.     In its <u>First Claim for Relief</u>, Plaintiff seeks: to avoid the intentionally fraudulent transfer of the Debtors' funds to Defendants totaling $4,020,000, pursuant to 11 U.S.C. §§544, 548 and 550 and NYDCL §276, *et seq.*, or recover the value thereof, and preserve the Transfer for the benefit of the Debtors' estate pursuant to 11 U.S.C. §551.  Section 548(a)(1)(B) of the Bankruptcy Code permits a trustee to avoid, *inter alia*, "any transfer . . . of an interest of the debtor in property . . . that was made within 2 years before the date of filing of the Petition. §548(a)(1)(B).  Fraudulent conveyance claims under New York State law is generally subject to a six year statute of limitations.  *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (citations omitted).  The First Transfer occurred twenty three (23) months prior to the Petition Date, and the Second Transfer occurred approximately eight (8) months prior to the Petition Date.  Both Sections 11 U.S.C. §§548 and 550 and NYDCL §276, *et seq.*, are applicable.

50.     For a transfer to be avoidable, §548(a)(1)(A) requires that a plaintiff prove that the transfer was made "with actual intent to hinder, delay, or defraud" present or future creditors of the debtor.  Section 548(a)(1)(A) is drafted in the disjunctive.  Whether a conveyance is fraudulent under Section 548(a)(1)(A), it is thus determined by reference to the intent of the debtor-transferor in making the transfer:  "the state of mind of the transferee is irrelevant." *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 2011 U.S. Dist. LEXIS 97647, p. 12 (S.D.N.Y. 2011) citing to *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 304 (S.D.N.Y. 2010).  Similarly, the weight of legal authority in New York interpreting NYDCL §276 finds that §276 also focuses on the fraudulent intent of the transferor, not the transferee. *Id*. at pp. 12-13.  (The Second Circuit has stated that "[t]o prove actual

fraud under §276, a creditor must show intent to defraud on the part of the transferor.  Where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *Sharp*, 403 F.3d at 56 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059, n.5 (2d Cir. 1995)); *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007) and cases cited therein; *Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005). In this sense Section 548 serves the same policy function as Section 547, which allows the trustee to avoid preferential payments made within ninety days of the bankruptcy to protect innocent creditors who were legally entitled to be paid.  Both sections represent an equitable determination by Congress that under limited circumstances creditors must share equally in the insolvency, or, in the case of Section 548, the fraud.  Section 548 is not a punitive provision designed to punish the transferee, but is instead an equitable provision that places the transferee in the same position as other similarly situated creditors who did not receive fraudulent conveyances.  See *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 826-827 Bankr. S.D.N.Y. 2008).  Pursuant to §548(a)(1)(A), a transfer may be avoided as actually fraudulent if (1) the debtor had an interest in the property transferred; (2) the transfer occurred within two years of the petition date; and (3) the transfer was made with actual intent to hinder, delay or defraud a creditor. See 11 U.S.C. §548(a)(1)(A) (2004). *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 852-53 (N.D. NY, 2010).

51.    Plaintiff meets each of the three elements of an intentional fraud claim as the Transfers represent yet another text-book illustration of deception and diversion of monies by

Parmar on the heels of the fake acquisition of MDRX. (JSOF ##20-21) With respect to the First

Transfer, there is no dispute the first two elements are met as the money was wired directly from

the Debtor's bank account at CHT. (See JSOF #6) With respect to the Third element, Walia admits

the APA was intentionally misstated by Parmar to add millions of dollars in "deal fees". (JSOF

##32, 35, 36) $3,000,000 was paid directly FUH, a Parmar controlled entity. (ASOF ##85-87)

Walia was complicit in this scheme.

A.      **The APA Executed By Parmar and Walia in 2015 Was A Fraudulent Document, And The First Transfer Was Designed to Divert Millions To The Insiders**

52.    False statements, misrepresentations and backdating documents is evidence of

intent to defraud as an effort to make an illegitimate transaction appear legitimate. See *United*

*States v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y, 1999) A "strong inference" of

fraud may be established by alleging facts showing either (1) a "motive and opportunity to commit

the fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015)

(securities law); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 308

(S.D.N.Y. 2009) (applying "motive and opportunity" test to the pleading of a §548 claim).

53.    On February 20, 2015, Abstract, the broker retained by Defendant Walia,

documented the sale of Porteck as a purchase price of **7.8MM**. (JSOF #30) According to Walia, the

purchase price of Porteck to the Debtor was **10.8MM.** (JSOF #32)  Yet, the APA, executed by the

Parmar and Walia reflected a purchase price of **12.8MM** for the sale of Porteck. (JSOF #35) Walia

misrepresented the purchase price as 12.8MM, rather than 10.8MM.  The misrepresentation did not

concern Walia as long as "his share" did not change, a reference to receiving 7MM for an asset

(Porteck) that had a stated value at acquisition of $1,824,000. (JSOF ##37, 41-45)  However, the damage was in fact far worse to legitimate creditors of the estate.  The IOLA Account reflecting sums disbursed by the Debtor on March 5, 2015 (the Closing Date) memorialized a total disbursement of **9.8MM**. (ASOF #85)  $3,000,000 was disbursed to First United Health (a Parmar controlled entity), not 2MM as Walia testified to in deposition. (JSOF #36)  The facts suggest Defendant had a motive to look the other way, as he was in fact receiving 7MM from the Debtor for a company with a stated value at acquisition of only $1,824,000.  Parmar labelled Porteck a "joke" only two months earlier.  (ASOF #84)  "Actual fraudulent intent" under NYDCL §278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design." 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff*, 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930).  On these admissions, summary judgment is proper.

54.     Other circumstances also support an inference of fraud as Defendants' explanation is refuted by the documents.  In opposition to the Trustee's claims of intentional fraud, Walia asserts that the First Transfer was made in accordance with Section 1.6(e) of the APA. (JSOF #47) The language of the APA does not support such claim.

55.     Section 1.6(e) of the APA references establishing an escrow in 2015, executing an escrow agreement and 2.5MM being set aside in escrow to address certain events in the future.  (See APA attached to Aff. of Wong. as Ex. F)  Yet, it is an undisputed fact <u>no</u> escrow was established, <u>no</u> escrow agreement executed, and <u>no</u> funds deposited into escrow.  (JSOF ##48-49) Similarly, the closing documents from 2015 refute Walia's claim of monies being set

aside to satisfy any future condition in 2016.  After Walia received his 6.8MM, the IOLA Account

memorializes that the balance of 3MM transferred to Parmar at FUH on the same day, not set aside

for future events. (ASOF #86-87)  See *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y.

2017) (The nonmoving party cannot avoid summary judgment by "rely[ing] on conclusory

allegations or unsubstantiated speculation," but must offer "some hard evidence showing that its

version of the events is not wholly fanciful.)  Similarly, the Debtors' books and records from 2015

and 2016 refute the existence of an antecedent debt of 2.5MM owed to either Defendant Walia or

NIKNIM for the First Transfer.  (ASOF #88-89)  Lastly, the email exchange between the insiders

<u>on the day</u> the First Transfer was effectuated belittles Walia's explanation he was owed any

legitimate sum under the APA.  Parmar's remark that "I am willing to give you 3.5MM in return for

you to allow me to structure it properly internally which requires I close the file with a 2MM

payment" evidences that whatever the duo was up to, it was not an arm's length transaction made in

the ordinary course of business. (ASOF #90)

      56.     Even assuming arguendo the language of the APA supported Walia's claim

of an antecedent debt, the Court should deny the invitation to interpret a contract which was

intentionally designed to misstate and misrepresent the consideration owed by the Debtor. Courts

should refuse to be a party to illegal contracts especially where enforcement would benefit the

perpetrator of the unlawful deed. See *Krohn v. Orta*, 153 B.R. 391, 398 (E.D.N.Y., 1993) citing to

21 N.Y. Jur.2d Contracts §176.  It is improper to make the court serve as a referee and arbitrate a

contract based upon illegal consideration. [3]Such a result is intolerable. *Id*. citing to See *Di Tomasso*,

---

[3] *See* <u>Stone v. Freeman,</u> 298 N.Y. 268, 82 N.E.2d 571 (1948) (agreement in which agent would spend funds to bribe purchasing agent was illegal and principal could not recover the balance of funds which agent diverted to his own interests).

250 A.D. 206, 293 N.Y.S. at 916 (courts will not recognize contracts which rest upon illegal consideration). The purchase price of Porteck in the APA was intentionally misstated by Parmar and Walia, to allow Parmar to divert multiple millions of dollars to FUH. See *AQ Asset Mgt. LLC v. Levine*, 2013 N.Y. Misc. LEXIS 2054, *28 (N.Y. Sup. Ct., Mar. 28, 2013) (Regardless of whether Levine was complicit in this scheme, if it was agreed that the funds would be deposited with Levine under false pretenses, the agreement between sellers and Levine would be unenforceable. No cause of action can arise from an agreement which has been documented falsely for an illegal purpose). Falsifying business records is a first degree Class E Felony and in the second degree, a class A misdemeanor in violation of New York Penal Law §175.05. See *People v. Hankin*, 175 Misc. 2d 83, Ft 4 (Crim Ct Kings County 1997). Here, it is undisputed fact that the APA was documented falsely, Defendants knew of such fact, and $3,000,000 was diverted to Parmar. Under such blatantly fraudulent circumstances, a claim the APA supports <u>a further</u> 2.5MM Transfer cannot raise a material fact as such contention seeks to make the Court a party to the fraud.

57.    NYDCL §276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL §276. Intent to evade creditors amounts to a fraudulent conveyance regardless of insolvency. *Korea Deposit Ins. Corp. v. Mina Jung*, 59 Misc. 3d 442, 449 (Sup Ct, New York County, 2017); See *United States v. McCombs*, 30 F.3d 310, 327-28 (2d Cir. 1994). As the Second Circuit explained:

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e.,

circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."

Courts in New York look to the badges of fraud commonly associated with fraudulent transfers that raise an inference of fraudulent intent *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). *See Tronox v. Anadarko Petroleum (In re Tronox Inc.)*, 429 B.R. 73, 95 (Bankr. S.D.N.Y. 2010) ("The existence of several badges of fraud can constitute clear and convincing evidence of actual intent." (quoting *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791 at 809)).

58.    The Trustee has submitted direct evidence of intent by both Parmar and Walia, to divert multiple millions of dollars of the Debtor, CHT's funds for no legitimate business purpose. The "badges of fraud" also confirm the First Transfer was made with fraudulent intent to divert monies to insiders. "The badges of fraud include circumstances such as 'a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance. *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259.

59.    The undisputed facts establish Parmar and Walia were both officers and insiders at the time of the First Transfer. Parmar was the CEO of CHT, and Walia the CTO of CHT, and the CEO of the Debtor, Orion.  (JSOF #4) The two knew each other prior to 2015.  (JSOF #25) The email exchange on the day of the First Transfer reference a quid pro quo between the insiders. (ASOF #83) The facts establish their involvement on both sides of the transaction and not an arm's-length routine commercial transaction. This factor is established.

60.    Before determining whether the value was "reasonably equivalent" to what the debtor gave up, the court must make an express factual determination as to whether the debtor

received any value at all. *Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d Cir. 1996)  The Debtors' books and records evidence no antecedent debt satisfied concurrently by the First Transfer. (ASOF ##88, 89)  The email exchanged suggest an illegitimate side agreement between Parmar and Walia. (ASOF #90).  The APA does not corroborate that the payment was made in accordance with Section 1.6(e).  Lastly, the metrics of the deal; payment of a further 2.5MM in additional to the 7MM already paid for an asset with a stated value of $1,824,000, is evidence the First Transfer was for not for reasonably equivalent value.

61.     Lastly, Walia knew about the creditors of CHT and Orion in existence and unsatisfied. A judgment was entered in 2015 against Orion.  On March 9, 2016, CHT was sued and Walia named personally as a Defendant in a lawsuit that resulted in a judgment against CHT. (See Req. For Jud. Notice, Judgment, Ex. 3) Rather than pay their debts, Walia received 2.5MM in exchange for Walia allowing Parmar to conceal his misdeeds from creditors. Plaintiff submits prima facie evidence satisfying multiple badges of fraud.  *U.S. v. Spencer*, 2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7. ("A single [badge of fraud] may stamp the transaction as fraudulent and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud.") [4]

**B.    The Second Transfer, Resulting In Payment Of $1,520,000 To Defendant Walia In 2017, Is An Intentionally Fraudulent Conveyance As The Evidence Demonstrates Walia Sold To A Non-Debtor, A Defunct Company, With No Earnings As Supported By A Fictitious Purchase Agreement**

62.     The Evidence supporting the fraudulent nature of the Second Transfer is irrefutable.  In 2017, Walia, an insider, agreed to sell Parmar, an insider, a shell company which he

---

[4] Other badges of fraud includes whether it was a secret and hasty transfer not in the usual course of business. *Prabir v. Bukhara Indian Cuisine, Inc*., 2018 U.S. Dist. LEXIS 94563, *9 (S.D.N.Y. 2018)  Here, the "side-deal" struck between Parmar and Walia dated April 15, 2016, is the same day as the First Transfer.  (See JSOF #6; ASOF #90)

owned, that controlled a defunct company, AllRad Direct, LLC ("AllRad").  (JSOF ##4, 50) The sale was memorialized by a Membership Interests Purchase Agreement ("MIPA') dated June 2017 transferring all interests to a non-debtor, PHNMS.  (JSOF ##51, 67)  Walia claims the MIPA memorialized a legitimate antecedent debt owed by the Debtors.  The claim is baseless.

63.    First, the undisputed facts evidence the MIPA was a deceptively prepared agreement.  Various schedules evidencing the value of AllRad as referenced throughout the executed MIPA were never completed or attached to the MIPA. (JSOF #62) No revenue projections, working capital, balance sheets or statement of assets and liabilities as referenced in the MIPA were attached. (JSOF ##61, 68)  A resolution of Orion board of directors approving the sale as required by the MIPA was never obtained. (JSOF #69)  Neither Parmar nor Defendant, as senior executives of the Debtors, considered any other competing software or put the contract out to others for a competitive bid. (JSOF #70)  Additional documents also support an outright fraud.  The Due Diligence report Walia references to support his receipt of $1,520,000 was prepared by Walia and Brindamour yet never completed.  On May 17, 2017, Brindamour forwarded to Walia a draft due diligence report. (JSOF 52). Brindamour prepared the due diligence reports for the earlier fabricated acquisitions of MDRX.  (JSOF ##20, 21, 53)  Brindamour wanted Walia to insert the factual information with respect to the acquired company, its operations and assets. (JSOF #54)  On May 31, 2017, Walia emailed Parmar to push forward the acquisition of his company.  (JSOF #55)  At this point, Parmar did not even know what was being purchased.  Parmar requested "accurate figures" be inserted in the due diligence report. (JSOF #58)  The Due Diligence Report was never completed.  (JSOF #60)

64.    Not until June 15, 2017, did Walia advise Parmar the price to purchase Objecttech was 1.52MM.  On June 19, 2017 demanded the deal be finalized ASAP for reasons he would not elaborate.  Four days later, Defendants received 1.52MM. (JSOF #7)

65.    The MIPA, the Due Diligence Report, emails and outrageous nature of the transaction are *prima facie* evidence of fraud, i.e. intentional misrepresentations.  The Debtors' funds were used to purchase a shell company, Objecttech, in which Walia the owner admits he participated in the preparation of the misleading MIPA.  Walia participated in drafting the <u>buyer's</u> Due Diligence Report, inserted fictitious revenue statements, and never bothered to finalize the document.  The Debtor paid for a company with fictional assets, fictional liabilities and fictional working capital.  Two senior executives hastily put together the transaction with Walia asserting on June 19, 2017, he wanted to finalize ASAP "for one reason which I will talk to you about today". (See Deposition, Ex. 25,  attached to Aff. of Wong as Ex. 3)  See *New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., supra.*, 2008 U.S. Dist. LEXIS 40517, 2008 WL 2115225 at *4 ("a questionable transfer not in the ordinary course of business" and "secrecy in the transfer" are considered "badges of fraud"); see also *DLJ Mortg. Capital, Inc. v. Kontogiannis*, *supra*, 594 F. Supp. 2d at 325 (defendants secretly encumbering properties with mortgages that were never recorded supports inference of fraudulent intent).

66.    With respect to the issue of "reasonably equivalent value", there is no reasonable dispute that the percipient documents evidence the Debtors received nothing as a result of the Second Transfer.  It is an undisputed fact that whatever was purchased, it was transferred by the duo to a third party non-debtor PHNMS. (JSOF ##51, 67)  In 2017, the Debtors' books and

records do not evidence the satisfaction of an antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech, AllRad or PHNMS for $1,520,000.  (ASOF ##91, 92) Defendants produced no evidence during discovery that Objecttech or AllRad had any operations or value.

**C.** **Walia's Refusal To Produce Financial Documents For The Company He Claims The Second Transfer Purchased Triggers The Application Of The Adverse Inference Doctrine**

67.    A party's failure to produce evidence which, under the circumstances would be expected, leads to an inference that the evidence not produced would not have buttressed the party's position and indeed would have undercut it.  *In re Bruce,* 2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005), citing to *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 174, 94 S.Ct. 414, 420, 38 L.Ed.2d 388 (1973); See also *P.R. Mallory Co. v. NLRB*, 400 F.2d 956, 959 (7th Cir.1968), cert. denied, 394 U.S. 918, 89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969) "[F]ailure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce it.").  The adverse inference rule is triggered by the failure of a party to provide evidence peculiarly available to that party and supports an inference that the truth would be damaging to that party.  *Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.*), 2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008) citing to *Deutsche Financial Services Corp. v. Osborne (In re Osborne)*, 257 B.R. 14, 19, n.7 (Bankr. C.D. Cal. 2000).

68.    Walia was the owner and President of both Objecttech and AllRad entities he solely controlled.  (ASOF #94)  The Trustee requested and Walia did not produce the tax records for either entity during the course of discovery.  (ASOF #94, 95) The failure to produce documents which by its very nature are in his control triggers the *adverse inference rule* and an evidentiary

presumption that such documents, if produced, would confirm the Trustee's contention of the utter lack of any value attributable to AllRad or Objecttech.

## VII.

### THE TRANSFERS VIOLATE NYDCL §273-A AS CONSTRUCTIVELY FRAUDULENT TRANSFERS AS JUDGMENT CREDITORS EXISTED BEFORE THE TRANSFERS AND THE TRANSFERS WERE TO AN OFFICER AND INSIDER

69.     NYDCL §273-a provides: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." NYDCL §273-a (McKinney 2002).  Thus, to prevail on a claim under §273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied.  *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014); *Grace v. BankLeumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).  The Court need not address a determination of solvency if the Court finds a lawsuit was pending, or, a judgment existed against the Debtors at the time of the Transfer and the judgment was left unsatisfied.  Under such circumstances the transfer *per se* violates §273-a, is constructively fraudulent and the solvency or insolvency of the Debtor is irrelevant.  *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 2015 WL 1808693, at *5 (S.D.N.Y. Apr. 20, 2015) citing to NYDCL §273-a (McKinney 2002).  As noted by the court in *Lyman,* "Sections 273 and 273-a thus provide alternate theories of fraud: §273 "applies to transfers that render a debtor

insolvent, and the existence of an action or judgment is irrelevant," while § 273-a "applies where there is an action pending or a judgment already docketed, but there is no requirement that the transfer rendered the debtor insolvent." *Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at *5-6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) (emphasis added). In effect, §273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency." *Mitchell v. Lyons Prof'l Servs., Inc.*, No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at *3 (E.D.N.Y. Sept. 1, 2013) vacated and remanded on other grounds, *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18 (2d Cir. 2014); see also *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938 (S.D.N.Y. 1995) ("a claimant under §273-a need not demonstrate the insolvency of the judgment debtor.[5] It is sufficient to support the claim that the judgment has not been satisfied; and if, as here, it has not, the question of insolvency is irrelevant to the considerations at hand.")

70.    Here, there is no dispute under §273-a, that the second and third elements of liability are met.  The First Transfer as made by CHT occurred on April 15, 2016.  (JSOF #6)  The Second Transfer made from the Debtors' IOLA Account which included bank deposits from the Debtors CHT and Orion, occurred on June 23, 2017, and June 28, 2017.  Judgments and/or lawsuits were pending against CHT and Orion <u>prior</u> to the First and Second Transfers.  The Southern District Court of Texas issued a judgment in the amount of $194,185, against the Debtor Orion on December 16, 2015.  On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a

---

[5] Under NYDCL §273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866 at *53 (S.D.N.Y. Aug. 20, 2000); (trustee met his burden on summary judgment. There is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for intra-family transfer).

complaint, case no. DC-16-02365 against the Debtors Medical Billing Services and Orion in the

District Court of Dallas County Texas for monetary relief in excess of 1MM.  On March 9, 2016, a

lawsuit was initiated in the Supreme Court of the State of New York, against the Debtors PPP and

CHT and judgment issued on November 30, 2017.  The lawsuits were pending as of the Petition

Date and/or a judgment obtained and a proof of claim filed in the bankruptcy case.  (JSOF ##71-76)

**A.**    **The First And Second Transfers Were Not Made For Fair Consideration As Transfers To Insiders Violate NYDCL 273-a As A Matter Of Law**

71.    NYDCL §273 defines "fair consideration" for purposes of §273-a, and

provides that:

> Fair consideration is given for property, or obligation,
>
> a.   When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b.   When such property, or obligation, is *received in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

*Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 21(S.D.N.Y, 2015)[6]

72.    Even if there is fair consideration, a transfer is still constructively fraudulent

in the absence of good faith on the part "of both the transferor and the transferee." *Id.* at 303

(emphasis added), quoting *Berner Trucking, Inc. v. Brown*, 281 AD2d 924, 925, 722 N.Y.S.2d 656

(1st Dept. 2001); see *Sardis v. Frankel*, 113 A.D.3d 135, 142, 978 N.Y.S.2d 135 (1st Dept. 2014)

("'Fair consideration' ... is not only a matter of whether the amount  given for the transferred

property was a 'fair equivalent' or 'not disproportionately small,' but whether the transaction is made

'in good faith,' an obligation that is imposed on both the transferor and the transferee.").

---

[6] Section 548(c) requires both value and good faith and in the absence of either, the defense fails. *Berman v. Pavano (In re Michael S. Goldberg, LLC)*, 2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020).

Importantly, "**[a]n insider** payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." [Emphasis added] *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept. 2016), citing *EAC of N.Y., Inc. v. Capri 400, Inc.*, 49 A.D.3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept. 2008)  Here, it is an undisputed fact that Walia was an insider at the time of both Transfers.  The term insider includes "a person in control of the debtor" or an "officer of the debtor".  11 U.S.C. §101(31)(B) (ii) and (iii).  An "insider" is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor." *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1277 (10th Cir. 2008) "In ascertaining insider status, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length."  *In re Krehl,* 86 F.3d 737, 742 (7th Cir. 1996). Here the emails between Parmar and Walia, his title as an officer of CHT and Orion, and his conduct with both transactions confirm his status as an officer and an insider worthy of additional scrutiny.  Defendants fail both tests for Fair Consideration under NYDCL §272.

73.    Under these facts Defendants cannot establish "good faith" which is required to find "fair consideration."  New York courts have recognized that where the transferee is an officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law.  See *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984). When preferences are given to a debtor corporation's shareholders, officers, or directors, such transfers are *per se* violations of the good faith requirement. *Id.* (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634

(2d Cir. 1995)).  The Transfers are a *per se* violation of the good faith requirement enumerated under the NYDCL.  Here, Defendant Walia served as the CEO of the Debtors' main operating company, Orion, and the CTO of CHT from June 2015 until his departure in the Fall of 2018. (JSOF #4) Summary judgment is proper as the Transfers between the Debtor and its officers lack good faith as a matter of law.

## VIII.

### JUDGMENT IS PROPER AGAINST DEFENDANTS WALIA AND NIKNIM AND BOTH OF THEM

74.     A corporation, being an entity created by law, is incapable of formulating or acting with intent. Thus, for the purpose of recovering impermissibly transferred corporate assets and thereby facilitating creditor recovery, the intent of the officers and directors may be imputed to the corporation." [1] See *Leonard v. Coolidge, (In re Nat'l Audit Def. Network)* 367 B.R. 220, 221 (Bankr. S.D.N.V, 2022) citing to *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 2007 Bankr. LEXIS 159, 2007 Westlaw 438244, at 13 (Bankr. E.D. Va., Feb. 8, 2007). See also *Consove v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 984 (1st Cir. 1983) (imputing to corporation fraudulent intent of corporate officer and sole shareholder); *Friehling v. Nielson (In re F & C Servs., Inc.)*, 44 B.R. 863, 872 (Bankr. S.D. Fla. 1984) (noting that "where the transferee is in a position to dominate or control the Debtor's disposition of his property, the transferee's intent to hinder, delay or defraud creditors may be imputed to the Debtor.'). In *Leonard v. Coolidge, infra*, the court was persuaded that the party executing the transaction, signing the check, authorizing the wire transfer, acted on behalf of the corporate entity.  *Id*, at 221.  Here, it is undisputed fact that NIKNIM operates through its sole employee, officer and shareholder, Walia.  (JSOF #8)  As the

undisputed facts memorialize, Walia executed, the APA and the MIPA and controlled the bank

account of NIKNIM.  Walia personally directed that the Transfers identified in the Complaint be

deposited into the NIKNIM bank account at JP Morgan Chase. (JSOF ##15-16).  The acts of

Defendant NIKNIM are a direct reflection of the intent of its sole shareholder.

**A.     Defendants Walia And NIKNIM Are The Alter Ego Of One Another And Equity Demands They Be Held Jointly And Severally Responsible For Any Judgment**

75.     Alter ego liability exists under New York law "when a parent or owner uses

the corporate form to achieve fraud, or when the corporation has been so dominated by an

individual or another corporation . . . that its separate identity so disregarded that it primarily

transacted the dominator's business rather than its own." *City of Almaty v. Ablyazov*, 2019 U.S. Dist.

LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019); *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195

(2d Cir. 2010) (internal quotation marks and citation omitted).  "Factors to be considered in

determining whether the owner has 'abused the privilege of doing business in the corporate form'

include whether there was a 'failure to adhere to corporate formalities, inadequate capitalization,

commingling of assets, and use of corporate funds for personal use'." (*East Hampton Union Free

School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 127, 884 NYS2d 94 (2009),

quoting *Millennium Constr., LLC v Loupolover*, 44 AD3d 1016, 1016-1017, 845 NYS2d 110

(2007)).[7]  The undisputed facts evidence the factors outlined above warrant that any finding of

liability for receipt of the Transfers by NIKNIM is similarly extended against Walia since he

personally executed the operative documents, made the representations and engineered the

---

[7] Because a decision to pierce the corporate veil in any given instance will necessarily depend on the attendant facts and equities, there are no definitive rules governing the varying circumstances when this power may be exercised. *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 AD3d 405, 407, 997 N.Y.S.2d 67, citing to (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141, 623 NE2d 1157, 603 NYS2d 807 [1993]).

Transfers with Parmar.

## NIKNIM's Lack of Business Purpose

76.    NIKNIM was incorporated in 2015 and at all times had a single employee, officer, and shareholder who was Walia.  NIKNIM was formed to manage Walia's consulting work, his personal investments, and that of his family trust. (JSOF #9)  NIKNIM was paid by the Debtor as a personal accommodation to Walia for tax purposes. (JSOF #12)

## Commingling of Funds

77.    Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either his personal checking account or that of NIKNIM. (JSOF #15)  In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account as well. (JSOF #16)

## NIKNIM's Deposits To Pay Walia's Personal Expenses:

78.    Use of a corporation's bank account for personal use is evidence of a lack of separation between the individual and the corporation.  See *First Horizon Bank v. Moriarty-Gentile*, 2015 U.S. Dist. LEXIS 165695, *20 (Bankr. E.D.N.Y, 2015) (The evidence shows that defendant treated the HPLP bank account as her own, diverted funds to pay her personal bills, commingled and failed to segregate funds, used HPLP as a conduit for defendant's acting business, and failed to maintain arm's-length transactions with HPLP by making continuous and frequent transfers between the HPLP bank account and her personal account.)  Here, it is not disputed that Walia used the NIKNIM account to pay his personal expenses such as pool maintenance, purchase of suits, salon treatments, voice lessons, homeowner's dues, automobile payments for he and his wife as

well as large withdrawals of cash. (ASOF #97)  The bank account of NIKNIM was utilized by

Walia for his personal use.

### The Failure To Maintain Adequate Corporate Minutes Or Records

79.     NIKNIM followed no corporate formalities and maintained no resolutions of

shareholders or minutes. (JSOF #13)

### Domination Or Control Of The Corporation By The Stockholder

80.     Domination, especially with respect to the transaction attacked, and such

domination used to commit the fraud or wrong against a plaintiff is the essence of the inquiry.

*Gardiners Bay Landscape v. Postiglione (In re Postiglione)* 2019 Bankr. LEXIS 1887, *10 (Bankr.

E.D.N.Y 2019) citing to *Baby Phat Holding Co. LLC*, 123 A.D. 3d 405 (N.Y App. Div 2014)   A

key factor in any decision to disregard the separate corporate entity is the element of control or

influence exercised by the individual sought to be held liable over corporate affairs." *Angelo

Tomasso, Inc. v. Armor Construction & Paving, Inc.,* 187 Conn. 544, 556-57, 447 A.2d 406 (1982)

Both transactions and related Transfers were dominated by Walia who orchestrated and directed the

flow of funds.  Walia even filed a proof of claim listing himself as the creditor for alleged monies

owed under the Porteck sale. (See ASOF, #96)

### Capitalization

81.     NIKNIM was capitalized with a small sum of one or two thousand dollars.

(JSOF #14)  The sum in dispute is in excess of 4MM, evidencing the amount of capitalization of

NIKNIM was entirely inadequate.  (JSOF #17)

### Use Of A Single Address

82.     Defendant NIKNIM is a corporation formed under the laws of the State of New York with its principle place of business at Walia's residence. (JSOF #5)

### Inequitable Result

83.     A plaintiff may be considered "injured" by the defendant's actions when "a company is rendered unable to pay the claims pending against it by third parties because of another company or individual's domination of the business." See *Balmer v. 1716 Realty LLC*, No. 05 CV 839 (NG)(MDG), 2008 U.S. Dist. LEXIS 38113, 2008 WL 2047888, at *6 (E.D.N.Y. May 9, 2008) (citing *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827, 628 N.Y.S.2d 855 (N.Y. App. Div. 1995)). Actual or common law fraud need not be proven. See *DER Travel Servs. v. Dream Tours & Adventures*, No. 99 Civ. 2231 (HBP), 2005 U.S. Dist. LEXIS 25861, 2005 WL 2848939, at *9 (S.D.N.Y. Oct. 28, 2005).  In the present case, the undisputed facts are that Walia was the sole actor and directed the funds be deposited into the account of Defendant NIKNIM.  NIKNIM as the initial transferee is strictly liable for the return of the fraudulent conveyances.  Walia as the controlling individual behind NIKNIM and given his personal involvement in the Transfers, is equally liable for the acts and conduct at issue before the Court.  Under New York law, joint and several liability is a question of law that is not related to the factual apportionment of fault among defendants. See *Rovo by Ravo v. Rogatnick*, 70 N.Y.2d 305, 313, 514 N.E.2d 1104, 520 N.Y.S.2d 533, 538 (1987). See *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 Fed. Appx. 58, 60 (2nd Cir. 2014) ("principles of joint and several liability require that a party with even minimal culpability be held responsible to an innocent tort victim." *Greenidge v. HRH Constr. Corp.*, 279 A.D.2d 400, 402, 720 N.Y.S.2d 46, 48-49 (1st Dep't 2001); see also *Westchester Cnty. v. Welton Becket Assocs.*, 102 A.D.2d 34, 48, 478 N.Y.S.2d 305, 315 (2d Dep't 1984) ("An injured party is free to seek a 100%

recovery against any individual wrongdoer among joint wrongdoers.").  Walia has been subject to various lawsuits and had judgments outstanding against him personally at the time of the Petition. (See Req. For Judicial Notice, Ex. 3).  Under the circumstances, it would be inequitable for the Trustee and creditors to be forced to expend further legal fees to pursue only one Defendant. Judgment is proper against both Defendants.

## IX.

## <u>CONCLUSION</u>

**WHEREFORE**, the Trustee requests that this Court enter an order substantially in the form as attached to the Affidavit of Jeffrey Nolan, as **Exhibit 7**:

(1)  Avoiding the Transfers as an intentionally fraudulent transfer pursuant to the Bankruptcy Code 11 U.S.C. §548 and NYDCL §276;

(2)  Avoiding the Transfers as a constructively fraudulent transfer pursuant to the Bankruptcy Code 11 U.S.C. §548 and NYDCL §273;

(3)  Awarding judgment in favor of the Trustee as against Defendants joint and severally; and

(4)  Awarding costs and/or fees by motion and according to proof.

Dated:  January 18, 2023

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

 */s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:(212) 561-7700
Facsimile: (212) 561-7777

Counsel For Plaintiff, the Liquidating Trustee