UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC[1]. | Case No. 18-71748 (AST) |
| Debtors. | (Jointly Administered) |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 20-08049 (AST) |
| Plaintiff, | |
| v. | |
| ARVIND WALIA, NIKNIM MANAGEMENT, INC | |
| Defendants. | |

---

**JOINT STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; PLAINTIFF'S
ADDITIONAL STATEMENT OF FACTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

DOCS_LA:346578.5 65004/003

Comes now, the Parties, and submit the agreed on Joint Separate Statement of Uncontroverted Facts with respect to Plaintiff's Motion for Summary Judgment;

I. **JOINT STATEMENT OF UNCONTROVERTED FACTS**

| | Statement of Fact | Evidentiary Support |
|---|---|---|
| 1. | The Debtors were an enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices. | Stipulated Fact |
| 2. | Defendant Arvind Walia ("Walia") is an individual residing at 27 Kettlepond Road, Jericho, New York | Stipulated Fact |
| 3. | Walia filed a proof of claim, Claim No. 10067, in the amount of $61,590, in case no. 18-71753, asserting monies owed under the Asset Purchase Agreement and Employment Agreement, each dated March 2015, executed between Debtor and Porteck Corporation. | Stipulated Fact |
| 4. | Defendant Walia served as the Chief Executive Officer of the Debtors' main operating company, Orion Healthcorp., Inc. and the Chief Technology Officer of Constellation Healthcare Technologies, Inc. from June 2015 until his departure in the Fall of 2018. | Stipulated Fact |
| 5. | Defendant NIKNIM Management, Inc. ("NIKNIM") is a corporation formed under the laws of the State of New York with its principle place of business at Walia's residence at 27 Kettlepond Road, Jericho, New York. | Stipulated Fact |
| 6. | On April 15, 2016, $2,500,000 was transferred via wire from the M&T bank account of the Debtor Constellation Healthcare Technologies, Inc. ("CHT") to the JP Morgan Chase bank account of NIKNIM (the "First Transfer"). | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 7. | On June 23, 2017, and June 28, 2017, one or more of the Debtors transferred via wire a total of $1,520,000 from the Debtors' Robinson Brog IOLA account to the JP Morgan Chase bank account of NIKNIM (collectively the "Second Transfer") | Stipulated Fact |
| 8. | NIKNIM was incorporated in 2015, and at all times Walia owned and managed NIKNIM as the sole employee, officer, and shareholder. | Stipulated Fact |
| 9. | NIKNIM is an S corp. formed by Walia to manage his consulting work, personal investments, and that of his family trust. | Stipulated Fact |
| 10. | Walia established a family trust, the *Janaminder Virk Irrecovable Trust* in 2012 (the "Janaminder Trust"), where he acts as the Trustee and his daughters the beneficiaries. | Stipulated Fact |
| 11. | Walia established the *Arvin Walia Irrevocable Trust* (the "Walia Trust") as part of his estate planning where his wife acts as the Trustee. | Stipulated Fact |
| 12. | NIKNIM was paid part of Walia's annual salary from the Debtor as a personal accommodation to Walia for tax purposes. | Stipulated Fact |
| 13. | NIKNIM followed no corporate formalities and maintained no resolutions of shareholders or minutes. | Stipulated Fact |
| 14. | NIKNIM was capitalized with a small amount of one or two thousand dollars. | Stipulated Fact |
| 15. | Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either the NIKNIM or his personal checking account. | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 16. | In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account. | Stipulated Fact |
| 17. | Walia personally directed that the Transfers identified in the Complaint be deposited into the NIKNIM bank account at JP Morgan Chase. | Stipulated Fact |
| 18. | FTI Consulting, Inc. ("FTI") was appointed in September 2017 to conduct a forensic examination of the Debtors' business following questions raised as to CHT's financial condition. | Stipulated Fact |
| 19. | Timothy J. Dragelin served as the Debtors' CEO and CRO shortly after the resignation of executives Parmar, and termination of Sam Zaharis, and Ravi Chivukula on September 29, 2017, and through the filing of the Petition, restructuring and sale of the Debtors' assets. | Stipulated Fact |
| 20. | On February 10, 2016, CHT acquired MDRX Medical Billing, LLC ("MDRX") for 28MM. | Stipulated Fact |
| 21. | MDRX had no customers, assets, employees, conducted no business and was a sham transaction with fake revenue. | Stipulated Fact |
| 22. | Pursuant to the Credit Agreement, Bank of America ("BOFA") advanced to the Debtors $130,000,000 in debt to fund the Go-Private Transaction. | Stipulated Fact |
| 23. | The Credit Agreement with BOFA was executed by the Debtors and secured by all of the Debtors' assets. | Stipulated Fact |
| 24. | BOFA is the largest creditor in the bankruptcy case with an outstanding secured claim in the amount of $158,200,710.89. | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 25. | Walia was introduced to Paul Parmar at his residence in Colts Neck, NJ in approximately 2009 or 2011. | Stipulated Fact |
| 26. | Parmar was looking to acquire a medical billing company. | Stipulated Fact |
| 27. | Porteck Corporation ("Porteck") was a technology services company in the healthcare industry incorporated, owned and controlled by Walia who acted as its CEO. | Stipulated Fact |
| 28. | In October or November 2014, Parmar and Walia met again as Parmar was interested in purchasing Porteck. | Stipulated Fact |
| 29. | Walia retained a broker, Abstract Business Advisors ("Abstract"), to sell Porteck. | Stipulated Fact |
| 30. | On February 20, 2015, Abstract documented the sale of Porteck Corporation as a purchase price of 7.8MM, with 5.5MM to be paid in cash to Defendants at closing, and 2.3MM earn-out paid in 12 months. | Stipulated Fact |
| 31. | Walia believes Parmar misstated the purchase price or the commission earned to Abstract because Parmar told him "he could get a better deal for us". | Stipulated Fact |
| 32. | According to Walia, the purchase price of Porteck to the Debtor was 10.8 MM. | Stipulated Fact |
| 33. | The Asset Purchase Agreement ("APA") dated March 2015, is signed by Walia on behalf of the Sellers, Porteck, and the Janaminder Trust, to the Buyer, Physicians Practice Plus, LLC, ("PPP") as executed by Paul Parmar. | Stipulated Fact |
| 34. | The Walia Trust did not execute the APA. | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 35. | The APA, reflects a purchase price of 12.8MM for the sale of Porteck. | Stipulated Fact |
| 36. | Parmar told Walia he needed to add an additional 2MM to the APA as "deal fees". | Stipulated Fact |
| 37. | Representing the purchase price as 12.8MM rather than 10.8MM did not concern Defendant as long as Defendant's share of the purchase price did not change. | Stipulated Fact |
| 38. | Abstract was paid by the Debtor a commission of $192,500. | Stipulated Fact |
| 39. | On March 3, 2015, pursuant to the Disbursement Authorization and Itemization form, the closing cash or total consideration of 7MM was disbursed to the Sellers on account of the sale of Porteck. | Stipulated Fact |
| 40. | Porteck consisted of two components at the time of Acquisition by the Debtor: AHMS and PC Advantage ("PCA") which were both medical billing companies Porteck acquired prior to 2015. | Stipulated Fact |
| 41. | The net asset value of AHMS in 2015 was roughly **1.35MM** as calculated by total assets of $2,350,000 less a 1MM liability, a promissory note paid off by the Debtor at acquisition. | Stipulated Fact |
| 42. | Porteck records reflect the entity PCA had customer lists and contracts of $865,000. | Stipulated Fact |
| 43. | Porteck records reflect the value of acquired total assets from stated PCA in 2014 equal to $2,546,246.55 | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 44. | Porteck funded the Acquisition of PCA in Nov. 2014 with 1.9 MM in loans which loans the Debtors paid off or took over payment of at time of acquisition in 2015. | Stipulated Fact |
| 45. | The net asset value of PCA recorded at time of purchase by the Debtor was **$474,000** | Stipulated Fact |
| 46. | According to Section 1.6(b) of the APA, all sums owed to the Selling Parties were to be disbursed at closing on March 2015. | Stipulated Fact |
| 47. | Walia asserts the 2.5MM First Transfer was paid to him pursuant to section 1.6(e) of the APA | Stipulated Fact |
| 48. | No escrow was established by the parties to the APA in 2015 and there was no discussion between Walia and Parmar of selecting an escrow or depositing monies. | Stipulated Fact |
| 49. | The Buyer and the Seller to the APA did not execute an escrow agreement. | Stipulated Fact |
| 50. | In 2017, Walia agreed to sell Parmar a software company, which he owned, AllRad Direct, LLC ("AllRad"), through Objecttech Holdings LLC, a shell company that controlled AllRad. | Stipulated Fact |
| 51. | The sale was memorialized by a Membership Interests Purchase Agreement ("MIPA') dated June 2017 to Physicians Healthcare Network Management Solutions, LLC, ("PHNMS") | Stipulated Fact |
| 52. | On May 17, 2017, Ted Brindamour ("Brindamour ") forwarded to Parmar and Walia a draft Due Diligence Findings Report dated May 18, 2017, which was incomplete. | Stipulated Fact |
| 53. | Brindamour worked for Sage Consulting who the Debtors used for due diligence reports for their acquisitions which was a company owned by | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| | Parmar's brother-in-law, Salil Sharma. | |
| 54. | Brindamour wanted Walia to insert the factual information with respect to AllRad its operations and assets. | Stipulated Fact |
| 55. | On May 31, 2017, Walia emailed Parmar to push forward the acquisition of Objecttech. | Stipulated Fact |
| 56. | Parmar responded and asked Walia who was the company to be acquired and what product did it make. | Stipulated Fact |
| 57. | On May 31, 2017, Walia forwarded to Parmar the draft Due diligence report and asked for a contract. | Stipulated Fact |
| 58. | On May 31, 2017, Parmar requested that "accurate figures" be inputted into the Due diligence report. | Stipulated Fact |
| 59. | The financial figures in the draft report could only come from Walia and was based off his recollection of what the business did. | Stipulated Fact |
| 60. | The Due Diligence Report was not finalized. | Stipulated Fact |
| 61. | Multiple sections of the executed MIPA such as sections 1.3 Earn-Out Payments, Section 1.4, Discharge of Debt and Liabilities, Maintenance of Working Capital, were never completed. | Stipulated Fact |
| 62. | The various schedules referenced throughout the MIPA for the acquisition of AllRad were never completed or attached to the MIPA. | Stipulated Fact |
| 63. | On June 8, 2017, Walia advised Parmar he may need to convert the agreement to an asset purchase agreement as he was meeting his accountants today. | Stipulated Fact |

| | Statement of Fact | Evidentiary Support |
|---|---|---|
| 64. | On June 15, 2017, Walia advised Parmar the price was 1.52MM. | Stipulated Fact |
| 65. | Walia as the seller was trying to maximize the price the Debtor would have to pay for AllRad. | Stipulated Fact |
| 66. | Defendants did not produce either Federal or State tax returns for Objecttech Holdings, LLC or AllRad. | Stipulated Fact |
| 67. | PHNMS is a non-debtor entity. | Stipulated Fact |
| 68. | No revenue projections, working capital, balance sheets or statement of assets and liabilities referenced in the MIPA were attached. | Stipulated Fact |
| 69. | The Orion board of director's resolution approving the sale as required by the MIPA was never delivered. | Stipulated Fact |
| 70. | Neither Parmar nor Defendant, as CEO of the Debtor, considered any other competing software or put the contract out for a competitive bid. | Stipulated Fact |
| 71. | On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a complaint, case no. DC-16-02365 against the Debtors Medical Billing Services and Orion Healthcorp., Inc. in the District Court of Dallas County Texas for monetary relief in excess of $1,000,000. | Stipulated Fact |
| 72. | On March 23, 2018, a Suggestion of Bankruptcy of the Debtors Physician Practice Plus, LLC d/b/a Orion Billing Services and Orion Healthcorp., Inc. was filed in the District Court of Dallas County Texas advising of the triggering of the automatic stay of the proceedings. | Stipulated Fact |
| 73. | On December 16, 2015, the Southern District Court of Texas issued a Judgment in the amount | Stipulated Fact |

| | Statement of Fact | Evidentiary Support |
|---|---|---|
| | of $194,185, against the Debtor Orion Healthcorp, Inc. in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation. The Judgment was filed as a proof of claim in Case No. 8-18-71748, and assigned claim no. 10001. The filed claim remains unsatisfied. | |
| 74. | On March 9, 2016, a lawsuit was initiated in the Supreme Court of the State of New York by Criterions, LLC, against the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. | Stipulated Fact |
| 75. | Judgment was entered on November 30, 2017, against the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. in the amount of $77,767.26. | Stipulated Fact |
| 76. | On March 23, 2018, a Suggestion of Bankruptcy was filed by the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc., in the Supreme Court of the State of New York. | Stipulated Fact |

Comes now, Plaintiff, and submits his Separate Statement of Additional Uncontroverted Facts ("ASOF") with respect to Plaintiff's Motion for Summary Judgment:

## II.   PLAINTIFF'S ADDITIONAL SEPARATE STATEMENT OF FACT

| | | |
|---|---|---|
| 77. | Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog"), forwarded ledgers of the Interest on Lawyers Account activity in the escrow account maintained by Robinson Brog at Wells Fargo Bank, N.A. ("IOLA Account") to executives of the Debtors. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶5. |
| 78. | For the fiscal year ended December 31, 2014, 23.1 million dollars borrowed by Orion through a facility with RCC Commercial, Inc. was deposited into and appears in the IOLA Account | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶6. |

|    |                                                                                                                                                                                                                                                |                                                                                                                                                            |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | statement activity, dated 4/1/2014                                                                                                                                                                                                             |                                                                                                                                                            |
| 79.| On February 19, 2016, $5,058,408.81, was transferred out of the Debtor Constellation Healthcare Technologies, Inc, bank account to the IOLA account at the firm of Robinson Brog.                                                              | See, Affidavit of Edith Wong ("Affidavit of E. Wong"), ¶5, referencing, February 2016 M&T Bank Statement, attached as Exhibit A to the Affidavit.          |
| 80.| On August 10, 2016, $12,740,000 was transferred out of the Debtor Constellation Healthcare Technologies, Inc, bank account to the IOLA account at the firm of Robinson Brog.                                                                   | See, Affidavit of E. Wong, ¶5, referencing, August 2016 M&T Bank Statement, attached as Exhibit B to the Affidavit.                                        |
| 81.| On March 10, 2017, $5,590,000 was transferred out of the Debtor Orion HealthCorp. Inc., bank account to the IOLA account at the firm of Robinson Brog.                                                                                         | See, Affidavit of E. Wong, ¶6, referencing March 2017, JP Morgan Chase Bank Statement, attached as Exhibit C to the Affidavit.                             |
| 82.| On February 3, 2017, approximately $46,000,000 that resulted from the CHT Go-Private transaction was transferred into the Debtors' IOLA account at the firm of Robinson Brog.                                                                  | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶7                                                                                                |
| 83.| Based off a review of the IOLA Account, no Debtor other than CHT and Orion deposited monies into the IOLA Account.                                                                                                                             | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶7                                                                                                |
| 84.| On December 1, 2014, Parmar characterized Porteck as "a joke" as it acquired PCA only one month prior and a portion of the PCA billing revenue was Telecom revenue from India.                                                                 | See email, Ehren-Walia 005138-5140, attached to Decl. of J. Nolan, as Exhibit D)                                                                           |
| 85.| On March 2, 2015, the day prior to the March 3, 2015 disbursement for the sale of Porteck Corporation to Physician Practice Plus, LLC. the IOLA Account records memorialize Constellation Healthcare Technologies "wire in" for $9,800,000.    | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶8, referencing Exhibits 1 and 3.                                                                 |
| 86.| $3,000,000 of the $9,800,000 went to First United Health and 6.8MM was disbursed to Walia in accordance with the Disbursement Authorization and Itemization Form.                                                                              | See Affidavit of Frank Lazzara, ¶8, referencing Ex. 4.                                                                                                     |

| 87. | First United Health, LLC or FUH is an investment entity conrolled by Paul Parmar. | See Request For Judicial Notice, Ex. 1, CHT Application for Admission to AIM, page 10. |
|---|---|---|
| 88. | At year-end, December 31, 2015, the Debtors' books and records do not evidence a 2.5 MM antecedent debt owed to any of the Sellers of Porteck. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶9. |
| 89. | In 2016, the Debtors' books and records do not evidence a 2.5 MM antecedent debt owed to any of the Sellers of Porteck or the satisfaction of an antecedent debt as a result of the Debtors' payment of $2,500,000 to Defendants on April 15, 2016. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶9. |
| 90. | On April 15, 2016, Parmar relayed to Walia, "I am willing to give you 3.5 MM in return for you to allow me to structure it properly internally which requires I close the file with a 2M payment." | See April 15, 2016, 12:37 pm email, attached to Declaration of J. Nolan, as Ex. 4. |
| 91. | As part of the forensic analysis of the Debtors' books and records between January 1, 2017 and December 31, 2017, no entry was made recording a 1.52 MM debt owed to any of the Sellers of Objecttech including Walia, NIKNIM. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶10. |
| 92. | In 2017, the Debtor's books and records do not evidence the satisfaction of any antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech Holdings LLC, Allrad or PHNMS for $1,520,000 | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶10. |
| 93. | On May 31, 2017, Parmar reached out to the law firm of Robinson Brog and directed they create a shell company, PHNMS, quickly so I can get it going. | See, Affidavit of E. Wong, ¶5, referencing, See May 31, 2017, email, Ehren –Walia 004032, attached hereto as Exhibit "L". |
| 94. | Plaintiff requested the tax returns of both Objecttech and AllRad | See Affidavit of J. Nolan, Exhibit 2, Plaintiff's First Set of Request To Produce Documents, Nos. 31 & 35. |

| 95. | Walia was the owner and President of both entities and has not produced tax returns for Objecttech or AllRad. | Depo of Walia, pg. 352-354, lines 7-20, attached Affidavit of J. Nolan as Ex. 1; See Defendants' First Set of Responses to Req. To Produce Documents, Affidavit of J. Nolan, Ex. 3; Depo of Walia, pg 352-353, Ex 1 to Affidavit of J. Nolan. |
|---|---|---|
| 96. | Walia filed a proof of claim, Claim No. 10141, in the amount of $1,150,947, in case no. 18-71, asserting monies the Debtor owed him personally under the Asset Purchase Agreement dated March 2015. | See Request For Judicial Notice; Exhibit 2, proof of claim. |
| 97. | In 2016 and 2017, Walia utilized the NIKNIM bank account to pay his personal expenses. | See Decl. of J. Nolan, ¶7, JP Morgan Chase cancelled bank checks. |

Dated: January 18, 2023        PACHULSKI STANG ZIEHL & JONES LLP

By: _____
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:     (212) 561-7777

Counsel for the Plaintiff,
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., *et al*.

Dated: January 18, 2023        ROSEN & ASSOCIATES, P.C.

By: _____
Attorneys at Law
747 Third Avenue
New York, NY 10017
Tel: (212) 223-1100
srosen@rosenpc.com

The Law Office of Eugene R. Scheiman, PLLC
570 Lexington Ave
Suite 1600
New York, NY 10022
Phone: 646-280-9000
eugene.scheiman@scheimanlaw.com

Counsel for the Defendants, Arvind Walia and NIKNIM Management