# EXHIBIT 11

Thomas R. Califano, Esq.
Rachel Nanes, Esq. (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com
          rachel.nanes@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| Orion HealthCorp, Inc. | : | Case No. 18-71748 (AST) |
| Constellation Healthcare Technologies, Inc. | : | Case No. 18-71749 (AST) |
| NEMS Acquisition, LLC | : | Case No. 18-71750 (AST) |
| Northeast Medical Solutions, LLC | : | Case No. 18-71751 (AST) |
| NEMS West Virginia, LLC | : | Case No. 18-71752 (AST) |
| Physicians Practice Plus, LLC | : | Case No. 18-71753 (AST) |
| Physicians Practice Plus Holdings, LLC | : | Case No. 18-71754 (AST) |
| Medical Billing Services, Inc. | : | Case No. 18-71755 (AST) |
| Rand Medical Billing, Inc. | : | Case No. 18-71756 (AST) |
| RMI Physician Services Corporation | : | Case No. 18-71757 (AST) |
| Western Skies Practice Management, Inc. | : | Case No. 18-71758 (AST) |
| Integrated Physician Solutions, Inc. | : | Case No. 18-71759 (AST) |
| NYNM Acquisition, LLC | : | Case No. 18-71760 (AST) |
| Northstar FHA, LLC | : | Case No. 18-71761 (AST) |
| Northstar First Health, LLC | : | Case No. 18-71762 (AST) |
| Vachette Business Services, Ltd. | : | Case No. 18-71763 (AST) |
| MDRX Medical Billing, LLC | : | Case No. 18-71764 (AST) |
| Vega Medical Professionals, LLC | : | Case No. 18-71765 (AST) |
| Allegiance Consulting Associates, LLC | : | Case No. 18-71766 (AST) |
| Allegiance Billing & Consulting, LLC | : | Case No. 18-71767 (AST) |
| Phoenix Health, LLC | : | Case No. 18-71789 (AST) |
| New York Network Management, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | x | (Jointly Administered) |

-------------------------------------------------------------------------------

## DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Dated:  January 6, 2019

EHREN-WALIA 003404

# TABLE OF CONTENTS

Page

SECTION 1.   DEFINITIONS AND INTERPRETATION .................................................. 2
   1.1   Definitions ............................................................................................ 2
   1.2   Interpretation, Application of Definitions and Rules of Construction ............... 13
   1.3   Computation of Time .......................................................................... 14

SECTION 2.   ADMINISTRATIVE AND PRIORITY CLAIMS ........................................ 14
   2.1   Administrative Expense Claims .......................................................... 14
   2.2   Accrued Professional Compensation Claims ....................................... 14
   2.3   Priority Tax Claims ............................................................................ 15

SECTION 3.   CLASSIFICATION OF CLAIMS AND INTERESTS ................................. 15
   3.1   Classified Claims Against and Interests in the Debtors ....................... 15
   3.2   CHT ..................................................................................................... 16
   3.3   Orion ................................................................................................... 16
   3.4   Northeast Medical Solutions .............................................................. 17
   3.5   NEMS West Virginia .......................................................................... 17
   3.6   Physicians Practice Plus ..................................................................... 18
   3.7   Medical Billing Services .................................................................... 18
   3.8   Rand Medical Billing ......................................................................... 19
   3.9   RMI Physician Services ..................................................................... 19
   3.10  Western Skies Practice Management .................................................. 20
   3.11  Integrated Physician Solutions .......................................................... 20
   3.12  Northstar First Health ........................................................................ 21
   3.13  Vachette Business Services ................................................................ 21
   3.14  Allegiance Consulting Associates ...................................................... 22
   3.15  Allegiance Billing & Consulting ........................................................ 22
   3.16  NYNM Management ........................................................................... 23

SECTION 4.   TREATMENT OF CLAIMS AND INTERESTS ........................................ 23
   4.1   General ............................................................................................... 23

SECTION 5.   ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 26
   5.1   Holders of Claims and Interests Entitled to Vote ............................... 26
   5.2   Classes Deemed to Reject .................................................................. 26
   5.3   Classes Deemed to Accept ................................................................. 27
   5.4   Acceptance by a Class ........................................................................ 27
   5.5   Cramdown Under Section 1129(b) of the Bankruptcy Code ............... 27
   5.6   Ballots ................................................................................................ 27

EHREN-WALIA 003405

**TABLE OF CONTENTS**
(continued)

SECTION 6.    MEANS FOR IMPLEMENTATION..........................................................27
    6.1    Compromise Regarding Deemed Consolidation ..............................................27
    6.2    Initial Secured Lender Distribution ................................................................28
    6.3    Liquidating Trust ...........................................................................................28
    6.4    The Shell Debtors ...........................................................................................32

SECTION 7.    DISTRIBUTIONS.........................................................................................32
    7.1    Distribution Record Date................................................................................32
    7.2    Date of Distributions......................................................................................32
    7.3    Disbursing Agent ...........................................................................................33
    7.4    Rights and Powers of Disbursing Agent ........................................................33
    7.5    Delivery of Distributions in General...............................................................33
    7.6    Payments and Distributions on Disputed Claims ...........................................33
    7.7    Manner of Payment .........................................................................................33
    7.8    Undeliverable Distributions and Unclaimed Property......................................34
    7.9    Withholding and Reporting Requirements.......................................................34
    7.10    Surrender Instruments ...................................................................................34
    7.11    Setoffs ...........................................................................................................34
    7.12    Insurance Claims............................................................................................34
    7.13    Applicability of Insurance Policies ................................................................35
    7.14    No Post-petition Interest.................................................................................35
    7.15    Distributions Free and Clear...........................................................................35
    7.16    Fractional Dollars; De Minimis Distributions.................................................35

SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS .............................................35
    8.1    Allowance of Claims and Interests ................................................................35
    8.2    Objections to Claims ......................................................................................36
    8.3    Estimation of Claims......................................................................................36
    8.4    No Distribution Pending Allowance ...............................................................36
    8.5    Distributions After Allowance........................................................................36
    8.6    Preservations of Rights to Settle Claims ........................................................36
    8.7    Disallowed Claims .........................................................................................37

SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.....................37
    9.1    Assumption and Rejection of Executory Contracts and Unexpired Leases........37
    9.2    Inclusiveness..................................................................................................37
    9.3    Rejection Claims............................................................................................37
    9.4    Full Release and Satisfaction.........................................................................38
    9.5    Reservation of Rights.....................................................................................38

EHREN-WALIA 003406

## TABLE OF CONTENTS
(continued)

Page

SECTION 10.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE
EFFECTIVE DATE ....................................................................... 38
10.1    Conditions Precedent to Confirmation ............................................ 38
10.2    Conditions Precedent to the Effective Date .................................... 38
10.3    Effect of Failure of Conditions ....................................................... 39

SECTION 11.    EFFECT OF CONFIRMATION ............................................. 39
11.1    Immediate Binding Effect ............................................................... 39
11.2    Compromise and Settlement of Claims, Interests and Controversies ................. 39
11.3    Releases by the Debtors .................................................................. 39
11.4    Releases by Holders of Claims ....................................................... 40
11.5    Exculpation ..................................................................................... 41
11.6    Injunction ........................................................................................ 41
11.7    Term of Injunctions or Stays ........................................................... 42
11.8    Injunction Against Interference with Plan ...................................... 42
11.9    Release of Liens .............................................................................. 42
11.10   Effectuating Documents and Further Transactions .......................... 42
11.11   Corporate Action ............................................................................. 42
11.12   Cancellation of Documents ............................................................. 43
11.13   Dissolution of the Debtors .............................................................. 43
11.14   Preservation of Causes of Action ................................................... 43
11.15   Preservation of Rights Under Bankruptcy Rule 2004 ..................... 43

SECTION 12.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS
PLAN ......................................................................................... 44
12.1    Modification and Amendments ....................................................... 44
12.2    Effect of Confirmation on Modifications ........................................ 44
12.3    Revocation or Withdrawal of this Plan ........................................... 44

SECTION 13.    RETENTION OF JURISDICTION ............................................. 44

SECTION 14.    MISCELLANEOUS PROVISIONS ........................................... 46
14.1    Payment of Statutory Fees .............................................................. 46
14.2    Dissolution of Committee ............................................................... 46
14.3    Section 1125(e) Good Faith Compliance ........................................ 46
14.4    Substantial Consummation .............................................................. 46
14.5    Section 1146 Exemption ................................................................. 46
14.6    Closing of the Chapter 11 Cases ..................................................... 47
14.7    Plan Supplement ............................................................................. 47
14.8    Further Assurances .......................................................................... 47
14.9    Exhibits Incorporated ..................................................................... 47

-iii-

EHREN-WALIA 003407

### TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 14.10 | Inconsistency | 47 |
| 14.11 | No Admissions | 47 |
| 14.12 | Reservation of Rights | 47 |
| 14.13 | Successors and Assigns | 48 |
| 14.14 | Entire Agreement | 48 |
| 14.15 | Notices | 48 |
| 14.16 | Severability | 48 |
| 14.17 | Governing Law | 49 |
| 14.18 | Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b) | 49 |

EHREN-WALIA 003408

## INTRODUCTION

On March 16, 2018 (the "*Petition Date*"), Orion HealthCorp, Inc. ("*Orion*"), Constellation Healthcare Technologies, Inc. ("*CHT*"), NEMS Acquisition, LLC ("*NEMS Acquisition*"), Northeast Medical Solutions, LLC ("*Northeast Medical Solutions*"), NEMS West Virginia, LLC ("*NEMS West Virginia*"), Physicians Practice Plus, LLC ("*Physicians Practice Plus*"), Physicians Practice Plus Holdings, LLC ("*Physicians Practice Plus Holdings*"), Medical Billing Services, Inc. ("*Medical Billing Services*"), Rand Medical Billing, Inc. ("*Rand Medical Billing*"), RMI Physician Services Corporation ("*RMI Physician Services*"), Western Skies Practice Management, Inc. ("*Western Skies Practice Management*"), Integrated Physician Solutions, Inc. ("*Integrated Physician Solutions*"), NYNM Acquisition, LLC ("*NYNM Acquisition*"), Northstar FHA, LLC ("*Northstar FHA*"), Northstar First Health, LLC ("*Northstar First Health*"), Vachette Business Services, Ltd. ("*Vachette Business Services*"), MDRX Medical Billing, LLC ("*MDRX*"), Vega Medical Professionals, LLC ("*Vega Medical Professionals*"), Allegiance Consulting Associates, LLC ("*Allegiance Consulting Associates*"), Allegiance Billing & Consulting, LLC ("*Allegiance Billing & Consulting*"), and Phoenix Health, LLC ("*Phoenix Health*," and collectively with Orion, CHT, NEMS Acquisition, Northeast Medical Solutions, NEMS West Virginia, Physicians Practice Plus, Physicians Practice Plus Holdings, Medical Billing Services, Rand Medical Billing, RMI Physician Services, Western Skies Practice Management, Integrated Physician Solutions, NYNM Acquisition, Northstar FHA, Northstar First Health, Vachette Business Services, MDRX, Vega Medical Professionals, Allegiance Consulting Associates and Allegiance Billing & Consulting, the "*Initial Debtors*") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Eastern District of New York (the "*Bankruptcy Court*"). On July 5, 2018 (the "*NYNM Petition Date*"), New York Network Management, L.L.C. ("*NYNM Management*" and together with the Initial Debtors, the "*Debtors*"), an affiliate of the Initial Debtors, commenced a chapter 11 case (together with the chapter 11 cases of the Initial Debtors, the "*Chapter 11 Cases*") by filing with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered.

The Debtors propose this *Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as it may be further amended, modified, or supplemented from time to time, together with any and all exhibits and schedules attached hereto or referenced herein, this "*Plan*") for the resolution and satisfaction of all Claims against and Interests in the Debtors.

Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. Reference is made to the Disclosure Statement for a discussion of the Debtors' history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

# SECTION 1.    DEFINITIONS AND INTERPRETATION

### 1.1    *Definitions*.

The following terms used herein shall have the respective meanings below:

*Accrued Professional Compensation* means, at any given time, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, investment banking, and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Cases, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid.

*Administrative Agent* means Bank of America, N.A., as administrative agent under the Prepetition Credit Agreement.

*Administrative Expense Claim* means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date or NYNM Petition Date, as applicable, and through the Effective Date of preserving the Debtors' Estates and operating the businesses of the Debtors; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

*Administrative Expense Claims Bar Date* means sixty (60) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*Allegiance Billing & Consulting* shall have the meaning set forth in the Introduction.

*Allegiance Consulting Associates* shall have the meaning set forth in the Introduction.

*Allowed* means, with reference to any Claim against the Debtors, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or Liquidating Trustee or (c) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Debtors nor the Liquidating Trustee waives any rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in (a) the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced, or (b) the Bankruptcy Court or any other court that has venue

EHREN-WALIA 003410

and jurisdiction pursuant to 28 U.S.C. §§ 157 and 1409.  An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law.  Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim.  Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date or NYNM Petition Date, as applicable.

*Allowed Secured Lender Claim* means the Allowed Secured Claim of the Secured Lenders pursuant to this Plan in the amount of Fifty Million Dollars ($50,000,000.00).

*Allowed Secured Lender Deficiency Claim* means the Allowed Deficiency Claim of the Secured Lenders pursuant to this Plan in the amount of One Hundred and Seven Million Six Hundred Twelve Thousand Three Hundred Forty-Two Dollars and Seventy Four Cents ($107,612,342.74).

*Assets* means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Debtors' Estates pursuant to Bankruptcy Code section 541, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

*Assigned Causes of Action* means any and all Causes of Action assigned to the Liquidating Trust by any Person pursuant to this Plan.

*Avoidance Actions* means claims or causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or the Uniform Voidable Transfer Act (including any similar laws of each of the foregoing enacted by any state, commonwealth or territory of the United States), and any law of similar effect, whether or not litigation is commenced to prosecute such claims or causes of action.

*Ballot* means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

*Bankruptcy Court* means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Cases.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

*Beneficiaries* means the Holders of each of the Allowed Secured Lender Claim, Allowed Secured Lender Deficiency Claim, Allowed General Unsecured Claims and Allowed

EHREN-WALIA 003411

Subordinated Claims against the Debtors' Estates as beneficiaries of the Liquidating Trust, as set forth in this Plan and the Liquidating Trust Agreement.

*Beneficiary Tax Information* shall have the meaning set forth in section 6.3(e).

*Beneficiary Tax Reserve* shall have the meaning set forth in section 6.3(e).

*Business Day* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in New York, New York.

*Cash* means cash and cash equivalents including, without limitation, checks and wire transfers.

*Cash Collateral Stipulations* means those stipulations agreed to among the Debtors, the Secured Lenders and the Committee providing for the Debtors' continued use of the Secured Lenders' Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) during the Chapter 11 Cases.

*Causes of Action* means any claim (other than the Claims against the Debtors), cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and/or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes without limitation: (a) any right of setoff, counterclaim, or recoupment and/or any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action. The term "Causes of Action" shall include, without limitation, those actions and claims described in the Plan Supplement.

*Chapter 11 Case* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code; and (b) when used with reference to all Debtors, the procedurally consolidated Chapter 11 Cases pending for the Debtors in the Bankruptcy Court under case number 18-71748-AST.

*CHT* shall have the meaning set forth in the Introduction.

*Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

*Class* means a class or category of Claims as classified and described in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

*Collateral* means any property or interest in property of the Estates that any party asserts is subject to a Lien, charge or other encumbrance to secure the payment or performance of

EHREN-WALIA 003412

a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee on April 4, 2018 with respect to the Initial Debtors' Chapter 11 Cases, and on July 26, 2018 with respect to NYNM Management's Chapter 11 Case, pursuant to section 1102 of the Bankruptcy Code.

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in each of the Debtors' Chapter 11 Cases.

*Confirmation Hearing* means the hearing on confirmation of this Plan pursuant to Bankruptcy Code section 1129.

*Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code.

*Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against any of the Debtors.

*Creditor* means a Holder of a Claim.

*Cure* means the payment of Cash by the Debtors or the Liquidating Trustee, as applicable, as necessary and required under the Bankruptcy Code to (i) cure a default by a Debtor in accordance with the terms of an Executory Contract or Unexpired Lease of a Debtor, and (ii) permit that Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

*Debtor Released Claims* shall have the meaning set forth in section 11.3.

*Debtors* shall have the meaning set forth in the Introduction.

*Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

*Deficiency Claim* means, to the extent the value of any property securing a Claim is less than the amount of such Claim, the difference between such value and such Claim.

*DIP Loan* means that senior secured postpetition financing consisting of a revolving credit facility in the principal amount of up to Seven Million Five Hundred Thousand ($7,500,000.00) provided to the Initial Debtors in accordance with the Superpriority Secured Debtor-In-Possession Credit Agreement among (a) Orion, as borrower; (b) the other Initial Debtors, as guarantors thereto; (c) NYNM Management, Network Management Insurance Brokerage Services LLC, New York Network IPA, Inc., New York Premier IPA, Inc., Brooklyn Medical Systems IPA 3, Inc., Brooklyn Medical Systems IPA 4, Inc., and Brooklyn Medical Systems IPA 5, Inc.; (d) Bank of America, N.A. as administrative agent, and (e) the lenders from time to time party thereto.

EHREN-WALIA 003413

**Disallowed Claim** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**Disbursing Agent** shall have the meaning set forth in section 7.3.

**Disclosure Statement** means the Third Amended Disclosure Statement for the Debtors' Third Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated January 6, 2019, as the same may be altered, modified, or amended.

**Disputed Claim** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which a Debtor, the Liquidating Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors, the Liquidating Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

**Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**Distribution Record Date** means five (5) Business Days prior to the Confirmation Date or any subsequent date established by the Liquidating Trustee upon notice to all Holders of Claims or Interests that may receive a Distribution from the Liquidating Trust.

**Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of this Plan have been either satisfied or waived.

**Estates** means the estate created in each Debtor's Chapter 11 Case containing all Assets of the Debtor pursuant to Bankruptcy Code section 541.

**Excess Liquidating Trust Distributable Cash** means the Liquidating Trust Distributable Cash and any other assets of the Liquidating Trust reduced to Cash net of (i) all expenses and costs of operating or effectuating the duties of the Liquidating Trust as determined by the Liquidating Trustee with the approval of the Liquidating Trust Oversight Board as set forth in the Liquidating Trust Agreement; (ii) any reserves as the Liquidating Trustee may determine are necessary with the approval of the Liquidating Trust Oversight Board as set forth in the Liquidating Trust Agreement; and (iii) payment in full of the Allowed Secured Lender Claim, Allowed Secured Lender Deficiency Claim and the Allowed General Unsecured Claims as set forth in this Plan.

EHREN-WALIA 003414

***Exculpated Claim*** means any claim related to any act or omission by an Exculpated Party in connection with, relating to or arising out of (i) the Chapter 11 Cases, (ii) the negotiation or consummation of the Sales, (iii) the negotiation, administration or consummation of the DIP Loan or Cash Collateral Stipulations in the Chapter 11 Cases, (iv) the post-petition formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, (v) the filing of the Chapter 11 Cases, (vi) the pursuit of confirmation of this Plan, including, without limitation, any compromise or settlement under Bankruptcy Rule 9019, (vii) the administration and implementation of this Plan, or (vii) the Distribution of property under this Plan and/or any other related agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct to the extent imposed by applicable non-bankruptcy law. No Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

***Exculpated Party*** means each of: (i) the Debtors' professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC and any Related Person to such professionals; (ii) the members of the Committee in their capacity as such and the Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent and the Secured Lenders solely in their capacity as creditors and parties in interest in these Chapter 11 Cases, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of the Related Persons to such Secured Lenders, including attorneys and financial advisors solely in their capacity as advisors, creditors and parties in interest in these Chapter 11 Cases; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board and the members thereof, solely in their capacity as such and any professionals retained by the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of the Debtors; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors. Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara, shall not have the benefit of the exculpation or releases granted pursuant to this Plan or the Confirmation Order.

***Executory Contract*** means a contract to which one or more of the Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

***Final DIP Order*** means that *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [D.I. 159], which approved, among other things, the DIP Loan.

EHREN-WALIA 003415

*Final Order* means an order or judgment of a court entered by the clerk of the court on the docket of a case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that a motion under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

*General Unsecured Claim* means any Claim asserted against any Debtor which is not included within the other specifically defined Classes hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

*Governmental Unit* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

*HealthTek APA* means that certain Asset Purchase Agreement, dated as of July 5, 2018, between NYNM Management and HealthTek Solutions, LLC.

*Holder* means the legal or beneficial holder of a Claim or Interest.

*Impaired* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

*Initial Debtors* shall have the meaning set forth in the Introduction.

*Initial Liquidating Trust Distributions* shall have the meaning set forth in section 6.2.

*Insider* shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

*Insurance Policies* means, collectively, all of the Debtors' insurance policies.

*Integrated Physician Solutions* shall have the meaning set forth in the Introduction.

*Intercompany Claims* shall have the meaning set forth in section 3.1.

*Interest* means the interest of any Holder in an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16) represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

EHREN-WALIA 003416

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Liquidating Trust* means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

*Liquidating Trust Agreement* means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as such agreement may be subsequently amended, supplemented or otherwise modified from time to time in accordance with the terms thereof.

*Liquidating Trust Assets* means the assets held in the Liquidating Trust comprised of (i) the Net Sale Proceeds; (ii) the Liquidating Trust Reserve; (iii) all of the Debtors' books and records; (iv) all Causes of Action of the Debtors, except those expressly waived herein, (v) all Assigned Causes of Action; and (vi) all other unencumbered Assets of the Debtors' Estates remaining after all required payments have been made pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement, as applicable, on the Effective Date.

*Liquidating Trust Distributable Cash* means the Liquidating Trust Cash and any other Assets of the Liquidating Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Liquidating Trust and establishing any reserves as the Liquidating Trustee may determine is necessary with the consent of the Liquidating Trust Oversight Board pursuant to the terms of this Plan and the Liquidating Trust Agreement.

*Liquidating Trust Oversight Board* shall have the meaning set forth in section 6.3(d) herein.

*Liquidating Trust Professionals* shall have the meaning set forth in section 6.3(b).

*Liquidating Trust Reserve* means an amount sufficient to fund the accrued and estimated expenses and costs of operating or effectuating the duties of the Liquidating Trust, as may be incurred from time to time by the Liquidating Trustee and approved by the Liquidating Trust Oversight Board pursuant to the Liquidating Trust Agreement.

*Liquidating Trustee* means the individual or entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

*MDRX* shall have the meaning set forth in the Introduction.

*Medical Billing Services* shall have the meaning set forth in the Introduction.

*MTBC APA* means that certain Asset Purchase Agreement, dated as of June 25, 2018, between certain of the Debtors and Medical Transcription Billing, Corp.

*NEMS Acquisition* shall have the meaning set forth in the Introduction.

*NEMS West Virginia* shall have the meaning set forth in the Introduction.

EHREN-WALIA 003417

*Net Sale Proceeds* means the gross proceeds of the Sales, net of (i) the Liquidating Trust Reserve; (ii) 125% of the amounts estimated for payment of Professionals' fees and expenses that have not been previously paid as of the Effective Date; and (iii) 125% of the amounts allocated for payment of administrative expenses and other priority claims, including, without limitation, unpaid Secured Tax Claims that have not been previously paid as of the Effective Date.

*Northeast Medical Solutions* shall have the meaning set forth in the Introduction.

*Northstar First Health* shall have the meaning set forth in the Introduction.

*Northstar FHA* shall have the meaning set forth in the Introduction.

*Noteholder Litigation* means that certain proceeding pending before the Bankruptcy Court captioned *Orion HealthCorp, Inc., et al. v. Capita IRG Trustees (Nominees) Limited, et al. (In re Orion HealthCorp, Inc.)*, Adv. Pro. No. 18-08048-AST.

*NYNM Acquisition* shall have the meaning set forth in the Introduction.

*NYNM Management* shall have the meaning set forth in the Introduction.

*NYNM Petition Date* means July 5, 2018.

*Orion* shall have the meaning set forth in the Introduction.

*Other Priority Claim* means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

*Other Secured Claim* means a Secured Claim other than the Secured Tax Claims and the Allowed Secured Lender Claim.

*Parmar Litigation* means that certain proceeding pending before the Bankruptcy Court captioned *Orion HealthCorp, Inc., et al. v. Parmjit Singh Parmar, et al. (In re Orion HealthCorp., Inc.)*, Adv. Pro. No. 18-08053-AST.

*Person* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

*Petition Date* means March 16, 2018.

*Phoenix Health* shall have the meaning set forth in the Introduction.

*Physicians Practice Plus* shall have the meaning set forth in the Introduction.

*Physicians Practice Plus Holdings* shall have the meaning set forth in the Introduction.

*Plan* shall have the meaning set forth in the Introduction.

EHREN-WALIA 003418

*Plan Supplement* means the compilation of documents and forms of documents, schedules, and exhibits to this Plan as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

*Prepetition Credit Agreement* means that certain Credit Agreement, dated as of January 30, 2017, among the Debtors, certain non-Debtor affiliates, the Administrative Agent and the Secured Lenders.

*Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

*Priority Tax Claim* means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

*Pro Rata* means the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Allowed Claims in such Class or Classes, unless the Plan otherwise provides.

*Professionals* means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 363 and 1103.

*Proof of Claim* means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

*Rand Medical Billing* shall have the meaning set forth in the Introduction.

*Related Persons* means, with respect to any Person, such Person's successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date or NYNM Petition Date, as applicable, and any Person claiming by or through any of them.

*Released Parties* means each of: (i) the following professionals of the Debtors: DLA Piper LLP (US), FTI Consulting, Inc., Houlihan Lokey Capital, Inc., Hahn & Hessen LLP, Epiq Bankruptcy Solutions, LLC, and any Related Person to such professionals, with respect to services rendered before and after the Petition Date and NYNM Petition Date; (ii) the members of the Committee in their capacity as such and the Committee's professionals retained in these Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, including Pachulski Stang Ziehl & Jones LLP and CBIZ MHM, LLC and any Related Persons to such professionals; (iii) the Administrative Agent, the Secured Lenders, Moore & Van Allen, PLLC, Reed Smith LLP, Chapman and Cutler LLP and Carl Marks Advisors and any of Related Persons thereof, in each case solely with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession; (iv) the Liquidating Trustee, any professionals retained by the Liquidating Trustee and any Related Person to the Liquidating Trustee or such professionals, (v) the Liquidating Trust, any professionals retained by the Liquidating Trust and any Related Person to the Liquidating Trust or such professionals, (vi) the Liquidating Trust Oversight Board, the

11

EHREN-WALIA 003419

members of the Liquidating Trust Oversight Board, solely in their capacity as such, and any Related Persons to members of the Liquidating Trust Oversight Board; (vii) Robert Rosenberg, solely in his capacity as the independent board member of the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession; and (viii) Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara in their capacities as officers and managers of the Debtors and with regard to any prepetition or postpetition conduct or activity relating to the Debtors or Debtors in Possession. Any current or former Insider of any of the Debtors and any of their Related Persons, except Robert Rosenberg, Timothy J. Dragelin, Daniel S. Jones and Frank Lazzara, shall not have the benefit of the exculpation or releases granted pursuant to this Plan or the Confirmation Order.

*Releasing Parties* means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

*RMI Physician Services* shall have the meaning set forth in the Introduction.

*Robinson Brog Litigation* means that certain proceeding pending before the Bankruptcy Court captioned *Orion HealthCorp, Inc., et al. v. Robinson Brog Leinwand Greene Genovese & Gluck P.C., A. Mitchell Greene and Adam Greene (In re Orion HealthCorp., Inc.)*, Adv. Pro. No. 18-08104-AST.

*Sales* means the sale of substantially all of the Debtors' Assets pursuant to the MTBC APA and HealthTek APA, respectively.

*Schedules* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

*Secured Claim* means any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a). Secured Claim also means a Claim of a Creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a). To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

*Secured Lenders* means, collectively, Bank of America, N.A., BMO Harris Bank, N.A., Keybank National Association, Stifel Bank & Trust, and Woodforest National Bank.

*Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8).

*Section 503(b)(9) Claims* shall have the meaning set forth in Section 2.1(b).

EHREN-WALIA 003420

*Shell Debtors* shall have the meaning set forth in section 6.4.

*Standing Motion* means the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Standing, and Authority to Prosecute Certain Causes of Action on Behalf of the Debtors and Their Estates* [Docket No. 504] filed in the Chapter 11 Cases.

*Standing Motion Settlement* means the settlement between the Debtors, the Committee and the Secured Lenders regarding the Standing Motion as embodied and described in the Plan and Disclosure Statement.

*Subordinated Claims* means those Claims that have been subordinated pursuant to section 510 of the Bankruptcy Code by Final Order of the Bankruptcy Court.

*Unexpired Lease* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

*Unimpaired* means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

*United States Trustee* means the Office of the United States Trustee for Region 2.

*Vachette Business Services* shall have the meaning set forth in the Introduction.

*Vega Medical Professionals* shall have the meaning set forth in the Introduction.

*Voting Agent* means Epiq Bankruptcy Solutions, LLC.

*Voting Record Date* shall have the meaning ascribed to such term in the Disclosure Statement.

*Western Skies* shall have the meaning set forth in the Introduction.

1.2    *Interpretation, Application of Definitions and Rules of Construction.* Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan

EHREN-WALIA 003421

shall govern.  Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise required.

      1.3    ***Computation of Time***.   Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## SECTION 2.   ADMINISTRATIVE AND PRIORITY CLAIMS

      2.1    ***Administrative Expense Claims***.

      (a)    ***Treatment***.  Except as otherwise provided in Section 2.1(b) of the Plan, in Section 2.2 of the Plan regarding Accrued Professional Compensation Claims, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtors or Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Debtors, as Debtors in Possession, prior to the Effective Date, shall be paid by the Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, the budgets related to the Final DIP Order, Cash Collateral Stipulations and all other orders entered by the Bankruptcy Court related to the foregoing.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

      (b)    ***Administrative Expense Claims Bar Date***.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including but not limited to a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("***Section 503(b)(9) Claims***"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date.  Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1(a) of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

      2.2    ***Accrued Professional Compensation Claims***.  All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses

EHREN-WALIA 003422

incurred in the Debtors' Chapter 11 Cases by the date that is sixty (60) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtors or Liquidating Trustee. Any Accrued Professional Compensation Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtors, the Debtors' Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.3     ***Priority Tax Claims.***  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is ninety (90) calendar days after the Effective Date.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     ***Classified Claims Against and Interests in the Debtors.***  Except as set forth herein, all Claims against and Interests in a particular Debtor are placed in a particular Class for that Debtor.  The Debtors have not classified Administrative Expense Claims, Accrued Professional Compensation Claims or Priority Tax Claims.  In addition, the Debtors have not classified any Claims they may have against any other Debtor ("***Intercompany Claims***").  All Intercompany Claims shall be assigned to the Liquidating Trust pursuant to this Plan.

The following tables classify Claims against and Interests in each of the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 herein.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

15

EHREN-WALIA 003423

3.2    *CHT*.

The following table designates the Classes of Claims against and Interests in **CHT**, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in CHT | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.3    *Orion*.

The following table designates the Classes of Claims against and Interests in **Orion,** a direct subsidiary of CHT, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Orion | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

16

EHREN-WALIA 003424

3.4    *Northeast Medical Solutions*.

The following table designates the Classes of Claims against and Interests in **Northeast Medical Solutions**, a direct subsidiary of NEMS Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Northeast Medical Solutions | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.5    *NEMS West Virginia*.

The following table designates the Classes of Claims against and Interests in **NEMS West Virginia**, a direct subsidiary of NEMS Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in NEMS West Virginia | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

17

EHREN-WALIA 003425

3.6    *Physicians Practice Plus*.

The following table designates the Classes of Claims against and Interests in **Physicians Practice Plus**, a direct subsidiary of Physicians Practice Plus Holdings, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Physicians Practice Plus | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.7    *Medical Billing Services*.

The following table designates the Classes of Claims against and Interests in **Medical Billing Services**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Medical Billing Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

EHREN-WALIA 003426

### 3.8   *Rand Medical Billing*.

The following table designates the Classes of Claims against and Interests in **Rand Medical Billing**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Rand Medical Billing | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

### 3.9   *RMI Physician Services*.

The following table designates the Classes of Claims against and Interests in **RMI Physician Services**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in RMI Physician Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

EHREN-WALIA 003427

### 3.10   *Western Skies Practice Management*.

The following table designates the Classes of Claims against and Interests in **Western Skies Practice Management**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Western Skies Practice Management | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

### 3.11   *Integrated Physician Solutions*.

The following table designates the Classes of Claims against and Interests in **Integrated Physician Solutions**, a direct subsidiary of Orion, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Integrated Physician Solutions | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

EHREN-WALIA 003428

3.12    *Northstar First Health*.

The following table designates the Classes of Claims against and Interests in **Northstar First Health**, a direct subsidiary of Northstar FHA, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Northstar First Health | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

3.13    *Vachette Business Services*.

The following table designates the Classes of Claims against and Interests in **Vachette Business Services**, a direct subsidiary of Northstar First Health, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Vachette Business Services | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

EHREN-WALIA 003429

### 3.14    *Allegiance Consulting Associates*.

The following table designates the Classes of Claims against and Interests in **Allegiance Consulting Associates**, a direct subsidiary of Vega Medical Professionals, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Allegiance Consulting Associates | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

### 3.15    *Allegiance Billing & Consulting*.

The following table designates the Classes of Claims against and Interests in **Allegiance Billing & Consulting**, a direct subsidiary of Vega Medical Professionals and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in Allegiance Billing & Consulting | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

EHREN-WALIA 003430

3.16    *NYNM Management.*

The following table designates the Classes of Claims against and Interests in **NYNM Management**, a direct subsidiary of NYNM Acquisition, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|-------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Allowed Secured Lender Claim | Impaired | Yes | TBD |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Subordinated Claims | Impaired | Yes | TBD |
| 7 | Interests in NYNM Management | Impaired | No (deemed to reject) unless the Interests are held by another Debtor in which case such other Debtor shall, by proposing this Plan, be deemed to accept | 0% |

## SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS

4.1    *General.*  Pursuant to the Standing Motion Settlement described in the Disclosure Statement, all Assets of each of the Debtors and all Assigned Causes of Action shall be assigned to the Liquidating Trust.  Subject to the Liquidating Trust Agreement, the Liquidating Trustee shall make Distributions from the Liquidating Trust Distributable Cash to Holders of Allowed Claims as follows:

a.    ***Other Priority Claims (Class 1 against any or all Debtors).***  This Class consists of all Allowed Other Priority Claims against any of the Debtors that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

b.    ***Secured Tax Claims (Class 2 against any or all Debtors).***  This Class consists of all Allowed Secured Tax Claims against any of the Debtors that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Each Holder of an Allowed

EHREN-WALIA 003431

Secured Tax Claim against any of the Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidating Trustee and the Holder of the Secured Tax Claim. The applicable Debtor and the Liquidating Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

    c. ***Allowed Secured Lender Claim (Class 3 against any or all Debtors)***. This Class consists of the Secured Lenders' Allowed Secured Lender Claim, which shall be deemed Allowed pursuant to this Plan in the amount of Fifty Million Dollars ($50,000,000.00), against each of the Debtors, which amount includes (i) unpaid principal and accrued but unpaid interest owed under the Prepetition Credit Agreement as of the Petition Date and NYNM Petition Date; and (ii) any post-petition adequate protection claims under section 507 of the Bankruptcy Code, the Final DIP Order, the Cash Collateral Stipulations or otherwise. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Allowed Secured Lender Claim against any of the Debtors, the Secured Lenders will receive (i) the Net Sale Proceeds and (ii) all Distributions from the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement until such time as the Secured Lenders' Allowed Secured Lender Claim and all interest accruing thereon has been paid in full. Interest shall accrue on the then outstanding balance of the Allowed Secured Lender Claim at a per annum floating rate equal to the prime rate of Bank of America, N.A. publicly announced from time to time plus 2.00%, with a 2.00% floor and a 6.00% cap. Upon and subject to the occurrence of the Effective Date, the Secured Lenders shall, and by their acceptance of, and by operation of, this Plan, transfer and assign to the Liquidating Trust any and all Causes of Action they may have against any Person who is not a Debtor, related directly or indirectly to the Debtors and their Estates, whether arising before or after the Petition Date. The Debtors shall not be obligated to pay the fees and expenses incurred on or after the Effective Date of any Professionals retained by the Administrative Agent and Secured Lenders; *provided, however*, the Administrative Agent and the Secured Lenders shall be entitled to receive and retain Professional Fees and expenses to the extent incurred prior to the Effective Date and permitted to be paid pursuant to the Final DIP Order or any Cash Collateral Stipulations entered from time to time in the Chapter 11 Cases. Upon the unanimous acceptance of the Secured Lenders to this Plan and the confirmation thereof, the Secured Lenders consent to the treatment of their Allowed Secured Lender Claim and Allowed Secured Lender Deficiency Claim as provided in this Plan. Upon the Effective Date by operation of the Plan, the rights (other than with respect to the Allowed Secured Lender Claim and the Allowed Secured Lender Deficiency Claim) and Causes of Action of each accepting Secured Lender and/or the Administrative Agent against any Person arising out of or on account of the Prepetition Loans (as defined in the Final DIP Order) shall be assigned to the Liquidating Trust and shall be deemed Assigned Causes of Action pursuant to this Plan. The Assigned Causes of Action shall accrue to the benefit of the Liquidating Trust and the Liquidating Trustee shall have sole and exclusive authority to administer, pursue, litigate, settle or abandon any Assigned Causes of Action subject only to the terms of this Plan and the Liquidating Trust Agreement. The Secured Lenders and\or the Administrative Agent shall undertake such actions and execute such documents

EHREN-WALIA 003432

as necessary to memorialize, effectuate or enforce the assignment of any Assigned Causes of Action.

        d.     **_Other Secured Claims (Class 4 against any or all Debtors)_**.  This Class consists of the Other Secured Claims against any of the Debtors if any such Claims exist as of the Effective Date.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Allowed Other Secured Claims against any of the Debtors, the Holders of Allowed Other Secured Claims against any of the Debtors will receive, on the Effective Date or as soon as practicable thereafter, the Collateral that secures their Claims.

        e.     **_General Unsecured Claims (Class 5 against any or all Debtors)_**. This Class consists of (i) the Secured Lenders' Allowed Secured Lender Deficiency Claim against each of the Debtors, which shall be deemed Allowed pursuant to this Plan in the amount of One Hundred and Seven Million Six Hundred Twelve Thousand Three Hundred Forty-Two Dollars and Seventy Four Cents ($107,612,342.74); and (ii) all Allowed General Unsecured Claims against each of the Debtors. Except to the extent the Secured Lenders on account of their Allowed Secured Lender Deficiency Claim or a Holder of an Allowed General Unsecured Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed Secured Lender Deficiency Claim or Allowed General Unsecured Claims against each of the Debtors, the Secured Lenders and each Holder of an Allowed General Unsecured Claim against any of the Debtors will receive their Pro Rata share of the Liquidating Trust Distributable Cash as soon as practicable as determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement; _provided, however_, that each Holder of an Allowed General Unsecured Claim against more than one Debtor shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against which the Claim is asserted.  The Debtors and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim (other than the Allowed Secured Lender Deficiency Claim), whether or not objected to prior to the Effective Date.

        f.     **_Subordinated Claims (Class 6 against any or all Debtors)_**.  This Class consists of the Allowed Subordinated Claims against any of the Debtors, which have been subordinated to the Allowed Secured Lender Deficiency Claim and Allowed General Unsecured Claims.  Except to the extent that a Holder of an Allowed Subordinated Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Subordinated Claim, each Holder of an Allowed Subordinated Claim will receive its Pro Rata share of the Excess Liquidating Trust Distributable Cash as soon as practicable as determined by the Liquidating Trustee. The Debtors and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Subordinated Claim, whether or not objected to prior to the Effective Date.

        g.     **_Interests (Class 7 in any or all Debtors)_**.  This Class consists of any Holder's Interest in the Debtors, which will be cancelled as of the Effective Date.  However, the Interests in any of the Debtors held by any other Debtor shall be held as Assets in the Liquidating Trust, unless abandoned by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

EHREN-WALIA 003433

## SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN

5.1    *Holders of Claims and Interests Entitled to Vote*.  Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan.  Each Holder of an Allowed Claim in such an Impaired Class shall receive a Ballot and may cast a vote to accept or reject this Plan.  The following Classes of each of the Debtors are Impaired and entitled to vote:

| Debtor | Impaired Classes Entitled to Vote |
|---|---|
| CHT | 3, 4, 5 and 6 |
| Orion | 3, 4, 5 and 6 |
| Northeast Medical Solutions | 3, 4, 5 and 6 |
| NEMS West Virginia | 3, 4, 5 and 6 |
| Physicians Practice Plus | 3, 4, 5 and 6 |
| Medical Billing Services | 3, 4, 5 and 6 |
| Rand Medical Billing | 3, 4, 5 and 6 |
| RMI Physicians Services | 3, 4, 5 and 6 |
| Western Skies Practice Management | 3, 4, 5 and 6 |
| Integrated Physician Solutions | 3, 4, 5 and 6 |
| Northstar First Health | 3, 4, 5 and 6 |
| Vachette Business Services | 3, 4, 5 and 6 |
| Allegiance Consulting Associates | 3, 4, 5 and 6 |
| Allegiance Billing & Consulting | 3, 4, 5 and 6 |
| NYNM Management | 3, 4, 5 and 6 |

5.2    *Classes Deemed to Reject*.  The following Classes of each of the Debtors are Impaired, are not entitled to a Distribution and are deemed to reject the Plan:

| Debtor | Impaired Class Deemed to Reject Unless held by a Debtor |
|---|---|
| CHT | 7 |
| Orion | 7 |
| Northeast Medical Solutions | 7 |
| NEMS West Virginia | 7 |
| Physicians Practice Plus | 7 |
| Medical Billing Services | 7 |
| Rand Medical Billing | 7 |
| RMI Physicians Services | 7 |
| Western Skies Practice Management | 7 |
| Integrated Physician Solutions | 7 |
| Northstar First Health | 7 |
| Vachette Business Services | 7 |
| Allegiance Consulting Associates | 7 |
| Allegiance Billing & Consulting | 7 |
| NYNM Management | 7 |

EHREN-WALIA 003434

5.3    *Classes Deemed to Accept*.    The following Classes of the Debtors are Unimpaired, not entitled to vote to accept or reject the Plan and are deemed to accept the Plan:

| Debtor | Unimpaired Classes |
|---|---|
| CHT | 1 and 2 |
| Orion | 1 and 2 |
| Northeast Medical Solutions | 1 and 2 |
| NEMS West Virginia | 1 and 2 |
| Physicians Practice Plus | 1 and 2 |
| Medical Billing Services | 1 and 2 |
| Rand Medical Billing | 1 and 2 |
| RMI Physicians Services | 1 and 2 |
| Western Skies Practice Management | 1 and 2 |
| Integrated Physician Solutions | 1 and 2 |
| Northstar First Health | 1 and 2 |
| Vachette Business Services | 1 and 2 |
| Allegiance Consulting Associates | 1 and 2 |
| Allegiance Billing & Consulting | 1 and 2 |
| NYNM Management | 1 and 2 |

5.4    *Acceptance by a Class*.    A Class of Claims entitled to vote to accept or reject this Plan accepts this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that complete and return Ballots in such Class vote to accept this Plan. A Class of Interests is deemed to accept this Plan if this Plan has been accepted by Holders of at least two-thirds (2/3) of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class. Notwithstanding the foregoing, in order for any Class 3 to accept the Plan, all Holders of Claims in such Class must vote to accept the Plan.

5.5    *Cramdown Under Section 1129(b) of the Bankruptcy Code*.    If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors will request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

5.6    *Ballots*.    Each Holder of a Claim or Interest entitled to vote on this Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received.

## SECTION 6.    MEANS FOR IMPLEMENTATION

6.1    *Compromise Regarding Deemed Consolidation*.    This Plan includes, and is implemented by, a settlement under Bankruptcy Rule 9019, between and among the Debtors, the Secured Lenders and the Committee which provides for a deemed consolidation of the Debtors' Estates solely for distribution purposes. The Debtors shall retain their separate corporate identities for all other purposes.

EHREN-WALIA 003435

6.2    ***Initial Secured Lender Distribution.***   On the Effective Date, all Debtor Cash will be transferred to the Liquidating Trust and used to pay or establish a reserve for (i) Allowed Administrative Expense Claims; (ii) Allowed Accrued Professional Compensation Claims; (iii) Allowed Priority Claims; and (iv) the initial funding of the Liquidating Trust Reserve (the "***Initial Liquidating Trust Distributions***").  All Debtor Cash remaining after payment of the Initial Liquidating Trust Distributions may be distributed to the Holders of the Allowed Secured Lender Claim as a Distribution on account of such Claim upon consent of the Liquidating Trust Oversight Board pursuant to the Liquidating Trust Agreement.

6.3    ***Liquidating Trust.***

a.    ***Overview of Liquidating Trust.***   On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating any non-Cash Liquidating Trust Assets, prosecuting and resolving the Causes of Action (including any Assigned Causes of Action), objecting to all Claims (including, with respect to Claims in Class 4, objecting to any purported Liens), resolving all Disputed Claims, and effecting the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.  The Beneficiaries of the Liquidating Trust shall be the Holders of Allowed Class 3 Claims (Allowed Secured Lender Claim), Allowed Class 5 Claims (General Unsecured Claims, including the Allowed Secured Lender Deficiency Claim) and Allowed Class 6 Claims (Subordinated Claims).  On the Effective Date, by operation of the Plan, each Holder of Allowed Class 3, Class 5 and Class 6 Claims shall (i) become a Beneficiary of the Liquidating Trust, (ii) be bound by the Liquidating Trust Agreement, and (iii) receive an uncertificated beneficial interest in the Liquidating Trust.  Pursuant to the Plan, the Liquidating Trust shall contain a waterfall for Distributions by which, subject to the Liquidating Trust Reserve, Liquidating Trust Distributable Cash shall satisfy, in full and in Cash, and in order of priority: (i) first, Allowed Class 3 Claims and the interest accruing thereon pursuant to Section 4(c) of the Plan, (ii) second, Allowed Class 5 Claims (including the Allowed Secured Lender Deficiency Claim), and (iii) third, the Allowed Class 6 Claims.  All beneficial interests in the Liquidating Trust shall be subject to such priorities in Distributions.

b.    ***Appointment of Liquidating Trustee.***   On or before the Confirmation Date, the Liquidating Trustee shall be designated by mutual agreement of the Secured Lenders and the Committee, after consultation with the Debtors, and the Liquidating Trustee shall be appointed pursuant to the Confirmation Order.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights and responsibilities of the Liquidating Trustee shall be specified in and subject to the terms of the Liquidating Trust Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Liquidating Trust Assets; (ii) pay taxes and other obligations incurred by the Liquidating Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "***Liquidating Trust Professionals***") to advise and assist in the administration, prosecution and Distribution of Liquidating Trust Assets; (iv) calculate and implement Distributions of Liquidating Trust Distributable Cash and, as applicable, the Excess Liquidating Trust Distributable Cash; (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action (including the Assigned Causes of Action) vested in the Liquidating Trust;

EHREN-WALIA 003436