UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ :

In re:
                                        :   Chapter 11

ORION HEALTHCORP, INC.,[1]
                                        :   Case No. 18-71748 (AST)

                           Debtors.    :   (Jointly Administered)

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ :

HOWARD M. EHRENBERG IN HIS CAPACITY   :   Adv. Pro. No. 20-08049 (AST)
AS LIQUIDATING TRUSTEE OF ORION
HEALTHCORP, INC., ET AL.,                 :   [Filed Concurrently with Objection
                                        :   And Request To Strike the Affidavit
                          Plaintiff,    :   of Arvind Walia]

v.                                              :

                                             :

ARVIND WALIA; NIKNIM MANAGEMENT, INC.,   :

                          Defendants.    :

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ :

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
<u>DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC.</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT ON REPLY ...................................................................1

II. LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION.....................3

A. Plaintiff's Additional Statement Of Facts In Support Of The Motion Are Deemed Admitted ..........................................................................................................4

B. The Walia Affidavit and Two Exhibits Violate Numerous Federal Rules of Evidence Indicating its Unreliability and Exclusion from the Record .................................5

III. THE MOTION PRESENTED A *PRIMA FACIE* CASE OF INTENTIONAL FRAUD PURSUANT TO NYDCL §276, AS THE APA WAS PURPOSEFULLY MISSTATED AND NO EVIDENCE SUPPORTS A LEGITIMATE EXPLANATION FOR THE DIVERSION OF 2.5MM OUT OF THE ESTATE ................5

  A. Lack of a Legitimate Explanation ...............................................................6

  B. Defendant's Participation In The Scheme Or Indifference To The Truth .................8

  C. The Close Relationship Between The Parties To The Transaction ............................9

  D. Control Of The Property And Personal Benefit.........................................................10

  E. Transferor's Knowledge Of Creditor's Claims.........................................................10

IV. THE MOTION PRESENTED A *PRIMA FACIE* CASE OF INTENTIONAL FRAUD PURSUANT TO NYDCL §276 FOR THE DIVERSION OF THE SECOND TRANSFER OF $1,520,000 AS THE MIPA IS REPLETE WITH FALSE STATEMENTS IN AN EFFORT TO MAKE THE PURCHASE OF A SHELL COMPANY APPEAR LEGITIMATE.............................................................11

  A. Conclusions And Legal Opinions Are Not A Substitute For Admissible Evidence.......................................................................................................12

  B. Exhibits C & D Are Properly Stricken As Inadmissible Hearsay Lacking in Any Reliability.......................................................................................13

  C. Self-Serving Affidavits That Contradict The Underlying Facts Of Prior Testimony Are Properly Stricken On Summary Judgment .....................................13

  D. The MIPA Was Falsely Stated In An Effort To Make An Illegitimate Transaction Appear Legitimate.............................................................................15

    i. Fraudulent Intent Established Under Badges of Fraud ..............................15

ii.     Lack of a Legitimate Explanation ................................................................16

iii.    The Close Relationship Between the Parties to the Transaction .................16

iv.    Transferor's Knowledge of Creditor's Claims ...........................................16

V.    THE MOTION PRESENTED A *PRIMA FACIE* CASE OF CONSTRUCTIVE FRAUD PURSUANT TO NY DCL §273-A, AS JUDGMENT CREDITORS EXISTED BEFORE THE TRANSFERS AND THE TRANSFERS WERE MADE TO AN OFFICER AND INSIDER OF THE DEBTOR .......................................17

    A.    First Transfer: .........................................................................................17

    B.    Second Transfer ......................................................................................19

VI.    WALIA IS INDIVIDUALLY LIABLE FOR THE DEBTORS MONIES HE DIVERTED TO DEFENDANT NIKNIM AWAY FROM  LEGITIMATE CREDITORS OF THE ESTATE .............................................................................21

VII.    CONCLUSION ...................................................................................................24

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Am. Panel Tec v Hyrise, Inc.*
   31 AD3d 586, 819 N.Y.S.2d 768 (2d Dept 2006) ............................................. 20

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*
   531 F.3d 1272 (10th Cir. 2008) ................................................................ 19

*BellSouth Telecomms v. W.R. Grace & Co.*
   77 F.3d 603 (2nd Cir. 1996) ...................................................................... 5

*Berlenbach v. Bischoff*
   137 Misc. 719, 244 N.Y.S. 369 (N.Y.Sup.Ct. Spec. Term 1930) ........................... 8

*City of Almaty v. Ablyazov*
   2019 U.S. Dist. LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019) ................................ 21

*Deutsche Financial Services Corp. v. Osborne (In re Osborne)*
   257 B.R. 14 (Bankr. C.D. Cal. 2000) ......................................................... 14

*Devon Mobile Communs. Liquidating Trust v. Adelphia Communs. Corp.*
*In re Adelphia Communs. Corp.)*
   No. 02-41729 (CGM), 2006 Bankr. LEXIS 4600, 2006 WL 687153, at *11
   (Bankr. S.D.N.Y. Mar. 6, 2006) ................................................................ 15

*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*
   66 AD3d 122, 884 NYS2d 94 (2009) .......................................................... 21

*Eberhard v. Marcu*
   530 F.3d 122 (2nd Cir. 2008) ..................................................................... 7

*Evans v. Port Authority of N.Y. & N.J.*
   192 F. Supp. 2d 247 (S.D.N.Y. 2002) ........................................................ 13

*Fannie Mae v. Olympia Mortg. Corp.*
   792 F. Supp. 2d 645 (Bankr. E.D.N.Y. 2011) ......................................... 7, 8, 16

*Farm Stores, Inc. v. Sch. Feeding Corp.*
   102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dept 1984) ........................................ 18

*Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.)*
   2008 Bankr. LEXIS 946, *26 (Bankr. N.M. 2008) ......................................... 14

*HBE Leasing Corp. v. Frank*
   48 F.3d 623 (2d Cir. 1995) ...................................................................... 18

*Hollander v. American Cyanamid Co.*
   172 F.3d 192 (2nd Cir. 1999) ................................................................... 12

*In re Diorio*
   407 F.2d 1330 (2d Cir. 1969) .................................................................... 9

*In re Leneve*
   341 B.R. 53 (Bankr. S.D. Fla. 2006) .......................................................... 21

*In re Vebeliunas*
   332 F.3d 85 (2d Cir. 2003) ...................................................................... 23

*International Aircraft Trading Co. v. Manufacturers Trust Co.*
   297 N.Y. 285, 79 N.E.2d 249 (1948) ......................................................... 22

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*
    263 B.R. 406 (S.D.N.Y. 2001) ........................................................................19, 20

*Jacobs v. D'D'Alessandro (In re Dewey & Leboeuf LLP)*
    2014 Bankr. LEXIS 4051, \*17) ..........................................................................18

*Jaramillo v. Weverhaeuser Co.*
    536 F.3d 140 (2d Cir. 2008) ................................................................................3

*Kiobel v. Royal Dutch Petroleum*
    621 F.3d 111 (2d Cir. 2010) ..............................................................................21

*Lyman Commerce Solutions, Inc. v. Lung*
    2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015) ..........................................20

*Machado v. A. Canterpass*, LLC
    115 A.D.3d 652, 981 N.Y.S.2d 758 (2d Dept. 2014)............................................7

*Mack v. United States*
    814 F.2d 120 (2d Cir. 1987) ..............................................................................13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ....................................22

*Mellon Bank, N.A. v. Metro Communications, Inc.*
    945 F.2d 635 (3rd Cir. 1991) ..............................................................................19

*Morris v. State Dep't of Taxation & Fin.*
    82 N.Y.2d 135 (1993) ........................................................................................22

*Music Royalty Consulting, Inc. v. Reservoir Media Mgmt.*
    598 F. Supp. 3d 158 (S.D.N.Y. 2022)..................................................................4

*National Labor Relations Bd. v Greater Kan. City Roofing*
    2 F.3d 1047 (10th Cir. 1993) ..............................................................................22

*Nora Bevs., Inc. v. Perrier Group of Am. Inc.*
    164 F.3d 736 (2d Cir. 1998) ..............................................................................12

*P.A. Bldg. Co. v Silverman*
    298 AD2d 327, 750 N.Y.S.2d 13 (1st Dept 2002) ..............................................20

*Prabir v. Bukhara Indian Cuisine, Inc.*
    2018 U.S. Dist. LEXIS 94563, \*9 (S.D.N.Y. 2018) ............................................8

*Priestley v. Panmedix Inc.*
    18 F. Supp. 3d 486 (S.D.N.Y. 2014) ..................................................................17

*Reynolds v. Am. Airlines, Inc.*
    2017 U.S. Dist. LEXIS 198949, \*4-5 (Bankr. E.D.N.Y. 2017) ............................13

*Salim v. VW Credit, Inc.*
    577 B.R. 615 (E.D.N.Y. 2017)............................................................................8

*SEC v. Espuelas*
    905 F. Supp. 2d 507 (S.D.N.Y. 2012)..................................................................4

*Seymour v. Hull & Moreland Eng'g*
    605 F.2d 1105 (9th Cir. 1979) ............................................................................22

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*
    403 F.3d 43 (2d Cir. 2005) ................................................................................18

*Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*
    435 B.R. 866 (Bankr. S.D.N.Y. 2010) 2010 Bankr. LEXIS 2469, *24-25,
    53 Bankr. Ct. Dec. 148 ................................................................................................16

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*
    925 F.2d 566 (2nd Cir. 1991) .....................................................................................13

*Tronox Inc. v. Kerr McGee Corp., (In re Tronox Inc.)*
    503 B.R. 239 (S.D.N.Y, 2013) .....................................................................................6

*U.S. v. Spencer*
    2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7.....................................10

*United States v. Evseroff*
    270 Fed. Appx. 75 (2nd Cir. 2008) .............................................................................23

*United States v. Garcia,*
    291 F.3d 127 (2nd Cir. 2002) .......................................................................................5

*United States v. Maciejewski*
    70 F. Supp. 2d 129 (Bankr. N.D.N.Y. 1999) ............................................................15

*United States v. VanDiviner*
    822 F.2d 960 (10th Cir. 1987).....................................................................................22

*William Iselin & Co., Inc. v. Boardwalk Regency Corp.*
    703 F. Supp. 1084 (S.D.N.Y. 1989).............................................................................15

*Williams v. Frank Martz Coach Co.*
    2014 U.S. Dist. LEXIS 66411, *11-*15 (E.D.N.Y. 2104).........................................5

*Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*
    2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259...........................7, 9, 10, 16

*Wright v. Undercover Officer*
    2018 U.S. Dist. LEXIS 143483, *9 (S.D.N.Y. 2018) ...............................................4

## Statutes

11 U.S.C. §101 ..........................................................................................................19

28 U.S.C. §1746..........................................................................................................5

## Other Authorities

13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms
    §§85-29 & 85-30 (2002) .............................................................................................8

N.Y. Debt & Cred. Law §272 ................................................................................2, 23

N.Y. Debt & Cred. Law §273 ..............................................................2, 17, 18, 19, 20

N.Y. Debt & Credit Law §276..............................................................................7, 10, 15

N.Y. Debt & Cred. Law §278 ...................................................................................1, 8

## Rules

Federal Practice & Procedure §2738 (1983) ............................................................................... 4

Federal Rules of Evidence 1101 ............................................................................................... 13

Federal Rules of Evidence 801 ................................................................................................ 13

Federal Rules of Evidence 803 ................................................................................................ 13

Joint Rules of Civil Procedure S.D.N.Y./E.D.N.Y. 56 ........................................................... 4, 5, 12

## Rules

Federal Practice & Procedure §2738 (1983)......................................................................4

Federal Rules of Evidence 1101 ...................................................................................13

Federal Rules of Evidence 801 .....................................................................................13

Federal Rules of Evidence 803 .....................................................................................13

Joint Rules of Civil Procedure S.D.N.Y./E.D.N.Y. 56 ..........................................4, 5, 12

COMES NOW, Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. (the "Plaintiff" or the "Liquidating Trustee"), for the estates of the above-captioned debtors to the Opposition of Defendants (the "Opposition") filed by Defendants Arvind Walia And Niknim Management, Inc. (the "Defendants") and submits his *Reply Brief in support of Plaintiff's Motion For Summary Judgment Or In The Alternative, Summary Adjudication* [Dkt. No. 53][2]

## I.

## <u>SUMMARY OF ARGUMENT ON REPLY</u>

1.      The Opposition gets it wrong.  Once the Trustee carried his initial burden through the submission of 97 uncontroverted facts evidencing that the Debtors' funds were diverted out of the estate to an officer of the Debtors for no consideration, the burden shifted to Defendant to come forward with admissible evidence of "fair consideration."  Instead, the Opposition comes forward with two documents, Exhibits C & D, and a 17 page affidavit from Defendant supported only by legal arguments and conclusions.  The 17 page affidavit (the "<u>Walia Affidavit</u>") is classic hearsay, complete with self-serving arguments and lacking foundation.  The Walia Affidavit is not signed under penalty of perjury and the two exhibits, which appear to be summaries, are submitted without foundation or authentication.  The law in the Second Circuit is clear.  As the gatekeeper, the Court properly excludes inadmissible evidence in violation of the Federal Rules of Evidence as it is deemed "unreliable".  Defendant offers no admissible evidence for a jury to make a finding of value, let alone "reasonably equivalent", given to the Debtors.

2.      Where a transferee participated or acquiesced in the fraudulent design of a transfer, either knowingly or recklessly, "actual fraudulent intent" is satisfied under N.Y. Cred. & Debt Law ("<u>NYDCL</u>") §278(2).  Here it is not disputed that 2.5MM was transferred to Defendant (the "<u>First Transfer</u>") based on <u>a single email</u> dated April 15, 2016.  On the <u>same day,</u> 2.5MM was wired out of the estate for the stated reason, "I am willing to give you 3.5MM in

---

[2] Defined terms are given the same meaning as utilized in the Motion (Dk No. 53 (hereinafter "Dkt. No. _")).

return for you to allow me to structure it properly internally…"  The Opposition responds that the Portack Asset Purchase Agreement ("APA") created a debt and the First Transfer was in satisfaction of a legitimate "antecedent debt" resolving escrowed funds and indemnity claims. Yet, the Opposition submits no admissible evidence for the finding of an establishment of an escrow, deposit of monies into escrow, indemnity claims, or reconciliation of indemnity rights. The only evidence which Defendant references is the stated purchase price of the APA which Defendant admits was intentionally misstated.[3]  Similarly, it is an undisputed fact that all sums owed to Defendant were paid at closing.  (Joint of Statement of Uncontroverted Facts ("JSOF") 46) and no antecedent debt for 2.5MM was recorded, or satisfied, on the Debtor's books and records.  The claim of an "antecedent debt" is entirely unsupported by admissible evidence. However, the argument fails for an even more fundamental reason.  Even assuming for a moment the APA memorialized a legitimate "antecedent debt", it would indisputably be paid to an Officer of the Debtors rather than existing judgment creditors.  Pursuant to NYDCL §272 and 273-a, transfers to Officers in satisfaction of an antecedent debt are constructively fraudulent as a matter of law as they are not made in "good faith".

3.      The argument in the Opposition to justify payment of 1.52MM (the "Second Transfer") is even more dependent on unsubstantiated speculation and conjecture.  The undisputed facts evidence a non-debtor third-party, PHNMS, received "membership interests" in, Objecttech Holdings LLC, a company with no stated revenue.  The operative document reflecting the acquisition, the Membership Purchase Agreement ("MIPA"), included no statement of assets and no reference to software.  (JSOF 68)  In response, the Opposition concedes Objecttech had no revenue, was a merely a shell, and the Debtor was not a party to the MIPA.  However, as the story goes, Objecttech owned AllRad, AllRad owned software, the software was conveyed to the Debtor, and such software was "reasonably equivalent" to what the Debtor paid.  The argument is made without the benefit of a single piece of admissible evidence. The unsworn Walia Affidavit is not evidence.  Tax returns or financial documents supporting the

---

[3] Defendant admits Porteck had a stated value of $1,824,000 when the Debtor paid $7,000,000, but submits no evidence of EBITDA or any other valuation method to support his claim of an antecedent debt. (JSOF 40-45)

operations of Objecttech, AllRad, the existence of software, its ownership or its value were requested but not produced by Defendant during discovery.  The failure to produce such records creates an adverse inference that such documents would not support the argument in the Walia Affidavit.  The failure to rebut the undisputed statements of fact by referencing materials in the record demonstrates Defendant has no evidence.

4.      Lastly, the Opposition does not rebut the evidence submitted in the Motion establishing that Defendant NIKNIM was a mere instrument, dominated by its sole officer, director and shareholder, Defendant Walia.  Defendant concedes that NIKNIM followed no corporate formalities, was inadequately capitalized, operated out of Defendant's house, and was a mere instrument for Walia to pay his personal expenses.  However, the Opposition is incorrect in asserting that *fraud per se* is the legal test to pierce the corporate veil.  Piecing the corporate veil is invoked to prevent fraud or to achieve equity, and either test is satisfied here.  NYDCL presumes transfers without Fair Consideration or made to officers and insiders are fraudulent *per se*.  Defendant perpetrated a fraud on judgment creditors of the estate when, rather than paying their legitimate debts, the Debtors improperly paid officers and insiders.  To employ a legal fiction that Defendants NIKNIM and Walia are not one and the same on these facts would perpetrate a fraud on creditors.

5.      The Motion pierces the pleadings to demonstrate that arguments made by Defendant have no foundation in fact and do not justify a costly trial.

## II.

## LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION

6.      Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)  The purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact.  *SEC v. Espuelas*, 905 F. Supp. 2d 507, 520-521 (S.D.N.Y. 2012)  Ultimate or

conclusory facts and conclusions of law cannot be utilized on a summary judgment motion." *Id.* citing to 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §2738, at 486, 489 (1983).  Such conclusory statements are insufficient to raise a triable issue of material fact and properly disregarded. *Id.  Music Royalty Consulting, Inc. v. Reservoir Media Mgmt.*, 598 F. Supp. 3d 158, 174 (S.D.N.Y. 2022) (only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment). *Wright v. Undercover Officer*, 2018 U.S. Dist. LEXIS 143483, *9 (S.D.N.Y. 2018)

7.      Seventy-six (76) Joint Statements of Facts ("JSOF") and twenty-one 21 unopposed Additional Statement of Facts ("ASOF") (See Dkt. No. 54) document over 4MM diverted out of the estate to an officer of the Debtors while judgment creditors went unsatisfied.

**A.      Plaintiff's Additional Statement Of Facts In Support Of The Motion Are Deemed Admitted**

8.      Local Civil Rule 56.1. Statements of Material Facts on Motion for Summary Judgment, sets forth in pertinent part:

> (c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

> (d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

[See Rule 56.1 of the Joint Rules for Civil Proceedings for the United States District Courts for the Southern and Eastern Districts of New York].

9.      Additional Statement of Facts 77-97 (Dkt. No. 54) were not opposed and are properly admitted as undisputed evidence.  The Opposition submitted no statement of material facts pursuant to Local Civil Rule 56(d).

B.      **The Walia Affidavit and Two Exhibits Violate Numerous Federal Rules of Evidence Indicating its Unreliability and Exclusion from the Record**

10.      The party opposing a motion summary judgment must set forth "concrete particulars" rather than an affiant's self-serving belief. *BellSouth Telecomms v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2nd Cir. 1996). It is not sufficient to merely assert a conclusion without supporting with facts. *Id.* A witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. "When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of <u>Rule 701</u> . . . because there is no way for the court to assess whether it is **rationally based** on the **witness's** perceptions . . . "*United States v. Garcia*, 291 F.3d 127, 140 (2nd Cir. 2002), citing to *Rea*, 958 F.2d at 1216. Similarly, the Second Circuit has made clear that 28 U.S.C. §1746 demands that to be admissible as evidence, an affidavit must be executed under the penalty or perjury as to the truth of the matters. *Williams v. Frank Martz Coach Co.*, 2014 U.S. Dist. LEXIS 66411, *11-*15 (E.D.N.Y. 2104)

11.      The Walia Affidavit is not executed under penalty of perjury. The Affidavit violates the most fundamental rules governing the admissibility of evidence. Rather than submitting admissible evidence, the Walia Affidavit offers the Court unreliable hearsay, legal conclusions, and self-serving statements not grounded on any objective identifiable fact. Plaintiff's *Objection and Request to Strike the Affidavit of Arvind Walia,* filed concurrently herewith, addresses each inadmissible statement which the Opposition claims creates a material issue of fact. The Opposition is submitted with no admissible evidence.

### III.

**THE MOTION PRESENTED A *PRIMA FACIE* CASE OF INTENTIONAL FRAUD PURSUANT TO NYDCL §276,  AS THE APA WAS PURPOSEFULLY MISSTATED AND NO EVIDENCE SUPPORTS A LEGITIMATE EXPLANATION FOR THE DIVERSION OF 2.5MM OUT OF THE ESTATE**

12.      The Motion carried its initial burden by stating material facts that confirm the diversion of 2.5MM of the Debtor's funds on April 15, 2016 (JSOF 6) to the CEO of Orion by the CEO of CHT (JSOF 4) for a transaction in which no consideration was exchanged on April

15, 2016.  (ASOF 90) It is undisputed that no antecedent debt existed or was satisfied on the books and records of the Debtor in either 2015 or 2016. (JSOF 88, 89)  The Motion establishes that Defendant sold his company (Porteck) to the Debtor in March 2015 with a stated value of $1,824,000 (JSOF 40-45) and in exchange received 7MM.  (JSOF 39)  It is also not disputed that Parmar and Defendant represented to the brokers before closing that the purchase price was 7.8MM (JSOF 30) and then one week later signed an APA with a purchase price of 12.8MM. (JSOF 33, 35) The <u>misstated purchase price</u> in the APA is an undisputed fact and allowed Parmar to divert 3MM as paid to FUH, his solely controlled company.  (ASOF 85-87)

13.     The Motion established Defendant knew of the scheme and was fine with it as long as he got his promised payout.  (JSOF 36, 37). One year later, the undisputed facts evidence Parmar indicated he would give Defendant, the CEO of Orion, 3.5MM, in return for the Defendant allowing his fellow executive to structure it internally as he desired.  On that same day, the Debtor wired 2.5MM to Defendant. (ASOF 90)

14.     The Opposition makes a litany of statements to claim the First Transfer was business as usual: there is nothing wrong with "grossing up" a purchase price to include "related transaction fees" (Walia Aff'd., ¶63), Defendant was not complicit in Parmar's scheme and had no knowledge it was inappropriate (Walia Aff'd., ¶39), the purchase price of Porteck and what was purchased is irrelevant (Walia Aff'd., ¶40), and the 2.5MM First Transfer was a legitimate debt owed pursuant to Section 1.6(e) of the APA (Walia Aff'd., ¶40).  No evidence, let alone admissible evidence, is submitted in support of the various arguments.  The explanations do not even find support in the APA.  It is an undisputed fact that no escrow was established and no funds deposited. (JSOF 48, 49)  The general reference to the APA purchase price is not credible or probative since it was admittedly false.  The badges of fraud evidence the First Transfer was made with fraudulent intent, viz., with the purpose of placing a debtor's assets out of the reach of creditors.  *See Tronox Inc. v. Kerr McGee Corp., (In re Tronox Inc.),* 503 B.R. 239, 282-283 (S.D.N.Y, 2013)

A.     <u>Lack of a Legitimate Explanation</u>

15.     Early New York decisions made clear that "[e]very sale or other transfer of goods

made with intent to defraud creditors, though valid as between the parties to the transaction, is utterly void as to creditors. *Eberhard v. Marcu*, 530 F.3d 122, 130 (2nd Cir. 2008)  Where Defendants' fail to proffer a legitimate explanation for the conveyance, defendants' actual fraudulent intent can readily be inferable on the facts, and the plaintiff is entitled to summary judgment setting those conveyances aside under NYDCL §276. *Machado v. A. Canterpass*, LLC, 115 A.D.3d 652, 654, 981 N.Y.S.2d 758 (2d Dept. 2014).  *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259 (On summary judgment, upon "defendants' failure to proffer any legitimate explanation for the conveyances, the defendants' actual fraudulent intent is readily inferable and the plaintiff is entitled to a judgment setting those conveyances aside under [DCL § 276])"

16.     In *Fannie Mae v. Olympia Mortg. Corp.*, 792 F. Supp. 2d 645, 653-654 (Bankr. E.D.N.Y. 2011), summary judgment was awarded on the NYDCL §276 claims where defendant's proffered explanation for the receiving the transfers could not be established in the opposition. *Id*. at 653 (The evidence did not support defendants' explanation the transfers were either part of defendant's compensation or that they were profits for his ownership interest.)  *Id*. (The facts established a scheme, not in the usual course of business, to pay relatives rather than pay its creditors demonstrating multiple badges of the existence of fraud). *Id*. at 654 (And, if, as the defendant argues, these transfers were part of his compensation, "the amounts of the transfers each year would have been, but were not, included on defendant's forms, which the debtor prepared".)  *Id*.

17.     Here, the proffered explanation for receiving the 2.5MM conveyance fails under its own weight.  First, the Opposition claims the "the purchase price of the Porteck assets is irrelevant" (Walia Aff'd., ¶40).  Next, Defendant claims he was paid 2.5MM from an escrow established for indemnity obligations however, no escrow or monies were set aside in escrow. (JSOF 48-49) Similarly, the Opposition comes forth with no admissible evidence of a discussion of escrow indemnity rights or the payment of 2.5MM on account of indemnity rights.  The argument is made out of thin air.  The undisputed facts confirm the 2.5MM payment was not

made in the ordinary course of business as it was made without supporting documentation between executives and on the same day as their email exchange. *Prabir v. Bukhara Indian Cuisine, Inc*., 2018 U.S. Dist. LEXIS 94563, *9 (S.D.N.Y. 2018) (Other badges of fraud includes whether it was a secret and hasty transfer not in the usual course of business). As stated in *Fannie Mae v. Olympia Mortg. Corp., supra, 65,* if the transaction was as defendant contends, it would have been properly documented in the Debtor's records. *Id*. at 654. Here, the same holds true. If the liability existed based on a contingent obligation owed by the Debtor as claimed by Defendant, it would have been documented as a contingent liability. (ASOF 88, 89) Two senior executives paying themselves millions of dollars based on an email for unrecorded transactions is outside the ordinary course of business. Three badges of fraud; lack of legitimate explanation, hastily performed, and outside the ordinary course of business, are satisfied.

**B.**    **Defendant's Participation In The Scheme Or Indifference To The Truth**

18.    The Motion, at ¶52 correctly cites the law that false statements, motive, opportunity to commit fraud, or reckless indifference to the truth, support a finding of fraud. "Actual fraudulent intent" under NYDCL §278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design." 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff*, 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930).

19.    Defendant contends that he did not participate or was not complicit in Parmar's scheme to defraud. (Walia Aff'd., ¶39) According to Defendant, Parmar "grossing up a purchase price" to include "related transaction fees" to benefit FUH was not false or a misrepresentation. (Walia Aff'd., ¶63) However, the Opposition cites to no document or evidence to support a legitimate role of FUH in the transaction. None of the documents before the Court evidence a role played by FUH. The assertion is merely argument. *See Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017) (The nonmoving party cannot avoid summary judgment by "rely[ing] on conclusory allegations or unsubstantiated speculation," but must offer

"hard evidence showing that its version of the events is not wholly fanciful.") The admissible evidence before the Court indicates that the broker, Abstract Business Advisors, was paid $192,500, for its involvement in the Porteck transaction. Yet, 2MM or 3MM for transaction fees is appropriate? (See Aff'd. of E. Wong, Dkt. No. 56-5, Letter dated 2/20/15, Ex. E) Contrary to the position now claimed by the Walia Affidavit as to the "reasonableness "of the payment to FUH, Walia testified in his deposition that he paid no attention to what Parmar was doing. (JSOF 37)

> "Q. So when you were negotiating with Mr. Parmar or Orion, was the purchase price supposed to be 10.8 million?
>
> A. Correct.
>
> Q. and when did it change to 12.8 million?
>
> A. At some point Mr. Parmar stated that there are fees to close this deal that have to be included in the purchase price. I said as long as my share of the purchase price doesn't change, it doesn't concern me."

(See Aff'd. of J. Nolan, Ex. 15, Deposition of Walia, p. 134, lns. 9-19)

20.    At a minimum, the statements evidences Defendant's reckless indifference to the truth. See In re Kaiser, 722 F.2d 1574, 1578 (2d Cir. 1983) citing to *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969) ("reckless indifference to the truth . . . is the equivalent of fraud"[4]) Defendant did not have to go along with Parmar's scheme.

## C.    The Close Relationship Between The Parties To The Transaction

21.    The badges of fraud include circumstances such as 'a close relationship between the parties to the alleged fraudulent transaction. *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259. The Opposition does not dispute both Parmar and Walia were senior executive officers of the Debtors at the time of the Transfers. Parmar was the CEO of CHT. Walia was the CTO of CHT, and the CEO of the Debtor, Orion. (JSOF 4) The two knew each other prior to 2015. (JSOF 25) In fact, Walia confirms his close relationship with the Debtors in the Opposition with statements such as: "as

---

[4] Ft note 4: "Appellant's attempts to justify his misconduct by the actions of others and his own inadvertence are unpersuasive. *See In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969) (per curiam) ("reckless indifference to the truth . . . is the equivalent of fraud");

an officer of Orion and CHT, I was confident" the 2.5MM payment would be made without the necessity of establishing an escrow. (Walia Aff'd., ¶44) Walia confirms he was in the inner circle at the Debtor.

**D.    Control Of The Property And Personal Benefit**

22.    Walia also testified that he was aware Parmar was misstating the accuracy of the APA "in order to get a better deal for us", which indicates Parmar's misrepresentations were designed to benefit them. (JSOF 31) E-mail exchanges between Parmar and Walia in 2016, that Parmar would pay Walia if he allowed him to structure it properly internally (ASOF 90), or in 2017 when Walia demanded the Objecttech sale be done "today", despite Parmar not knowing what they were buying. (See Aff'd. of E. Wong, Dkt. No. 56-10, Ex "J", Ehren-Walia 004004) The two executives controlled the Debtor as their fiefdom.

**E.    Transferor's Knowledge Of Creditor's Claims**

23.    As set forth in the Motion, this factor also favors a finding of fraud under NYDCL §276. Walia knew about the unsatisfied creditors of CHT and Orion in existence. A judgment was entered in 2015 against Orion, one year before the Transfers. (JSOF 73) On March 9, 2016, CHT was sued for 1MM in Texas. (JSOF 71) Walia was named personally as a Defendant in the Texas lawsuit. The lawsuit resulted in a judgment against CHT. (See Req. For Jud. Notice, Dkt. No. 58, Verified Complaint, Ex. 3) Rather than pay their debts, the Debtor transferred 2.5MM in 2016 and a further 1.52MM in June 2017 to Defendants. The judgment creditors remained unpaid as of the filing date of the petition in bankruptcy. Plaintiff submits *prima facie* evidence satisfying multiple badges of fraud. *U.S. v. Spencer*, 2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7 ("A single [badge of fraud] may stamp the transaction as fraudulent and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud.") (emphasis added) *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805. The Opposition responds with no admissible evidence.

# IV.
## THE MOTION PRESENTED A *PRIMA FACIE* CASE OF INTENTIONAL FRAUD PURSUANT TO NYDCL §276 FOR THE DIVERSION OF THE SECOND TRANSFER OF $1,520,000 AS THE MIPA IS REPLETE WITH FALSE STATEMENTS IN AN EFFORT TO MAKE THE PURCHASE OF A SHELL COMPANY APPEAR LEGITIMATE

24.     The Motion carried its initial *prima facie* burden by establishing Debtor paid 1.52MM to Defendant, NIKNIM, and in exchange received nothing of stated value.  The Debtor maintained an IOLA account at Robinson Brog where it deposited monies of the Debtors' CHT and Orion. (JSOF 77-83)  The Second Transfer was made out of the Debtors' IOLA account to Defendant on June 23 and 28, 2017. (JSOF 7) The Opposition claims that what was purchased in 2017 was a legitimate company, Objecttech, as memorialized by the MIPA.  (JSOF 51)  Objecttech was a shell company with no stated revenue. (Walia Aff'd., ¶57). The MIPA sold "interests" of Objecttech to a non-debtor, PHNMS. (JSOF 51, 67)  This was an inside deal between the two executives as it was never put out for competitive bid to others (JSOF 70), and it was never approved by the Board of Orion. (JSOF 70).  The two executives prepared a due diligence report with help of Ted Brindamour who worked for Parmar's brother-in-law, Salil Sharma. (JSOF 53) Mr. Brindamour prepared the due diligence reports for other acquisitions by Orion, including the admitted "sham acquisition" of MDRX.  (JSOF 20, 52, 53). Brindamour wanted Walia to insert the factual information with respect to Objecttech, AllRad, its operation and assets. (JSOF 54)  The schedules attached to the MIPA did not exist, i.e., were never prepared and the due diligence report supporting the acquisition were never finalized.  (JSOF 60-62)  No stated assets, liabilities, or working capital of Objecttech was included in the MIPA. (JSOF 68). The Debtors' books and records do <u>not</u> evidence the satisfaction of an antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech, AllRad or PHNMS for $1,520,000.  (ASOF 91, 92)  Defendant Walia, the owner of Objecttech and AllRad, (JSOF 95) failed to produce tax returns for either entity as requested during discovery. (ASOF 66, 94)  These facts are not in dispute.

25.     In Opposition, Defendant confirms that what was purchased for 1.52MM, Objectech, "did nothing and had no revenue" (Walia Aff'd., ¶¶57, 64).  Defendant concedes its interests were assigned to a non-debtor third party (Walia Aff'd., ¶61) But, the Opposition contends, while Objectech had no revenue, it did own "valuable software that Objecttech developed through substantial capital investment." Regardless of who took title, Objecttech assets were delivered to the Debtor Orion, since Defendant, as President presided over the development and integration of the software.  (Walia, ¶¶62, 63)  All of the aforementioned explanations are arguments unsubstantiated and asserted without any admissible evidence.  On a summary judgment motion, courts may consider "only evidence that would be admissible at trial." *Nora Bevs., Inc. v. Perrier Group of Am. Inc*., 164 F.3d 736, 746 (2d Cir. 1998) Conclusory statements of Walia, <u>do not establish facts</u> or that the payment was equivalent to the 1.52MM paid.

**A.     <u>Conclusions And Legal Opinions Are Not A Substitute For Admissible Evidence</u>**

26.     The Walia Affidavit is replete with self-serving conclusions of law by Walia which are properly disregarded.  With respect to the 1.52MM Second Transfer, such conclusions include:  (1) Objecttech owned AllRad, (2) AllRad's property consisted of "valuable software", (3) Objecttech invested "substantial capital" to develop the software, (4) the software was "reasonably equivalent" to the amount exchanged under the Objecttech MIPA, and (5) the Objecttech MIPA did not include false statements or misrepresentations of fact.  After three years of litigation, the attempt to substitute a self-serving Affidavit in the place of admissible evidence demonstrates Defendant cannot carry its burden to identify and support the existence of a material issue of fact for trial.  *Hollander v. American Cyanamid Co*., 172 F.3d 192, 198 (2nd Cir. 1999) (The district court was correct in holding that the affidavit flagrantly disregarded the requirements of Rule 56(e), was riddled with inadmissible hearsay, conclusory statements and arguments, and  "more resembled an adversarial memorandum than a *bona fide* affidavit.) As in *Hollander*, the Walia Affidavit resembles an adversarial brief rather than statements of fact.

**B.      Exhibits C & D Are Properly Stricken As Inadmissible Hearsay Lacking in Any Reliability**

27.      The proponent of the written statement, has the burden to show the applicability of an exception or exemption to the prohibition on hearsay. *See Evans v. Port Authority of N.Y. & N.J.*, 192 F. Supp. 2d 247, 263, n.121 (S.D.N.Y. 2002).

28.      The Opposition attaches two documents, *Exhibits C & D*, which Defendant claims proves the existence of state of the art technology" which was "valuable".  Both documents appear to be informational brochures.  Both documents are hearsay as written statements offered to prove the truth of the matter asserted, i.e. that software existed and it was valuable.  Both documents are subject to the Federal Rules of Evidence. (FRE 801(a); FRE 1101(b))  No foundation is offered as to the source of the documents. The Walia Affidavit offers no foundation for the creation, existence or accuracy of the brochures.  *See Reynolds v. Am. Airlines, Inc.*, 2017 U.S. Dist. LEXIS 198949, *4-5 (Bankr. E.D.N.Y. 2017) (Incident report properly stricken where proponent failed to offer foundation for document offered).  Similarly, the undisputed facts corroborate the lack of trust-worthiness of documents surrounding Objecttech and summaries viewed with skepticism.  FRE 803(6)(E).  Defendant concedes that documents surrounding the 1.52MM sale of the Objecttech membership interests are incomplete. (Incomplete Due Diligence Report) (JSOF 60), MIPA agreement with multiple sections never completed (JSOF 61), schedules that never existed (JSOF 62). Exhibits C and D are properly excluded as lacking foundation.

**C.      Self-Serving Affidavits That Contradict The Underlying Facts Of Prior Testimony Are Properly Stricken On Summary Judgment**

29.      The rule is well-settled in the Second Circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2nd Cir. 1991), citing to *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (party cannot create genuine issue of material fact with affidavit contradicting prior deposition testimony in attempt to defeat summary judgment motion).  The Affidavit of Walia claims no tax records of Objecttech and AllRad existed because Objecttech and AllRad had no

revenue. Defendant claims the failure to produce tax records and schedules in response to discovery requests is excused and there is no application of the Adverse Inference Rule. (Walia Aff'd., ¶64)  The explanation can be dismissed outright as it contradicts Defendant's deposition testimony where he stated (a) <u>the companies did file tax returns and (b) had revenue</u>.

> Q.  Did *AllRad Direct* file federal tax returns?
>
> A.  Yes.
>
> Q.  How about state tax returns?
>
> A.  I am not sure

(Deposition of Walia p. 37, lns. 2-7, see Ex. 13 attached to Reply Aff'd. of J. Nolan)

> Q.  Has *Objecttech* ever filed tax returns?
>
> A.   I have to check.  I believe so.  I do know my accountants were aware of Objecttech, and I'll have to check that.

(Deposition of Walia p. 293, lns. 17-21, see Ex.15 attached to Reply Aff'd. of J. Nolan)

30.      Walia also testified under penalty of perjury, after the demise of AllRad Direct, LLC, sometime in 2013, Objecttech did a licensing deal with a software company called Integra Partners, <u>and derived revenue</u>. (Deposition of Walia p. 293-295, lns. 17-21, see Ex. 15, attached to Aff'd. of J. Nolan)  The adverse inference rule is triggered by the failure of a party to provide evidence peculiarly available to that party and supports an inference that the truth in those documents would be damaging to that party.  *Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc*.), 2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008), citing to *Deutsche Financial Services Corp. v. Osborne (In re Osborne)*, 257 B.R. 14, 19, n.7 (Bankr. C.D. Cal. 2000).  If produced, financial or tax records of Objecttech or AllRad would confirm that Objecttech or AllRad owned no software, or if it did exist, was valueless.  Defendant admits he was asked for these financial documents and did not produce them. (JSOF 66; ASOF 94, 95)  The Adverse Inference Rule is properly exercised in this instance as the records existed and were not produced.

31.     Similarly, Defendant's conclusion that a company without revenue would not file tax returns is speculation at best lacking any foundation whatsoever. (Walia Aff'd., ¶64)[5]  The IRS Code and guidelines state <u>that all corporations</u>, except non-profits, must file a return regardless of revenue.

**D.    <u>The MIPA Was Falsely Stated In An Effort To Make An Illegitimate Transaction Appear Legitimate</u>**

i.    <u>Fraudulent Intent Established Under Badges of Fraud</u>

32.     Direct evidence of fraud such as where false statements, or misrepresentations are made with documents is evidence of intent to defraud and an effort to make an illegitimate transaction appear legitimate. See *United States v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y. 1999).  With respect to the Second Transfer, the stipulated facts are that Parmar, Walia and Brindamour prepared yet another inaccurate and patently false due diligence reports to justify the Second Transfer.  (JSOF 52, 53, 54)  Walia pushed the acquisition even though Parmar did know what the Debtor was buying. (JSOF 55-60).   The various schedules to attach to the MIPA were not completed. (JSOF 61-62).   The record is replete with false statements, or misrepresentations in an effort to make an illegitimate transaction look legitimate.

33.     Under section §276, an intent to defraud is assumed where the conveyance is made without consideration ".  See *William Iselin & Co., Inc. v. Boardwalk Regency Corp.*, 703 F. Supp. 1084, 1088 (S.D.N.Y. 1989) In determining value, the Court makes a two-fold inquiry: *whether the debtor received any value* at all in exchange for the transfer, i.e. any realizable commercial value as a result of the transaction, and second whether that value was in fact reasonably equivalent. See *Devon Mobile Communs. Liquidating Trust v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, No. 02-41729 (CGM), 2006 Bankr. LEXIS 4600, 2006 WL 687153, at *11 (Bankr. S.D.N.Y. Mar. 6, 2006); *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 876, (Bankr.  S.D.N.Y. 2010) 2010 Bankr. LEXIS 2469,

---

[5] Department of Treasury, Internal Revenue Service, Form 1120; See Request For Judicial Notice: Who Must File; Unless exempt under section 501, all domestic corporations (including corporations in bankruptcy) must file an income tax return whether or not they have taxable income. Domestic corporations must file Form 1120, unless they are required, or elect to file a special return.  (See Reply Aff'd. of J. Nolan, attached as "Who Must File," Ex. 12)

*24-25, 53 Bankr. Ct. Dec. 148.  The purchase of "membership interests" in a shell company with no stated assets as transferred to a non-debtor, PHNMS, is prima facie evidence of lack of fair consideration.  In response, the Opposition presents no tangible evidence of value.

ii.     Lack of a Legitimate Explanation

34.     The documents to justify the existence of an asset, and that it had value, were within Defendant's control.  The financial records of AllRad or Objecttech were not produced.  It is an undisputed fact that the MIPA references <u>no assets</u> and made <u>no reference to AllRad</u>. (JSOF 62, 68) Defendant's explanation, to blame the attorneys for not drafting an accurate agreement, is an admission the MIPA is without value.  (Walia Aff'd., ¶56) Summary judgment is properly granted under NYDCL §276 where defendant's proffered explanation for the receiving the transfers could not be established in the opposition. *Fannie Mae v. Olympia Mortg. Corp.*, 792 F. Supp. 2d 645, 653 (Bankr. E.D.N.Y. 2011)

iii.     The Close Relationship Between the Parties to the Transaction

35.     As set forth above with respect to the First Transfer, the close relationship between Defendant, the Debtor, and Parmar existed in 2016 and 2017.  A badge of fraud includes circumstances such as 'a close relationship between the parties to the alleged fraudulent transaction. *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259.

iv.     Transferor's Knowledge of Creditor's Claims

36.     As set forth above with respect to the First Transfer, Defendant knew lawsuits and judgment creditors existed in February 2016 when Orion and he personally, were sued in the Texas lawsuit.  One year later in June 2017, even more lawsuits were filed.  The Debtors' CHT and Orion filed their petition of bankruptcy in March 2018, with lawsuits and unpaid judgments pending against it. (JSOF 72, 75-76)

37.     The Opposition does not dispute the fact the Debtor is not a party to the MIPA, the inaccuracies in the MIPA, the fictional schedules referenced therein or a due diligence report ginned up by the executives with the assistance of Ted Brindamour.  The Opposition submits no

admissible evidence to repel the strong inference of fraud and complete lack of consideration resulting in $1,520,000 diverted away from creditors.

V.

### THE MOTION PRESENTED A *PRIMA FACIE* CASE OF CONSTRUCTIVE FRAUD PURSUANT TO NY DCL §273-A, AS JUDGMENT CREDITORS EXISTED BEFORE THE TRANSFERS AND THE TRANSFERS WERE MADE TO AN OFFICER AND INSIDER OF THE DEBTOR

38.     The Opposition does not dispute the legal standard set forth in the Motion to be applied under NYDCL §§273 and §273-a.  To prevail on a claim under §273-a, a plaintiff must establish that:  (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied.  *Priestley v. Panmedix Inc*., 18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014). (Motion, Dkt. No. 53, §69-7)  The Opposition concedes the Motion established the last two elements of the test, but contends a disputed facts exists as to "Fair Consideration".

A.     **First Transfer:**

39.     The Opposition contends that the release of escrow monies in exchange for valid indemnity rights, was equivalent to the 2.5MM depleted from the Debtor's estate.  (Opposition, Dkt. No. 49)  The contention fails for two reasons:  (1) No admissible evidence has been submitted to support the First Transfer was made for release of indemnity rights.  In fact the undisputed facts establish that no escrow was created or funded pursuant to Section 1.6(e). (JSOF 48, 49) The contention is made in an unsworn affidavit and in violation of FRCP Rule 56(c)(1) which commands that a party asserting a factual is dispute must cite to particular parts of material in the record; and (2) Even if the Court entertained an argument that the APA created an antecedent debt owed to Defendant, NYDCL stigmatizes repayment of an antecedent debt owed to an officer, director or major shareholder as lacking "good faith" and as a matter of law lacking "fair consideration".  *See Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43,

53-54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d

374 (2d Dept 1984). When preferences are given to a debtor corporation's shareholders, officers,

or directors, such transfers are *per se* violations of the good faith requirement. *Id.* (citing *HBE*

*Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995).

  40.  The Opposition contends that NYDCL 273-a, stigmatizes only transfers to

"insiders" not "officers, directors or major shareholders of the transferor" as lacking good faith,

and the determination of "insider" status is a question of fact not for determination on motion for

summary judgment. (Opposition, ¶52, citing to *Jacobs v. D'D'Alessandro (In re Dewey &*

*Leboeuf LLP)*, 2014 Bankr. LEXIS 4051, *17).  The contention is misplaced. *In re Dewey &*

*Leboeuf LLP*, *supra*., did not involve a claim made under NYDCL 273-a, where an officer's

antecedent debt was given priority over antecedent debt owed to judgment creditors.  As set forth

by the Second Circuit:

> "One exception has been recognized by the New York courts to the rule that the
> repayment of an antecedent debt constitutes fair consideration: where "the transferee is an
> officer, director, or major shareholder of the transferor." Atlanta Shipping, 818 F.2d at
> 249; see also HBE Leasing I, 48 F.3d at 634 HN21 ("New York courts have carved out
> one exception to the rule that preferential payments of pre-existing obligations are not
> fraudulent conveyances: preferences to a debtor corporation's shareholders, officers, or
> directors are deemed not to be transfers for fair consideration."). See *Sharp Int'l Corp. v.*
> *State St. Bank & Trust Co.*, 403 F.3d 43, 54(2d Cir. 2005)

  41.  Defendant was both an officer of CHT and Orion and the attempt to pay his

claimed antecedent debt over the debt of judgment creditors is not "fair consideration" under

NYDCL §273-a.  The First Transfer fails as a matter of law.  The undisputed facts and Walia's

own statements evidence Defendant Walia exercised sufficient authority over the Debtor,

managed its affairs, and/or controlled the disposition of assets such that the record establishes

Defendant was an "insider".  As set forth in the Walia Affidavit: "I, as the President and Chief

Executive Officer of the [sic] Orion, presided over the development and integration of the

software for the exclusive benefit of the Debtors."  (Walia Aff'd., ¶62).  According to the

witness, he managed, oversaw and controlled the disposition of a major asset.  As set forth in the

Motion at page 30, the term insider includes "a person in control of the debtor" or an "officer of

the debtor". 11 U.S.C. §101(31)(B) (ii) and (iii). An "insider" is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor." *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1277 (10th Cir. 2008) Defendant further claims, "As an Officer of Orion and CHT, I was confident the deferred payment would be made" such that he did not need an escrow. (Walia Aff'd., ¶44). Here the witness claims as the CEO, he had a "sufficiently close relationship with the Debtor" that he did not have to worry about formalities for getting paid. Lastly, Walia controlled corporate policy at some level at it is an undisputed fact that Parmar, CEO of CHT, sought Defendant's consent as CEO of Orion, the operating entity, to allow him to characterize million dollar transactions ("I am willing to give you 3.5MM in return for you to allow me to structure it properly internally..") (ASOF 90) Walia controlled corporate strategy for the Debtor;

> Q. what were your day to day responsibilities at Orion?
>
> A. "… I had all—I was responsible as the CEO of the strategy, revenue, you know, client satisfaction, pretty much what a CEO responsibilities are."

(Deposition of Walia, p. 140-141, lns. 19-8, see Ex. 13, attached to Reply Aff'd. of J. Nolan)

42.     The undisputed facts establish Defendant was an officer of the Debtors. The facts and the testimony of Defendant confirm his close relationship and management over the Debtors' affairs.

**B.     <u>Second Transfer</u>:**

43.     In the fraudulent conveyance context, the basic question is - has the estate been depleted without exchanging property of similar value to the Debtor as a result of the Transaction to the prejudice of the Debtor's unsecured creditors? (*Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 644 (3rd Cir. 1991) NYDCL §273 requires that the debtor must have "received" the value in question "in exchange" for the transfer or obligation at stake. *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 467 (S.D.N.Y, 2001)

The requirement that the debtor must have "received" the value in question expresses a temporal condition demanding an element of contemporaneity in the determination of whether something close to the reasonable equivalence has been exchanged. *Id*. at 467. Every conveyance made <u>without fair consideration</u> when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, <u>is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant</u> if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment. *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015) citing to NYDCL § 273-a (McKinney 2002).

44.    As elaborated in the Intentional Fraud claim, it is an undisputed fact that the Debtor paid the Second Transfer, to purchase "membership interests" for a non-debtor in a shell company, Objecttech, with no stated assets. (JSOF 51, 67, 68) These facts are not in dispute and the Motion on the face of the underlying documents carries its prima facie burden evidencing the Second Transfer made for no consideration. Transactions lacking proof of fair or adequate consideration when creditors exist are not made in "good faith". The fraud is committed against existing judgment creditors who went unpaid while assets were diverted out of the estate. The requirement of good faith is not fulfilled through preferential transfers of corporate funds to directors, officers or shareholders of a corporation that is, or later becomes, insolvent, in derogation of the rights of general creditors. *Am. Panel Tec v Hyrise, Inc.*, 31 AD3d 586, 587, 819 N.Y.S.2d 768 (2d Dept 2006); *P.A. Bldg. Co. v Silverman*, 298 AD2d 327, 328, 750 N.Y.S.2d 13 (1st Dept 2002).

45.    No admissible evidence supports the Debtors receiving value, let alone reasonably equivalent value, for the $1,520.000 diverted out of the estate. The Second Transfer was not conducted at arm's length. (JSOF 70) Parmar did not know what the Debtor was purchasing. (JSOF 56) Defendant was involved in preparing a "due diligence report" which contained fake or inaccurate revenue projections, for a company, Objecttech. (JSOF 52-54) The figures could only come from Defendant Walia. (JSOF 59) Walia inserted revenue figures for Objecttech of

$161,000, for 2013, and $70,000 for 2014.  (See Dkt.  No. 56-11, Ex. K)  <u>Now</u>, in opposition to the Motion, Walia signs an Affidavit and claims Objecttech <u>had no revenue</u>.  *See,* e.g., *In re Leneve*, 341 B.R. 53 (Bankr. S.D. Fla. 2006) (essential comparison in constructive fraudulent transfer inquiry is "what went out" with "what was received").

46.    The Motion establishes by irrefutable evidence that $1,520,000, went out of the estate, and no value, let alone reasonable equivalent value, was received.  Both good fair and fair consideration are lacking.  Based on the undisputed facts before the Court summary judgment is proper as the Transfers were constructively fraudulent.

## VI.

### <u>WALIA IS INDIVIDUALLY LIABLE FOR THE DEBTORS MONIES HE DIVERTED TO DEFENDANT NIKNIM AWAY FROM LEGITIMATE CREDITORS OF THE ESTATE</u>

47.    The Opposition does not dispute the legal standard set forth in the Motion. Alter ego liability exists under New York law "when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded that it primarily transacted the dominator's business rather than its own."  *City of Almaty v. Ablyazov*, 2019 U.S. Dist. LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019); *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195 (2d Cir. 2010) (internal quotation marks and citation omitted).  "Factors to be considered in determining whether the owner has 'abused the privilege of doing business in the corporate form' include whether there was a 'failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use'."  *East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 127, 884 NYS2d 94 (2009).

48.    The Motion outlined eight factors and submitted admissible evidence that was not disputed demonstrating that Defendant NIKNIM lacked a legitimate business purpose: created to foster Walia's private affairs, paid his personal expenses, failed to maintain corporate minutes or records, was inadequately capitalized, operated out of Walia's house, and received the Transfers

solely at Walia's direction for his personal benefit.  (Motion, Dkt. No. 53, p. 32-34) Plaintiff claims the finding of veil piercing or alter ego is a fact laden event and not well suited for summary judgment. (Opposition, ¶54) However, once there is a showing of the absence of an issue of fact, the party opposing summary judgment must come forth with specific evidence that raises a genuine issue of fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Neither Defendants Walia nor NIKNIM present evidence to dispute any of the aforementioned factors.  Rather, the Opposition contends that Plaintiff must prove that NIKNIM was used by Walia to commit a fraud against the Debtor for Walia to be held personally liable. (Opposition, ¶54)  The statement is not accurate.

49.    The federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *National Labor Relations Bd. v Greater Kan. City Roofing*, 2 F.3d 1047, 1052-1053, (10th Cir. 1993), citing to *United States v. VanDiviner*, 822 F.2d 960, 964-65 (10th Cir. 1987); *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979) (Furthermore, the individual who is sought to be charged personally with corporate liability must have shared in the moral culpability or injustice that is found to satisfy the second prong of the test; and such party must have been an actor in the course of conduct constituting the abuse of corporate privilege.)  Broadly speaking, New York courts will disregard the corporate form, or, to use accepted terminology, "pierce the corporate veil", whenever necessary "to prevent fraud or to achieve equity". *Morris v. State Dep't of Taxation & Fin*., 82 N.Y.2d 135, 140 (1993), citing to (*International Aircraft Trading Co. v. Manufacturers Trust Co*., 297 N.Y. 285, 292, 79 N.E.2d 249 (1948).)" (*Id*. at 417.)  Under New York law, however, the critical issue in resolving an alter ego claim is not motive, but control, and whether the defendant used this control to commit a fraud or other wrong resulting in an unjust loss or injury to the plaintiff. *United States*

1m

*v. Evseroff*, 270 Fed. Appx. 75, 77-78 (2nd Cir. 2008), citing to e.g., *In re Vebeliunas*, 332 F.3d

85, 91-92 (2d Cir. 2003)

50.     It is not disputed that Defendant NIKNIM's sole responsibility in the questioned

transactions was to in receive the Transfers as a "personal accommodation for Walia". (JSOF 12)

Walia as the sole officer, employee and shareholder of NIKNIM (JSOF 8) controlled NIKNIM

for his personal affairs.  (JSOF 8, 9) Walia "personally directed the Transfers identified in the

Complaint be directed into the NIKNIM bank account". (JSOF 17) The person to be charged

individually, Walia, is the sole actor with respect to the corporate liability and the conduct in

question.  Walia is also the sole actor failing to follow any semblance of corporate formalities

inadequately capitalized NIKNIM and created a hollow shell.

51.     The fraud and inequities visited on unsecured creditors of the estate is clear.

Walia, an Officer of the Debtor, preferred his personal interest over that of legitimate creditors of

the estate.  Former employees Jack McBride and Alan Nottingham, who sued the Debtors in

2014 and litigated the lawsuit to judgment in 2015, got nothing while the two executives diverted

millions to themselves.  (JSOF 73)  "[E]very conveyance made without fair consideration when

the person making it is a defendant in an action for money damages or a judgment in such an

action has been docketed against him, is fraudulent …." §273-a.  Defendants knew of the

existence of these creditors yet diverted $4,020,000 out of the Debtors' estate for no tangible

value leaving the Debtors in bankruptcy.  The Motion satisfies both tests enumerated under state

and federal law.  Judgment against Defendant Walia is not only proper, but serves the very

purpose for which the doctrine to pierce the corporate veil was created.

## VII.

## CONCLUSION

For the reasons submitted in the Motion and herein, the Motion is ripe for determination based on these undisputed facts.

Dated:  March 10, 2023                    Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:      (212) 561-7777

Counsel for Plaintiff, Howard M. Ehrenberg in his capacity as the Liquidating Trustee of Orion Healthcorp, Inc., *et al.*