UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC[1]. | Case No. 8-18-71748 (AST) |
| Debtors. | (Jointly Administered) |

------------------------------------------

| | |
|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 8-20-8049 (AST) |
| Plaintiff, | Trial: July 24, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 960 |
| v. | U.S. Bankruptcy Court<br>290 Federal Plaza<br>Islip, NY |
| ARVIND WALIA; NIKNIM MANAGEMENT INC., | |
| Defendants. | Final PTC: July 17, 2024<br>Time: 1:30 p.m. |
| | Judge: Hon. Alan S. Trust |

------------------------------------------

## JOINT PRE-TRIAL MEMORANDUM AND PRE-TRIAL SUBMISSIONS

Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp, Inc.,

*et al.*, plaintiff in this adversary proceeding ("Plaintiff") and Arvind Walia and NIKNIM

Management Inc. ("NIKNIM"), defendants in this adversary proceeding ("Defendants"), submit

the following Joint Pre-Trial Memorandum and Pre-Trial Submissions through their respective

counsels pursuant to Local Bankruptcy Rule 701.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

## I.    PROCEDURAL POSTURE

1.    The Parties filed Motions for Summary Judgment or, in the alternative, Summary Adjudication, with the Court. As established at the April 10, 2024, conference announcing the Court's rulings (the "Ruling Conference"), certain facts and issues are deemed admitted for trial pursuant to Rule 56(g) and the law of the case. (Notice of Ruling; "NOR")

2.    As to the Second Transfer, the Court avoided the Second Transfer as against Defendant NIKNIM, as to the Plaintiff's First Cause of Action to Avoid an Intentionally Fraudulent Transfer under 11 U.S.C. §§544 and 548(a)(1)(A) and N.Y. Debtor and Creditor Law §276, and Second Cause of Action to Avoid a Constructively Fraudulent Transfer under 11 U.S.C. §544 and N.Y. Debtor and Creditor Law §§272-275 and §273-a.

3.    The Court denied the Plaintiff's Motion for Summary Judgment on the relief requested as questions of fact remained for trial. The Court denied Defendants' motion for summary judgment and the relief requested.

## II.    FACTS ADMITTED REQUIRING NO PROOF (BUT AS TO WHICH OBJECTIONS TO RELEVANCE ARE NOT WAIVED)

### A.    Pursuant to the Ruling Conference, and the Parties, the following facts require no proof:

4.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

5.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409.

6.    The First Amended Complaint seeks the return of $4,020,000. It is undisputed that the transfers at issue involved an interest of certain of the Debtors in property, that was made on or within two years before the date of the filing of the petition in bankruptcy.

LA:4861-9672-9028.8 65004.003

7.    Parmar and Defendant Walia served in the highest level of officer positions at the debtors Orion and CHT.  At the time of each transfer, Mr. Walia was an insider. (NOR, pg 39, lns 3-5)

### The First Transfer (April 15, 2016):    $2,500,000

8.    The Debtors were an enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices.

9.    In 2015, Paul Parmar was the Chief Executive officer of CHT and looking to acquire a medical billing company. He became interested in purchasing Porteck Corporation. ("Porteck")

10.    Porteck was a technology services company in the healthcare industry incorporated, owned and controlled by Defendant Walia who acted as its CEO.

11.    At the time, Porteck consisted of two business lines:  AHMS and PC Advantage ("PCA") which were both medical billing companies.

12.    In March 2015, the debtor entity Physicians Practice Plus acquired the assets of Porteck pursuant to an Asset Purchase Agreement ("APA"). The  Sellers were Walia, Porteck, and the Janaminder Trust. Mr. Walia executed the APA on behalf of himself, Porteck and the Janaminder Trust.  The Walia Trust never signed the APA. (NOR, pg 27, lns 10-16)

13.    Mr. Parmar executed the APA on behalf of the Debtor, Physicians Practice.

14.    The APA, provides for  a purchase price of $12.8 million for the sale of Porteck even though Mr. Walia had agreed in writing to sell the Porteck assets for $10.8 million. The purchase price was juiced upwards because Mr. Parmar told Walia he needed to add an additional 2MM to the APA as "deal fees". (NOR, pg 27, lns 18-24)

3

15.    Mr. Walia testified that he paid no attention to what Mr. Parmar was doing when the APA purchase price was set at $2 million more than the agreed purchase price. Per his testimony, as long as Walia's share did not change, it did not concern me. (NOR, pg 28, lns 2-14)

16.    The evidence in the record, the actual deal fees paid to the broker, Abstract business advisors, was $192,500, or one-tenth or so of the nearly $2 million by which the purchase price was juiced up. (NOR, pg 28, lns 15-18)

17.    In terms of the value of the assets acquired by the debtor entity, the net asset value of AHMS in 2015 was $1.35 million. The assets were valued at $2,350,000 less a 1MM liability, a promissory note paid off by the Debtor at acquisition. The assets of PCA were valued at $2,546,246 but there was 1.9 MM in loans outstanding. The net asset value of PCA recorded at time of purchase by the Debtor was $474,000. The actual value of the assets acquired from Porteck at the time they were acquired was $1.824 million being the net asset value of AHMS and the net asset value of PCA. (NOR, pg 28-29, lns 2-14)

18.    Despite the written record of the asset valuation, Mr. Parmar and Mr. Walia agreed to the value of the assets being $10.8 million and apparently was five times the 204 EBITDA of $2.2 million. And again, that five times multiple is before the $2 million was added into the transaction. (NOR, pg 29, lns 4-8)

19.    Bank records provided evidence memorializing a wire of $9.8 million from the debtor Constellation Healthcare Technologies to the IOLTA account at Robinson Brog, which was used to close the Porteck sale. (NOR, pg 29, lns 9-13)

4

20.     Of the $9.8 million, $6.8 million was wired on to Mr. Walia and $3 million went sideways in the vernacular to another non-debtor entity controlled by Mr. Parmar called First United Health. (NOR, pg 29, lns 14-17)

21.     Once the Porteck deal closed shortly thereafter in June of 2015, Mr. Walia was installed as the chief executive officer of the Debtor's main operating company, Orion Health Co., and became the chief technology officer of Constellation Healthcare Technologies. He continued to serve in those capacities through the fall of 2018.

22.     While Mr. Walia was CEO of Orion and CTO of Constellation Health Technologies, on or about April 15 of 2016, the debtor, Constellation Health Technologies, transferred $2.5 million from its JP Morgan account to NIKNIM.

23.     Mr. Walia testified that the stated purpose of the escrow arrangement was to protect the rights of Physicians Practice, the actual acquirer, as purchaser under the Porteck APA to receive $2.5 million to the extent such funds were required to indemnify Physicians Practice though as a practical matter, the arrangement was not necessary to protect the buyer because it simply withheld payment of the $2.5 million.

24.     The written agreement in Section 1.6 of the APA provides that for purposes of partially-securing the seller's obligations, the amount of $2,500,000 shall be delivered by the buyers at closing to the escrow agent by wire transfer of immediately available funds pursuant to an escrow agreement substantially in the form attached as Exhibit A to the APA.

25.     Section 1.6 clearly required certain conditions of the escrow including that it be established and that it be funded upon occurrence of certain events. However, no escrow agreement was ever executed and no escrow account was ever established. (NOR, pg 31, lns 9-13)

5

26.     Despite Walia's assertion that the $2.5 million was owed to him or his company, the books and records of the Debtor reflect no antecedent debt at the year ending December. There is no antecedent debt reflected on the books and records as being owed to Walia or NIKNIM. The Debtor's books and records reflect no debt being owed as a result of the Porteck transaction as of the end of 2015. (NOR, pg 31, lns 14-21-8)

27.     The Debtor's 2016 books and records did not evidence the satisfaction of any antecedent debt of $2.5 million or any increase in the net assets of the Debtors as a result of that $2.5 million transfer.

28.     The Trustee asserts that the $2.5 million transfer was fraudulent based in part on an email that Mr. Parmar sent to Mr. Walia on the date of the transfer, stating, "I am willing to give you $3.5 million in return for you to allow me to structure it properly internally, which requires I close the file with the $2 million payment." (NOR, pg 32, lns 1-6)

29.     On the same day as that email, the Debtor transferred $2.5 million from its M&T account, the M&T account of CHT to the JP Morgan account of NIKNIM.

### The Second Transfer (June 28, 2017):     $1,520,000.

30.     The second transfer at issue involves a 2017 transaction and agreement under which Mr. Walia agreed to sell to Mr. Parmar or a designated entity a software company that Mr. Walia indirectly owned called AllRad Direct LLC.  Object Tech Holding LLC was a shell company that Allrad owned.

31.     The sale was memorialized by a membership interest purchase agreement, or "MIPA", dated June 2017 between Object Tech as seller and Physicians Healthcare Network Management Solutions as buyer.  Physicians Network Solutions, is not and was not one of the Debtors, but was again a third party entity owned or controlled by Mr. Parmar.

6

32.    The MIPA required a due diligence report and the negotiations required the diligence report to be prepared in connection with the sale, but the due diligence report was never completed.

33.    The MIPA required various schedules to be provided. Those schedules were never completed, such as 1.3, earnout payments; 1.4, discharge of debts and liabilities, maintenance of working capital.

34.    The MIPA also called for certain revenue projections, balance sheets or statements of assets and liabilities to be provided. Those were never provided.

35.    State and federal tax returns that were called for under the MIPA from the sellers were never provided. And the Debtor's board of directors never approved the purchase.

36.    Despite these deficiencies, the MIPA sale closed in June of 2017 and Debtor's funds, $1,520,000, was wired out of the Robinson Brog IOLTA account to the NIKNIM bank account at JP Morgan Chase. (NOR, pg 33, lns 17-20)

37.    Correspondingly, all of the shares of AllRad were transferred, but transferred to the non-debtor entity, Physicians Network Solutions. No assets were ever transferred in connection with the AllRad Objecttech transaction to any of the Debtors. (NOR, pg 33, lns 20-24)

38.    At no point during 2017 did any of the debtors' books and records evidence an antecedent debt of $1,520,000 or any other debt owed to either of the defendants in connection with Object Tech or AllRad.

39.    The debtors' books and records do not evidence the satisfaction of any antecedent debt or increase in net assets of the debtors through the acquisition of the interest in Object Tech or AllRad.

7

40. The second transfer occurred within eight months prior to the petition date, well within the two- year period.

**Defendant NIKNIM Management, Inc. and Its Operations**

41. Defendant NIKNIM is a corporation formed under the laws of the State of New York with its principal place of business at Walia's residence at 27 Kettlepond Road, Jericho, New York.

42. NIKNIM was incorporated in 2015, and at all times Walia owned and managed NIKNIM as the sole employee, officer, and shareholder.

43. NIKNIM is an S corp. formed by Walia to manage his consulting work, personal investments, and that of his family trust.

44. Walia established a family trust, the *Janaminder Virk Irrevocable Trust* in 2012 (the "Janaminder Trust"), where he acts as the Trustee and his daughters the beneficiaries.

45. Walia established the *Arvin Walia Irrevocable Trust* (the "Walia Trust") as part of his estate planning where his wife acts as the Trustee.

46. NIKNIM was paid part of Walia's annual salary from the Debtor as a personal accommodation to Walia for tax purposes.

47. NIKNIM followed no corporate formalities and maintained no resolutions of shareholders or minutes.

48. NIKNIM was capitalized with a small amount of one or two thousand dollars.

49. Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either the NIKNIM or his personal checking account.

50. In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account.

8

51.    Walia personally requested that the Transfers identified in the Complaint be deposited into the NIKNIM bank account at JP Morgan Chase.

## III.    QUESTION OF FACT TO BE DETERMINED BY COURT AT TRIAL

### A.    **Pursuant To The Ruling Conference, The Remaining Questions Of Facts To Be Determined Are The Following:**

**FIRST TRANSFER:**

52.    Did Parmar misstate the purchase price in the APA in order to divert millions of dollars to his solely owned and controlled entity, FUH?

53.    Did Walia participate in the overstatement of the purchase price in the APA?

54.    Was the APA governed by New York state law?

55.    Was an escrow agreement executed between the buyer and seller of the APA and $2.5 M deposited into the escrow account pursuant to the APA?

56.    Was there a close relationship between Parmar & Walia as of the date of the Transfers?

57.    Was the First Transfer a secret and/or hasty transaction made outside the normal course of business?

58.    Was the First Transfer concealed from creditors?

59.    Did the Debtor, CHT receive fair consideration in exchange for the making of the First Transfer?

60.    Did relevant judgment creditors exist at the time of the First Transfer and did they remain unsatisfied as of the petition date?

61.    Was the relevant Debtor insolvent at the time of the First Transfer?

62.    Did Walia take the First Transfer in accordance with 11 USC 550 (b)(1)?

63.    Did Walia take the Second Transfer in accordance with 11 USC 550 (b)(1)?

9

64.     Did Defendant Walia direct the Transfers be made to NIKINIM for his personal convenience?

65.     Did Defendant Walia benefit as a result of the Transfers made by the Debtor to NIKNIM?

66.     Did Defendant Walia so dominate the affairs of Defendant NIKNIM such that the corporate identity of NIKNIM was to transact the personal affairs of Walia.?

**B.      GOOD FAITH FACTUAL DISAGREEMENT BETWEEN PARTIES**

67.     Defendants submit the additional factual issue:

**SECOND TRANSFER:**

**Did any of the Debtors have knowledge of the limited asset value of Niknim?**

68.     Plaintiff does not agree to the insertion.

## IV.     ISSUES OF LAW TO BE DETERMINED BY COURT AT TRIAL

**FIRST TRANSFER:**

69.     Was the First Transfer made with actual intent to hinder, delay or defraud any entity or creditors?

70.     Did the relevant Debtor receive any consideration for the Payment of the First Transfer?

71.     Was the value received by the relevant Debtor "reasonably equivalent" or "Fair consideration" relative to the payment of the First Transfer?

72.     Was the relevant Debtor Insolvent on the date of the First Transfer or rendered Insolvent by the Making of the First Transfer?

73.     Did Parmar/Debtor and Defendants make the First Transfer in good faith?

**SECOND TRANSFER:**

74.     As to remaining <u>questions of fact</u> for trial;

75.     Did Defendant Walia participate in the Second Transfer and what was the extent of his role?

76.     Did Defendant Walia benefit from the Second Transfer to Defendant NIKNIM?

A.     **GOOD FAITH DISAGREEMENT BETWEEN PARTIES ON ADDITIONAL LEGAL ISSUES**

**Defendants submit the additional legal issue related to the additional factual issues**:

77.     Can the Trustee challenge the First Transfer as a fraudulent conveyance where the APA, under which the First Transfer was made, itself is not subject to attack as a fraudulent conveyance?

78.     Does the Debtors' knowledge of Niknim's limited asset value preclude the Trustee's claim to pierce Niknim's corporate veil?

Plaintiff does not agree to the insertion of these legal issues.

**RECOVERY: SUBSEQUENT TRANSFEREE LIABILITY UNDER 550(B)(1):**

79.     Did Defendant Walia participate in the alleged Fraudulent Transfers to Defendant NIKNIM?

80.     Did Defendant Walia benefit from the alleged Fraudulent Transfers to Defendant NIKNIM?

81.     Is Defendant NIKNIM liable as the initial transferee of the First Transfer and Defendant Walia liable as the subsequent transferee?

82.     Is Defendant Walia liable as the subsequent transferee of the Second Transfer to Defendant NIKNIM?

83.     Did Walia, as subsequent transferee take in good faith, and without knowledge of the voidability of the transfer?

**ALTER EGO THEORY:**

11

84.    Did Defendant Walia so dominate the affairs of Defendant NIKNIM  and was there such an absence of adherence to corporate formalities such that equity and the law requires that Defendant Walia be liable for the corporate obligation of Defendant NIKNIM?

85.    Would recognizing the corporate form of NIKNIM in the circumstances surrounding the present Transfers allow Defendant Walia to effectuate a fraud and/or inequity against legitimate creditors of the Debtors' estate?

## V.    EXHIBITS TO BE OFFERED BY EACH PARTY AND OBJECTIONS TO EXHIBITS

A.    See Plaintiff's exhibit list as attached hereto and marked numerically.

B.    See Defendant's exhibit list as attached hereto and marked alphabetically.

## VI.    WITNESSES TO BE OFFERED BY EACH PARTY

### A.    PLAINTIFF:

Craig Jacobson (expert)

Maxwell Mitchell (expert)

Arvind Walia

Frank Lazarra

Edith Wong

### B.    DEFENDANT:

Arvind Walia

## VII.    MOTIONS IN LIMINE;

Plaintiff filed Motion in Limine #1 to Exclude Expert Testimony of Charles Lunden

LA:4861-9672-9028.8 65004.003

## VIII.  <u>EXHIBITS</u>

The Parties exchanged exhibits in accordance with the Pretrial Scheduling Order on or before July 3, 2024.

Dated:  July 10, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**
Attorneys for Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al.*

By:  <u>Jeffrey P. Nolan</u>
    Ilan D. Scharf, Esq.
    Jeffery P. Nolan, Esq., (*pro hac vice*)
    780 Third Avenue, 34th Floor
    New York, NY 10017
    Tel: (212) 561-7700
    Email:  ischarf@pszjlaw.com

**ROSEN & ASSOCIATES P.C.**
Attorneys for Defendants Arvind Walia and NIKNIM Management Inc.

By:  <u>/s/Sandford Rosen</u>
    Sanford P. Rosen, Esq.
    747 Third Avenue
    New York, NY 10017-2803
    Tel:  (212) 223-1100

    <u>/s/ Eugene Scheiman</u>
    Eugene R. Scheiman, Esq.
    LAW OFFICES OF EUGENE R. SCHEIMAN, PLLC
    570 Lexington Avenue
    New York, NY 10022
    Phone: (646) 280-9000
    Email: eugene.scheiman@scheimanlaw.com

**SO ORDERED:**

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 18-71748-ast |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>               Plaintiff,<br><br>     - against -<br><br>ARVIND WALIA; NIKNIM MANAGEMENT, INC.,<br><br>               Defendant. | Adversary Proc. No. 20-08049-ast |

## PLAINTIFF'S EXHIBIT LIST

Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion

HealthCorp, Inc., ("Plaintiff") in this adversary proceeding Submits the following Exhibit List

through his respective counsel pursuant to Local Bankruptcy Rule 7016-1(b)(2).

PLAINTIFF OFFERS:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

# FIRST TRANSFER

| Exhibit | Description | Admitted into Evidence |
|---|---|---|
| 1. | Letter dated February 20, 2015 from Abstract Business Advisors to Arvind Walia, Exhibit 9 to Walia Deposition | |
| 2. | Ledger with Comments, Bates Nos. EHREN-WALIA 005149-EHREN-WALIA 005172, Exhibit 10 to Walia Deposition | |
| 3. | Asset Purchase Agreement March, 2015 Physician's Practice Plus, LLC, Porteck Corporation, Exhibit 1 to Walia Depo; Ehren-Walia 00002 | |
| 4. | Disbursement Authorization and Itemization Ehren-Walia 000084-85 | |
| 5. | Email from Arvind Walia to Paul Parmar, Ravi Chivukula, and Sam Zaharis dated April 8, 2016 re Post Closing Payment Calculation – Porteck, Exhibit 4 to Walia Depo | |
| 6. | Calculations Email, Exhibit 6 to Walia Deposition | |
| 7. | Arvind Calculations, Porteck Corporation Statement of Cash Flows December, 2013; Exhibit 7 to Walia Deposition | |
| 8. | Letter dated April 15, 2016 from Paul Parmar to Arvind Walia; AWNK003013-14 | |
| 9. | Email from Paul Parmar to Arvind Walia dated April 15, 2016; Exhibit 11 to Walia Deposition; AWNK003010 | |
| 10. | Email dated April 8, 2016 from Arvind Walia to Paul Parmar, Ravi Chivukula, Sam Zaharis; EHREN-WALIA 000079-83 | |
| 11. | Constellation Press Coverage email from Harriet Lynch to Sam Zaharis dated March 23, 2016, Exhibit 14 to Walia Deposition | |
| 12. | Constellation Healthcare Technologies, M&T Bank Statement dated February 1-February 29, 2016; EHREN-WALIA 00138-00139 | |
| 13. | Constellation Healthcare Technologies, M&T Bank Statement dated August 1-August 31, 2016; EHREN-WALIA 00147-00148 | |

| 14. | Orion HealthCorp., Inc., Chase Bank Statement dated March 1, 2017-March 31, 2017; EHREN-WALIA 00149-154 | |
| 15. | Agreement and General Release dated January 31, 2017 between Physician's Practice Plus, Constellation Healthcare and Porteck, Arvind Walia, Exhibit 13 to Walia Deposition, F05024-E0006-00000268 | |
| 16. | JP Morgan Chase Bank N.A. Subpoena to Testify at a Deposition in Civil Action dated September 1, 2021; Chart of Bank Statements from 2015-2017; documents EHREN-NIKNIM CHASE 000001-290 | |
| 17. | Proof of Claim file date October 29, 2020, Claim No. 0000010141, Exhibit 29 | |
| 18. | Craig Jacobsen at B. Riley Advisory Services Expert Report dated January 10, 2022 and related documents | |
| 19. | Maxwell Miller at Grant Thornton LLP Expert Report dated January 8, 2022 and related documents | |

**SECOND TRANSFER**

| 20. | Email from Ted Brindamour to Arvind Walia dated May 4, 2017, Exhibit 16 to Walia Deposition | |
| 21. | Allrad Documents email from Arvind Walia to Paul Parmar dated May 7, 2017, Exhibit 17 to Walia Deposition | |
| 22. | Email from Ted Brindamour to Paul Parmar dated May 17, 2017 and AllRad Direct Due Diligence Findings | |
| 23. | Email from Paul Parmar to Arvind Walia dated May 31, 2017; EHREN-WALIA 00406 | |
| 24. | Email from Arvind Walia to Paul Parmar dated May 31, 2017; EHREN-WALIA 004003-4005 | |
| 25. | Email from Arvind Walia to Paul Parmar dated May 31, 2017 re Allrad Direct Diligence Report – 5-18-2017 Draft; EHREN-WALIA 004019 | |
| 26. | Email from Arvind Walia to Sam Zaharis dated June 21, 2017 re Updated Documents; EHREN-WALIA 004972 | |

| | | |
|------|------------------------------------------------------------------------------------------------------------------------------------------------------------|---|
| 27. | Membership Interests Purchase Agreement dated June, 2017 of Physicians Healthcare Network Management Solutions, LLC, Objecttech Holdings, LLC., Exhibit 15 to Walia Deposition | |
| 28. | Email from Arvind Walia to Paul Parmar dated June 19, 2017 re various document – marked up; EHREN-WALIA 004519-4608; Exhibit 0025 | |
| 29. | Email from Arvind Walia to Sam Zaharis dated June 21, 2017 re updated documents; EHREN-WALIA 004972; Exhibit 0026 | |
| 30. | Plaintiff's Request for Admissions Propounded to Defendant, Niknim Management, Inc., Set One | |
| 31. | Defendant Niknim Management, Inc.'s Responses and Objections to Plaintiff's First Request for Admissions | |

Dated: July 10, 2024

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Jeffrey P. Nolan
Jeffrey P. Nolan
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone:  310-277-6910
Facsimile:   310-201-0760

*Counsel to Plaintiff, Howard M. Ehrenberg*

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re:

ORION HEALTHCORP, INC.,[1]

          Debtor.

HOWARD M. EHRENBERG IN HIS CAPACITY
AS LIQUIDATING TRUSTEE OF ORION
HEALTHCORP, INC., ET AL.,

          Plaintiff,

      - against -

ARVIND WALIA; NIKNIM MANAGEMENT,
INC.,

          Defendant.

Chapter 11

Case No. 18-71748-ast

Adversary Proc. No. 20-08049-ast

## DEFENDANTS' EXHIBIT LIST

       Arvind Walia and Niknim Management, Inc. ("**Defendants**") in this adversary

proceeding submit the following Exhibit List through their counsel pursuant to Local Bankruptcy

Rule 7016-1(b)(2).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

DEFENDANTS OFFER:

| Exhibit | Description | Admitted into Evidence |
|---------|-------------|------------------------|
| A | Expert Report Prepared by Charles S. Lunden, CPA | |

Dated: New York, New York
July 3, 2024

ROSEN & ASSOCIATES, P.C.
*Counsel to Arvind Walia and*
*Niknim Management Inc.*
By: /s/ Sanford P. Rosen
        Sanford P. Rosen
PO Box 1274
Shelter Island Heights, NY 11965
(212) 223-1100

LAW OFFICES OF EUGENE R.
SCHEIMAN, PLLC
*Co-counsel to Arvind Walia and*
*Niknim Management Inc.*
570 Lexington Avenue, Suite 1600
New York, NY 10022
(646) 280-9000