**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC.[1] | Case No. 18-71748 (AST) |
|            Debtors. | (Jointly Administered) |

---------------------------------------

| | |
|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 20-08049 (AST) |
| | Trial:    July 24, 2024<br>Time:    9:30 a.m.<br>Place:  Courtroom 960 |
|            Plaintiff, |           U.S. Bankruptcy Court<br>          290 Federal Plaza |
|            v. |           Islip, NY |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | PTC:    July 17, 2024<br>Time:  1:30 p.m. |
|            Defendants. | Judge:  Hon. Alan S. Trust |

---------------------------------------

**NOTICE OF ERRATA AND LODGING OF CORRECTED EXHIBIT A TO TRIAL BRIEF OF PLAINTIFF, HOWARD M. EHRENBERG AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC.**

        PLEASE TAKE NOTICE that, in connection with the trial in the above-captioned

adversary proceeding, Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of

Orion Healthcorp., Inc. ("Plaintiff") hereby files this Notice of Errata and lodges a true and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

complete copy of the Ruling Conference transcript for the hearing dated April 10, 2024, in the above referenced adversary which includes adversary no. 20-08052(AST) (as the matters were called together on calendar).

Dated:  August 8, 2024            Respectfully submitted,
PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

*Counsel for Plaintiff, the Liquidating Trustee*

# EXHIBIT A

```
 1    UNITED STATES BANKRUPTCY COURT

 2    EASTERN DISTRICT OF NEW YORK

 3    Case No. 18-71748-ast

 4    - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6    ORION HEALTHCORP, INC., et al.,

 7              Debtor.

 8    - - - - - - - - - - - - - - - - - - - - - - - - - x

 9    Adv. Case No. 20-08049-ast

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11    HOWARD M. EHRENBERG, in his capacity as liquidating trustee

12    of Orion HealthCorp, Inc., et al.,

13                   Plaintiffs,

14              v.

15    ARVIND WALIA; NIKNIM MANAGEMENT, INC.,

16                   Defendants.

17    - - - - - - - - - - - - - - - - - - - - - - - - - x

18    Adv. Case No. 8-20-08052-ast

19    - - - - - - - - - - - - - - - - - - - - - - - - - x

20    HOWARD M. EHRENBERG in his capacity as LIQUIDATING TRUSTEE

21    OF ORION HEALTHCORP, INC., et al.,

22                   Plaintiffs,

23              v.

24    ABRUZZI INVESTMENTS, LLC,

25                   Defendants.
```

1    - - - - - - - - - - - - - - - - - - - - - - - - - x

2                    United States Bankruptcy Court

3                    290 Federal Plaza

4                    Central Islip, New York 11722

5

6                    April 10, 2024

7                    11:29 AM

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re Recovery Of Certain Transfers

2

3    HEARING re Summary Judgment

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Rita Weltsch

```
 1   A P P E A R A N C E S :

 2

 3   PACHULSKI STANG ZIEHL & JONES LLP

 4        Attorneys for Trustee Howard Ehrenberg

 5        780 Third Avenue, 34th Floor

 6        New York, NY 10017

 7

 8   BY:  JEFFREY P. NOLAN

 9

10   ROSEN & ASSOCIATES

11        Attorneys for Arvind Walia

12        747 Third Avenue

13        New York, NY 10017

14

15   BY:  SANFORD P. ROSEN

16

17   THE LAW OFFICE OF EUGENE R. SCHEIMAN, PLLC

18        Attorneys for Niknim Management Inc.

19        570 Lexington Ave, Suite 1600

20        New York, NY 10022

21

22   BY:  EUGENE R. SCHEIMAN

23

24

25
```

1    GIULIANO LAW, P.C.

2        Attorney for the Counter-Claimant Abruzzi Investments

3        445 Broadhollow Road, Suite 25

4        Melville, NY 11754

5

6    BY:  ANTHONY F. GIULIANO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              MR. ROSEN:  Good morning, Judge.

3              THE COURT:  Good morning.

4              MR. ROSEN:  You're muted, Judge.

5              THE COURT:  That will make for a short ruling

6     conference.

7              MR. ROSEN:  Sorry.  That's better.  We can hear

8     you now.

9              THE COURT:  I've been ruling for the last hour-

10    and-a-half.  You guys didn't hear it?

11             MR. ROSEN:  I'm so sorry.  Can you do it again?

12             THE COURT:  Sorry, my throat is sore now.

13             CLERK:  Good morning.  I am Alexis -- excuse me.

14             THE COURT:  It's contagious.

15             CLERK:  Good morning.  I am Alexis Hennigan,

16    backup courtroom deputy for Chief Judge Alan S. Trust

17    presiding.  These hearings are being recorded.  Please speak

18    clearly.  Once you hear your case called, please give your

19    appearance.  And remember, before speaking please state your

20    name so we can get a clear record of who is appearing.  All

21    parties not speaking, please put your phone on mute.

22             Case Number 20-08049, Howard M. Ehrenberg v.

23    Arvind Walia, et al, and Case Number 20-08052, Howard M.

24    Ehrenberg v. Abruzzi Investments LLC, et al.

25             THE COURT:  Let's take appearances please.  First

1    in Walia.

2            MR. ROSEN:  Good morning, Judge.  Sanford Rosen,

3    Rosen & Associates.  And we are counsel for the Defendants.

4            MR. SCHEIMAN:  Good morning, Your Honor.  Eugene

5    Sheiman with the Law Firm of Eugene Scheiman, co-counsel for

6    the Defendants.

7            MR. NOLAN:  Good morning, Your Honor.  Jeff Nolan

8    appearing on behalf of the Plaintiffs, Howard Ehrenberg, the

9    Trustee of the Orion Liquidating Trust.

10            MR. EHRENBERG:  Good morning, Your Honor.  I'm

11    Howard Ehrenberg, the liquidating trustee.

12            THE COURT:  All right.  Do we have counsel in

13    Abruzzi also?

14            MR. GIULIANO:  Yes, Your Honor.  Good morning.

15    Good morning, Your Honor.  Anthony Giuliano for the

16    defendants in the Abruzzi matter.

17            THE COURT:  All right.  And Mr. Nolan, you're

18    still representing Mr. Ehrenberg in Abruzzi?

19            MR. NOLAN:  Yes, Your Honor.  Jeff Nolan appearing

20    on behalf of the plaintiff in the 08052 Abruzzi adversary on

21    behalf of the plaintiff.

22            THE COURT:  All right.  I'm going to start with

23    the ruling conference in 20-08052, Ehrenberg v. Abruzzi

24    Investments and John Petrozza.

25            This is the Court's ruling made in narrative form

1   under Rule 7052 and will include the Court's findings of

2   undisputed facts and conclusions of law.  This is a core

3   proceeding under Title 28, Section 157(b)(2)(H).  The venue

4   is proper in this court.  Due and proper notice of the

5   various motions have been provided to the parties.  The

6   Court has before it Plaintiff-Trustee's motion for summary

7   judgment, the Defendant's cross-motion for summary judgment,

8   and motion to strike, which raises various evidentiary

9   issues.

10          The Court has determined that the following facts

11  are not subject to a genuine dispute and are therefore

12  established in this case pursuant to Rule 56(g) of the

13  Federal Rules of Civil Procedure as incorporated by Rule

14  7056.  The Court will also address the myriad evidentiary

15  objections raised by the Defendants to the extent that they

16  relate to the determination that this Court has made as to

17  what facts are not in genuine dispute.

18          This adversary proceeding revolves around one

19  payment, a $250,000 transfer made to one or more of the

20  defendants.  That transfer came prepetition from funds that

21  belonged to one or more of the debtors.  Those funds of

22  $250,000 were ultimately repaid, but repaid to a non-debtor

23  entity.  However, for purposes of this summary judgment

24  motion, the only issue before the Court is the transfer that

25  was made of the $250,000.

1      The Court has determined for the reasons that

2 follow to deny both parties' cross-motions for summary

3 judgment and will issue a trial scheduling order on the

4 pending claims.

5      The Debtors are the various multiple entities that

6 are listed in the adversary proceeding.  I won't recite all

7 18 or so of them in the record, but they are apparent on the

8 face of the adversary.

9      Those entities prepetition operated a consolidated

10 enterprise of companies which were aggregated through a

11 series of acquisitions and operated in the healthcare sector

12 space, primarily in revenue and practice management.

13      At all times relevant, John Petrozza, who I will

14 refer to as Petrozza, has been a resident of the State of

15 Florida who did business in New York.  His entity, Abruzzi

16 Investments, is a Limited Liability Company that had no

17 employees, no officers, and no directors but was managed by

18 Mr. Petrozza.  I'll refer to them collectively as

19 Defendants.  The only activity undertaken by Abruzzi was to

20 invest money on Mr. Petrozza's behalf.

21      Between 2015 and 2016, Mr. Petrozza considered

22 Paul Parmar, who was the primary principal of the Debtors,

23 as a close friend.  Mr. Parmar was at all relevant times the

24 primary operating person, officer, and controlling

25 shareholder behind the Debtors.

1          In June of 2013, Mr. Petrozza commenced his

2   business relationship with the Debtors when he was

3   approached by Mr. Parmar and asked to invest $4 million in

4   Constellation Healthcare Investment, which I'll refer to as

5   CHI, which is a non-debtor entity.  CHI allegedly held an

6   ownership interest in the Debtor entity, Orion HealthCorp

7   Inc., which I will refer to as Orion.  According to the

8   Defendants, their purpose in investing $4 million in CHI was

9   to acquire 100 percent ownership interest in Orion.  Mr.

10  Petrozza subsequently made the $4 million investment in what

11  he believed was CHI.  Additionally, he paid approximately

12  $300,000 to Orion to cover IPO and expenses associated with

13  his investment.  The money paid by Mr. Petrozza was sent to

14  Parmar and subsequently deposited into an IOLTA account held

15  at Robinson Brog Leinwald Greene Genovese & Gluck, referred

16  to as Robinson Brog, in the name of the non-debtor entity,

17  Constellation Health LLC.

18          In December of 2015, the United States District

19  Court for the Southern District of Texas entered a judgment

20  against Orion in the amount of $194,185.  That Southern

21  District of Texas judgement ultimately resulted in a proof

22  of claim being filed in the bankruptcy case and assigned as

23  Claim Number 1000.  That judgment remained outstanding at

24  the time the Debtors filed for bankruptcy relief.

25          On March 9th of 2016, a lawsuit was filed against

1    the debtor entities Physician Practice Plus and CHT by a

2    plaintiff called Criterions LLC.  On November 30th of 2017,

3    an adverse judgement was entered against those debtors,

4    Physician Practice and CHT, for some $77,000.  That

5    judgement also remained outstanding at the petition date.

6         In November of 2016 as part of a large-scale

7    private transaction involving taking CHT private, Mr.

8    Petrozza met with Mr. Parmar and the board of directors who

9    approved to go-private transaction so they could all make "a

10   gazillion dollars".  Petrozza asserted he was an investor in

11   one or more of the debtors at the time of the go-private

12   transaction and wanted to receive a multiple on his $4

13   million investment.

14        Along the way, several fictitious entities have

15   been created to represent ownership of the equity of CHT.

16   One of those entities was Lexington Landmark Services, Inc.,

17   which as far as Mr. Parmar knew, did not exist as a

18   legitimate business.  While his name was signed on certain

19   documents, he claimed his signature was forged and that he

20   never gave Robinson Brog authority to receive monies on

21   behalf of Landmark Services.

22        Mr. Petrozza testified that on May 24th of 2017,

23   he asked Mr. Parmar for a personal loan of $200,000.  He

24   testified that he wanted the money in order to acquire a

25   lease to a certain property in Florida.  The Court has not

1   been provided with any specifics concerning what property or

2   what lease.

3           In any event, on that same day, on May 24th, 2017,

4   Mr. Parmar directed partner Mitchell Greene at Robinson Brog

5   to wire $250,000 from the Debtor's IOLTA account to Mr.

6   Abruzzi.  Later that same day at 8:39 p.m., Parmar emailed

7   Mr. Greene to wire the $250,000 and he did not care which

8   account the funds were taken out of.

9           The next day, May 25, Robinson Brog confirmed to

10  Mr. Parmar that the $250,000 wire was in fact sent from the

11  Debtor's IOLTA account to Abruzzi.  The funds were sent from

12  an account held in the name of Constellation Health/CHT

13  Closing.  That transaction is what the pleadings refer to

14  and what the Court will refer to as the Transfer.

15          The Debtor's books and records evidence no

16  antecedent debt owed to the Defendants at any time during

17  the calendar year 2017.  Mr. Petrozza could not explain why

18  he asked for $200,000 but received $250,000.

19          Mr. Petrozza further testified that shortly after

20  receiving the wire, the deal for the property that he was

21  working on in Florida fell through and he no longer needed

22  the money.  He then advised his assistant, Lisa Basich, to

23  return the money to Mr. Parmar.  Mr. Parmar then provided

24  wiring instructions to Ms. Basich, who then directed that

25  the funds be wired back as directed by Mr. Parmar.

1          On June 28th of 2017, $250,000 was liquidated from

2    an investment account of Abruzzi and forwarded to Mr.

3    Petrozza's checking account.  The next day, Mr. Abruzzi

4    wired $250,000 to an entity called Sunshine Star LLC.

5    Sunshine Star was a newly-created entity, not a debtor

6    entity, but was created by or for the benefit of Mr. Parmar

7    and his at that time girlfriend, Elena Sartison.  The

8    Debtor's books and records reflect no antecedent debt owed

9    to Sunshine Star during 2017.

10          In October of 2017, Sunshine Star closed the bank

11   account into which the $250,000 had been wired.  Defendants

12   admit that the transfer to Sunshine did not benefit any of

13   the Debtors and that the Defendants had provided no services

14   for the debtors.

15          The multiple entities which ended up filing for

16   bankruptcy on March 16, 2018 include the entities the Court

17   has described thus far.  The Debtor's cases had been jointly

18   administered.

19          In July of 2018, Defendant Abruzzi Investment,

20   filed Claim Number 10062, identifying itself as a

21   shareholder of CHT.  That day Defendant also filed Claim

22   10063, asserting it held a 49 percent member interest in

23   CHT.

24          This adversary proceeding was commenced in March

25   of 2020.  The only transaction at issue for summary judgment

1    purposes, as I said, is the $250,000 wire transfer sent to

2    Abruzzi on May 25, 2017.  That transfer was from the funds

3    that belonged to one or more of the Debtors.

4         The parties have filed various pleadings

5    throughout this case, including and answer and counterclaim,

6    a plaintiff's motion for summary judgment, defendant's

7    cross-motion for summary judgment, and motions to strike

8    various of the evidentiary affidavits submitted by the

9    trustee.  The various motions have been on submission with

10   the Court since May of 2022.

11        I will let the parties know it is not this Court's

12   practice to hold matters on submission for nearly that

13   length of time.  So the Court's apologies to the parties for

14   the length of time it's taken to get to today's rulings.

15        Standards for summary judgement are well known by

16   the parties.  The Court won't recite them.  The central

17   issue is whether or not there exists genuine issues of

18   material fact -- whether or not there are genuine issues of

19   material fact that are in dispute such that judgment as a

20   matter of law can or cannot be awarded to either party.

21        Where cross-motions for summary judgment are

22   pending, the Court must make an independent valuation of

23   each motion separately.

24        Even though the Court is denying both summary

25   judgement motions because the matter will ultimately be

1    tried, I'm going to go ahead and give you my evidentiary

2    rulings on the affidavits that were presented to the Court

3    because the Court anticipates those affidavits will appear

4    again at the time of trial and there is no reason to redo

5    these objections.

6          With respect to the affidavit of Edith Wong and

7    the declaration of Frank Lazzara, Defendants have objected

8    under Rule 901 of the Federal Rules of Evidence, which is an

9    authentication requirement.  The caselaw that addresses Rule

10   901 is fairly replete that the burden of authentication is

11   not particularly high.  The Defendant objects to the Wong

12   affidavit and Lazzar declarations, including emails and

13   other business records that are identified in those

14   declarations because Ms. Wong and Mr. Lazzar did not

15   constitute witnesses with knowledge of the items that are

16   par of what they are claimed to be.

17         However, in a related adversary proceeding arising

18   out of the same Orion case, the same evidentiary objections

19   were raised by the same counsel as here.  Anecdotally, the

20   district court in that action determined that personal

21   knowledge is not a requirement for the authentication of

22   written documents in the Second Circuit.  See Aquila Alpha

23   v. Ehrenberg, 2023 WL 2164268 *4 (E.D.N.Y. Feb. 22, 2023),

24   affirmed by the Second Circuit, 95 F.4th 98.

25         The evidentiary objections to the Wong affidavit

1    and Lazzar affidavit for 901 purposes are overruled.

2    There's an adequate basis for the Court to accept those

3    documents as part of the summary judgment record, which

4    means that they can then become part of the trial record.

5            As to Ms. Sartison, the Debtor also -- the

6    Defendants also objected to her declaration which contained

7    the opening and closing bank statement of M&T for Sunshine

8    Star, again, based on authentication.  Again, there is an

9    adequate basis that's set out in the Sartison affidavit to

10   authenticate those documents, including the Ms. Sartison's

11   declaration that "At the request and direction of Mr.

12   Parmar, I opened an account at M&T Bank for Sunshine Star

13   LLC."

14           As the creator of the bank account for Sunshine,

15   there is clearly enough circumstantial evidence to

16   authenticate the opening and closing statements of that very

17   same bank account.  Refer you all back again to Acquila

18   Alpha.  Both the District Court's opinion and the Second

19   Circuits affirmed this.

20           The Defendants also object to the Wong and Lazzar

21   declarations as inadmissible expert testimony.  However,

22   there is no specific statement contained in either

23   declaration which should be stricken because it is providing

24   an opinion.  Both of those declarations were offering fact

25   testimony and aren't proffered as expert testimony, so 703

1    is irrelevant.

2            As far as the Defendant's hearsay objection, that

3    too is overruled obviously under the well-known hearsay

4    exception for business records under 803(6).  The records

5    attached are business records and the objection is

6    overruled.  Hearsay objections and business records

7    exceptions have been routinely construed in favor of

8    admissibility due to the general trustworthiness of

9    regularly-kept records and the need for this type of

10   evidence in many cases, particularly cases which an

11   independent trustee is appointed to oversee the

12   administration of a case and/or litigation arising

13   therefrom.  I'll refer the party to Arista Records v. Lime

14   Group, 784 F.Supp.2d 398, 421 and Chevron Corp. v. Donziger,

15   974 F.Supp.2d 362, 691-692.

16           With respect to the question of whether or not the

17   $250,000 was property of the estate, the Court has

18   determined that as a matter of law, the funds transferred

19   were property of the bankruptcy estate -- would have been

20   property of the bankruptcy estate had the bankruptcy estate

21   had the bankruptcy case existed at the time that the

22   transfer occurred.  The record is undisputed that the

23   Debtors utilized the IOLTA account at Robinson Brog to hold

24   large amounts of funds and for multiple transactions.  Just

25   because the fund were held in an IOLTA account does not make

1    them not funds of the Debtors.  New York Fiduciary Law

2    Section 4971 is clear that monies that are held by an

3    attorney or held in a fiduciary capacity from a client for a

4    client and/or for a designated beneficial owner.  The

5    Debtors had control and custody over the funds while they

6    sat in the Robinson Brog account and had the power to direct

7    their disposition.

8            The  Court finds no genuine dispute as to whether

9    or not the funds transferred to the Defendants are

10   recoverable as property of the estate.

11           In terms then of the substantive legal theory,

12   trustee moves forward first on Bankruptcy Code Section

13   548(a)(a), which allows the recovery of any property that

14   was transferred with actual intent to hinder, delay, or

15   defraud any entity to which the Debtor was or became liable,

16   as well as New York DCL Section 276, which provides that

17   every conveyance made and every obligation incurred with

18   actual intent to hinder, delay, or defraud present or future

19   creditors is fraudulent.  The two statutes are adequately

20   identical for the Court to conduct one analysis of both.

21   See Janitorial Close-out City Corp., 2013 WL 492375 *5

22   (Bankr. E.D.N.Y. 2013).

23           Transfer may be avoided either under 548(a) of the

24   Bankruptcy Code or New York DCL 276.  If the Debtor had an

25   interest in the property transferred, which is undisputed

1    here -- as to which there is no genuine dispute here.  The

2    transfer occurred within two years of the petition date.

3    That is undisputed here.  And the transfer was made with

4    actual intent to hinder, delay, or defraud a creditor.

5    That's where the factual dispute arises.

6            The trustee has the burden of establishing the

7    actual intent of the transfer or debtor by clear and

8    convincing evidence.  See In re Jacobs, 394 B.R. 646, 658

9    (Bankr. E.D.N.Y. 2008).

10           Because it is difficult to find direct evidence of

11   actual fraudulent intent, courts in this circuit look to

12   certain badges of fraud which can constitute circumstantial

13   evidence of fraudulent intent.  See In re Kaiser, 722 F.2d

14   1574, 1582-1583 (2d. Cir. 1983).  The parties generally

15   agree on what those badges of fraud can include.  Lack of

16   consideration, close association between the parties, the

17   financial condition of the transferor, chronology of events

18   and transactions under inquiry.

19           The Court has determined that a genuine issue of

20   fact disputes as to whether or not there was adequate

21   consideration for the transfer of the $250,000.  In the

22   shortest way to state it, Plaintiff asserts that it was

23   simply a transfer for no consideration.  The Defendant

24   asserted it was a loan, and a loan supported by a promise to

25   repay.

Page 20

1        The Defendants rely on certain text messages to or

2   from Mr. Petrozza where he requests the $200,000 in exchange

3   for a promise to repay it.  The record is clear though that

4   there is no signed promissory note.  There doesn't appear to

5   be any interest charged for the loan or any collateral

6   provided.

7        Based upon the entire record before the Court,

8   there is a genuine dispute of material fact as to whether or

9   not there was consideration for the transfer at the time the

10   transfer was made and whether or not that consideration is

11   adequate.

12        On the close relationship, there is a close

13   relationship in this record between Petrozza and Mr. Parmar

14   for the reasons that I've already outlined.  There doesn't

15   appear to be any retention of possession or benefit of the

16   property by the Debtor once transferred.  Funds went to

17   Petrozza.  Petrozza then paid the funds back in the

18   equivalent amount that he received, although he didn't pay

19   it into the right entity.

20        As far as the financial condition of the Debtor

21   before or at the time of the transfer, the undisputed

22   evidence before the Court based upon an expert opinion from

23   B. Reily is that the Debtors were insolvent on the measuring

24   date, the probative date, the date of the transfer.  So

25   insolvency condition here exists.

1          In addition, the record is clear that there was

2     the Southern District of Texas judgement outstanding at the

3     time -- prior to the time that the transfer was made and the

4     FBI had seized over $20 million from the IOLTA account prior

5     to the time of the transfer.

6          Questions certainly do exist concerning the

7     overall chronology of events and whether or not the

8     transaction should have been considered legitimate at the

9     time that it was made, but that is a fact issue for the

10    court to determine after trial.

11         With respect to the Trustee's cause of action for

12    a constructively fraudulent transfer and New York DCL 273-a,

13    New York law is clear that any conveyance made without fair

14    consideration when debtor is a defendant in action for money

15    judgement and a judgement has been docketed against him can

16    be set aside as a constructively fraudulent transfer.  To

17    prevail, the Plaintiff must establish that the conveyance

18    was made without fair consideration and for the same reasons

19    that I discussed in connection with the actual fraudulent

20    transfer claim.  The Court has found a question of fact as

21    to whether or not there was fair consideration for the

22    transfer at the time it was made.  The other elements under

23    273-a have been satisfied as a matter of law by the trustee.

24         Again, as I've noted, the expert insolvency report

25    of Craig Jacobson from B. Reily is unrebutted in the summary

1    judgement record.  So Orion was insolvent on May 25, 2017.

2          The fair consideration under Section 272 of DCL,

3    the Court has also found a question of fact as to whether or

4    not the consideration -- whether consideration was provided

5    and whether that consideration was fair for 272 purposes.

6    The Court has also found a question of fact as to whether or

7    not the defendants were operating in good faith at the time

8    that the transfer was made.  See Sardis v. Frankel, 113

9    A.D.3d 135, 141-142.

10          So for all of those reasons, both motions for

11    summary judgement have been denied.  And again, the motion

12    to strike as to the evidence, the Court has already ruled on

13    that.

14          The Court has also noted in the pleadings that the

15    parties have a serious disagreement about the impact of

16    Section 550 of the Bankruptcy Code.  550 is only triggered

17    once a transfer has been avoided.  I won't spend any time

18    talking about 550 because to this point no transfer has been

19    avoided so there is no reason to talk about who might

20    ultimately have liability for the transfer if it were set

21    aside.

22          I'm going to set a trial on the claim in the

23    adversary proceeding.  As I said, for Rule 56(g) purposes,

24    the facts that I've identified as undisputed are undisputed

25    for trial purposes.  The trial will be limited to the

1  matters on which the Court stated there to be genuine issues

2  of material fact.  The Court's intention is to set the

3  matter for trial on July 24th of this year so that the

4  matter can be tried this summer.  The Court will issue a

5  trial scheduling order consistent therewith.

6        Mr. Nolan, I'm going to ask you and Mr. Giuliano

7  to work on a short form of order denying both summary

8  judgment motions.  You don't need to repeat all of the

9  evidentiary rulings that I've made on the record, but they

10  will -- as I said, those evidentiary rulings will stand

11  should the same declarations and affidavits be submitted at

12  the time of trial, which I suspect they might well be.

13        All right?

14        MR. NOLAN:  Yes, Your Honor.  Thank you.

15        MR. GIULIANO:  Thank you, Your Honor.

16        THE COURT:  Thank you both.

17        THE COURT:  All right.  I'm going to turn now back

18  to 20-08049, Trustee v. Walia.  This too is an adversary

19  proceeding seeking recovery of certain transfers.  The

20  causes of action set out in the adversary proceeding are

21  core proceedings, which this Court may hear and determine

22  under Title 28, Section 157(b)(2) and the orders of

23  reference in effect in the Eastern District of New York and

24  is proper before this Court.

25        As with the prior adversary proceeding, these

1    matters have been pending for some time.  And again, it's

2    not the Court's practice to let matters fester for this

3    long.  Apologies to the parties for the length of time it's

4    taken to get to today's ruling.

5              This too is a ruling in narrative form.  And under

6    Bankruptcy Rule 7052, it includes the Court's findings of

7    undisputed facts as well as conclusions of law in accordance

8    with 2056(g) of the Federal Rules of Civil Procedures

9    incorporated by Bankruptcy Rule 7056, the facts that are

10   stated by this Court to be undisputed are undisputed for

11   purposes of the ultimate trial.

12             This case involves two transfers sought to be

13   recovered by the trustee through summary judgement.  And

14   there's also a partial summary judgement motion by the

15   Defendants.  I'll address these together.

16             First, the trustee seeks recovery of a $2.5

17   million wire transfer made on April 15 of 2016 from an M&T

18   bank account of the Debtors, the Debtor, CHT, that was made

19   to a JP Morgan Chase account, Chase bank account of the

20   defendant, Niknim.  A transfer was made at the direction of

21   Mr. Walia and was made in connection with -- arguably made

22   in connection with an asset purchase transaction, which I'll

23   describe in more detail and defined as the Porteck

24   transaction.

25             The second claim is to recover a $1,520,000 wire

1    transfer made in June of 2017 from the Debtor's Robinson

2    Brog IOLTA account, law firm IOLTA account.  That transfer

3    was sent to a JP Morgan Chase bank account of Niknim.  I'll

4    refer to that as the second transfer and the $2.5 million

5    wire as the first transfer.  The parties have provided an

6    extensive set of -- extensive joint set of undisputed facts.

7    The parties then separately provided their own proposed

8    undisputed facts.

9            Trustee claims that both the first transfer and

10    the second transfer either intentional fraudulent transfers

11    and/or constructive fraudulent transfers.  The defendants in

12    their partial summary judgement motion essentially seek

13    dismissal of the trustee's claims on a standing theory that

14    the trustee lacks standing to use Section 544 of the

15    Bankruptcy Code to invoke the remedies of state law

16    creditors in the New York DCL.

17            For the reasons to follow, the Court is denying

18    the trustee's request for summary judgment on the first

19    transfer, being the $2.5 million wire transfer made in April

20    of 2016, is granting summary judgment to the trustee on the

21    second transfer claim, the $1,520,000 transfer made to

22    Niknim in June of 2017.  All other relief sought by the

23    Trustee is denied and the Defendant's motion for partial

24    summary judgement is also denied.

25            I am going to direct the parties to return to

1   mediation and I'm going to set a trial date in June of 2024.

2   But I didn't want to jump past that part before I go through

3   the elaborate ruling.  But this case will also be set for

4   trial on the remaining claims on July 24th, but I am

5   directing the parties to return to mediation.

6          At all relevant times, the Debtors were a

7   consolidated enterprise of several companies aggregated

8   through a series of acquisitions and operating in the

9   healthcare space, primarily in revenue and practice

10  management services for physician practices.  The debtors

11  are as stated in the pleadings.  I won't read all of their

12  names back into the record, but they do include the entity

13  Constellation Healthcare Technologies, which is a debtor

14  that I'll refer to as CHT.  CHT maintained a checking

15  account at all relevant times at M&T Bank.

16         In 2015, Mr. Paul Parmar was the chief executive

17  officer of CHT and was looking to acquire a medical billing

18  company.  He became interested in purchasing Porteck

19  Corporation, which I will refer as Porteck.  Se joint

20  statement Paragraph 26.  At that time, Porteck was a

21  technology services company in the healthcare space owned,

22  controlled, and operated by Defendant, Arvind Walia.  Mr.

23  Walia was its CFO.

24         At that time, Porteck had two business lines, AHMS

25  and PC Advantage, which I will refer to as PCA, which both

1    provided medical billing services.

2         Niknim Management Inc, which I call Niknim, is a

3    New York corporation registered and operating from Mr.

4    Walia's residence on 27 Kettlepond Road in Jericho, New

5    York.  Mr. Walia was the sole officer, employee, and

6    shareholder of Niknim.  Mr. Walia formed Niknim to manage

7    his consulting work, take care of his personal investments,

8    and family trust.  Niknim followed no corporate formalities

9    and maintained no resolutions of shareholders or minutes.

10        In March of 2015, the debtor entity Physician

11   Practices Plus acquired the assets of Porteck pursuant to an

12   asset purchase agreement executed that same month.  I'll

13   call that the Porteck APA.  The sellers were Porteck, Walia,

14   the Walia Trust, and the Janaminder Trust.  Mr. Walia

15   executed the APA on behalf of himself and the Janaminder

16   Trust and Porteck.  The Walia Truste never signed the APA.

17        Mr. Parmar executed the APA on behalf of the

18   debtor, Physicians Practice.  The APA provides for a

19   purchase price of $12.8 million even though Mr. Walia had

20   agreed in writing to sell the Porteck assets for $10.8

21   million.  The purchase price was juiced up -- my phrase, not

22   the parties.  The purchase price was juiced up because Mr.

23   Parmar told Mr. Walia that he needed to add $2 million as

24   "deal fees".  Joint Fact 35.

25        Mr. Walia was unconcerned about the deal price

1  being juiced up, Joint Fact 37.

2          In fact, Mr. Walia testified in his deposition

3  that he really paid no attention to what Mr. Parmar was

4  doing when the APA purchase price was set at $2 million more

5  than the parties had agreed.  When asked when you were

6  negotiating with Mr. Parmar or Orion, "Was the purchase

7  price supposed to be $10.8 million?"

8          Answer, "Correct."

9          Question, "When did it change to $12.8 million?"

10          Answer, "At some point Mr. Parmar stated there are

11  fees to close this deal that have to be included in the

12  purchase price.  I said as long as my share of the purchase

13  price doesn't change, it doesn't concern me."  That's Page

14  134 of Mr. Walia's deposition.

15          The evidence in the record is that the actual deal

16  fees, the fees paid to the abstract business advisor's

17  broker, was $192,000.  So one-tenth or so of the nearly $2

18  million by which the purchase price was juiced up.

19          In terms of the value of the assets acquired by

20  the debtor entity, the net asset value of the AHMS business

21  was $1.35 million.  The assets were valued at $2.35 million,

22  but there was still an outstanding $1 million note.  The

23  value of the PCA side was $2,546,000, but there was still an

24  almost half-million note outstanding, an almost $1.9 million

25  loan outstanding.  So the actual value of the assets as

1    acquired from Porteck at the time that they were acquired

2    was $1.824 million being the net asset value of AHMS and the

3    net asset value of PCA.

4            Despite the written record of the asset valuation,

5    Mr. Parmar and Mr. Walia agreed to the value of the assets

6    being $10.8 million and apparently was five times the 204

7    EBITDA of $2.2 million.  And again, that five times multiple

8    is before the $2 million was added into the transaction.

9            Closing did occur in March of 2015.  Bank records

10   provided in the summary judgement evidence memorialized a

11   wire of $9.8 million from the debtor Constellation

12   Healthcare Technologies to the IOLTA account at Robinson

13   Brog, which was used to close the Porteck sale.

14           Of that $9.8 million, $6.8 million was wired on to

15   Mr. Walia and $3 million went sideways in the vernacular to

16   another non-debtor entity controlled by Mr. Parmar called

17   First United Health.

18           The Court notes this portion of the extensive

19   factual background to the extent that it will ultimately

20   relate to the Court's conclusions after trial as to whether

21   or not there was an intentionally-fraudulent transfer in the

22   second stage of the transaction because the trustee is not

23   seeking to recover the $6.8 million paid to Walia in the

24   Porteck transaction.

25           Once the Porteck deal closed shortly thereafter in

1   June of 2015, Mr. Walia was installed as the chief executive

2   officer of the Debtor's main operating company, Orion Health

3   Corp., and became the chief technology officer of

4   Constellation Healthcare Technologies.  He continued to

5   serve in those capacities through the fall of 2018.

6           While Mr. Walia was CEO of Orion and CTO of

7   Constellation Health Technologies, being on or about April

8   15 of 2016, the debtor, Constellation Health Technologies,

9   transferred $2.5 million from its JP Morgan account to

10  Niknim.  That's what I referred to earlier as the first

11  transfer.

12          The dispute between the parties seems to center

13  around a portion of the asset purchase agreement which

14  concerns the alleged balance of the purchase price and the

15  need for funds to be escrowed in accordance with Section 1.6

16  of the APA.  In his affidavit at Docket 64, Mr. Walia

17  testifies that the stated purpose of the escrow arrangement

18  was to protect the rights of Physicians Practice, the actual

19  acquirer, as purchaser under the Porteck APA to receive $2.5

20  million to the extent such funds were required to indemnify

21  Physicians Practice.

22          As a practical matter, the arrangement was not

23  necessary to protect the buyer because it simply withheld

24  payment of the $2.5 million.

25          As far as what the parties' written agreement

1    calls for, however, Section 1.6 of the APA provides that for

2    purposes of partially-securing the seller's obligations, the

3    amount of $2,500,000 shall be delivered by the buyers at

4    closing to the escrow agent by wire transfer of immediately

5    available funds pursuant to an escrow agreement

6    substantially in the form attached as Exhibit A to the APA.

7    Other conditions are stated in the APA concerning what the

8    escrow agreement would look like.

9          Section 1.6 clearly required certain conditions of

10   the escrow including that it be established and that it be

11   funded upon occurrence of certain events.  However, no

12   escrow agreement was ever executed and no escrow account was

13   ever established.  See Joint Facts 46 through 49.

14         Despite Walia's assertion that the $2.5 million

15   was owed to him or his company, the books and records of the

16   Debtor reflect no antecedent debt at the year ending

17   December 2015.  There is no antecedent debt reflected --

18   there is no debt reflected on the books and records as being

19   owed to Walia or Niknim.  The Debtor's books and records

20   reflect no debt being owed as a result of the Porteck

21   transaction as of the end of 2015.

22         The Debtor's 2016 books and records did not

23   evidence the satisfaction of any antecedent debt of $2.5

24   million or any increase in the net assets of the Debtors as

25   a result of that $2.5 million transfer.

1          The Trustee asserts that the $2.5 million transfer

2     was fraudulent based in part on an email that Mr. Parmar

3     sent to Mr. Walia on the date of the transfer, stating, "I

4     am willing to give you $3.5 million in return for you to

5     allow me to structure it property internally, which requires

6     I close the file with the $2 million payment."

7          On the same day as that email, the Debtor

8     transferred $2.5 million from its M&T account, the M&T

9     account of CHT to the JP Morgan account of Niknim.  That

10    transfer was sent at Mr. Walia's direction.  The parties

11    concede that that transfer occurred within two years prior

12    to the petition date.

13         The second transfer at issue involves a 2017

14    transaction and agreement under which Mr. Walia agreed to

15    sell to Mr. Parmar or a designated entity a software company

16    that Mr. Walia indirectly owned called AllRad Direct LLC,

17    which at that time was a successful software company.  Mr.

18    Walia owned AllRad indirectly through his ownership of an

19    entity, Object Tech Holding LLC.

20         The sale was memorialized by a membership interest

21    purchase agreement, or MIPA, dated June 2017 between Object

22    Tech as seller and Physicians Healthcare Network Management

23    Solutions as buyer.  That entity, Physicians Network

24    Solutions, is not and was not one of the Debtors, but was

25    again a third party entity owned or controlled by Mr.

1    Parmar.

2            The MIPA required a due diligence report and the

3    negotiations required the diligence report to be prepared in

4    connection with the sale, but that due diligence report was

5    never completed.  The MIPA required various schedules to be

6    provided.  Those schedules were never completed.  The MIPA

7    had multiple sections which were never completed, such as

8    1.3, earnout payments; 1.4, discharge of debts and

9    liabilities, maintenance of working capital.  The MPIA also

10   called for certain revenue projections, balance sheets or

11   statements of assets and liabilities to be provided.  Those

12   were never provided.  State and federal tax returns that

13   were called for under the MIPA from the sellers were never

14   provided.  And the Debtor's board of directors never

15   approved the purchase.  See Joint Statements of Fact 60 to

16   62, 66, 68, and 69.

17           Despite these deficiencies, the MIPA sale closed

18   in June of 2017 and Debtor's funds, $1,520,000, was wired

19   out of the Robinson Brog IOLTA account to the Niknim bank

20   account at JP Morgan Chase.  Correspondingly, all of the

21   shares of AllRad were transferred, but transferred to the

22   non-debtor entity, Physicians Network Solutions.  No assets

23   were ever transferred in connection with the AllRad Object

24   Tech transaction to any of the debtors.

25           At no point during 2017 did any of the debtors'

1    books and records evidence an antecedent debt of $1,520,000

2    or any other debt owed to either of the defendants in

3    connection with Object Tech or AllRad.  In fact, the

4    debtors' books and records do not evidence the satisfaction

5    of any antecedent debt or increase in net assets of the

6    debtors through the acquisition of the interest in Object

7    Tech or AllRad.  The second transfer occurred within eight

8    months prior to the petition date, so well within the two-

9    year period.

10            With respect to the Court's legal determinations,

11    again, I won't recite the standard for summary judgment.

12    It's well-known by the parties.  The Court has determined

13    that there are certain material facts which are not disputed

14    and other material facts as to which a genuine dispute does

15    exist.  I've set out under Rule 56(g) the facts which are

16    undisputed for summary judgment purposes.  And therefore for

17    the remaining portions of the adversary proceeding are also

18    undisputed for trial purposes.

19            I'm first going to turn to Sections 548(a) of the

20    Bankruptcy Code for actual fraudulent transfer and New York

21    DCL 273-A.  Bankruptcy Code Section 548(a)(1)(B) allows a

22    trustee to avoid any transfer of an interest that was made

23    two years prior to the petition date if it was an actual

24    fraudulent transfer.  New York DCL Section 273(a) provides

25    that every conveyance made without fair consideration when

1    the person making it is a defendant in an action for money

2    damages or a judgement in such action has been docketed

3    against him, it's fraudulent as to the plaintiff in that

4    action without regard to the actual tent of the defendant if

5    the debtor fails to satisfy the judgement.  See Lyman

6    Commerce v. Lung, 2015 U.S. District LEXIS 51447, *17

7    (S.D.N.Y. 2015).

8         Whereas here a judgment has already been docketed

9    under New York DCL 273-A, there is no requirement that the

10   transfer at issue have rendered the debtor insolvent.  See

11   Cadle Company v. Newhouse, 2002 U.S. Dist. LEXIS 15173

12   (S.D.N.Y. Aug. 16, 2002).

13        Here, there was a final judgment entered in the

14   Southern District of Texas in excess of $200,000 in December

15   of 2015.  That judgement preceded both of the transfers at

16   issue and remained outstanding at the time of the bankruptcy

17   petitions.  Proof of claim was filed on behalf of that

18   judgement creditor.  Thus that federal court judgment is

19   sufficient as a matter of law to satisfy DCL 273-A as to any

20   transfer which was made which lacked fair consideration.

21        Trustee has also alleged under New York DCL 273,

22   274 and 275 that both transfers were not made in good faith

23   or for fair consideration.  Conveyance is vulnerable to

24   attack by a creditor without regard to the actual intent of

25   the transferor if the -- without -- if the transfer is

1    considered to have been in constructive fraud of creditors.

2    See Laco X-Ray, 88 A.D.2d 425.

3         The transfer is constructively fraudulent if made

4    without fair consideration of any if the following

5    conditions are met.  The transferor is insolvent or would be

6    rendered insolvent by the transfer in question.  There is no

7    solvency analysis in this adversary proceeding.  Transferor

8    is engaged in or is about to engage in a transaction which

9    has a reasonably small capital or the transferor believes it

10   will incur debt beyond its ability to pay.

11        Even if there is fair consideration, a transfer is

12   constructively fraudulent in the absence of good faith on

13   the part of both the transferor and the transferee.  CIT

14   Group v. 160-09 Jamaica Avenue, 25 A.D.3d 301, 303.

15        This Court, as I've stated at the outset, has

16   determined that genuine issues of material fact exist as to

17   whether or not the first transfer can be avoided either as

18   an actual intent fraudulent transfer or as a constructive

19   fraudulent transfer.

20        Those issues include whether or not the first

21   transfer was in fact a payment due in connection with the

22   Porteck sale despite the noncompliance with the escrow

23   provisions of a purchase agreement.

24        However, there are no genuine issues of material

25   fact as to the second transfer at least as to the direct

1    payment to the defendant, Niknim.  It's undisputed that the

2    second transfer of funds that belonged to the debtor.  Those

3    funds were paid to a third-party corporation in connection

4    with a transaction by which assets were conveyed to a non-

5    debtor entity, being Physician Network Solutions, an entity

6    controlled by Mr. Parmar.

7              Physicians Network was owed no antecedent debt.

8    Niknim was owed no antecedent debt, and there is no

9    consideration in that transaction for the debtors.

10             As far as the intentional fraudulent claim under

11   548, Bankruptcy Code Section -- excuse me.  That section

12   allows the trustee to avoid any transfer made within two

13   years before the petition date if made with actual intent to

14   hinder, delay, or defraud any creditor to which the debtor

15   was or became liable.

16             Similarly, under New York DCL 276, every

17   conveyance made or obligation occurred with actual intent to

18   hinder, delay, or defraud present or future creditors is

19   voidable.  As this Court had stated in (indiscernible)

20   closeout the statutes are -- the statutes are analogous and

21   can be analyzed together.

22             An actual fraudulent transfer can be made -- can

23   be found, excuse me, where a debtor had an interest in the

24   property transferred, which it did in both transfers.  The

25   transfer occurred within two years of the petition date.

1    Again, it did in both transfers.  But the transfer was made

2    with actual intent to hinder, delay, or defrauded a

3    creditor.  See In re Jacobs, 394 B.R. 646, 658-653 (Bankr.

4    E.D.N.Y. 2008), which requires the trustee to establish

5    actual intent of the transferor by clear and convincing

6    evidence.

7          As typically in fraudulent and actual fraud

8    settings, the courts typically look to various badges of

9    fraud.  I'll highlight those that the Court has considered

10    here for trial purposes.

11          First is as far as lack or inadequacy of

12    consideration.  This Court has already noted in respect to

13    the Porteck transaction that the agreed sale price of $10.8

14    million was juiced up by $2 million at Mr. Parmar's request.

15    Mr. Walia was aware of the inflation of the purchase price

16    and essentially didn't care.

17          As I've already noted, the APA under the Asset

18    Purchase Agreement for Porteck established various

19    requirements for an escrow agreement and the funding of an

20    escrow account, none of which occurred.  Various disclosure

21    documents, due diligence requirements were required in the

22    purchase transaction.  None were provided.

23          As far as the AllRad transaction is concerned, the

24    Debtors gave up $1.52 million and got nothing in exchange.

25          As far as close or family relationship, it's clear

1    that Mr. Parmar and Mr. Walia were both officers and

2    insiders at the time of both transfers.  They knew each

3    other going back to at least 2015.  They both served in the

4    highest level of officer positions at the debtors Orion and

5    CHT.  Mr. Walia was clearly an insider of the debtors at the

6    time of both the first and second transactions.

7         On financial condition, there's no solvency

8    analysis here so the Court is not passing on solvency at the

9    time of the transfer.

10        The Court has determined that genuine issues of

11   material fact exist as to whether the first transfer, the

12   $2.5 million in Porteck, can be avoided as an intentionally

13   fraudulent transfer either under the Bankruptcy Code or New

14   York DCL.

15        Again, as to defendant Niknim in the second

16   transfer, there are no genuine issues of material fact.

17   There was no fair consideration in that transaction for the

18   debtor estate for the $1.52 million.

19        I want to turn just for a couple of minutes to the

20   recovery theory of the trustee against the defendants Walia

21   and Niknim.  Not the liability theory.  Liability theories

22   are clear, but the recovery theory.

23        With respect to the $1.52 million fraudulent

24   transfer, the trustee seeks recovery both against Niknim,

25   who received the money, and defendant Walia given his

1    control position at Niknim.

2         Under New York law, a creditor may recover money

3    damages against parties who participated in a fraudulent

4    transfer and are either transferees of the assets or

5    beneficiaries of the conveyance.  See Tae H. Kim v. Jisung

6    Yoo, 311 F.Supp.3d 598, 613 (S.D.N.Y. 2008) and

7    Cadle Co. v. Newhouse, 74 F. App'x 152, 153 (2d Cir. 2003).

8         The Court has determined that genuine issues of

9    material fact exist as to whether Mr. Walia individually

10   adequately participated in or adequately benefitted from the

11   $1.25 million payment that was made to Niknim.  So summary

12   judgment is not granted on that portion.

13        The trustee has also asserted that defendants

14   Walia and Niknim were alter egos of each other and should be

15   held jointly severally liable on an alter-ego veil piercing

16   analysis.  New York law is clear that alter ego liability

17   exists when a parent or owner uses the corporate form to

18   achieve fraud for when the corporation has been so dominated

19   by an individual or another corporation, that separate

20   identity has been so disregarded that -- excuse me, that its

21   separate identity should be disregarded.  See City of Almaty

22   v. Ablyazov, 2019 U.S. Dist. LEXIS 55183, *14 (Bankr.

23   S.D.N.Y. 2019).  Courts consider factors such as whether or

24   not the owner of the corporation has abused the privilege of

25   doing business in corporate form, whether there has been a

1  failure to adhere to corporate formalities, inadequate

2  capitalization, comingling of assets, or use of corporate

3  funds for personal use.  See East Hampton Union Free School

4  District v. Sandpebble Builders, 66 A.D.3d 122, 127.

5         The Court is not prepared to conclude that the

6  trustee has met his burden of proof as a matter of law on

7  alter ego liability of Mr. Walia in connection with the

8  $1.52 million transaction with Niknim.

9         That said, the Court has found for Rule 56(g)

10  purposes certain alter ego facts to be undisputed and

11  therefore found for purposes of trial.  Those are Niknim was

12  incorporated in 2015 and at all times had a single employee,

13  officer, and shareholder, Mr. Walia.  Niknim was formed to

14  manage Walia's consulting work, his personal investments,

15  and his family trust.  Niknim was paid by the Debtor as a

16  personal accommodation to Mr. Walia for tax purposes.

17         Walia was receiving money from Orion in 2017,

18  which he would deposit at his convenience either into his

19  personal checking account or an account of Niknim.

20         In 2016 and 2017, Walia would deposit monies from

21  his other investments, his family trust and his wife's

22  account into Niknim bank account.  Walia used the Niknim

23  account to pay personal expenses of his such as pool

24  maintenance, purchasing suits, salon treatments, voice

25  lessons, homeowner dues, and car payments.  Niknim followed

1   and observed no corporate formalities and maintained no

2   resolutions or shareholder minutes.  Niknim was initially

3   capitalized with one or two-thousand dollars.  So even

4   though the Court has not found as a matter of law alter ego,

5   those facts are established for purposes of trial.

6          I'll turn briefly now to the defendant's partial

7   summary judgement motion.  As stated near the outset, it's

8   essentially arguing that the trustee lacks creditor standing

9   under Section 544 to invoke the New York DCL provisions.

10         The rights available through 541(b) of the

11  Bankruptcy Code are limited to those of an existing

12  unsecured creditor and are derivative of the rights of an

13  actual unsecured creditor.  See Lippe v. Bairnco Corp., 225

14  B.R. 846, 852 (S.D.N.Y. 1998).

15         Creditors seeking recovery through Section 544(b)

16  can only attack transfers to the extent a creditor with an

17  allowable claim could do so under New York law.  Here, it's

18  clear and undisputed that the trustee has adequate standing

19  to utilize Section 544(b) and thereby use the rights of

20  creditors under New York DCL Law given the existence of

21  unsatisfied judgements at the time of each of the two

22  transfers.

23         In addition, the Trustee has noted in its summary

24  judgment pleadings the existence of over $100 million of

25  unsecured claimants that existed at the time of each of the

1    transfers.  So the request for summary judgment of the

2    defendants is also denied.

3            I'm going to direct, Mr. Nolan, that you and Mr.

4    Rosen and Mr. Scheiman work on a form of order.  It simply

5    needs to recite granting the relief and denying the relief

6    as set out on the record today.  It doesn't need to be a

7    significant restating of the why reasons.  The why reasons

8    are all part of the record of an order granting the summary

9    judgment relief that was granting and denying all remaining

10   relief.  As I stated, I am directing the parties to return

11   to mediation.  I know that you all went, didn't settle.

12   Hopefully with the resolution, at least partial resolution

13   of some of the issues today, the parties can engage in a

14   more meaningful effort to resolve the claims for which

15   liability has been determined and those that remain.

16           I'm also going to set a trial down to start July

17   24th.  I'll set my pretrial requirements.  While that's only

18   90 days from today but also several years from when the

19   litigation started, I think you all generally know what

20   you're going to bring to the trial.  So there's not a lot of

21   reinventing of wheels that need to be done.  I expect I'll

22   see the same declarations and probably not a whole lot more,

23   but I'll get to observe witness testimony at least through

24   cross-examination and make the necessary credibility

25   assessments that I need to make to close the gap on the

1    issues that the Court was not prepared to make dispositive

2    findings as a matter of law today.

3          All right?  Anything else we need to address today

4    then on this adversary proceeding?

5          UNIDENTIFIED SPEAKER:  I guess just a couple

6    points of clarification, Your Honor.  Do we want to set a

7    date -- the Court is setting a date by mediation in like the

8    next 30 days?

9          THE COURT:  Thank you.  So the Court's

10   anticipation was within 30 days from now you would go back

11   to the mediator.  I don't remember who you all used before.

12   You can go back to him or her, you can start over with

13   someone different.  It seems to be more cost-effective and

14   time-efficient to go back to who you all used before, but I

15   will leave that to the parties.

16          I'm envisioning that as something that can be done

17   in the next 30 days so that you essentially have -- it's

18   three chunks of 30 days.  You've got 30 days to try to

19   settle it, 30 days to prepare for whatever else you need to

20   submit for pretrial purposes, and then 30 days to prepare

21   for the trial.  Those are somewhat permeable deadlines, but

22   I think that give you all time to focus on settlement before

23   refocusing on the trial.

24          UNIDENTIFIED SPEAKER:  Okay.  And as far as trial,

25   Your Honor, are you in Brooklyn now?

1        THE COURT:  I am in Central Islip.

2        UNIDENTIFIED SPEAKER:  Okay.  So we have the

3   opportunity to be present, or are we doing it by Zoom or...

4        THE COURT:  Trial will be in-person under judicial

5   conference protocol since we have exited the Zoom -- exited

6   the COVID period.  Because I anticipate I'm going to be

7   taking live testimony, that would be taken live and in-

8   person.  So the witnesses will need to be here in my

9   courtroom.  I will use my ongoing protocol that I hold my

10  trials in Central Islip and I hold my settlement conference

11  in Brooklyn if that's of any help to you, although July on

12  Long Island tends to be a very beautiful time of year I am

13  told.

14       UNIDENTIFIED SPEAKER:  You're told.  All right.

15       THE COURT:  Some of you may be on your way to or

16  from other summer residences that you maintain, borrow, or

17  lease out further east from the courthouse.  So it's a

18  beautiful time of year on Long Island and not so bad in

19  Central Islip.

20       UNIDENTIFIED SPEAKER:  It's a beautiful time to be

21  there, Judge.

22       THE COURT:  And I'll set aside adequate time to

23  get the case tried.  We're holding July 24th and July 25th,

24  but I gave the 24th, part of that morning to the other

25  adversary proceeding.

Page 46

1          UNIDENTIFIED SPEAKER:  Okay.  Judge, I just want

2     to say thank you to you and your chambers for the many, many

3     accommodations in terms of the adjournments of the hearings

4     on the motion.  So thank you.

5          UNIDENTIFIED SPEAKER:  I would like to add my

6     thanks also, Your Honor.  I appreciate it very much.  And I

7     have nothing further to add.

8          THE COURT:  Well, I know you all prefer hearing

9     yourselves argue than me rule, but I know we had teed this

10    up for summary judgment arguments.  But again, given the

11    delays that have just happened in the adversary proceeding

12    and my desire for it no longer to sit without resolution,

13    you'll still have time to practice your well-honed skills in

14    my courtroom examining witnesses as opposed to arguing to

15    that little dot on your computers that constitutes a camera.

16    So you'll have plenty of time to mix it up live out here

17    unless you take it out of my hands and resolve it.  All

18    right?

19         UNIDENTIFIED SPEAKER:  Well, we'll certainly try

20    to, Your Honor.

21         THE COURT:  All right.  So then we'll be adjourned

22    -- yes.

23         UNIDENTIFIED SPEAKER:  Thank you very much.

24         THE COURT:  Thank you all.  (indiscernible) we'll

25    go off the record.  Thank you.

Page 47

1          (Whereupon these proceedings were concluded)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1                           I N D E X

2

3                           RULINGS

4                                        Page        Line

5    Trustee's Motion for Summary Judgment

6    on First Transfer Denied                8          2

7

8    Trustee's Motion for Summary Judgment

9    on Second Transfer Granted              8          5

10

11   Defendant's Motion for Summary

12   Judgement Denied                       25          12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

1                    C E R T I F I C A T I O N

2

3        I, Rita Weltsch, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Rita Weltsch

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 25, 2024

| **&** |
| --- |
| **&**   4:3,10 7:3 10:15 |

| **0** |
| --- |
| **08052**   7:20 |

| **1** |
| --- |

**1**   28:22 34:21
**1,520,000**
   24:25 25:21
   33:18 34:1
**1.25**   40:11
**1.3**   33:8
**1.35**   28:21
**1.4**   33:8
**1.52**   38:24
   39:18,23 41:8
**1.6**   30:15 31:1
   31:9
**1.824**   29:2
**1.9**   28:24
**10**   2:6
**10.8**   27:20 28:7
   29:6 38:13
**100**   10:9 42:24
**1000**   10:23
**10017**   4:6,13
**10022**   4:20
**10062**   13:20
**10063**   13:22
**113**   22:8
**11501**   49:23
**11722**   2:4
**11754**   5:4
**11:29**   2:7
**12**   48:12

**12.8**   27:19 28:9
**12151**   49:7
**122**   41:4
**127**   41:4
**134**   28:14
**135**   22:9
**14**   40:22
**141-142**   22:9
**15**   24:17 30:8
**15173**   35:11
**152**   40:7
**153**   40:7
**157**   8:3 23:22
**1574**   19:14
**1582-1583**
   19:14
**16**   13:16 35:12
**160-09**   36:14
**1600**   4:19
**17**   35:6
**18**   9:7
**18-71748**   1:3
**192,000**   28:17
**194,185**   10:20
**1983**   19:14
**1998**   42:14

| **2** |
| --- |

**2**   8:3 23:22
   27:23 28:4,17
   29:8 32:6
   38:14 48:6
**2,500,000**   31:3
**2,546,000**
   28:23
**2.2**   29:7
**2.35**   28:21

**2.5**   24:16 25:4
   25:19 30:9,19
   30:24 31:14,23
   31:25 32:1,8
   39:12
**20**   21:4
**20-08049**   1:9
   6:22 23:18
**20-08052**   6:23
   7:23
**200,000**   11:23
   12:18 20:2
   35:14
**2002**   35:11,12
**2003**   40:7
**2008**   19:9 38:4
   40:6
**2013**   10:1
   18:21,22
**2015**   9:21
   10:18 26:16
   27:10 29:9
   30:1 31:17,21
   35:6,7,15 39:3
   41:12
**2016**   9:21
   10:25 11:6
   24:17 25:20
   30:8 31:22
   41:20
**2017**   11:2,22
   12:3,17 13:1,9
   13:10 14:2
   22:1 25:1,22
   32:13,21 33:18
   33:25 41:17,20

**2018**   13:16,19
   30:5
**2019**   40:22,23
**2020**   13:25
**2022**   14:10
**2023**   15:23,23
**2024**   2:6 26:1
   49:25
**204**   29:6
**2056**   24:8
**2164268**   15:23
**22**   15:23
**225**   42:13
**24th**   11:22
   12:3 23:3 26:4
   43:17 45:23,24
**25**   5:3 12:9
   14:2 22:1
   36:14 48:12
   49:25
**250,000**   8:19
   8:22,25 12:5,7
   12:10,18 13:1
   13:4,11 14:1
   17:17 19:21
**25th**   45:23
**26**   26:20
**27**   27:4
**272**   22:2,5
**273**   21:12,23
   34:21,24 35:9
   35:19,21
**274**   35:22
**275**   35:22
**276**   18:16,24
   37:16

| | | | |
|---|---|---|---|
| **28**  8:3 23:22 | **541**  42:10 | **784**  17:14 | **accommodat...** |
| **28th**  13:1 | **544**  25:14 42:9 | **8** | 41:16 |
| **290**  2:3 | 42:15,19 | **8**  48:6,9 | **accommodat...** |
| **2d**  19:14 40:7 | **548**  18:13,23 | **8-20-08052** | 46:3 |
| **3** | 34:19,21 37:11 | 1:18 | **accordance** |
| **3**  29:15 | **550**  22:16,16 | **803**  17:4 | 24:7 30:15 |
| **3.5**  32:4 | 22:18 | **846**  42:14 | **account**  10:14 |
| **30**  44:8,10,17 | **55183**  40:22 | **852**  42:14 | 12:5,8,11,12 |
| 44:18,18,19,20 | **56**  8:12 22:23 | **88**  36:2 | 13:2,3,11 |
| **300**  49:22 | 34:15 41:9 | **8:39**  12:6 | 16:12,14,17 |
| **300,000**  10:12 | **570**  4:19 | **9** | 17:23,25 18:6 |
| **301**  36:14 | **598**  40:6 | **9.8**  29:11,14 | 21:4 24:18,19 |
| **303**  36:14 | **6** | **90**  43:18 | 24:19 25:2,2,3 |
| **30th**  11:2 | **6**  17:4 | **901**  15:8,10 | 26:15 29:12 |
| **311**  40:6 | **6.8**  29:14,23 | 16:1 | 30:9 31:12 |
| **330**  49:21 | **60**  33:15 | **95**  15:24 | 32:8,9,9 33:19 |
| **34th**  4:5 | **613**  40:6 | **974**  17:15 | 33:20 38:20 |
| **35**  27:24 | **62**  33:16 | **98**  15:24 | 41:19,19,22,22 |
| **362**  17:15 | **64**  30:16 | **9th**  10:25 | 41:23 |
| **37**  28:1 | **646**  19:8 38:3 | **a** | **accurate**  49:4 |
| **394**  19:8 38:3 | **658**  19:8 | **a.d.2d**  36:2 | **achieve**  40:18 |
| **398**  17:14 | **658-653**  38:3 | **a.d.3d**  22:9 | **acquila**  16:17 |
| **4** | **66**  33:16 41:4 | 36:14 41:4 | **acquire**  10:9 |
| **4**  10:3,8,10 | **68**  33:16 | **ability**  36:10 | 11:24 26:17 |
| 11:12 15:23 | **69**  33:16 | **ablyazov**  40:22 | **acquired**  27:11 |
| **421**  17:14 | **691-692**  17:15 | **abruzzi**  1:24 | 28:19 29:1,1 |
| **425**  36:2 | **7** | 5:2 6:24 7:13 | **acquirer**  30:19 |
| **445**  5:3 | **703**  16:25 | 7:16,18,20,23 | **acquisition** |
| **46**  31:13 | **7052**  8:1 24:6 | 9:15,19 12:6 | 34:6 |
| **49**  13:22 31:13 | **7056**  8:14 24:9 | 12:11 13:2,3 | **acquisitions** |
| **492375**  18:21 | **722**  19:13 | 13:19 14:2 | 9:11 26:8 |
| **4971**  18:2 | **74**  40:7 | **absence**  36:12 | **action**  15:20 |
| **5** | **747**  4:12 | **abstract**  28:16 | 21:11,14 23:20 |
| **5**  18:21 48:9 | **77,000**  11:4 | **abused**  40:24 | 35:1,2,4 |
| **51447**  35:6 | **780**  4:5 | **accept**  16:2 | **activity**  9:19 |
| | | | **actual**  18:14,18 |
| | | | 19:4,7,11 |

Case 8-20-08049-ast   Doc 148   Filed 08/08/24   Entered 08/08/24 14:49:43

21:19 28:15,25
30:18 34:20,23
35:4,24 36:18
37:13,17,22
38:2,5,7 42:13
**add** 27:23 46:5
46:7
**added** 29:8
**addition** 21:1
42:23
**additionally**
10:11
**address** 8:14
24:15 44:3
**addresses** 15:9
**adequate** 16:2
16:9 19:20
20:11 42:18
45:22
**adequately**
18:19 40:10,10
**adhere** 41:1
**adjourned**
46:21
**adjournments**
46:3
**administered**
13:18
**administration**
17:12
**admissibility**
17:8
**admit** 13:12
**adv** 1:9,18
**advantage**
26:25

**adversary** 7:20
8:18 9:6,8
13:24 15:17
22:23 23:18,20
23:25 34:17
36:7 44:4
45:25 46:11
**adverse** 11:3
**advised** 12:22
**advisor's** 28:16
**affidavit** 15:6
15:12,25 16:1
16:9 30:16
**affidavits** 14:8
15:2,3 23:11
**affirmed** 15:24
16:19
**agent** 31:4
**aggregated**
9:10 26:7
**agree** 19:15
**agreed** 27:20
28:5 29:5
32:14 38:13
**agreement**
27:12 30:13,25
31:5,8,12
32:14,21 36:23
38:18,19
**ahead** 15:1
**ahms** 26:24
28:20 29:2
**al** 1:6,12,21
6:23,24
**alan** 2:22 6:16
**alexis** 6:13,15

**alleged** 30:14
35:21
**allegedly** 10:5
**allow** 32:5
**allowable**
42:17
**allows** 18:13
34:21 37:12
**allrad** 32:16,18
33:21,23 34:3
34:7 38:23
**almaty** 40:21
**alpha** 15:22
16:18
**alter** 40:14,15
40:16 41:7,10
42:4
**amount** 10:20
20:18 31:3
**amounts** 17:24
**analogous**
37:20
**analysis** 18:20
36:7 39:8
40:16
**analyzed** 37:21
**anecdotally**
15:19
**answer** 14:5
28:8,10
**antecedent**
12:16 13:8
31:16,17,23
34:1,5 37:7,8
**anthony** 5:6
7:15

**anticipate** 45:6
**anticipates**
15:3
**anticipation**
44:10
**apa** 27:13,15
27:16,17,18
28:4 30:16,19
31:1,6,7 38:17
**apologies**
14:13 24:3
**app'x** 40:7
**apparent** 9:7
**apparently**
29:6
**appear** 15:3
20:4,15
**appearance**
6:19
**appearances**
6:25
**appearing** 6:20
7:8,19
**appointed**
17:11
**appreciate**
46:6
**approached**
10:3
**approved** 11:9
33:15
**approximately**
10:11
**april** 2:6 24:17
25:19 30:7
49:25

aquila 15:22
aren't 16:25
arguably 24:21
argue 46:9
arguing 42:8
46:14
arguments
46:10
arises 19:5
arising 15:17
17:12
arista 17:13
arrangement
30:17,22
arvind 1:15
4:11 6:23
26:22
aside 21:16
22:21 45:22
asked 10:3
11:23 12:18
28:5
asserted 11:10
19:24 40:13
asserting 13:22
assertion 31:14
asserts 19:22
32:1
assessments
43:25
asset 24:22
27:12 28:20
29:2,3,4 30:13
38:17
assets 27:11,20
28:19,21,25
29:5 31:24

33:11,22 34:5
37:4 40:4 41:2
assigned 10:22
assistant 12:22
associated
10:12
associates 4:10
7:3
association
19:16
ast 1:3,9,18
attached 17:5
31:6
attack 35:24
42:16
attention 28:3
attorney 5:2
18:3
attorneys 4:4
4:11,18
aug 35:12
authenticate
16:10,16
authentication
15:9,10,21
16:8
authority
11:20
available 31:5
42:10
ave 4:19
avenue 4:5,12
36:14
avoid 34:22
37:12
avoided 18:23
22:17,19 36:17

39:12
awarded 14:20
aware 38:15

**b**

b 2:21 8:3
20:23 21:25
23:22 34:21
42:10,15,19
b.r. 19:8 38:3
42:14
back 12:25
16:17 20:17
23:17 26:12
39:3 44:10,12
44:14
background
29:19
backup 6:16
bad 45:18
badges 19:12
19:15 38:8
bairnco 42:13
balance 30:14
33:10
bank 13:10
16:7,12,14,17
24:18,19 25:3
26:15 29:9
33:19 41:22
bankr 18:22
19:9 38:3
40:22
bankruptcy
1:1 2:2,23
10:22,24 13:16
17:19,20,20,21
18:12,24 22:16

24:6,9 25:15
34:20,21 35:16
37:11 39:13
42:11
based 16:8
20:7,22 32:2
basich 12:22
12:24
basis 16:2,9
beautiful 45:12
45:18,20
behalf 7:8,20
7:21 9:20
11:21 27:15,17
35:17
believed 10:11
believes 36:9
belonged 8:21
14:3 37:2
beneficial 18:4
beneficiaries
40:5
benefit 13:6,12
20:15
benefitted
40:10
better 6:7
beyond 36:10
billing 26:17
27:1
board 11:8
33:14
books 12:15
13:8 31:15,18
31:19,22 34:1
34:4

**borrow** 45:16
**briefly** 42:6
**bring** 43:20
**broadhollow**
5:3
**brog** 10:15,16
11:20 12:4,9
17:23 18:6
25:2 29:13
33:19
**broker** 28:17
**brooklyn**
44:25 45:11
**builders** 41:4
**burden** 15:10
19:6 41:6
**business** 9:15
10:2 11:18
15:13 17:4,5,6
26:24 28:16,20
40:25
**buyer** 30:23
32:23
**buyers** 31:3

**c**

**c** 4:1 6:1 49:1,1
**cadle** 35:11
40:7
**calendar** 12:17
**call** 27:2,13
**called** 6:18
11:2 13:4
29:16 32:16
33:10,13
**calls** 31:1
**camera** 46:15

**capacities** 30:5
**capacity** 1:11
1:20 18:3
**capital** 33:9
36:9
**capitalization**
41:2
**capitalized**
42:3
**car** 41:25
**care** 12:7 27:7
38:16
**case** 1:3,9,18
6:18,22,23
8:12 10:22
14:5 15:18
17:12,21 24:12
26:3 45:23
**caselaw** 15:9
**cases** 13:17
17:10,10
**cause** 21:11
**causes** 23:20
**center** 30:12
**central** 2:4
14:16 45:1,10
45:19
**ceo** 30:6
**certain** 3:1
11:18,25 19:12
20:1 23:19
31:9,11 33:10
34:13 41:10
**certainly** 21:6
46:19
**certified** 49:3

**cfo** 26:23
**chambers** 46:2
**change** 28:9,13
**charged** 20:5
**chase** 24:19,19
25:3 33:20
**checking** 13:3
26:14 41:19
**chevron** 17:14
**chi** 10:5,5,8,11
**chief** 6:16
26:16 30:1,3
**chronology**
19:17 21:7
**cht** 11:1,4,7,15
12:12 13:21,23
24:18 26:14,14
26:17 32:9
39:5
**chunks** 44:18
**cir** 19:14 40:7
**circuit** 15:22
15:24 19:11
**circuits** 16:19
**circumstantial**
16:15 19:12
**cit** 36:13
**city** 18:21
40:21
**civil** 8:13 24:8
**claim** 10:22,23
13:20,21 21:20
22:22 24:25
25:21 35:17
37:10 42:17
**claimant** 5:2

**claimants**
42:25
**claimed** 11:19
15:16
**claims** 9:4 25:9
25:13 26:4
43:14
**clarification**
44:6
**clear** 6:20 18:2
19:7 20:3 21:1
21:13 38:5,25
39:22 40:16
42:18
**clearly** 6:18
16:15 31:9
39:5
**clerk** 6:13,15
**client** 18:3,4
**close** 9:23
18:21 19:16
20:12,12 28:11
29:13 32:6
38:25 43:25
**closed** 13:10
29:25 33:17
**closeout** 37:20
**closing** 12:13
16:7,16 29:9
31:4
**code** 18:12,24
22:16 25:15
34:20,21 37:11
39:13 42:11
**collateral** 20:5
**collectively**
9:18

| | | | |
|---|---|---|---|
| comingling 41:2 | 33:4,23 34:3 36:21 37:3 41:7 | contained 16:6 16:22 | counter 5:2 |
| commenced 10:1 13:24 | consider 40:23 | continued 30:4 | counterclaim 14:5 |
| commerce 35:6 | consideration 19:16,21,23 20:9,10 21:14 | control 18:5 40:1 | country 49:21 |
| companies 9:10 26:7 | | controlled 26:22 29:16 | couple 39:19 44:5 |
| company 9:16 26:18,21 30:2 31:15 32:15,17 35:11 | 21:18,21 22:2 22:4,4,5 34:25 35:20,23 36:4 36:11 37:9 38:12 39:17 | 32:25 37:6 | court 1:1 2:2 6:3,5,9,12,14 6:25 7:12,17 7:22 8:4,6,10 8:14,16,24 9:1 10:19 11:25 12:14 13:16 14:10,16,22,24 15:2,3,20 16:2 17:17 18:8,20 19:19 20:7,22 21:10,20 22:3 22:6,12,14 23:1,4,16,17 23:21,24 24:10 25:17 29:18 34:12 35:18 36:15 37:19 38:9,12 39:8 39:10 40:8 41:5,9 42:4 44:1,7,9 45:1,4 45:15,22 46:8 46:21,24 |
| | | controlling 9:24 | |
| | | convenience 41:18 | |
| completed 33:5 33:6,7 | | conveyance 18:17 21:13,17 34:25 35:23 37:17 40:5 | |
| computers 46:15 | considered 9:21 21:8 36:1 38:9 | | |
| concede 32:11 | | | |
| concern 28:13 | consistent 23:5 | | |
| concerned 38:23 | consolidated 9:9 26:7 | conveyed 37:4 | |
| concerning 12:1 21:6 31:7 | constellation 10:4,17 12:12 26:13 29:11 30:4,7,8 | convincing 19:8 38:5 | |
| | | core 8:2 23:21 | |
| concerns 30:14 | | corp 17:14 18:21 30:3 42:13 | |
| conclude 41:5 | constitute 15:15 19:12 | | |
| concluded 47:1 | | corporate 27:8 40:17,25 41:1 41:2 42:1 | |
| conclusions 8:2 24:7 29:20 | constitutes 46:15 | | |
| condition 19:17 20:20,25 39:7 | constructive 25:11 36:1,18 | corporation 26:19 27:3 37:3 40:18,19 40:24 | |
| | constructively 21:12,16 36:3 36:12 | | |
| conditions 31:7,9 36:5 | | | |
| | construed 17:7 | correct 28:8 | court's 24:2,6 29:20 34:10 44:9 |
| conduct 18:20 | consulting 27:7 41:14 | correspondin... 33:20 | |
| conference 6:6 7:23 45:5,10 | | cost 44:13 | courthouse 45:17 |
| | contagious 6:14 | counsel 7:3,5 7:12 15:19 | |
| confirmed 12:9 | | | courtroom 6:16 45:9 |
| connection 21:19 24:21,22 | | | |

| | | | |
|---|---|---|---|
| 46:14 | dated 32:21 | debtors 8:21 | 15:7 16:6,20 |
| courts 19:11 | day 12:3,6,9 | 9:5,22,25 10:2 | 18:9 20:1 22:7 |
| 38:8 40:23 | 13:3,21 32:7 | 10:24 11:3,11 | 24:15 25:11 |
| court's 7:25 | days 43:18 | 13:13,14 14:3 | 34:2 39:20 |
| 8:1 14:11,13 | 44:8,10,17,18 | 17:23 18:1,5 | 40:13 43:2 |
| 16:18 23:2 | 44:18,19,20 | 20:23 24:18 | defendant's |
| cover 10:12 | dcl 18:16,24 | 26:6,10 31:24 | 8:7 14:6 17:2 |
| covid 45:6 | 21:12 22:2 | 32:24 33:24,25 | 48:11 |
| craig 21:25 | 25:16 34:21,24 | 34:4,6 37:9 | deficiencies |
| created 11:15 | 35:9,19,21 | 38:24 39:4,5 | 33:17 |
| 13:5,6 | 37:16 39:14 | debtor's 12:5 | defined 24:23 |
| creator 16:14 | 42:9,20 | 12:11,15 13:8 | defraud 18:15 |
| credibility | deadlines | 13:17 | 18:18 19:4 |
| 43:24 | 44:21 | debts 33:8 | 37:14,18 |
| creditor 19:4 | deal 12:20 | december | defrauded |
| 35:18,24 37:14 | 27:24,25 28:11 | 10:18 31:17 | 38:2 |
| 38:3 40:2 42:8 | 28:15 29:25 | 35:14 | delay 18:14,18 |
| 42:12,13,16 | debt 12:16 | declaration | 19:4 37:14,18 |
| creditors 18:19 | 13:8 31:16,17 | 15:7 16:6,11 | 38:2 |
| 25:16 36:1 | 31:18,20,23 | 16:23 | delays 46:11 |
| 37:18 42:15,20 | 34:1,2,5 36:10 | declarations | delivered 31:3 |
| criterions 11:2 | 37:7,8 | 15:12,14 16:21 | denied 22:11 |
| cross 8:7 9:2 | debtor 1:7 8:22 | 16:24 23:11 | 25:23,24 43:2 |
| 14:7,21 43:24 | 10:5,6,16 11:1 | 43:22 | 48:6,12 |
| cto 30:6 | 13:5 16:5 | defendant | deny 9:2 |
| custody 18:5 | 18:15,24 19:7 | 13:19,21 15:11 | denying 14:24 |
| **d** | 20:16,20 21:14 | 19:23 21:14 | 23:7 25:17 |
| d 6:1 48:1 | 24:18 26:13 | 24:20 26:22 | 43:5,9 |
| damages 35:2 | 27:10,18 28:20 | 35:1,4 37:1 | deposit 41:18 |
| 40:3 | 29:11,16 30:8 | 39:15,25 | 41:20 |
| date 11:5 19:2 | 31:16 32:7 | defendant's | deposited |
| 20:24,24,24 | 33:22 35:5,10 | 25:23 42:6 | 10:14 |
| 26:1 32:3,12 | 37:2,5,14,23 | defendants | deposition |
| 34:8,23 37:13 | 39:18 41:15 | 1:16,25 7:3,6 | 28:2,14 |
| 37:25 44:7,7 | debtor's 25:1 | 7:16 8:15,20 | deputy 6:16 |
| 49:25 | 30:2 31:19,22 | 9:19 10:8 | derivative |
| | 33:14,18 | 12:16 13:11,13 | 42:12 |

describe 24:23
described
13:17
designated
18:4 32:15
desire 46:12
despite 29:4
31:14 33:17
36:22
detail 24:23
determination
8:16
determinations
34:10
determine
21:10 23:21
determined
8:10 9:1 15:20
17:18 19:19
34:12 36:16
39:10 40:8
43:15
didn't 6:10
20:18
different 44:13
difficult 19:10
diligence 33:2
33:3,4 38:21
direct 18:6
19:10 25:25
32:16 36:25
43:3
directed 12:4
12:24,25
directing 26:5
43:10

direction 16:11
24:20 32:10
directors 9:17
11:8 33:14
disagreement
22:15
discharge 33:8
disclosure
38:20
discussed
21:19
dismissal
25:13
disposition
18:7
dispositive
44:1
dispute 8:11,17
14:19 18:8
19:1,5 20:8
30:12 34:14
disputed 34:13
disputes 19:20
disregarded
40:20,21
dist 35:11
40:22
district 1:2
10:18,19,21
15:20 16:18
21:2 23:23
35:6,14 41:4
docket 30:16
docketed 21:15
35:2,8
documents
11:19 15:22

16:3,10 38:21
doesn't 20:4,14
doing 28:4
40:25 45:3
dollars 11:10
42:3
dominated
40:18
donziger 17:14
don't 23:8
dot 46:15
due 8:4 17:8
33:2,4 36:21
38:21
dues 41:25

e

e 2:21,21 4:1,1
6:1,1 48:1 49:1
e.d.n.y. 15:23
18:22 19:9
38:4
earlier 30:10
earnout 33:8
east 41:3 45:17
eastern 1:2
23:23
ebitda 29:7
ecro 2:25
edith 15:6
effect 23:23
effective 44:13
efficient 44:14
effort 43:14
ego 40:15,16
41:7,10 42:4
egos 40:14

ehrenberg 1:11
1:20 4:4 6:22
6:24 7:8,10,11
7:18,23 15:23
eight 34:7
either 14:20
16:22 18:23
25:10 34:2
36:17 39:13
40:4 41:18
elaborate 26:3
elements 21:22
elena 13:7
email 32:2,7
emailed 12:6
emails 15:12
employee 27:5
41:12
employees 9:17
ended 13:15
engage 36:8
43:13
engaged 36:8
entered 10:19
11:3 35:13
enterprise 9:10
26:7
entire 20:7
entities 9:5,9
11:1,14,16
13:15,16
entity 8:23
9:15 10:5,6,16
13:4,5,6 18:15
20:19 26:12
27:10 28:20
29:16 32:15,19

32:23,25 33:22
37:5,5
**envisioning**
44:16
**equity** 11:15
**equivalent**
20:18
**escrow** 30:17
31:4,5,8,10,12
31:12 36:22
38:19,20
**escrowed**
30:15
**essentially**
25:12 38:16
42:8 44:17
**establish** 21:17
38:4
**established**
8:12 31:10,13
38:18 42:5
**establishing**
19:6
**estate** 17:17,19
17:20,20 18:10
39:18
**et** 1:6,12,21
6:23,24
**eugene** 4:17,22
7:4,5
**event** 12:3
**events** 19:17
21:7 31:11
**evidence** 12:15
15:8 16:15
17:10 19:8,10
19:13 20:22

22:12 28:15
29:10 31:23
34:1,4 38:6
**evidentiary** 8:8
8:14 14:8 15:1
15:18,25 23:9
23:10
**examination**
43:24
**examining**
46:14
**exception** 17:4
**exceptions**
17:7
**excess** 35:14
**exchange** 20:2
38:24
**excuse** 6:13
37:11,23 40:20
**executed** 27:12
27:15,17 31:12
**executive**
26:16 30:1
**exhibit** 31:6
**exist** 11:17
21:6 34:15
36:16 39:11
40:9
**existed** 17:21
42:25
**existence** 42:20
42:24
**existing** 42:11
**exists** 14:17
20:25 40:17
**exited** 45:5,5

**expect** 43:21
**expenses** 10:12
41:23
**expert** 16:21
16:25 20:22
21:24
**explain** 12:17
**extensive** 25:6
25:6 29:18
**extent** 8:15
29:19 30:20
42:16

---

**f**

**f** 2:21 5:6 40:7
49:1
**f.2d** 19:13
**f.4th** 15:24
**f.supp.2d**
17:14,15
**f.supp.3d** 40:6
**face** 9:8
**fact** 12:10
14:18,19 16:24
19:20 20:8
21:9,20 22:3,6
23:2 27:24
28:1,2 33:15
34:3 36:16,21
36:25 39:11,16
40:9
**factors** 40:23
**facts** 8:2,10,17
22:24 24:7,9
25:6,8 31:13
34:13,14,15
41:10 42:5

**factual** 19:5
29:19
**fails** 35:5
**failure** 41:1
**fair** 21:13,18
21:21 22:2,5
34:25 35:20,23
36:4,11 39:17
**fairly** 15:10
**faith** 22:7
35:22 36:12
**fall** 30:5
**family** 27:8
38:25 41:15,21
**far** 11:17 13:17
17:2 20:20
30:25 37:10
38:11,23,25
44:24
**favor** 17:7
**fbi** 21:4
**feb** 15:23
**federal** 2:3
8:13 15:8 24:8
33:12 35:18
**fees** 27:24
28:11,16,16
**fell** 12:21
**fester** 24:2
**fictitious** 11:14
**fiduciary** 18:1
18:3
**file** 32:6
**filed** 10:22,24
10:25 13:20,21
14:4 35:17

| | | | |
|---|---|---|---|
| filing 13:15 | forwarded 13:2 | **g** | 35:22 36:12 |
| final 35:13 | found 21:20 | g 6:1 8:12 | granted 40:12 48:9 |
| financial 19:17 20:20 39:7 | 22:3,6 37:23 41:9,11 42:4 | 22:23 24:8 34:15 41:9 | granting 25:20 43:5,8,9 |
| find 19:10 | frank 15:7 | gap 43:25 | greene 10:15 12:4,7 |
| findings 8:1 24:6 44:2 | frankel 22:8 | gazillion 11:10 | group 17:14 36:14 |
| finds 18:8 | fraud 19:12,15 36:1 38:7,9 | general 17:8 | guess 44:5 |
| firm 7:5 25:2 | 40:18 | generally 19:14 43:19 | guys 6:10 |
| first 6:25 18:12 24:16 25:5,9 | fraudulent 18:19 19:11,13 | genovese 10:15 | **h** |
| 25:18 29:17 30:10 34:19 | 21:12,16,19 25:10,11 29:21 | genuine 8:11 8:17 14:17,18 | h 8:3 40:5 |
| 36:17,20 38:11 39:6,11 48:6 | 32:2 34:20,24 35:3 36:3,12 | 18:8 19:1,19 20:8 23:1 | half 6:10 28:24 |
| five 29:6,7 | 36:18,19 37:10 37:22 38:7 | 34:14 36:16,24 39:10,16 40:8 | hampton 41:3 |
| floor 4:5 | 39:13,23 40:3 | girlfriend 13:7 | hands 46:17 |
| florida 9:15 11:25 12:21 | free 41:3 | giuliano 5:1,6 7:14,15 23:6 | happened 46:11 |
| focus 44:22 | friend 9:23 | 23:15 | health 10:17 12:12 29:17 |
| follow 9:2 25:17 | fund 17:25 | give 6:18 15:1 32:4 44:22 | 30:2,7,8 |
| followed 27:8 41:25 | funded 31:11 | given 39:25 42:20 46:10 | healthcare 9:11 10:4 26:9 |
| following 8:10 36:4 | funding 38:19 | gluck 10:15 | 26:13,21 29:12 30:4 32:22 |
| foregoing 49:3 | funds 8:20,21 12:8,11,25 | go 11:9,11 15:1 26:2 44:10,12 | healthcorp 1:6 1:12,21 10:6 |
| forged 11:19 | 14:2 17:18,24 18:1,5,9 20:16 | 44:14 46:25 | hear 6:7,10,18 23:21 |
| form 7:25 23:7 24:5 31:6 | 20:17 30:15,20 31:5 33:18 | going 7:22 15:1 22:22 23:6,17 | hearing 3:1,3 46:8 |
| 40:17,25 43:4 | 37:2,3 41:3 | 25:25 26:1 34:19 39:3 | hearings 6:17 46:3 |
| formalities 27:8 41:1 42:1 | further 12:19 45:17 46:7 | 43:3,16,20 45:6 | hearsay 17:2,3 17:6 |
| formed 27:6 41:13 | future 18:18 37:18 | good 6:2,3,13 6:15 7:2,4,7,10 | held 10:5,14 12:12 13:22 |
| forward 18:12 | | 7:14,15 22:7 | |

17:25 18:2,3
40:15
**help** 45:11
**hennigan** 6:15
**high** 15:11
**highest** 39:4
**highlight** 38:9
**hinder** 18:14
18:18 19:4
37:14,18 38:2
**hold** 14:12
17:23 45:9,10
**holding** 32:19
45:23
**homeowner**
41:25
**hon** 2:22
**honed** 46:13
**honor** 7:4,7,10
7:14,15,19
23:14,15 44:6
44:25 46:6,20
**hopefully**
43:12
**hour** 6:9
**howard** 1:11
1:20 4:4 6:22
6:23 7:8,11

**i**

**identical** 18:20
**identified**
15:13 22:24
**identifying**
13:20
**identity** 40:20
40:21

**immediately**
31:4
**impact** 22:15
**inadequacy**
38:11
**inadequate**
41:1
**inadmissible**
16:21
**include** 8:1
13:16 19:15
26:12 36:20
**included** 28:11
**includes** 24:6
**including** 14:5
15:12 16:10
31:10
**incorporated**
8:13 24:9
41:12
**increase** 31:24
34:5
**incur** 36:10
**incurred** 18:17
**indemnify**
30:20
**independent**
14:22 17:11
**indirectly**
32:16,18
**indiscernible**
37:19 46:24
**individual**
40:19
**individually**
40:9

**inflation** 38:15
**initially** 42:2
**inquiry** 19:18
**insider** 39:5
**insiders** 39:2
**insolvency**
20:25 21:24
**insolvent** 20:23
22:1 35:10
36:5,6
**installed** 30:1
**instructions**
12:24
**intent** 18:14,18
19:4,7,11,13
35:24 36:18
37:13,17 38:2
38:5
**intention** 23:2
**intentional**
25:10 37:10
**intentionally**
29:21 39:12
**interest** 10:6,9
13:22 18:25
20:5 32:20
34:6,22 37:23
**interested**
26:18
**internally** 32:5
**invest** 9:20
10:3
**investing** 10:8
**investment**
10:4,10,13
11:13 13:2,19

**investments**
1:24 5:2 6:24
7:24 9:16 27:7
41:14,21
**investor** 11:10
**invoke** 25:15
42:9
**involves** 24:12
32:13
**involving** 11:7
**iolta** 10:14
12:5,11 17:23
17:25 21:4
25:2,2 29:12
33:19
**ipo** 10:12
**irrelevant** 17:1
**island** 45:12,18
**islip** 2:4 45:1
45:10,19
**issue** 8:24 9:3
13:25 14:17
19:19 21:9
23:4 32:13
35:10,16
**issues** 8:9
14:17,18 23:1
36:16,20,24
39:10,16 40:8
43:13 44:1
**items** 15:15
**it's** 6:14 14:14
**i'll** 9:18 10:4
17:13
**i'm** 6:11 7:10
7:22 15:1
22:22 23:6

**i've** 6:9 20:14
21:24 22:24
23:9

**j**

**jacobs** 19:8
38:3
**jacobson** 21:25
**jamaica** 36:14
**janaminder**
27:14,15
**janitorial**
18:21
**jeff** 7:7,19
**jeffrey** 4:8
**jericho** 27:4
**jisung** 40:5
**john** 7:24 9:13
**joint** 25:6
26:19 27:24
28:1 31:13
33:15
**jointly** 13:17
40:15
**jones** 4:3
**jp** 24:19 25:3
30:9 32:9
33:20
**judge** 2:23 6:2
6:4,16 7:2
45:21 46:1
**judgement**
10:21 11:3,5
14:15,25 21:2
21:15,15 22:1
22:11 24:13,14
25:12,24 29:10
35:2,5,15,18

42:7 48:12
**judgements**
42:21
**judgment** 3:3
8:7,7,23 9:3
10:19,23 13:25
14:6,7,19,21
16:3 23:8
25:18,20 34:11
34:16 35:8,13
35:18 40:12
42:24 43:1,9
46:10 48:5,8
**judicial** 45:4
**juiced** 27:21,22
28:1,18 38:14
**july** 13:19 23:3
26:4 43:16
45:11,23,23
**jump** 26:2
**june** 10:1 13:1
25:1,22 26:1
30:1 32:21
33:18

**k**

**kaiser** 19:13
**kept** 17:9
**kettlepond**
27:4
**kim** 40:5
**knew** 11:17
39:2
**know** 14:11
43:11,19 46:8
46:9
**knowledge**
15:15,21

**known** 14:15
17:3 34:12

**l**

**lack** 19:15
38:11
**lacked** 35:20
**lacks** 25:14
42:8
**laco** 36:2
**landmark**
11:16,21
**large** 11:6
17:24
**law** 4:17 5:1
7:5 8:2 14:20
17:18 18:1
21:13,23 24:7
25:2,15 35:19
40:2,16 41:6
42:4,17,20
44:2
**lawsuit** 10:25
**lazzar** 15:12,14
16:1,20
**lazzara** 15:7
**lease** 11:25
12:2 45:17
**leave** 44:15
**legal** 18:11
34:10 49:20
**legitimate**
11:18 21:8
**leinwald** 10:15
**length** 14:13
14:14 24:3
**lessons** 41:25

**let's** 6:25
**level** 39:4
**lexington** 4:19
11:16
**lexis** 35:6,11
40:22
**liabilities** 33:9
33:11
**liability** 9:16
22:20 39:21,21
40:16 41:7
43:15
**liable** 18:15
37:15 40:15
**lime** 17:13
**limited** 9:16
22:25 42:11
**line** 48:4
**lines** 26:24
**lippe** 42:13
**liquidated** 13:1
**liquidating**
1:11,20 7:9,11
**lisa** 12:22
**listed** 9:6
**litigation** 17:12
43:19
**little** 46:15
**live** 45:7,7
46:16
**llc** 1:24 6:24
10:17 11:2
13:4 16:13
32:16,19
**llp** 4:3
**loan** 11:23
19:24,24 20:5

28:25
long 24:3 28:12
45:12,18
longer 12:21
46:12
look 19:11 31:8
38:8
looking 26:17
lot 43:20,22
lung 35:6
lyman 35:5

**m**

m 1:11,20 6:22
6:23
m&t 16:7,12
24:17 26:15
32:8,8
made 7:25 8:16
8:19,25 10:10
18:17 19:3
20:10 21:3,9
21:13,18,22
22:8 23:9
24:17,18,20,21
24:21 25:1,19
25:21 34:22,25
35:20,22 36:3
37:12,13,17,22
38:1 40:11
main 30:2
maintain 45:16
maintained
26:14 27:9
42:1
maintenance
33:9 41:24

make 6:5 11:9
14:22 17:25
43:24,25 44:1
making 35:1
manage 27:6
41:14
managed 9:17
management
1:15 4:18 9:12
26:10 27:2
32:22
march 10:25
13:16,24 27:10
29:9
material 14:18
14:19 20:8
23:2 34:13,14
36:16,24 39:11
39:16 40:9
matter 1:5
7:16 14:20,25
17:18 21:23
23:3,4 30:22
35:19 41:6
42:4 44:2
matters 14:12
23:1 24:1,2
meaningful
43:14
means 16:4
measuring
20:23
mediation 26:1
26:5 43:11
44:7
mediator 44:11

medical 26:17
27:1
melville 5:4
member 13:22
membership
32:20
memorialized
29:10 32:20
messages 20:1
met 11:8 36:5
41:6
million 10:3,8
10:10 11:13
21:4 24:17
25:4,19 27:19
27:21,23 28:4
28:7,9,18,21
28:21,22,24,24
29:2,6,7,8,11
29:14,14,15,23
30:9,20,24
31:14,24,25
32:1,4,6,8
38:14,14,24
39:12,18,23
40:11 41:8
42:24
mineola 49:23
minutes 27:9
39:19 42:2
mipa 32:21
33:2,5,6,13,17
mitchell 12:4
mix 46:16
money 9:20
10:13 11:24
12:22,23 21:14

35:1 39:25
40:2 41:17
monies 11:20
18:2 41:20
month 27:12
months 34:8
morgan 24:19
25:3 30:9 32:9
33:20
morning 6:2,3
6:13,15 7:2,4,7
7:10,14,15
45:24
motion 8:6,7,8
8:24 14:6,7,23
22:11 24:14
25:12,23 42:7
46:4 48:5,8,11
motions 8:5
9:2 14:7,9,21
14:25 22:10
23:8
moves 18:12
mpia 33:9
multiple 9:5
11:12 13:15
17:24 29:7
33:7
mute 6:21
muted 6:4
myriad 8:14

**n**

n 4:1 6:1 48:1
49:1
name 6:20
10:16 11:18
12:12

names 26:12
narrative 7:25
  24:5
near 42:7
nearly 14:12
  28:17
necessary
  30:23 43:24
need 17:9 23:8
  30:15 43:6,21
  43:25 44:3,19
  45:8
needed 12:21
  27:23
needs 43:5
negotiating
  28:6
negotiations
  33:3
net 28:20 29:2
  29:3 31:24
  34:5
network 32:22
  32:23 33:22
  37:5,7
never 11:20
  27:16 33:5,6,7
  33:12,13,14
new 1:2 2:4 4:6
  4:13,20 9:15
  18:1,16,24
  21:12,13 23:23
  25:16 27:3,4
  34:20,24 35:9
  35:21 37:16
  39:13 40:2,16
  42:9,17,20

newhouse
  35:11 40:7
newly 13:5
niknim 1:15
  4:18 24:20
  25:3,22 27:2,2
  27:6,6,8 30:10
  31:19 32:9
  33:19 37:1,8
  39:15,21,24
  40:1,11,14
  41:8,11,13,15
  41:19,22,22,25
  42:2
nolan 4:8 7:7,7
  7:17,19,19
  23:6,14 43:3
non 8:22 10:5
  10:16 29:16
  33:22 37:4
noncomplian...
  36:22
note 20:4 28:22
  28:24
noted 21:24
  22:14 38:12,17
  42:23
notes 29:18
notice 8:4
november 11:2
  11:6
number 6:22
  6:23 10:23
  13:20
ny 4:6,13,20
  5:4 49:23

o
o 2:21 6:1 49:1
object 16:20
  32:19,21 33:23
  34:3,6
objected 15:7
  16:6
objection 17:2
  17:5
objections 8:15
  15:5,18,25
  17:6
objects 15:11
obligation
  18:17 37:17
obligations
  31:2
observe 43:23
observed 42:1
obviously 17:3
occur 29:9
occurred 17:22
  19:2 32:11
  34:7 37:17,25
  38:20
occurrence
  31:11
october 13:10
offering 16:24
office 4:17
officer 9:24
  26:17 27:5
  30:2,3 39:4
  41:13
officers 9:17
  39:1

okay 44:24
  45:2 46:1
old 49:21
once 6:18
  20:16 22:17
  29:25
ongoing 45:9
opened 16:12
opening 16:7
  16:16
operated 9:9
  9:11 26:22
operating 9:24
  22:7 26:8 27:3
  30:2
opinion 16:18
  16:24 20:22
opportunity
  45:3
opposed 46:14
order 9:3
  11:24 23:5,7
  43:4,8
orders 23:22
orion 1:6,12,21
  7:9 10:6,7,9,12
  10:20 15:18
  22:1 28:6 30:2
  30:6 39:4
  41:17
outlined 20:14
outset 36:15
  42:7
outstanding
  10:23 11:5
  21:2 28:22,24
  28:25 35:16

| | | | |
|---|---|---|---|
| overall 21:7 | 26:16 27:17,23 | pay 20:18 | petrozza's |
| overruled 16:1 | 28:3,6,10 29:5 | 36:10 41:23 | 9:20 13:3 |
| 17:3,6 | 29:16 32:2,15 | payment 8:19 | phone 6:21 |
| oversee 17:11 | 33:1 37:6 39:1 | 30:24 32:6 | phrase 27:21 |
| owed 12:16 | parmar's | 36:21 37:1 | physician 11:1 |
| 13:8 31:15,19 | 38:14 | 40:11 | 11:4 26:10 |
| 31:20 34:2 | part 11:6 16:3 | payments 33:8 | 27:10 37:5 |
| 37:7,8 | 16:4 26:2 32:2 | 41:25 | physicians |
| own 25:7 | 36:13 43:8 | pc 26:25 | 27:18 30:18,21 |
| owned 26:21 | 45:24 | pca 26:25 | 32:22,23 33:22 |
| 32:16,18,25 | partial 24:14 | 28:23 29:3 | 37:7 |
| owner 18:4 | 25:12,23 42:6 | pending 9:4 | piercing 40:15 |
| 40:17,24 | 43:12 | 14:22 24:1 | plaintiff 7:20 |
| ownership | partially 31:2 | percent 10:9 | 7:21 8:6 11:2 |
| 10:6,9 11:15 | participated | 13:22 | 19:22 21:17 |
| 32:18 | 40:3,10 | period 34:9 | 35:3 |
| | particularly | 45:6 | plaintiffs 1:13 |
| **p** | 15:11 17:10 | permeable | 1:22 7:8 |
| p 4:1,1,8,15 6:1 | parties 6:21 | 44:21 | plaintiff's 14:6 |
| p.c. 5:1 | 8:5 14:4,11,13 | person 9:24 | plaza 2:3 |
| p.m. 12:6 | 14:16 19:14,16 | 35:1 45:4,8 | pleadings |
| pachulski 4:3 | 22:15 24:3 | personal 11:23 | 12:13 14:4 |
| page 28:13 | 25:5,7,25 26:5 | 15:20 27:7 | 22:14 26:11 |
| 48:4 | 27:22 28:5 | 41:3,14,16,19 | 42:24 |
| paid 10:11,13 | 30:12,25 32:10 | 41:23 | please 6:17,18 |
| 20:17 28:3,16 | 34:12 40:3 | petition 11:5 | 6:19,21,25 |
| 29:23 37:3 | 43:10,13 44:15 | 19:2 32:12 | plenty 46:16 |
| 41:15 | parties' 9:2 | 34:8,23 37:13 | pllc 4:17 |
| par 15:16 | partner 12:4 | 37:25 | plus 11:1 27:11 |
| paragraph | party 14:20 | petitions 35:17 | point 22:18 |
| 26:20 | 17:13 32:25 | petrozza 7:24 | 28:10 33:25 |
| parent 40:17 | 37:3 | 9:13,14,18,21 | points 44:6 |
| parmar 9:22 | passing 39:8 | 10:1,10,13 | pool 41:23 |
| 9:23 10:3,14 | past 26:2 | 11:8,10,22 | porteck 24:23 |
| 11:8,17,23 | paul 9:22 | 12:17,19 20:2 | 26:18,19,20,24 |
| 12:4,6,10,23 | 26:16 | 20:13,17,17 | 27:11,13,13,16 |
| 12:23,25 13:6 | | | 27:20 29:1,13 |
| 16:12 20:13 | | | |

29:24,25 30:19
31:20 36:22
38:13,18 39:12
portion 29:18
30:13 40:12
portions 34:17
position 40:1
positions 39:4
possession
20:15
power 18:6
practical 30:22
practice 9:12
11:1,4 14:12
24:2 26:9
27:18 30:18,21
46:13
practices 26:10
27:11
preceded 35:15
prefer 46:8
prepare 44:19
44:20
prepared 33:3
41:5 44:1
prepetition
8:20 9:9
present 18:18
37:18 45:3
presented 15:2
presiding 6:17
pretrial 43:17
44:20
prevail 21:17
price 27:19,21
27:22,25 28:4
28:7,12,13,18

30:14 38:13,15
primarily 9:12
26:9
primary 9:22
9:24
principal 9:22
prior 21:3,4
23:25 32:11
34:8,23
private 11:7,7
11:9,11
privilege 40:24
probably
43:22
probative
20:24
procedure 8:13
procedures
24:8
proceeding 8:3
8:18 9:6 13:24
15:17 22:23
23:19,20,25
34:17 36:7
44:4 45:25
46:11
proceedings
23:21 47:1
49:4
proffered
16:25
projections
33:10
promise 19:24
20:3
promissory
20:4

proof 10:21
35:17 41:6
proper 8:4,4
23:24
property 11:25
12:1,20 17:17
17:19,20 18:10
18:13,25 20:16
32:5 37:24
proposed 25:7
protect 30:18
30:23
protocol 45:5,9
provided 8:5
12:1,23 13:13
20:6 22:4 25:5
25:7 27:1
29:10 33:6,11
33:12,14 38:22
provides 18:16
27:18 31:1
34:24
providing
16:23
provisions
36:23 42:9
purchase
24:22 27:12,19
27:21,22 28:4
28:6,12,12,18
30:13,14 32:21
33:15 36:23
38:15,18,22
purchaser
30:19
purchasing
26:18 41:24

purpose 10:8
30:17
purposes 8:23
14:1 16:1 22:5
22:23,25 24:11
31:2 34:16,18
38:10 41:10,11
41:16 42:5
44:20
pursuant 8:12
27:11 31:5
put 6:21

**q**

question 17:16
21:20 22:3,6
28:9 36:6
questions 21:6

**r**

r 2:21 4:1,17
4:22 6:1 49:1
raised 8:15
15:19
raises 8:8
ray 36:2
read 26:11
really 28:3
reason 15:4
22:19
reasonably
36:9
reasons 9:1
20:14 21:18
22:10 25:17
43:7,7
receive 11:12
11:20 30:19

| | | | |
|---|---|---|---|
| **received** 12:18 20:18 39:25 | **reference** 23:23 | **remember** 6:19 44:11 | **resolve** 43:14 46:17 |
| **receiving** 12:20 41:17 | **referred** 10:15 30:10 | **rendered** 35:10 36:6 | **respect** 15:6 17:16 21:11 34:10 38:12 39:23 |
| **recite** 9:6 14:16 34:11 43:5 | **reflect** 13:8 31:16,20 | **repaid** 8:22,22 | |
| | **reflected** 31:17 31:18 | **repay** 19:25 20:3 | **restating** 43:7 |
| **record** 6:20 9:7 16:3,4 17:22 20:3,7,13 21:1 22:1 23:9 26:12 28:15 29:4 43:6,8 46:25 49:4 | **refocusing** 44:23 | **repeat** 23:8 | **result** 31:20,25 |
| | **regard** 35:4,24 | **replete** 15:10 | **resulted** 10:21 |
| | **registered** 27:3 | **report** 21:24 33:2,3,4 | **retention** 20:15 |
| | **regularly** 17:9 | **represent** 11:15 | **return** 12:23 25:25 26:5 32:4 43:10 |
| | **reily** 20:23 21:25 | | |
| | **reinventing** 43:21 | **representing** 7:18 | **returns** 33:12 |
| **recorded** 6:17 | | **request** 16:11 25:18 38:14 43:1 | **revenue** 9:12 26:9 33:10 |
| **records** 12:15 13:8 15:13 17:4,4,5,6,9,13 29:9 31:15,18 31:19,22 34:1 34:4 | **relate** 8:16 29:20 | | |
| | **related** 15:17 | **requests** 20:2 | **revolves** 8:18 |
| | **relationship** 10:2 20:12,13 38:25 | **required** 30:20 31:9 33:2,3,5 38:21 | **right** 7:12,17 7:22 20:19 23:13,17 44:3 45:14 46:18,21 |
| | | **requirement** 15:9,21 35:9 | |
| **recover** 24:25 29:23 40:2 | **relevant** 9:13 9:23 26:6,15 | **requirements** 38:19,21 43:17 | **rights** 30:18 42:10,12,19 |
| **recoverable** 18:10 | **relief** 10:24 25:22 43:5,5,9 43:10 | | **rita** 3:25 49:3,8 |
| **recovered** 24:13 | | **requires** 32:5 38:4 | **road** 5:3 27:4 49:21 |
| | **rely** 20:1 | **residence** 27:4 | **robinson** 10:15 10:16 11:20 12:4,9 17:23 18:6 25:1 29:12 33:19 |
| **recovery** 3:1 18:13 23:19 24:16 39:20,22 39:24 42:15 | **remain** 43:15 | **residences** 45:16 | |
| | **remained** 10:23 11:5 35:16 | **resident** 9:14 | |
| | | **resolution** 43:12,12 46:12 | |
| **redo** 15:4 | | | **rosen** 4:10,15 6:2,4,7,11 7:2 7:2,3 43:4 |
| **refer** 9:14,18 10:4,7 12:13 12:14 16:17 17:13 25:4 26:14,19,25 | **remaining** 26:4 34:17 43:9 | **resolutions** 27:9 42:2 | |
| | **remedies** 25:15 | | **routinely** 17:7 |

rule 8:1,12,13
15:8,9 22:23
24:6,9 34:15
41:9 46:9
ruled 22:12
rules 8:13 15:8
24:8
ruling 6:5,9
7:23,25 24:4,5
26:3
rulings 14:14
15:2 23:9,10
48:3

**s**

s 2:22 4:1 6:1
6:16
s.d.n.y. 35:7,12
40:6,23 42:14
sale 29:13
32:20 33:4,17
36:22 38:13
salon 41:24
sandpebble
41:4
sanford 4:15
7:2
sardis 22:8
sartison 13:7
16:5,9
sartison's
16:10
sat 18:6
satisfaction
31:23 34:4
satisfied 21:23
satisfy 35:5,19

scale 11:6
schedules 33:5
33:6
scheduling 9:3
23:5
scheiman 4:17
4:22 7:4,5 43:4
school 41:3
se 26:19
second 15:22
15:24 16:18
24:25 25:4,10
25:21 29:22
32:13 34:7
36:25 37:2
39:6,15 48:9
section 8:3
18:2,12,16
22:2,16 23:22
25:14 30:15
31:1,9 34:21
34:24 37:11,11
42:9,15,19
sections 33:7
34:19
sector 9:11
securing 31:2
see 15:22 18:21
19:8,13 22:8
31:13 33:15
35:5,10 36:2
38:3 40:5,21
41:3 42:13
43:22
seek 25:12
seeking 23:19
29:23 42:15

seeks 24:16
39:24
seems 30:12
44:13
seized 21:4
sell 27:20
32:15
seller 32:22
seller's 31:2
sellers 27:13
33:13
sent 10:13
12:10,11 14:1
25:3 32:3,10
separate 40:19
40:21
separately
14:23 25:7
series 9:11
26:8
serious 22:15
serve 30:5
served 39:3
services 11:16
11:21 13:13
26:10,21 27:1
set 16:9 21:16
22:20,22 23:2
23:20 25:6,6
26:1,3 28:4
34:15 43:6,16
43:17 44:6
45:22
setting 44:7
settings 38:8
settle 43:11
44:19

settlement
44:22 45:10
several 11:14
26:7 43:18
severally 40:15
share 28:12
shareholder
9:25 13:21
27:6 41:13
42:2
shareholders
27:9
shares 33:21
sheets 33:10
sheiman 7:5
short 6:5 23:7
shortest 19:22
shortly 12:19
29:25
side 28:23
sideways 29:15
signature
11:19 49:7
signed 11:18
20:4 27:16
significant
43:7
similarly 37:16
simply 19:23
30:23 43:4
single 41:12
sit 46:12
skills 46:13
small 36:9
software 32:15
32:17

sole 27:5
solutions 32:23
  32:24 33:22
  37:5 49:20
solvency 36:7
  39:7,8
somewhat
  44:21
sore 6:12
sorry 6:7,11,12
sought 24:12
  25:22
southern 10:19
  10:20 21:2
  35:14
space 9:12 26:9
  26:21
speak 6:17
speaker 44:5
  44:24 45:2,14
  45:20 46:1,5
  46:19,23
speaking 6:19
  6:21
specific 16:22
specifics 12:1
spend 22:17
stage 29:22
stand 23:10
standard 34:11
standards
  14:15
standing 25:13
  25:14 42:8,18
stang 4:3
star 13:4,5,9
  13:10 16:8,12

start 7:22
  43:16 44:12
started 43:19
state 6:19 9:14
  19:22 25:15
  33:12
stated 23:1
  24:10 26:11
  28:10 30:17
  31:7 36:15
  37:19 42:7
  43:10
statement 16:7
  16:22 26:20
statements
  16:16 33:11,15
states 1:1 2:2
  10:18
stating 32:3
statutes 18:19
  37:20,20
stricken 16:23
strike 8:8 14:7
  22:12
structure 32:5
subject 8:11
submission
  14:9,12
submit 44:20
submitted 14:8
  23:11
subsequently
  10:10,14
substantially
  31:6
substantive
  18:11

successful
  32:17
sufficient
  35:19
suite 4:19 5:3
  49:22
suits 41:24
summary 3:3
  8:6,7,23 9:2
  13:25 14:6,7
  14:15,21,24
  16:3 21:25
  22:11 23:7
  24:13,14 25:12
  25:18,20,24
  29:10 34:11,16
  40:11 42:7,23
  43:1,8 46:10
  48:5,8,11
summer 23:4
  45:16
sunshine 13:4
  13:5,9,10,12
  16:7,12,14
supported
  19:24
supposed 28:7
suspect 23:12

**t**

t 49:1,1
tae 40:5
take 6:25 27:7
  46:17
taken 12:8
  14:14 24:4
  45:7

talk 22:19
talking 22:18
tax 33:12 41:16
tech 32:19,22
  33:24 34:3,7
technologies
  26:13 29:12
  30:4,7,8
technology
  26:21 30:3
teed 46:9
tends 45:12
tent 35:4
tenth 28:17
terms 18:11
  28:19 46:3
testified 11:22
  11:24 12:19
  28:2
testifies 30:17
testimony
  16:21,25,25
  43:23 45:7
texas 10:19,21
  21:2 35:14
text 20:1
thank 23:14,15
  23:16 44:9
  46:2,4,23,24
  46:25
thanks 46:6
that's 6:7 16:9
  19:5
theories 39:21
theory 18:11
  25:13 39:20,21
  39:22

therefrom
  17:13
therewith 23:5
there's 16:2
think 43:19
  44:22
third 4:5,12
  32:25 37:3
thousand 42:3
three 44:18
throat 6:12
time 10:24
  11:11 12:16
  13:7 14:13,14
  15:4 17:21
  20:9,21 21:3,3
  21:5,9,22 22:7
  22:17 23:12
  24:1,3 26:20
  26:24 29:1
  32:17 35:16
  39:2,6,9 42:21
  42:25 44:14,22
  45:12,18,20,22
  46:13,16
times 9:13,23
  26:6,15 29:6,7
  41:12
title 8:3 23:22
today 43:6,13
  43:18 44:2,3
today's 24:4
today's 14:14
together 24:15
  37:21
told 27:23
  45:13,14

transaction
  11:7,9,12
  12:13 13:25
  21:8 24:22,24
  29:8,22,24
  31:21 32:14
  33:24 36:8
  37:4,9 38:13
  38:22,23 39:17
  41:8
transactions
  17:24 19:18
  39:6
transcribed
  3:25
transcript 49:4
transfer 8:19
  8:20,24 12:14
  13:12 14:1,2
  17:22 18:23
  19:2,3,7,21,23
  20:9,10,21,24
  21:3,5,12,16
  21:20,22 22:8
  22:17,18,20
  24:17,20 25:1
  25:2,4,5,9,10
  25:19,19,21,21
  29:21 30:11
  31:4,25 32:1,3
  32:10,11,13
  34:7,20,22,24
  35:10,20,25
  36:3,6,11,17
  36:18,19,21,25
  37:2,12,22,25
  38:1 39:9,11

39:13,16,24
  40:4 48:6,9
transferee
  36:13
transferees
  40:4
transferor
  19:17 35:25
  36:5,7,9,13
  38:5
transferred
  17:18 18:9,14
  18:25 20:16
  30:9 32:8
  33:21,21,23
  37:24
transfers 3:1
  23:19 24:12
  25:10,11 35:15
  35:22 37:24
  38:1 39:2
  42:16,22 43:1
treatments
  41:24
trial 9:3 15:4
  16:4 21:10
  22:22,25,25
  23:3,5,12
  24:11 26:1,4
  29:20 34:18
  38:10 41:11
  42:5 43:16,20
  44:21,23,24
  45:4
trials 45:10
tried 15:1 23:4
  45:23

triggered
  22:16
true 49:4
trust 2:22 6:16
  7:9 27:8,14,14
  27:16 41:15,21
truste 27:16
trustee 1:11,20
  4:4 7:9,11 14:9
  17:11 18:12
  19:6 21:23
  23:18 24:13,16
  25:9,14,20,23
  29:22 32:1
  34:22 35:21
  37:12 38:4
  39:20,24 40:13
  41:6 42:8,18
  42:23
trustee's 25:13
  25:18 48:5,8
trustee's 8:6
  21:11
trustworthin...
  17:8
try 44:18 46:19
turn 23:17
  34:19 39:19
  42:6
two 18:19 19:2
  24:12 26:24
  32:11 34:8,23
  37:12,25 42:3
  42:21
type 17:9
typically 38:7
  38:8

**u**

u.s.  2:23 35:6
  35:11 40:22
ultimate  24:11
ultimately  8:22
  10:21 14:25
  22:20 29:19
unconcerned
  27:25
under  8:1,3
  15:8 17:3,4
  18:23 19:18
  21:22 22:2
  23:22 24:5
  30:19 32:14
  33:13 34:15
  35:9,21 37:10
  37:16 38:17
  39:13 40:2
  42:9,17,20
  45:4
undertaken
  9:19
undisputed  8:2
  17:22 18:25
  19:3 20:21
  22:24,24 24:7
  24:10,10 25:6
  25:8 34:16,18
  37:1 41:10
  42:18
unidentified
  44:5,24 45:2
  45:14,20 46:1
  46:5,19,23
union  41:3

united  1:1 2:2
  10:18 29:17
unknown  2:25
unrebutted
  21:25
unsatisfied
  42:21
unsecured
  42:12,13,25
use  25:14 41:2
  41:3 42:19
  45:9
used  29:13
  41:22 44:11,14
uses  40:17
utilize  42:19
utilized  17:23

**v**

v  1:14,23 6:22
  6:24 7:23
  15:23 17:13,14
  22:8 23:18
  35:6,11 36:14
  40:5,7,22 41:4
  42:13
valuation
  14:22 29:4
value  28:19,20
  28:23,25 29:2
  29:3,5
valued  28:21
various  8:5,8
  9:5 14:4,8,9
  33:5 38:8,18
  38:20
veil  40:15

venue  8:3
veritext  49:20
vernacular
  29:15
voice  41:24
voidable  37:19
vulnerable
  35:23

**w**

walia  1:15 4:11
  6:23 7:1 23:18
  24:21 26:22,23
  27:5,6,13,14
  27:14,16,19,23
  27:25 28:2
  29:5,15,23
  30:1,6,16
  31:19 32:3,14
  32:16,18 38:15
  39:1,5,20,25
  40:9,14 41:7
  41:13,16,17,20
  41:22
walia's  27:4
  28:14 31:14
  32:10 41:14
want  26:2
  39:19 44:6
  46:1
wanted  11:12
  11:24
way  11:14
  19:22 45:15
weltsch  3:25
  49:3,8
went  20:16
  29:15 43:11

wheels  43:21
wife's  41:21
willing  32:4
wire  12:5,7,10
  12:20 14:1
  24:17,25 25:5
  25:19 29:11
  31:4
wired  12:25
  13:4,11 29:14
  33:18
wiring  12:24
withheld  30:23
witness  43:23
witnesses
  15:15 45:8
  46:14
wl  15:23 18:21
wong  15:6,11
  15:14,25 16:20
won't  9:6
  14:16 22:17
work  23:7 27:7
  41:14 43:4
working  12:21
  33:9
writing  27:20
written  15:22
  29:4 30:25

**x**

x  1:4,8,10,17
  1:19 2:1 36:2
  48:1

**y**

year  12:17
  23:3 31:16

34:9 45:12,18

**years**  19:2

32:11 34:23

37:13,25 43:18

**yoo**  40:6

**york**  1:2 2:4

4:6,13,20 9:15

18:1,16,24

21:12,13 23:23

25:16 27:3,5

34:20,24 35:9

35:21 37:16

39:14 40:2,16

42:9,17,20

**you're**  6:4 7:17

**z**

**ziehl**  4:3

**zoom**  45:3,5

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served via U.S. Mail and the Court's Electronic Filing System to:

| | |
|---|---|
| Sanford P. Rosen, Esq. | Eugene Ronald Scheiman, Esq. |
| Paris Gyparakis, Esq. | **The Law Office of Eugene R. Scheiman** |
| **ROSEN & ASSOCIATES, P.C.** | 570 Lexington Avenue |
| 747 Third Avenue | Suite 1600 |
| New York, NY 10017-2803 | New York, NY 10022 |
| Email: srosen@rosenpc.com | Email: eugene.scheiman@scheimanlaw.com |
| pgyparakis@rosenpc.com | *Attorney for Defendants Arvind Walia and* |
| *Attorneys for Defendants Arvind Walia and* | *Niknim Management Inc.* |
| *Niknim Management Inc.* | |

　　　　　　　　　　　　　/s/ Rolanda Mori
　　　　　　　　　　　　　Rolanda Mori