| Account | Period | Type | Date | Num | Period | Name | Memo | Amount | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150107 | February 2015 | Hospital for Special Surgery;HSS Ortho | Eligibility & Authorization Services | 1,021.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150111 | February 2015 | University of Medicine and Dentistry NJ;UofMD NJ-ENT | Eligibility & Authorization Services | 600.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150112 | February 2015 | St. Barnabas Hospital | Eligibility & Authorization Services | 787.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150117 | February 2015 | Queens Arthroscopy and Sports Medicine;Queens Arthroscopy MDIA | Eligibility & Authorization Services | 77.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150083 | February 2015 | Hospital for Special Surgery | Eligibility & Authorization Services | 250.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150089 | February 2015 | David Mayman | Eligibility & Authorization Services | 155.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150087 | February 2015 | John Kennedy | Eligibility & Authorization Services | 75.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150106 | February 2015 | Medstar Surgical | Eligibility & Authorization Services | 7,744.25 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150119 | February 2015 | New York Spine Medicine | Eligibility & Authorization Services | 192.50 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150094 | February 2015 | Steven Murphy | Eligibility & Authorization Services | 75.00 | | |
| MDIA Income | February 2015 | Invoice | 03/01/2015 | 20150016 | February 2015 | University Diagnostic Testing LLC | Eligibility & Authorization Services | 75.00 | | |
| MDIA Income | February 2015 | Invoice | 03/06/2015 | PAYPAL | February 2015 | William Street Footcare | Eligibility & Authorization Services | 153.00 | | |
| MDIA Income | February 2015 | Deposit | 03/06/2015 | PAYPAL | February 2015 | MDInsuranceAuth | PAYPAL TRANSFER PPD ID; PAYPALSD11 | 5,667.15 | | |
| MDIA Income | February 2015 | Deposit | 03/17/2015 | PAYPAL | February 2015 | MDInsuranceAuth | PAYPAL TRANSFER PPD ID; PAYPALSD11 | 4,700.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3596G | 02/24/2015-03/02/2015 | Brooklyn Medical Eye Associates | Medical Billing Services for DOS starting from January 1, 2013 | 648.37 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3596G | 02/24/2015-03/02/2015 | Brooklyn Medical Eye Associates | CPT 92015; Gello $20.44 & Lasik $45.00 | 4.04 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3596G | 02/24/2015-03/02/2015 | Brooklyn Medical Eye Associates | Medicaid Claims Processing per Procedure Billed | 6.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3599 | 02/01/2015-02/28/2015 | Geriatrics Association of New Jersey | Medical Billing Services for the period: 02/01/2015-02/28/2015 | 1,618.88 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3600 | 02/01/2015-02/28/2015 | New York Spine Care | Medical billing services for the following period: 02/01/2015-02/28/2015 | 7,394.01 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3601 | 02/01/2015-02/28/2015 | Hem Care Medical Clinic PC | Medical Billing for the period: 02/01/2015-02/28/2015 | 746.12 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3601 | 02/01/2015-02/28/2015 | Hem Care Medical Clinic PC | Direct Patient Payments | -429.89 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3599 | 02/01/2015-02/28/2015 | Geriatrics Association of New Jersey | Direct Patients Payments | -71.78 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3602 | 02/01/2015-02/28/2015 | Anita-Kay Martin M.D., P.C. | Commercial, Government, and all other collections exclusive of Medicaid | 1,718.15 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3602 | 02/01/2015-02/28/2015 | Anita-Kay Martin M.D., P.C. | Direct Patient Payments | -14.55 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3603 | 02/01/2015-02/28/2015 | Paul Kleinman | Medical Billing Services (Excluding Medicaid Collections) | 2,230.91 | | |
| RCM Revenue | February 2015 | Invoice | 03/02/2015 | 3603 | 02/01/2015-02/28/2015 | Paul Kleinman | Medicaid Claims Processing per Procedure Billed | 24.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3604 | 02/01/2015-02/28/2015 | Queens Arthroscopy and Sports Medicine | Workers' Compensation collections | 2,209.42 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3604 | 02/01/2015-02/28/2015 | Queens Arthroscopy and Sports Medicine | Commercial and Medicare claims collections | 382.61 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3606 | 02/01/2015-02/28/2015 | Internal Medicine Associates | Transcriptions Services for the billing period: 02/01/2015-02/28/2015 | 2,881.80 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3606 | 02/01/2015-02/28/2015 | Internal Medicine Associates | Transcriptions Services for the billing period: 02/01/2015-02/28/2015 | 352.20 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3611 | 02/01/2015-02/28/2015 | Raia Medical Health P.C. | Procedures for 02/01/2015-02/28/2015 | 4,400.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3612 | 02/01/2015-02/28/2015 | Queens Medical Pavilion | Total Amount of Hours Spent for the period: 02/01/2015-02/28/2015 | 325.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3613 | 02/01/2015-02/28/2015 | Sperling Radiology P.C. | New Patient Laser Ablation Procedures | 1,000.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3613 | 02/01/2015-02/28/2015 | Sperling Radiology P.C. | Patient Consult & Other Testing | 825.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3614 | 02/01/2015-02/28/2015 | Midtown Physical Medicine P.C. | Total Amount of Hours Spent for the period: 02/01/2015-02/28/2015 | 862.50 | | 1711.26 |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3615 | 02/01/2015-02/28/2015 | John Gallagher MD P.C. | Commercial, Government, and all other collections exclusive of Medicaid | 1,009.09 | | |
| RCM Revenue | February 2015 | Invoice | 03/04/2015 | 3613 | 02/01/2015-02/28/2015 | Sperling Radiology P.C. | Credit Card Processing Fee for Invoice# 3613 | 54.75 | | |
| RCM Revenue | February 2015 | Invoice | 03/05/2015 | 3616 | 02/01/2015-02/28/2015 | MEDSTAR | Private Processed Claims for: 02/01/2015-02/28/2015 | 16.50 | | |
| RCM Revenue | February 2015 | Invoice | 03/05/2015 | 3616 | 02/01/2015-02/28/2015 | MEDSTAR | No-fault & Workers' Compensation Collections for the period: 02/01/2015-02/28/2015 | 900.44 | | |
| RCM Revenue | February 2015 | Invoice | 03/05/2015 | 3616 | 02/01/2015-02/28/2015 | MEDSTAR | Consignment Billing - Client Collections for the period: 02/01/2015-02/24/2015 | 641.18 | | |
| RCM Revenue | February 2015 | Invoice | 03/05/2015 | 3616 | 02/01/2015-02/28/2015 | MEDSTAR | Medicaid Secondary Collections for the period: 02/01/2015-02/28/2015 | 1,268.46 | | |
| RCM Revenue | February 2015 | Invoice | 03/09/2015 | 3621 | 02/01/2015-02/28/2015 | Lerman Diagnostic Imaging | Collections, exclusive of Medicaid, as per the billing period: 02/01/2015-02/28/2015 | 13,081.01 | | |
| RCM Revenue | February 2015 | Invoice | 03/10/2015 | 3620 | 02/25/2015-03/10/2015 | Electrophysiologic Medical Diagnostic PC | Billing and Collections Services for the period: 02/25/2015-03/10/2015 | 5,936.31 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3642 | 02/01/2015-02/28/2015 | Doctors United Inc.;Jayaram Medical PC | Count of Visits for the billing period of: 02/01/2015-02/28/2015 | 3,174.50 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3642 | 02/01/2015-02/28/2015 | Doctors United Inc.;Jayaram Medical PC | Collection Services for Claims with DOS Prior to 08/01/2013 | 20.60 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3643 | 02/01/2015-02/28/2015 | Doctors United Inc.;Greater NY PT & Chiropractic PLLC | Count of Visits for the billing period of: 02/01/2015-02/28/2015 | 5,912.50 | 1,966.75 | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3644 | 02/01/2015-02/28/2015 | Doctors United Inc.;GFG Medical P.C. | Count of Visits for the billing period of: 02/01/2015-02/28/2015 | 3,045.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3645 | 02/01/2015-02/28/2015 | Doctors United Inc.;Mid-Hudson Comprehensive Medical & Diagno | Count of Visits for the billing period of: 02/01/2015-02/28/2015 | 2,229.50 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3646 | 02/01/2015-02/28/2015 | Doctors United Inc. | Count of Visits for the billing period of: 02/01/2015-02/28/2015 | 19,379.50 | | |
| RCM Revenue | February 2015 | Invoice | 03/23/2015 | 3648 | 02/01/2015-02/28/2015 | Doctors United Inc. | Collection Services for Claims with DOS Prior to 08/01/2013 | 682.94 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3649 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Salary Invoice for Former DIG Employees | 60,000.00 | 525.51 | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Medical Billing & Collection Services for the month of February 2015  February 2015 Revenue: $4,... | 153,069.66 | 350 | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Salary | -60,000.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Postage | -881.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Missed Eligibility | 1,311.50 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Accounting | 2,070.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Meaningful Use Data | 3,105.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | Additional Resources Compliance | 8,280.00 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | DIG Queens Transcriptions | 54,604.66 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | DIG Brooklyn Transcriptions | 10,963.30 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | No-Fault Billing Services as per PARCS report - AutoRx | 2,488.35 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | No-Fault & Worker's Compensation Billing Services as per PARCS report | 5,795.20 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3650 | 02/01/2015-02/28/2015 | Doshi Diagnostic | No-Fault Billing Services as per PARCS report - Tangent NF DOS prior to 12/01/2013 | 3.13 | | |
| RCM Revenue | February 2015 | Invoice | 03/31/2015 | 3652 | 01/01/2015-02/28/2015 | Stuart Remer, MD | Medical Billing Services for: 01/01/2015-02/28/2015 | 77.84 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| RCM Revenue | February 2015 | Invoice | 03/31/2015 3848 | 02/01/2015-02/28/2015 | Tri-State Imaging Consultants LLC | Medical Billing & Collection Services for the month of February of 2015  February 2015 Revenue: ... | 466.57 | | |
| RCM Revenue | February 2015 | Invoice | 04/24/2015 3751 | 02/01/2015-02/28/2015 | MEDSTAR | Astra Collections over 30 days after DOS for the period: 02/01/2015-02/28/2015 | 12,406.48 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 T0005 | 12/04/2014-03/06/2015 | Tutella Plastic Surgery | Total AR Collections for the period: 12/04/2014-03/06/2015 | 120.22 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 C0024 | 07/12/2015-03/10/2015 | Kevin Cho, M.D | Commissions Due on attached Receipts ($175,438.72) | 6,384.35 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 Kell016 | 02/09/2015-02/18/2015 | Adam Kolker, M.D. | Total AR Collections for the period: 02/09/2015-02/18/2015 | 5,734.20 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 H0037 | 02/06/2015-02/18/2015 | Joshua B. Hyman, M.D. | Commissions due on receipts ($7,015.92) | 476.38 | | 147.26 |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 DK024 | 01/23/2015-02/06/2015 | Dov Kolker, M.D. | Total AR Collections for the period: 01/28/2015-02/06/2015 | 362.24 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 C10037 | 02/28/2015-03/03/2015 | Ross Cooperman, M. D | Total AR Collections for the period: 02/28/2015-03/03/2015 | 824.00 | | 458.85 |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 R010 | 02/01/2015-02/27/2015 | David Rapoport, M.D | Total AR Collections for the period: 02/01/2015-02/27/2015 | 1,750.02 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 Fr064 | 02/01/2015-02/28/2015 | Kenneth Francis, M.D. | Total AR Collections for the period: 02/01/2015-02/28/2015 | 1,065.18 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 1276PCA | 02/03/2015-02/27/2015 | Joseph Dabellis, M.D | Total AR Collections for the period: 02/03/2015-02/27/2015 | 4,618.84 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 B0031 | 02/01/2015-02/28/2016 | James Brady, M.D. | Total AR Collections for the period: 02/01/2015-02/28/2015 | 5,823.60 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015, C0028, | 02/01/2015-02/12/2015 | Glenn Cavanagh C.R.N.A | Total AR Collections for the period: 02/01/2015-02/12/2015 | 376.82 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 PAR11 | 01/26/2015-02/22/2015 | Paragon Emergency Medicine | Total AR Collections for the period: 01/26/2015-02/22/2015 | 8,901.04 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 N0012 | 02/07/2015 | Peter Neumann, M.D | Commissions due on attached Receipts ($2,073.81) | 124.42 | | |
| PCA Revenue | February 2015 | Invoice | 03/13/2015 1029PCA | 02/02/2015-03/01/2015 | Jimmy Sung M.D. | Total AR Collections for the period: 02/02/2015-03/01/2015 | 7,528.07 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 A10120 | 02/03/2015-03/09/2015 | Frank Adipietro, M.D | Total AR Collections for the period: 02/03/2015-03/09/2015 | 15,046.90 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Sen005 | 01/06/2015-03/03/2015 | Park Avenue Aesthetic Surgery | Total AR Collections for the period: 01/26/2015-03/03/2015 | 854.04 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 S0034 | 02/01/2015-02/27/2015 | Elan Singer, M.D. | Total AR Collections for the period: 02/01/2015-02/27/2015 | 420.20 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Sch50 | 01/21/2015-03/11/2015 | Mark Schwartz, M.D. | Total AR Collections for the period: 01/21/2015-03/11/2015 | 1,265.46 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 W00017 | 02/02/2015-03/03/2015 | Johnstuart Guarnieri, M.D. | Total AR Collections for the period: 02/02/2015-03/03/2015 | 212.63 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 N039 | 02/11/2015-03/05/2015 | Scott Newman | Total AR Collections for the period: 02/11/2015-03/05/2015 | 6,108.58 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 SH053 | 02/16/2015-02/26/2015 | John E Sherman M.D. | Commissions due on attached receipts ($87,634.06) | 5,435.44 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Red233 | 02/26/2015-03/07/2015 | Jeremiah Redstone, M.D | Total AR Collections for the period: 02/26/2015-03/07/2015 | 4,017.24 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Main0156 | 02/01/2015-02/28/2015 | Maine Line Plastic Surgery | Total AR Collections for the period: 02/01/2015-02/28/2015 | 3,410.67 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 H0021PCA | 02/01/2015-02/07/2015 | Yael Halaas, M.D. | Total AR Collections for the period: 02/01/2015-02/27/2015 | 523.28 | | |
| PCA Revenue | February 2015 | Invoice | 03/18/2015 MMC1022 | 02/01/2015-02/28/2015 | Maimonides Medical Center | Commissions due on attached receipts for February(123,807.42) | 7,680.16 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 ELIP00155 | 02/06/2015-03/10/2015 | Eastern LI Physicians Services | Commissions due on attached Receipts ($78,053.42) | 4,991.82 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 ELI549 | 01/15/2015-03/03/2015 | Eastern LI CRNA Services | Commissions due on attached Receipts ($56,674.21) | 3,446.29 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 P0014 | 02/16/2015-02/18/2015 | James Pearson, M.D. | Total AR Collections for the period: 02/16/2015-02/18/2015 | 1,359.92 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 B/51046 | 02/01/2015-02/24/2015 | Gillian Shepherd, M.D/ Daniel Burton, M.D | Total AR Collections for the period: 11/01/2014-11/30/2014 | 2,253.44 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Korn222 | 02/22/2015-02/25/2015 | Andrew Kornstein | Total AR Collections for the period: 02/22/2015-02/24/2015 | 4,696.35 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Park15 | 02/06/2015-02/26/2015 | Halang Chen, M.D | Total AR Collections for the period: 02/06/2015-02/26/2015 | 3,411.19 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 O1022 | 01/08/2015-02/28/2015 | John Olvera | Total AR Collections for the period: 01/05/2015-02/03/2015 | 154.24 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Lloy0032 | 01/21/2015-02/22/2015 | Lloyd Gayle, M.D | Commissions due on attached Receipts ($105,757.29) | 5,011.32 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 H0347 | 02/01/2015-02/17/2015 | Lloyd Hoffman, M.D | Total AR Collections for the period: 02/01/2015-02/17/2015 | 1,828.25 | | 260.98 |
| PCA Revenue | February 2015 | Invoice | 03/17/2015 H0061 | 02/09/2015-03/10/2015 | G. Courtney Houston, M.D | Total AR Collections for the period: 02/09/2015-03/10/2015 | 753.81 | | |
| PCA Revenue | February 2015 | Invoice | 03/17/2015 B001 | 02/01/2015-02/27/2015 | The Breslow Center for Plastic Surgery | Total AR Collections for the period: 02/01/2015-02/27/2015 | 4,103.91 | | |
| PCA Revenue | February 2015 | Invoice | 03/17/2015 3062PCA | 01/29/2015-02/18/2015 | Edmund K. Kwan, M.D | Total AR Collections for the period: 01/29/2015-02/16/2015 | 35.50 | | |
| PCA Revenue | February 2015 | Invoice | 03/17/2015 MMC1022A | 02/01/2015-02/28/2015 | Maimonides Medical Center | Authorizations for November  1% | 881.19 | | |
| PCA Revenue | February 2015 | Invoice | 03/18/2015 M0026 | 02/14/2015-02/28/2015 | Melinda Mingus, M.D. | | 174.31 | | |
| PCA Revenue | February 2015 | Invoice | 03/16/2015 Mun0009 | 02/01/2015-02/20/2015 | Advanced Plastic Surgery | | 108.26 | | |
| PCA Revenue | February 2015 | Invoice | 03/10/2015 3688 | 02/01/2015-03/28/2015 | Robert Silich, M.D. | Total AR Collections for the period: 02/01/2015-03/28/2015 | 84.15 | | |
| PCA Revenue | February 2015 | Invoice | 03/10/2015 3691 | 01/22/2015-03/15/2015 | Steven Levine/Daniel Baker, M.D. | Total AR Collections for the period: 01/22/2015-03/15/2015 | 4,239.40 | | |
| | | | | | | | 738,695.16 | 2,990.70 | 2,578.37 |

AP- Feb 28, 2015

| Type | Date | Num | Name | Due Date | Open Balance | Balance as of Apr 5 2 |
|------|------|-----|------|----------|-------------:|----------------------:|
| Bill | 12/31/2014 | 115968 | Abrams Fensterman | 01/30/2015 | 1,250.00 | 1,250.00 |
| Bill | 11/30/2014 | 114851 | Abrams Fensterman | 12/30/2014 | 1,960.00 | 1,960.00 |
| Bill | 10/31/2014 | 113541 | Abrams Fensterman | 11/30/2015 | 2,500.00 | 2,500.00 |
| Bill | 08/31/2014 | 111039 | Abrams Fensterman | 09/30/2015 | 2,500.00 | 0.00 |
| Bill | 09/30/2014 | 112491 | Abrams Fensterman | 10/30/2015 | 4,920.00 | 0.00 |
| Bill | 02/28/2015 | 150694886 | Acc Business | 04/26/2015 | 1,338.51 | 0.00 |
| Bill | 04/27/2014 | 141004886 | Acc Business | 05/27/2014 | 1,338.51 | 0.00 |
| Bill | 12/11/2014 | 0000119 | Adaptive Graphics (P.C.A) | 12/21/2014 | 500.00 | 0.00 |
| Bill | 02/28/2015 | 028324 | Aflac New York | 03/15/2015 | 1,037.92 | 0.00 |
| Bill | 01/28/2015 | 004895 | Aflac New York | 02/15/2015 | 877.32 | 0.00 |
| Bill | 06/14/2013 | 39041 | Alliant Group, LP | 07/14/2013 | 4,509.30 | 0.00 |
| Bill | 02/25/2015 | 30082623-1028 | Aon Service Corporation | 03/07/2015 | 20,190.71 | 0.00 |
| Bill | 01/28/2015 | 30082623-1013 | Aon Service Corporation | 02/07/2015 | 20,190.71 | 0.00 |
| Bill | 02/04/2015 | 309521 | Associated Supply Company | 03/21/2015 | 75.00 | 0.00 |
| Bill | 02/16/2015 | 6150 | Atlantic Imaging, LLC | 02/26/2015 | 3,031.93 | 0.00 |
| Bill | 01/31/2015 | 2015-01P | Avramych Consulting Inc. | 03/10/2015 | 950.00 | 0.00 |
| Bill | 02/28/2015 | 2015-02P | Avramych Consulting Inc. | 03/30/2015 | 850.00 | 0.00 |
| Bill | 12/31/2014 | 2014-12P | Avramych Consulting Inc. | 02/07/2015 | 850.00 | 0.00 |
| Bill | 01/29/2015 | 01292015 | Bibi Pillay | 02/28/2015 | 2,333.33 | 0.00 |
| Bill | 02/28/2015 | 03272015 | Bibi Pillay | 03/30/2015 | 2,333.33 | 0.00 |
| Bill | 12/29/2014 | 12292014 | Bibi Pillay | 01/28/2015 | 2,333.33 | 0.00 |
| Bill | 01/30/2015 | 1302015 | Christine Cohen | 01/30/2015 | 83.17 | 0.00 |
| Bill | 02/23/2015 | 02232015 | Christine Cohen | 02/23/2015 | 2,365.47 | 0.00 |
| Bill | 12/31/2014 | 12312014 | Christine Cohen | 12/31/2014 | 1,340.66 | 0.00 |
| Bill | 01/31/2015 | 8120085286 | Cintas | 03/10/2015 | 480.98 | 0.00 |
| Bill | 02/28/2015 | 8120085287 | Cintas | 03/30/2015 | 240.84 | 0.00 |
| Bill | 02/23/2015 | 10546 | Courtesy Express | 02/28/2015 | 37.80 | 0.00 |
| Bill | 02/01/2015 | 107376 | Criterions, LLC | 03/03/2015 | 8,265.00 | 8,265.00 |
| Bill | 02/01/2015 | 91872 | Dealers First Financial L.L.C | 02/10/2015 | 553.99 | 0.00 |
| Bill | 02/20/2015 | 140 | Decimal Cloud Technologies Inc | 03/01/2015 | 2,000.00 | 0.00 |
| Bill | 02/07/2015 | 77791259 | Dell Financial Services-001-6566692-000 | 02/17/2015 | 5,323.58 | 0.00 |
| Bill | 01/31/2015 | 150783 | Diamond Healthcare Communications | 03/04/2015 | 1,150.24 | 0.00 |
| Bill | 02/28/2015 | 153635 | Diamond Healthcare Communications | 04/01/2015 | 298.26 | 0.00 |
| Bill | 12/31/2014 | 149223 | Diamond Healthcare Communications | 02/01/2015 | 840.07 | 0.00 |
| Bill | 12/01/2014 | 147065 | Diamond Healthcare Communications | 12/31/2014 | 1,728.88 | 0.00 |
| Bill | 02/28/2015 | 84/2015 | E4E HealthCare Business Services (PCA) | 03/27/2015 | 1,373.00 | 0.00 |
| Bill | 01/31/2015 | 23/2015 | E4E HealthCare Business Services (PCA) | 02/17/2015 | 892.00 | 0.00 |
| Bill | 02/09/2015 | 2656113 | Element Financial Corp. | 03/01/2015 | 686.04 | 0.00 |
| Bill | 01/22/2015 | 2639962 | Element Financial Corp. | 02/15/2015 | 2,137.28 | 0.00 |
| Bill | 02/24/2015 | 2663800 | Element Financial Corp. | 02/15/2015 | 2,137.28 | 0.00 |
| Bill | 01/31/2015 | 424401 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424404 | Emdeon | 02/28/2015 | 260.00 | 0.00 |
| Bill | 01/31/2015 | 424403 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424416 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424297 | Emdeon | 02/28/2015 | 350.00 | 0.00 |
| Bill | 01/31/2015 | 424296 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424294 | Emdeon | 02/28/2015 | 140.00 | 0.00 |
| Bill | 01/31/2015 | 424293 | Emdeon | 02/28/2015 | 770.00 | 0.00 |
| Bill | 01/31/2015 | 424407 | Emdeon | 02/28/2015 | 580.00 | 0.00 |
| Bill | 01/31/2015 | 424316 | Emdeon | 02/28/2015 | 260.00 | 0.00 |
| Bill | 01/31/2015 | 424311 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424308 | Emdeon | 02/28/2015 | 350.00 | 0.00 |
| Bill | 01/31/2015 | 424309 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424791 | Emdeon | 02/28/2015 | 130.00 | 0.00 |

| Bill | 01/31/2015 | 424332 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
|------|------------|--------|--------|------------|--------|------|
| Bill | 01/31/2015 | 424328 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424327 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424320 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424312 | Emdeon | 02/28/2015 | 770.00 | 0.00 |
| Bill | 01/31/2015 | 424295 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 424317 | Emdeon | 02/28/2015 | 260.00 | 0.00 |
| Bill | 01/31/2015 | 424402 | Emdeon | 02/28/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 | 417924 | Emdeon | 03/02/2015 | 754.70 | 0.00 |
| Bill | 01/31/2015 | 421299 | Emdeon | 03/02/2015 | 420.00 | 0.00 |
| Bill | 01/31/2015 | 421679 | Emdeon | 03/02/2015 | 140.00 | 0.00 |
| Bill | 02/28/2015 | 435602 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435917 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435622 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435618 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435615 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435604 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435603 | Emdeon | 03/10/2015 | 770.00 | 0.00 |
| Bill | 02/28/2015 | 435592 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435590 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 438555 | Emdeon | 03/10/2015 | 210.00 | 0.00 |
| Bill | 02/28/2015 | 435584 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435608 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435577 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435580 | Emdeon | 03/10/2015 | 350.00 | 0.00 |
| Bill | 02/28/2015 | 438773 | Emdeon | 03/10/2015 | 70.00 | 0.00 |
| Bill | 02/28/2015 | 435572 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435574 | Emdeon | 03/10/2015 | 260.00 | 0.00 |
| Bill | 02/28/2015 | 435576 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435581 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435583 | Emdeon | 03/10/2015 | 350.00 | 0.00 |
| Bill | 02/28/2015 | 435587 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435586 | Emdeon | 03/10/2015 | 140.00 | 0.00 |
| Bill | 02/28/2015 | 435578 | Emdeon | 03/10/2015 | 770.00 | 0.00 |
| Bill | 02/28/2015 | 435599 | Emdeon | 03/10/2015 | 260.00 | 0.00 |
| Bill | 02/28/2015 | 435598 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435579 | Emdeon | 03/10/2015 | 130.00 | 0.00 |
| Bill | 02/28/2015 | 435595 | Emdeon | 03/30/2015 | 350.00 | 0.00 |
| Bill | 02/28/2015 | 430242 | Emdeon | 03/30/2015 | 866.70 | 0.00 |
| Bill | 02/28/2015 | 438841 | Emdeon | 03/30/2015 | 420.00 | 0.00 |
| Bill | 02/28/2015 | 438946 | Emdeon | 03/30/2015 | 140.00 | 0.00 |
| Bill | 12/31/2014 | 410927 | Emdeon | 01/29/2015 | 770.00 | 0.00 |
| Bill | 12/31/2014 | 410914 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410898 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 405201 | Emdeon | 01/30/2015 | 878.13 | 0.00 |
| Bill | 12/31/2014 | 410906 | Emdeon | 01/30/2015 | 260.00 | 0.00 |
| Bill | 12/31/2014 | 410908 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410907 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410918 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410935 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410952 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410922 | Emdeon | 01/30/2015 | 260.00 | 0.00 |
| Bill | 12/31/2014 | 410897 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 | 410893 | Emdeon | 01/30/2015 | 770.00 | 0.00 |
| Bill | 12/31/2014 | 410901 | Emdeon | 01/30/2015 | 130.00 | 0.00 |

| Bill | 12/31/2014 410889 | Emdeon | 01/30/2015 | 140.00 | 0.00 |
|------|-------------------|--------|------------|--------|------|
| Bill | 12/31/2014 410911 | Emdeon | 01/30/2015 | 350.00 | 0.00 |
| Bill | 12/31/2014 410928 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410925 | Emdeon | 01/30/2015 | 350.00 | 0.00 |
| Bill | 12/31/2014 410933 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410930 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410936 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410923 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410934 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410926 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 414031 | Emdeon | 01/30/2015 | 70.00 | 0.00 |
| Bill | 12/31/2014 410956 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 414118 | Emdeon | 01/30/2015 | 210.00 | 0.00 |
| Bill | 12/31/2014 410912 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 410947 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 411912 | Emdeon | 01/30/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 414144 | Emdeon | 01/30/2015 | 140.00 | 0.00 |
| Bill | 01/31/2015 421335 | Emdeon | 02/10/2015 | 70.00 | 0.00 |
| Bill | 01/31/2015 424405 | Emdeon | 02/10/2015 | 630.00 | 0.00 |
| Bill | 01/31/2015 424298 | Emdeon | 02/10/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 424300 | Emdeon | 02/10/2015 | 130.00 | 0.00 |
| Bill | 01/31/2015 421654 | Emdeon | 02/10/2015 | 210.00 | 0.00 |
| Bill | 11/30/2014 398195 | Emdeon | 12/30/2014 | 130.00 | 0.00 |
| Bill | 11/30/2014 401431 | Emdeon | 12/30/2014 | 210.00 | 0.00 |
| Bill | 11/30/2014 398182 | Emdeon | 12/30/2014 | 130.00 | 0.00 |
| Bill | 11/30/2014 398532 | Emdeon | 12/30/2014 | 130.00 | 0.00 |
| Bill | 11/30/2014 398168 | Emdeon | 12/30/2014 | 130.00 | 0.00 |
| Bill | 11/30/2014 398186 | Emdeon | 12/30/2014 | 280.00 | 0.00 |
| Bill | 11/30/2014 399351 | Emdeon | 12/30/2014 | 130.00 | 0.00 |
| Bill | 11/30/2014 401454 | Emdeon | 12/30/2014 | 140.00 | 0.00 |
| Bill | 11/30/2014 398198 | Emdeon | 12/31/2014 | 260.00 | 0.00 |
| Bill | 12/01/2014 398172 | Emdeon | 12/31/2014 | 130.00 | 0.00 |
| Bill | 12/01/2014 398180 | Emdeon | 12/31/2014 | 130.00 | 0.00 |
| Bill | 12/31/2014 410894 | Emdeon | 01/10/2015 | 560.00 | 0.00 |
| Bill | 12/31/2014 410902 | Emdeon | 01/10/2015 | 630.00 | 0.00 |
| Bill | 12/31/2014 411090 | Emdeon | 01/10/2015 | 130.00 | 0.00 |
| Bill | 12/31/2014 4522 | Evans Marketing, Inc. | 05/01/2015 | 100.38 | 0.00 |
| Bill | 12/31/2014 4523 | Evans Marketing, Inc. | 05/01/2015 | 953.22 | 0.00 |
| Bill | 12/31/2014 4506 | Evans Marketing, Inc. | 02/04/2015 | 2,535.18 | 0.00 |
| Bill | 01/31/2015 246 | Excel Computer Network | 03/03/2015 | 7,650.00 | 0.00 |
| Bill | 02/28/2015 247 | Excel Computer Network | 04/01/2015 | 6,449.00 | 0.00 |
| Bill | 12/31/2014 245 | Excel Computer Network | 01/31/2015 | 8,986.00 | 0.00 |
| Bill | 12/01/2014 244 | Excel Computer Network | 12/11/2014 | 10,936.00 | 0.00 |
| Bill | 02/23/2015 2-947-32425 | Fed Ex | 03/10/2015 | 155.90 | 0.00 |
| Bill | 01/26/2015 2-918-28378 | Fed Ex | 02/10/2015 | 157.41 | 0.00 |
| Bill | 02/02/2015 88245 | Fuoco Group | 03/04/2015 | 1,250.00 | 0.00 |
| Bill | 12/30/2014 87725 | Fuoco Group | 01/29/2015 | 5,000.00 | 2,500.00 |
| Bill | 01/05/2015 87791 | Fuoco Group | 02/04/2015 | 1,250.00 | 0.00 |
| Bill | 11/03/2014 87032 | Fuoco Group | 12/03/2014 | 1,250.00 | 0.00 |
| Bill | 02/16/2015 1502163 | Green Office Solutions (PCA) | 03/03/2015 | 226.48 | 0.00 |
| Bill | 02/27/2015 1502279 | Green Office Solutions (PCA) | 03/14/2015 | 107.80 | 0.00 |
| Bill | 01/21/2015 1501211 | Green Office Solutions (PCA) | 02/05/2015 | 85.18 | 0.00 |
| Bill | 01/30/2015 1501305 | Green Office Solutions (PCA) | 02/14/2015 | 99.85 | 0.00 |
| Bill | 02/11/2015 1502112 | Green Office Solutions (PCA) | 02/26/2015 | 367.15 | 0.00 |
| Bill | 02/28/2015 8073 | Harmony Health Care IT (PCA) | 03/12/2015 | 870.70 | 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| Bill | 02/01/2015 | 8644 | Harmony Health Care IT (PCA) | 02/01/2015 | 59.95 | 0.00 |
| Bill | 01/31/2015 | 8646 | Harmony Health Care IT (PCA) | 02/12/2015 | 655.55 | 0.00 |
| Bill | 02/27/2015 | 8497 | Harmony Health Care IT (PCA) | 02/27/2015 | 4,000.00 | 0.00 |
| Bill | 01/01/2015 | 8421 | Harmony Health Care IT (PCA) | 01/01/2015 | 59.95 | 0.00 |
| Bill | 12/31/2014 | 8422 | Harmony Health Care IT (PCA) | 01/12/2015 | 814.40 | 0.00 |
| Bill | 07/03/2014 | 0002485 | H-DOX | 07/03/2014 | 1,800.00 | 0.00 |
| Bill | 10/31/2014 | 0002497 | H-DOX | 11/10/2014 | 1,440.00 | 0.00 |
| Bill | 02/28/2015 | 961 | IHCFA LLC | 03/30/2015 | 3,205.00 | 0.00 |
| Bill | 01/31/2015 | 15D0173283 | IVANS, INC. | 03/02/2015 | 66.80 | 0.00 |
| Bill | 02/28/2015 | 15D0173396 | IVANS, INC. | 04/02/2015 | 66.80 | 0.00 |
| Bill | 01/31/2015 | 31530 | J2 Global Communications | 03/02/2015 | 148.50 | 0.00 |
| Bill | 02/28/2015 | 32104 | J2 Global Communications | 03/30/2015 | 151.30 | 0.00 |
| Bill | 02/28/2015 | 2252015 | Jessica Lydon | 03/10/2015 | 116.00 | 0.00 |
| Bill | 02/05/2015 | 2418701134 | Lackmann Culinary Services | 02/05/2015 | 7.50 | 0.00 |
| Bill | 01/01/2015 | 2418701109 | Lackmann Culinary Services | 01/01/2015 | 22.64 | 0.00 |
| Bill | 01/01/2015 | 2418701114 | Lackmann Culinary Services | 01/11/2015 | 6.35 | 0.00 |
| Bill | 01/22/2015 | 2418701122 | Lackmann Culinary Services | 01/22/2015 | 13.58 | 0.00 |
| Bill | 11/13/2014 | 2418701075 | Lackmann Culinary Services | 11/13/2014 | 6.79 | 0.00 |
| Bill | 11/20/2014 | 2418701082 | Lackmann Culinary Services | 11/20/2014 | 17.26 | 0.00 |
| Bill | 11/27/2014 | 2418701086 | Lackmann Culinary Services | 11/27/2014 | 12.82 | 0.00 |
| Bill | 02/18/2015 | 31281 | Long Island Office Equipment (PCA) | 03/10/2015 | 203.67 | 0.00 |
| Bill | 01/28/2015 | 31271 | Long Island Office Equipment (PCA) | 02/17/2015 | 323.50 | 0.00 |
| Bill | 02/16/2015 | 13048914 | Marlin Business Bank (PCA) | 02/16/2015 | 320.45 | 0.00 |
| Bill | 01/19/2015 | 12980988 | Marlin Business Bank (PCA) | 01/19/2015 | 408.95 | 0.00 |
| Bill | 01/30/2015 | 8908947 | Medical Arts Press (PCA) | 02/09/2015 | 185.71 | 0.00 |
| Bill | 01/20/2015 | 8872653 | Medical Arts Press (PCA) | 02/19/2015 | 195.48 | 0.00 |
| Bill | 02/28/2015 | 5095 | Michael A. Markowitz P.C. | 03/02/2015 | 5,472.64 | 0.00 |
| Bill | 02/28/2015 | 5117 | Michael A. Markowitz P.C. | 03/31/2015 | 17.42 | 0.00 |
| Bill | 02/28/2015 | 5118 | Michael A. Markowitz P.C. | 03/31/2015 | 33.98 | 0.00 |
| Bill | 02/17/2015 | NYAR77945 | Neopost | 03/19/2015 | 42.36 | 0.00 |
| Bill | 02/20/2015 | 02202015 | Optimum Business #07801-498474 | 03/07/2015 | 288.25 | 0.00 |
| Bill | 01/31/2015 | 18103116 | Optimum Lightpath #46874 | 03/03/2015 | 3,022.16 | 0.00 |
| Bill | 02/28/2015 | 18225117 | Optimum Lightpath #46874 | 03/31/2015 | 3,030.23 | 0.00 |
| Bill | 02/28/2015 | 1001121 | Panacea | 03/13/2015 | 900.00 | 0.00 |
| Bill | 01/30/2015 | 01302015 | PC Advantage Inc. | 01/30/2015 | 742.90 | 0.00 |
| Bill | 02/20/2015 | 02202015 | PC Advantage Inc. | 02/20/2015 | 1,315.69 | 0.00 |
| Bill | 01/31/2015 | 02112015 | Pitney Bowes (PCA) | 03/10/2015 | 1,941.59 | 0.00 |
| Bill | 02/28/2015 | 03112015 | Pitney Bowes (PCA) | 03/21/2015 | 1,254.48 | 0.00 |
| Bill | 12/31/2014 | 01112015 | Pitney Bowes (PCA) | 02/08/2015 | 1,594.71 | 0.00 |
| Bill | 02/26/2015 | 022615 | PSEG (PCA) | 03/08/2015 | 356.13 | 0.00 |
| Bill | 02/26/2015 | 02262015 | PSEG (PCA) | 03/08/2015 | 355.51 | 0.00 |
| Bill | 01/23/2015 | 01232015 | PSEG (PCA) | 02/02/2015 | 342.69 | 0.00 |
| Bill | 01/23/2015 | 012315 | PSEG (PCA) | 02/15/2015 | 343.31 | 0.00 |
| Bill | 02/20/2015 | 172 | Ramatech | 02/20/2015 | 6,000.00 | 0.00 |
| Bill | 02/18/2015 | MM11899 | Ringhoff's Fuel Oil Co, Inc (PCA) | 03/20/2015 | 410.99 | 0.00 |
| Bill | 02/18/2015 | MM11898 | Ringhoff's Fuel Oil Co, Inc (PCA) | 03/20/2015 | 618.48 | 0.00 |
| Bill | 02/25/2015 | 18833 | Ringhoff's Fuel Oil Co, Inc (PCA) | 03/26/2015 | 238.92 | 0.00 |
| Bill | 02/25/2015 | 18832 | Ringhoff's Fuel Oil Co, Inc (PCA) | 03/27/2015 | 238.92 | 0.00 |
| Bill | 01/31/2015 | MM11121 | Ringhoff's Fuel Oil Co, Inc (PCA) | 02/10/2015 | 295.85 | 0.00 |
| Bill | 01/31/2015 | MM11122 | Ringhoff's Fuel Oil Co, Inc (PCA) | 02/10/2015 | 454.06 | 0.00 |
| Bill | 12/31/2014 | 3194 | Sean R. Callagy, Esq. LLC | 01/10/2015 | 4,400.00 | 0.00 |
| Bill | 01/31/2015 | 201202-4906 | Sequel Systems | 02/28/2015 | 1,480.80 | 0.00 |
| Bill | 02/28/2015 | 201202-5188 | Sequel Systems | 04/28/2015 | 1,378.20 | 0.00 |
| Bill | 02/01/2015 | 201202-4771 | Sequel Systems | 01/30/2015 | 2,468.50 | 0.00 |
| Bill | 12/31/2014 | 201202-4772 | Sequel Systems | 01/15/2015 | 1,565.40 | 0.00 |

| Bill | 12/12/2014 201202-4632 | Sequel Systems | 12/22/2014 | 1,499.25 | 0.00 |
| Bill | 02/21/2015 02212015 | Slomins (PCA) | 03/03/2015 | 104.12 | 0.00 |
| Bill | 01/05/2015 139940 | Spectrum Designs | 01/20/2015 | 491.70 | 0.00 |
| Bill | 02/28/2015 28 | SRM ADVISORS INC | 03/13/2015 | 6,400.00 | 0.00 |
| Bill | 01/26/2015 25 | SRM ADVISORS INC | 02/05/2015 | 6,400.00 | 0.00 |
| Bill | 01/31/2015 3256123575 | Staples | 03/02/2015 | 488.65 | 0.00 |
| Bill | 01/31/2015 3256123573 | Staples | 03/02/2015 | 8.20 | 0.00 |
| Bill | 01/31/2015 3256123574 | Staples | 03/02/2015 | 61.91 | 0.00 |
| Bill | 01/31/2015 3256123570 | Staples | 03/02/2015 | 29.30 | 0.00 |
| Bill | 02/07/2015 3256813424 | Staples | 03/09/2015 | 1,722.04 | 0.00 |
| Bill | 02/07/2015 3256813423 | Staples | 03/09/2015 | 28.64 | 0.00 |
| Bill | 02/07/2015 3256813422 | Staples | 03/09/2015 | 63.76 | 0.00 |
| Bill | 02/07/2015 3256813421 | Staples | 03/09/2015 | 197.93 | 0.00 |
| Bill | 02/21/2015 3257903654 | Staples | 03/23/2015 | 286.55 | 0.00 |
| Bill | 02/28/2015 8033456030 | Staples | 03/30/2015 | 621.36 | 0.00 |
| Bill | 02/28/2015 8033800600 | Staples | 04/27/2015 | 902.64 | 0.00 |
| Bill | 02/06/2015 02062015 | Suffolk County Water Authority (PCA) | 02/16/2015 | 32.74 | 0.00 |
| Bill | 02/28/2015 452213 | TGI OFFICE AUTOMATION | 04/10/2015 | 523.63 | 0.00 |
| Bill | 02/24/2015 35676 | Trans-Continental Credit & Collection | 03/06/2015 | 216.40 | 0.00 |
| Bill | 02/10/2015 19264 | Trans-Continental Credit & Collection | 03/12/2015 | 25.00 | 0.00 |
| Bill | 02/24/2015 35604 | Trans-Continental Credit & Collection | 03/26/2015 | 72.75 | 0.00 |
| Bill | 02/24/2015 35590 | Trans-Continental Credit & Collection | 03/26/2015 | 166.06 | 0.00 |
| Bill | 12/30/2014 30759 | Trans-Continental Credit & Collection | 01/29/2015 | 577.50 | 0.00 |
| Bill | 01/28/2015 77072 | Trans-Continental Credit & Collection | 02/07/2015 | 50.00 | 0.00 |
| Bill | 01/28/2015 77056 | Trans-Continental Credit & Collection | 02/07/2015 | 776.50 | 0.00 |
| Bill | 02/10/2015 19260 | Trans-Continental Credit & Collection | 02/20/2015 | 82.69 | 0.00 |
| Bill | 01/28/2015 77054 | Trans-Continental Credit & Collection | 02/27/2015 | 6.25 | 0.00 |
| Bill | 01/28/2015 77057 | Trans-Continental Credit & Collection | 02/27/2015 | 25.00 | 0.00 |
| Bill | 02/22/2015 2222015 | Verizon (PCA) | 03/19/2015 | 78.58 | 0.00 |
| Bill | 01/22/2015 12222015 | Verizon (PCA) | 01/22/2015 | 82.19 | 0.00 |
| | | **TOTAL** | | 257,988.46 | 16,475.00 |

AHMS-Revenue Adjustme

| | 2014 revenues | 2015 Revenues - Jan-Jul | 20% Adjustment to 2014 revenues | Purchase price adjustment |
|---|---|---|---|---|
| Canal Radiology | - | - | - | - |
| Centre Commons MRI & CT | - | - | - | - |
| Community Radiology of Virginia | - | - | - | - |
| Omaha Imaging | - | - | - | - |
| Open MRI of Daytona | - | - | - | - |
| Paramount Imaging Corporate | - | - | - | - |
| Park South Imaging Center | - | - | - | - |
| Presgar Imaging of Rockledge | - | - | - | - |
| Price Hoffman Stone & Associates:PHS | - | - | - | - |
| Price Hoffman Stone & Associates:PHS - Bayfront | - | - | - | - |
| Price Hoffman Stone & Associates:PHS - Baywalk | - | - | - | - |
| Price Hoffman Stone & Associates:PHS - Pinellas | - | - | - | - |
| Suncoast Imaging of Port Orange | - | - | - | - |
| University Open MRI of Augusta | - | - | - | - |
| USDL Pittsburgh Inc. | - | - | - | - |
| Central Nebraska Imaging | 22,230 | 19,747 | - | - |
| Clovis Open MRI | 31,517 | 32,370 | - | - |
| Dr. Joseph Peters | 9,163 | 7,010 | - | - |
| Impression Imaging | 56,678 | 88,331 | - | - |
| Khurana Radiology MD PA | 12,371 | 36,763 | - | - |
| Northeast Nebraska Imaging | 22,001 | 22,108 | - | - |
| Open MRI of Pueblo | 67,133 | 79,719 | - | - |
| Physicians Imaging Center of Florida | 171,208 | 127,506 | - | - |
| Precision Imaging of New York | 138,328 | 197,549 | - | - |
| Rosetta Radiology | 175,829 | 213,192 | - | - |
| White River Imaging | 39,509 | 31,373 | - | - |
| Accurate Medical Diagnostic Services | 80,437 | 105,625 | - | - |
| Advanced Medical Imaging | 6,400 | - | 1,280 | 6,912.0 |
| Altec | 5,250 | - | 1,050 | 5,670.0 |
| American Radiology Services | 941 | - | 188 | 1,016.5 |
| Atlantic Health Solutions | 3,200 | - | 640 | 3,456.0 |
| Diagnostic Imaging Associated, P.A | 4,777 | - | 955 | 5,159.7 |
| Pueblo Pediatrics/Parvin | 6,206 | - | 1,241 | 6,702.8 |
| Toledo Medical - MedPro Medical | 5,145 | - | 1,029 | 5,557.0 |
| Kettering Medical Center | 33,000 | - | 6,600 | 35,640.0 |
| Children's Clinic of Pueblo | 54,527 | - | 10,905 | 58,889.5 |
| Professional Radiology Associates | 59,241 | - | 11,848 | 63,980.1 |
| Professional Imaging Consultants | 4,600 | 879 | 920 | 4,967.7 |
| Suncoast Vein and Vascular | 42,453 | 997 | 8,491 | 45,848.9 |
| Price Hoffman Stone & Associates | 103,112 | 5,410 | 20,622 | 111,360.5 |
| InMed Diagnostic Services | 507,475 | 26,276 | 101,495 | 548,072.5 |
| BAB Radiology | 448,669 | 32,419 | 89,734 | 484,563.0 |
| Paramount Imaging Group | 279,809 | 37,873 | 55,962 | 302,193.4 |
| **Total** | **2,391,209** | **1,065,148** | | **1,689,989** |

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

       Index No.:
-------------------------------------------------------------------X   File No.: 22249

CRITERIONS, LLC,

                   Plaintiff,         **SUMMONS**

          -against-           Place of Venue is the
                                            Plaintiff's
                                            Place of Business:
VISIENT CORP. D/B/A PORTECK CORPORATION,  18 Genevieve Place
PHYSICIANS PRACTICE PLUS LLC D/B/A           Great Neck, NY 11021
PORTECK CORPORATION, ARVIND WALIA
D/B/A PORTECK CORPORATION,
CONSTELLATION HEALTHCARE
TECHNOLOGIES, INC.,

                 Defendants.
-------------------------------------------------------------------X

To the above named Defendants:

YOU ARE HEREBY SUMMONED to appear in the SUPREME COURT OF THE
STATE OF NEW YORK, COUNTY OF NASSAU at the office of the Clerk of said
Court at 100 Supreme Court Drive, Mineola, New York , in the COUNTY OF NASSAU,
within the time provided by law as noted below and to file answer to the below complaint
with the clerk: upon failure to answer, judgment will be taken against you by default in
the sum of $61,490.00 plus interest from February 1, 2015, together with the costs and
disbursements of this action.

Dated: March 9, 2016
      Port Chester, New York

                                      Kavulich & Associates, P.C.
                                      By: Matthew Kasper, Esq.
                                      181 Westchester Ave., Suite 500-C
                                      Port Chester, NY 10573

Defendants' Addresses:             (914) 355-2074
VISIENT CORP.                 PHYSICIANS PRACTICE PLUS LLC
c/o Arvind Walia               300 Jericho Quadrangle, Suite 320
3 Farmwood Lane             Jericho, NY 11753
Upper Brookville, NY 11545

                                      Constellation Healthcare Technologies, Inc.
Arvind Walia                 c/o The Corporation Trust Company
27 Kettlepond Road          Corporation Trust Center
Jericho, NY 11753           1209 Orange Street
                                        Wilmington, DE 19801

Note: The law provides that: (a) If the summons is served by its delivery to you
personally within the City of New York, you must appear and answer within TWENTY
days after such service; or (b) If the summons is served by any means other than personal
delivery to you within the City of New York, you must appear and answer within
THIRTY days after proof of service thereof is filed with the Clerk of this Court.

2063

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No.:
File No.: 22249

-----------------------------------------------------------------X

CRITERIONS, LLC,

Plaintiff,

**VERIFIED COMPLAINT**

-against-

VISIENT CORP. D/B/A PORTECK CORPORATION,
PHYSICIANS PRACTICE PLUS LLC D/B/A
PORTECK CORPORATION, ARVIND WALIA
D/B/A PORTECK CORPORATION,
CONSTELLATION HEALTHCARE
TECHNOLOGIES, INC.

Defendants.

-----------------------------------------------------------------X

Plaintiff, CRITERIONS, LLC, by its attorneys, Kavulich & Associates, P.C., as

and for its Complaint alleges:

### THE PARTIES

1.  Plaintiff, CRITERIONS, LLC (hereinafter "Plaintiff"), is a domestic limited

liability corporation.

2.  Defendants, VISIENT CORP. D/B/A PORTECK CORPORATION (hereinafter

collectively "Defendants"), is upon information and belief, a domestic business

corporation.

3.  Defendants, PHYSICIANS PRACTICE PLUS LLC D/B/A PORTECK

CORPORATION (hereinafter collectively "Defendants"), is upon information and belief,

a domestic business limited liability corporation.

4.  Defendants, CONSTELLATION HEALTHCARE TECHNOLOGIES, INC.

(hereinafter collectively "Defendants"), is upon information and belief, a Delaware

corporation.

2064

5.  Defendants, ARVIND WALIA D/B/A PORTECK CORPORATION (hereinafter collectively "Defendants"), is upon information and belief, an individual residing in the State or New York.

## BACKGROUND

6.  On or about August, 20, 2001, Complex Corporation and Presgar Imaging, LC &/or BAB Radiology executed a software license & Support Agreement.

7.  Thereafter, the agreement was assigned to Defendants with Plaintiff Criterions, LLC. as a party thereto.

8.  Said products and services were offered by Plaintiff and accepted by Defendants pursuant to the aforementioned agreement at an agreed value of $61,490.00.

9.  Contemporaneous with said tender, Plaintiff provided corresponding invoices to Defendants concerning the same, the terms of which were accepted by Defendants without any protest or objection thereto.

10. Defendants has represented to Plaintiff that no payments will be forthcoming.

11. Accordingly, there exists an unpaid balance of $61,490.00 which is currently due and owing from Defendants to Plaintiff.

12. To date, and despite Plaintiff's demand, said unpaid balance has not been satisfied by any source.

13. On or about March 17, 2015, Defendants PHYSICIANS PRACTICE PLUS LLC D/B/A PORTECK CORPORATION was acquired by CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. together with all debts, assets, and liabilities.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Breach of Contract)

14. Plaintiff repeats the foregoing allegations as if fully set forth herein.

2065

15. By failing to satisfy said unpaid balance of $61,490.00, Defendants have breached the terms of its agreement with Plaintiff as represented by the invoices, correspondence, and other documents associated with the underlying transactions.

16. Defendants' breach of said agreement caused harm to Plaintiff.

17. Consequently, Plaintiff demands judgment in the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Goods Sold and Delivered)

18. Plaintiff repeats the foregoing allegations as if fully set forth herein.

19. Pursuant to CPLR § 3016(f), Defendants owe Plaintiff for goods sold and delivered represented by invoices issued to Defendants in the total amount of $61,490.00.

20. Consequently, Plaintiff demands judgment in the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Account Stated)

21. Plaintiff repeats the foregoing allegations as if fully set forth herein.

22. Plaintiff provided Defendants with a true and complete account in the amount of $61,490.00 to which Defendants have made no objection.

23. Consequently, Plaintiff demands judgment in the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

24. Plaintiff repeats the foregoing allegations as if fully set forth herein.

2066

25. Defendants accepted the goods delivered to it by Plaintiff, and upon information and belief, resold the same to its customers for which it received or expects to receive payment.

26. As a result, Defendants derived a substantial benefit from the goods delivered to it by Plaintiff for which Plaintiff has not been paid.

27. Therefore, Defendants have been unjustly enriched in the amount of not less than $61,490.00 at the expense of Plaintiff.

28. Consequently, Plaintiff demands judgment in the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
(Quantum Meruit)

29. Plaintiff repeats the foregoing allegations as if fully set forth herein.

30. Plaintiff delivered said goods to Defendants in good faith and with the expectation of being paid by Defendants.

31. The fair and reasonable value of said goods received by Defendants from Plaintiff but not paid for by Defendants is at least $61,490.00.

32. Consequently, Plaintiff demands judgment in the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

    a.  A money judgment upon the First, Second, Third, Fourth, and Fifth Causes of Action for the sum of $61,490.00 plus interest at the statutory rate of 9% per annum from February 1, 2015;

    b.  Together with costs and disbursements of this action; and

   c. For such other and further relief as the Court deems just and proper.

Dated: March 9, 2016
   Port Chester, New York

            Kavulich & Associates, P.C.
            By: Matthew Kasper, Esq.
            181 Westchester Ave., Suite 500-C
            Port Chester, NY 10573
            (914) 355-2074

## VERIFICATION

State of New York          )
                           ) ss

COUNTY OF NASSAU     )

       Rajeev Mathur, being duly sworn deposes and says:

       I am the Vice President of the Plaintiff CRITERIONS, LLC I have read this Complaint and know the contents thereof to be true to my own knowledge except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Sworn to before me this
8th day of _March_, 2016

_____
Notary Public

                                    _____
                                    Rajeev Mathur

LISA SCHOEN
Notary Public, State of New York
No. 01SC5025487
Qualified in Nassau County
Commission Expires May 09 20_16_

2069

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No.:
File No.: 22249

------------------------------------------------------------------X
CRITERIONS, LLC,

                        Plaintiff,

            -against-

VISIENT CORP. D/B/A PORTECK CORPORATION,
PHYSICIANS PRACTICE PLUS LLC D/B/A
PORTECK CORPORATION, ARVIND WALIA
D/B/A PORTECK CORPORATION,
CONSTELLATION HEALTHCARE
TECHNOLOGIES, INC.

                        Defendants.

------------------------------------------------------------------X

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

       PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of the Section.

       For information about electronic filing, including access to Section 202.5-bb, consult the website of the New York State Courts Electronic Filing System ("NYSCEF") at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@ecourts.state.ny.us.

Dated: March 9, 2016
       Port Chester, New York

                                 Kavulich & Associates, P.C.
                                   By: Matthew D. Kasper, Esq.
                                   181 Westchester Ave., Suite 500-C
                                   Port Chester, NY 10573
                                   (914) 355-2074

Defendants' Addresses:

VISIENT CORP.
c/o Arvind Walia
3 Farmwood Lane
Upper Brookville, NY 11545

Arvind Walia
27 Kettlepond Road
Jericho, NY 11753

PHYSICIANS PRACTICE PLUS LLC
300 Jericho Quadrangle, Suite 320
Jericho, NY 11753

Constellation Healthcare Technologies, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

2070



FILED: NASSAU COUNTY CLERK 11/30/2017 09:00 AM        INDEX NO. 601569/2016

NYSCEF DOC. NO. 57                                    RECEIVED NYSCEF: 12/01/2017

**Nassau County**
**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

---

**Ref ID#: EC 16 601569**          **Instrument Number: 2017- 00256647**
                                              As
                    **JE1 - ELECT JUDG SUPREME COURT MONEY**

Recorded On:  **November 30, 2017**
Parties:  **Criterions LLC**

    TO  **VISIENT CORP**                              Num Of Pages: **4**
Recorded By:  **KASPER**                              Comment:

---

**** Examined and Charged as Follows: ****

JE1 - ELECT JUDG SUPREME CC          0.00

    **Recording Charge:**      **0.00**

---

**** THIS PAGE IS PART OF THE INSTRUMENT ****

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                    **Record and Return To:**

    Document Number:  2017- 00256647
    Receipt Number:  887490
    Recorded Date/Time:  November 30, 2017 01:46:23P
    Book-Vol/Pg:  Bk-K  Vl-165  Pg-291
    Cashier / Station:  0 KN  /  NCCL-2GXNV42

---



*Maureen O'Connell*
**County Clerk Maureen O'Connell**

1 of 4

At a IAS **4** of The Supreme Court
of the State of New York, held in and
for the County of Nassau, at the
Supreme Courthouse at 100 Supreme
Court, Mineola, New York, on the
_28_ day of _Nov._, 2017

Present: **HON. ANTHONY L. PARGA**

-----------------------------------------------------------X

CRITERIONS LLC,

                Plaintiff,

    - against -

VISIENT CORP. D/B/A PORTECK
CORPORATION, PHYSICIANS PRACTICE
PLUS LLC D/B/A PORTECK CORPORATION,
ARVIND WALIA D/B/A PORTECK
CORPORATION, CONTELLATION
HEALTHCARE TECHNOLOGIES, INC.,

                Defendants.

-----------------------------------------------------------X

Index No.: 601569/16 **[EFILED]**

**JUDGMENT**

Motion Date: 8/30/17
Sequence No. 003

      Plaintiff, CRITERIONS LLC by its attorneys Kavulich & Associates, P.C., having moved this Court for an order pursuant to 22 NYCRR §202.27(a) seeking a default judgment in favor Plaintiff CRITERIONS LLC, and against the Defendants VISIENT CORP. D/B/A PORTECK CORPORATION, PHYSICIANS PRACTICE PLUS LLC D/B/A PORTECK CORPORATION, ARVIND WALIA D/B/A PORTECK CORPORATION, CONTELLATION HEALTHCARE TECHNOLOGIES, INC., and upon the Notice of Motion for default judgment dated August 9, 2017 and the supporting Affirmation of Matthew Kasper, Esq. ~~sworn~~ **AFFIRMED** on August 9, 2017, together with the affidavit of Raj Mathur, Plaintiff's vice president annexed thereto, and upon reading and filing the aforesaid papers, and due deliberation having had thereon, and upon the decision of Hon. Anthony L. Parga a Justice of this Court dated October 18, 2017 granting Plaintiff's motion in its entirety, a copy of which is annexed hereto;

      NOW, upon motion of Matthew Kasper, Esq. attorneys for Plaintiff, it is

2072

**ORDERED**, that the Plaintiff's motion for default judgment is hereby granted, and is further;

**ADJUDGED**, that Plaintiff CRITERIONS LLC located at 18 Genevieve Place, Grate Neck, NY 11021 be awarded judgment against Defendants VISIENT CORP. D/B/A PORTECK CORPORATION located at 3 Farmwood Lane, Upper Brookville, NY 11545, PHYSICIANS PRACTICE D/B/A PORTECK CORPORATION PLUS LLC located at 300 Jericho Quadrangle, Suite 320, Jericho, NY 11753, ARVIND D/B/A PORTECK CORPORATION WALIA residing at 27 Kettlepond Road, Jericho, NY 11753, CONTELLATION HEALTHCARE TECHNOLOGIES, INC. located at 3200 Wilcrest Drive, Suite 600, Houston, TX 77042, the sum of $61,490.00 together with statutory interest from February 1, 2015 in the amount of $ 15,662.26 CC together with costs and disbursements in the amount of $615.00 CC for a total of $77,767.26 CC ;

**ORDERED** that the Plaintiff shall have executive thereof.

ENTER:

HON. ANTHONY L. PARGA, JSC    RG AS TO FORM

JSC

**ENTERED**

NOV 3 0 2017

NASSAU COUNTY
COUNTY CLERK'S OFFICE

3 of 4

2073

FILED: NASSAU COUNTY CLERK 11/30/2017 09:00 AM
NYSCEF DOC. NO. 57
RECEIVED NYSCEF: 12/01/2017

INDEX NO. 601569/2016

NYSCEF DOC. NO. 55
RECEIVED NYSCEF: 11/14/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

INDEX NO. 601569/2016E
FILE NO. 22249

------------------------------------------------------------X

CRITERIONS, LLC,

BILL OF COSTS

PLAINTIFF(S)

-AGAINST-

VISIENT CORP. D/B/A PORTECK CORPORATION,
PHYSIIANS PRACTICE PLUS LLC D/B/A
PORTECK CORPORATION,
ARVIND WALIA D/B/A PORTECK CORPORATION,
CONSTELLATION HEALTHCARE TECHNOLOGIES, INC.,

DEFENDANT(S)

------------------------------------------------------------X

*ADJUSTED AT $ 615.00 THIS 30 DAY OF November 2017* (handwritten, with signature) *CLERK, NASSAU CO.*

COSTS for:

| | |
|---|---|
| Proceedings before Note of Issue is filed – CPLR § 8201(1) | $200.00 |
| Motion – CPLR § 8202 | ~~$25.00~~ |

SUBTOTAL ~~$225.00~~ $200.00

FEES and DISBURSMENTS for:

| | |
|---|---|
| Index number of county clerks – CPLR § 8018 | $210.00 |
| Request for Judicial Intervention | $ 95.00 |
| Note of Issue | $ 0.00 |
| Serving summons and complaint – CPLR § 8011(h) | $ 25.00 |
| Prospective Marshal's Fee | $ 40.00 |

*Motion*

SUBTOTAL ~~$370.00~~ $415.00

TOTAL $615.00

Attorney's Affirmation

STATE OF NEW YORK )
)  ss.:
COUNTY OF WESTCHESTER )

The undersigned, Matthew D. Kasper, Esq., an attorney duly admitted to practice law in the courts of the State of New York, hereby affirms the following under penalty of perjury:

I am a member of the law firm of Kavulich & Associates, P.C., attorneys for the Plaintiff, herein. As such, I am fully familiar with the facts and circumstances of the above captioned action; that the foregoing costs are correct and were necessarily incurred in this action and are reasonable in amount; and that the services for which fees have been charged were actually and necessarily performed and are reasonable in amount.

Dated:  November 14, 2017
Westchester, New York

By: Matthew D. Kasper, Esq.
Kavulich & Associates, P.C.
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
Attorney for Plaintiff

2074

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------ :

In re: : Chapter 11
:
ORION HEALTHCORP, INC[1]. : Case No. 18-71748 (AST)
:
_____ Debtors. : (Jointly Administered)
------------------------------------------ :
:
HOWARD M. EHRENBERG IN HIS CAPACITY :
AS LIQUIDATING TRUSTEE OF ORION : Adv. Pro. No. 20-08042 (AST)
HEALTHCORP, INC., ET AL., :
:
Plaintiff, :
:
v. :
:
HOWARD M. SCHOOR, :
:
Defendants. :
:
------------------------------------------ :

**AFFIDAVIT OF JEFFREY P. NOLAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER
AWARDING REASONABLE ATTORNEYS' FEES AND EXPENSES**


STATE OF CALIFORNIA        )
                           )    ss.:
COUNTY OF LOS ANGELES      )


JEFFREY P. NOLAN, being duly sworn, deposes and says:

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

1.      I am an attorney at law duly licensed to practice before all courts in the State of California.  I am an attorney with the law firm of Pachulski Stang Ziehl & Jones LLP, attorneys of record for Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., for the estates of the above-captioned debtors, counsel of record in this adversary proceeding.  The facts stated herein are of my own personal knowledge, or made known to me from a review of the files and pleadings in this action which are maintained in the ordinary course of business.  If called upon as a witness to any facts set forth herein, I could and would competently testify thereto.

2.      I make this Affidavit in support of the accompanying Plaintiff's Motion for Entry of an Order Awarding Reasonable Attorneys' Fees and Expenses (the "Motion").[2]

3.      Attached hereto as **Exhibit A** is a true and correct copy of Notice of Ruling transcript from the June 3, 2021 hearing.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the December 9, 2019, demand letter executed by the undersigned and mailed to Defendant, a copy of which is maintained in the client files of this office.

5.      Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's Request for Admissions, Set One propounded on Defendant on May 1, 2020, a copy of which is maintained in the client files of this office.

6.      Attached hereto as **Exhibit D** is a true and correct copy of Defendant's Responses to Plaintiff's Request for Admissions, Set One dated October 13, 2020 received by Plaintiff, a copy of which is maintained in the client files of this office.

---

[2] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Motion.

7.      The hourly billing rate for the undersigned for 2020 was $825.00 per hour.  The current billing rate for 2021 is $925.00 per hour.  The rate is the standard billing rate for the undersigned in this market based on my position as a litigation attorney with the Firm, background and thirty (30) years of experience before federal and state courts.

8.      Attached hereto as **Exhibit E** is a true and correct copy of a summary of the fees entitled "Post-Discovery" incurred after October 14, 2020, following the receipt of Defendant's Responses to Requests for Admission.  The summary contains the actual billing entries to the client, copied verbatim, but redacted to remove certain privileged information.  The amount incurred after receipt of the discovery responses was $77,517.50.  If necessary, the Firm can produce the actual billing records in camera, but for ease of reference utilized the excerpts.

9.      Attached hereto as **Exhibit F** is a true and correct copy of a summary of the fees entitled "Deposition" incurred with respect to the notice and taking of the deposition of Howard M. Schoor in the amount of $14,319.50, following the receipt of Defendant's Responses to Requests for Admission.  The attached summary is a compilation of charges from our attorney invoice billing records for the time period in question.

10.      Attached hereto as **Exhibit G** is a true and correct copy of a summary of the fees entitled "Motion for Summary Judgment Fees" incurred after October 14, 2020, with respect to drafting, responding, appearing and arguing the motion in the amount of $36,919.

11.      Attached hereto as **Exhibit H** is a true and correct copy of the legal research charges received by the Plaintiff for the filing of law and motion practice in the adversary.  The total sum charged to the client, after discounts, is $1,904.57.

3

12.    Attached hereto as **Exhibit I** is a true and correct copy of a summary of the costs incurred of $5,986.62 entitled "In Adversary Orion Healthcorp vs. Howard Schoor", along with a true and correct copy of the Court Reporter's invoice for the deposition of Defendant.

13.    Attached hereto as **Exhibit J** is a true and correct copy of the fees incurred in this adversary at the firm of $97,356.50.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of June, 2021 at Los Angeles, California.



_____
Jeffrey P. Nolan

SWORN TO AND SUBSCRIBED before me this
17th day of June, 2021

```
SOPHIA LOUISA LEE
Notary Public - California
Los Angeles County
Commission # 2337676
My Comm. Expires Dec 16, 2024
```

4

# EXHIBIT A

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748-ast

4    Adv. Case No. 20-08042-ast

5    - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    ORION HEALTHCORP, INC.,

9

10            Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE

13   OF ORION HEALTHCORP, INC., et al.,

14                  Plaintiffs,

15            v.

16   HOWARD SCHOOR,

17                  Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

1              United States Bankruptcy Court

2              290 Federal Plaza

3              Central Islip, New York 11722

4

5              June 3, 2021

6              10:11 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re 43 Amended Notice of Motion/Presentment Filed by

2    Plaintiff Howard M Ehrenberg);

3

4    HEARING re 27 Motion for Summary Judgment Filed by Plaintiff

5    Howard M Ehrenberg)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    PACHULSKI STANG ZIEHL & JONES LLP

4        Attorneys for the Trustee

5        780 Third Avenue, 34th Floor

6        New York, NY 10017

7

8    BY:  JEFF NOLAN

9        ILAN SCHART

10

11    PARLATORE LAW GROUP

12        Attorneys for 2 River Terrace

13        One World Trade Center, Suite 8500

14        New York, NY 10007

15

16    BY:  MARYANN HADDEN

17

18    ROSEBURG & PITTINSKY, LLP

19        Attorneys for Residential Board of Managers of

20        Riverhouse One Rockefeller Park Condominium

21        232 Madison Avenue, Suite 906

22        New York, NY 10016

23

24    BY:  LAWRENCE PIITTINSKY

25

```
 1   GIORDANO HALLERAN & CIESLA, P.C.

 2        Attorneys for Howard Schoor

 3        125 Half Mile Road, Suite 300

 4        Red Bank, NJ 07701

 5

 6   BY:  DONALD CAMPBELL

 7

 8   ROSEN & ASSOCIATES, LLP

 9        Attorneys for Arvind Walia

10        747 Third avenue, 20th Floor

11        New York, NY 10017

12

13   BY:  SANFORD ROSEN

14        PARIS GYPARAKIS

15

16   ALSO PRESENT TELEPHONICALLY:

17

18   JOSEPH ORBACH

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2             CLERK:  Good morning.  I am Amy Tenorello, the

3    courtroom deputy for the Honorable Chief Judge Alan S.

4    Trust.  This hearing is being recorded.

5             THE COURT:  All right.  We'll take up.  Ms.

6    Tenorello, if you want to call the first two matters?

7             CLERK:  Oh, I'm sorry, Judge.  The first matter is

8    18-71748 Orion Healthcorp, Inc.

9             THE COURT:  I'm going to take appearances in the

10   main case on the sale motion as well as in adversary

11   proceeding 20-8051 which is on for status today, Ehrenburg

12   v. Sartison, et al., so who's appearing on those matters?

13            MR. SCHARF:  Sorry, I was on mute.  Good morning,

14   Your Honor.  It's Ilan Scharf and Jeff Nolan of Pachulski

15   Stang Ziehl and Jones on behalf of the Trustee.

16            MR. PITTINSKY:  Good morning, Judge.  Lawrence D.

17   Pattinsky, Roseburg and Pittinsky on behalf of non-party

18   board of managers of the Riverhouse Condominium.

19            MS. HADDEN:  Good morning, Your Honor.  Maryam

20   Hadden from Parlatore Law Group on behalf of 2 River Terrace

21   Apartment 12J LLC, one of the defendants in the adversary

22   and an interested party in the main case.

23            MR. LEV:  Good morning, Your Honor.  Daniel Lev,

24   Sulmeyer Kupetz.  I am general bankruptcy counsel for Howard

25   Ehrenburg, a liquidating trustee.  I will just be monitoring
```

1    today and Mr. Nolan and Mr. Scharf will be handling the

2    hearing.

3              THE COURT:  All right.  Very well.  Anyone else?

4    All right.  So, before I take your arguments or positions on

5    the motion, let me outline some of the questions that the

6    Court has for the parties based upon the pleadings, based

7    upon some prior hearings on this matter.

8              My first question is always the optimistic

9    question, which is have you all reached either an overall

10   settlement of the adversary or at least a protocol

11   concerning the sale of the 2 River Terrace apartment?

12             MR. SCHARF:  No, Your Honor.

13             THE COURT:  Ms. Hadden?

14             MS. HADDEN:  We have not, Your Honor.  We are

15   still working on getting all of the personal property of the

16   manager of the LLC out of the apartment and we're in the

17   midst of selecting a second date for that.

18             But in terms of the sale of the apartment, no,

19   we're still on opposing ends.

20             THE COURT:  All right.  And so then, here are the

21   questions that the Court has, the other questions I suppose.

22             First, it does appear as raised by the 2 River

23   Terrace party in interest that as of right now there is a

24   non-final judgment that was entered in the adversary

25   proceeding which is now subject to what might be an

1  interlocutory appeal to the district court.  It appears that

2  whoever has indicated that it has sought a stay pending

3  appeal but I don't see that on the CMECF docket.

4          So, let me first raise this to Mr. Scharf or Mr.

5  Nolan.  What is the Trustee's position on whether or not the

6  Court's order and judgment from back in March is

7  interlocutory?

8          MR. SCHARF:  Our position, Your Honor, is that the

9  judgment is interlocutory.  We'll brief that in full in

10  front of the district court within the next 12 days or so.

11          THE COURT:  All right.  And so, from this Court's

12  understanding, the purpose of seeking to determine a

13  judgment on appeal to be interlocutory is to have the appeal

14  dismissed.

15          And so, if the appeal is dismissed, where does

16  that then leave 2 River Terrace on attempting to challenge

17  whether or not the property, which is currently subject of

18  an interlocutory partial judgment, should be sold or not

19  before there's at least a final judgment or a final

20  appealable judgment?

21          MR. SCHARF:  Your Honor, I -- well, if there's no

22  appeal -- if the appeal is mooted out, I think they would

23  have to come back before Your Honor and seek some further

24  injunctive relief that Your Honor may or may not grant based

25  on whatever facts they can adduce to prevent the sale of the

1   property.

2          THE COURT:  Wouldn't that then speak in favor of

3   not going forward and allowing the trustee -- the

4   liquidating trustee to sell the property now?

5          MR. SCHARF:  Well, we don't think that that would

6   have any chance of -- a reasonable likelihood or chance of

7   success, Your Honor.  And in addition any relief granted to

8   Mr. Parmar, either with respect to a stay pending appeal or

9   future injunctive relief should absolutely be conditioned on

10  his first posting a bond in the -- in the full amount and

11  value of this property, and second paying the arrears and

12  ongoing expenses that are due to the condo board that caused

13  this to become essentially a wasting asset which is I know

14  unusual for real estate, but given the arrears and ongoing

15  losses and expenses associated with this apartment, it's

16  only appropriate that any relief granted to Mr. Parmar be

17  conditioned on at least -- at the very least a bond and

18  payment of the arrears.

19         THE COURT:  All right.  Thank you, Ms. Hadden,

20  what is 2 River Terrace's position on those issues?

21         MS. HADDEN:  Addressing first the question of

22  whether the judgment is interlocutory and what the effect of

23  that would be if the appeal is dismissed for that reason,

24  and it's in fact for that reason that we initially did not

25  file for stay under Rule 8007.

1          We were aware of the Trustee's position that the

2     order -- that the Court's order granting -- or transferring

3     ownership of the apartment to the Trustee was an

4     interlocutory order.

5          Based on that, it was our position that it was

6     untimely for the Trustee to be attempting to sell it.  If

7     the Trustee doesn't finally, for lack of a better term, own

8     the apartment, the sale of the apartment would be

9     injudicious to say the least, and it certainly puts Mr.

10    Parmar and more essentially the LLC in a position where if

11    the apartment is sold, at that point obviously, as the Court

12    is well aware under the Bankruptcy Code, there would be no

13    possibility of appeal at that particular sale.  Once the

14    asset -- once the real estate is sold, the real estate is

15    gone.  There's no appellate remedy.

16         So, we're in a situation where we have appealed

17    what we believed to be a final order, the Trustee believed

18    not to be a final order and it to be a interlocutory order,

19    and I think at this point it's premature to attempt to sell

20    the apartment when that issue is still outstanding.

21         If the order is final, then it is appealable and

22    at that point the appeal can go forward and either we

23    prevail or we don't.  If it's not final, then we're in a

24    scenario where we would be asking for some form of stay or

25    relief to protect the asset, because it is, as the Court is

1    aware, a unique piece of property.

2            Every piece of property is unique, and you know,

3    finding another apartment or another premises that meets

4    these same specifications is not something that's either

5    easily done or even possibly done under the law.

6            So, in that scenario, I'm, you know, not taking a

7    position one way or the other as to the Trustee's

8    application that Mr. Parmar set forth a bond.  I honestly

9    don't know what his financial ability to do that is or what

10   the bond amount that the Court would set would be, but that

11   certainly is something that we would endeavor to do if the

12   Court were to require it of us.

13           And in that case, presuming that we were able to

14   do it, we would be doing it to attempt to protect the LLC's

15   sole asset from what at this point is at least arguably not

16   a final determination.

17           THE COURT:  And what about the issue that, one, it

18   is in a sense a wasting asset, more because there are costs

19   and expenses of upkeep, maintenance, board fees, etcetera,

20   being incurred that no one is paying, which Mr. Pittinsky

21   has been both quite vocal and quite temperate about on

22   behalf of his client in these proceedings, and it appears

23   that since an agreement was reached to move out the personal

24   property, nobody is living there?

25           MS. HADDEN:  It's correct that nobody is living

1    there, and in fact no one has been able to live there over

2    the last couple of years because -- and Mr. Pittinsky and I

3    are on opposite sides about this issue as well, but it has

4    been our client's position and experience that whenever he

5    would attempt to go to the building, he was refused access

6    to the building.

7             Obviously at this point I'm speaking before the

8    Court's transfer of ownership to the Trustee.  For that

9    reason -- and I see Mr. Pittinsky shaking his head, I'm well

10   aware and I will certainly put on the record that he has

11   informed me that that is not the case.

12            Again, it's yet another thing that we can work oit

13   in mitigation I suppose.  But Mr. Parmar has, because of the

14   denial of access, been unable to use the apartment himself

15   over the last couple of years, since 2018, and it was for

16   that reason that the charges were not being paid initially.

17            It has been his position, and it was the position

18   of a case that we filed in state court and have suspended

19   while all of these other proceedings are being worked out,

20   that the denial of access by the board was depriving him of

21   his real property, and it was his position that the amount

22   of deprivation, the cost of that deprivation, actually

23   outweighed the cost of the fees and charges owed to the

24   board and he was seeking an offset in that state court

25   proceeding.

1          Again, that proceeding has been completely put on

2     hold while all of these other matters are ongoing.

3          THE COURT:  And on the subject of things that are

4     on hold, and again this has been discussed at several

5     hearings, all other things be equal, the condo board has had

6     a judgment that they've been very politely holding off on

7     executing on which where they -- did they go forward on that

8     sale, then that property is going to be lost to the estate.

9          I don't think that issue has been lost on any of -

10    - any of the parties.  I doubt that 2 River Terrace's

11    position is that execution on the state court judgment and

12    whatever value that would bring would be higher or better

13    than at least the current $4.8 million offer in front of

14    this Court.

15         MS. HADDEN:  No, that's certainly not anything

16    that I think anybody could contend.  Although the judgment

17    on behalf of the board is substantial, it's certainly

18    significantly less than the 4.8 million.

19         THE COURT:  So, putting procedure aside for a

20    moment, I'm not shelving it because it is one of the things

21    that we do as trial court judges, but putting procedure

22    aside for the moment, has 2 River Terrace made a decision as

23    to whether or not monetizing these assets and paying the

24    judgment that exists and avoiding continued accrual of costs

25    and expenses of maintenance and upkeep, etcetera, is just

1   better than continuing to fight about maintaining the

2   property as opposed to monetizing it and fighting over who

3   gets the money.

4           MS. HADDEN:  At this point, my client's -- I

5   apologize -- my client's manager is still seeking to

6   preserve the asset itself as opposed to monetizing the

7   asset.

8           Can I say that that will always be the case?  No,

9   I can't, but that's still his current position.

10          THE COURT:  All right.  Mr. Pittinsky, I know

11  you're here because you're here and don't necessarily have a

12  direct dog in the hut, but do you want to weigh in on either

13  the sale issue -- well, on the main case sale issue or

14  anything about the adversary on status?

15          MR. PITTINSKY:  Your Honor, not too much to say

16  other than, yes, the board is now getting extremely antsy as

17  the arrears continue to build.  We do have the sheriff on

18  hold.

19          We obviously deny any claim of lack of access to

20  the LLC.  I just want to point out to the Court and Ms.

21  Hadden whatever Mr. Parmar may think, this unit is owned by

22  a limited liability company.  Nobody from that company has

23  been denied access.  No one who was authorized on behalf of

24  that company has ever been denied access, and she can speak

25  to her partner about that.

```
 1              We support monetizing this, sell it, fight about
 2      the money, pay us, we get a new owner in so we have our
 3      common charges being paid going forward.  They defaulted
 4      after knowing about the supreme court action.  This is all
 5      after-the-fact arguments on the apartment.
 6              We strongly request the Court permit the sale to
 7      go forward, and yes, I could say that if it was sold at the
 8      sheriff's sale, the sale price is going to be substantially
 9      less.  Even if it's bid over the judgment amount, it's not
10      going to reach the amount that the Trustee has been able to
11      secure on a private sale.
12              THE COURT:  Thank you.
13              MR. SCHARF:  Your Honor, if I may respond to a
14      couple of the points here?
15              THE COURT:  Sure.
16              MR. SCHARF:  The notion that mister -- that the
17      defendant -- that the LLC did not seek a stay pending appeal
18      because the appeal might be interlocutory based on our
19      contention is frankly absurd.
20              They knew this apartment was going to be sold
21      weeks ago.  It's self-evident that a Trustee who's charged
22      with selling an apart -- with liquidating an estate is not
23      going to let an apartment lie fallow, and we filed the sale
24      motion well before there was a request for a stay.
25              I would have expected a request for a stay pending
```

1    appeal on the judgment, not the underlying sale but on the

2    judgment being enforced to be filed within -- at the same

3    time the appeal was filed or before the appeal was filed and

4    certainly to see one filed if that was their position as of

5    the -- as of the filing of the sale motion.

6              I expect, and this is my conjecture, that they

7    didn't do so because the conditions that would be associated

8    with such a stay would be something like posting a bond or -

9    - and paying arrears so that there is no further

10   depreciation to the asset.

11             I'll also note, Your Honor, when we do talk about

12   depreciation -- or sorry the losses incurred in the asset on

13   the ongoing arrears, the Trustee is making current payments

14   of the ongoing charges.  So, there is that loss.  It's a

15   direct expense being covered by the Trustee since the

16   Trustee took possession of the apartment.

17             And in addition, Your Honor, we have risk here.

18   It's an unoccupied apartment.  There was some minor damage,

19   scratches, holes, things like that, missing knobs from -- or

20   handles from a refrigerator, minor damage.

21             There's a risk there could be further damage.  We

22   could have a flood in that apartment.  We could all be

23   talking about an insurance claim (indiscernible) somebody

24   liable for fixing an apartment rather than monetizing an

25   apartment down the road.

1         So, it's not just the risk of ongoing expenses.

2    There's a risk of something catastrophic happening, and

3    frankly that's all on the Trustee given where we sit with

4    the judgment, Your Honor.

5         THE COURT:  All right.  Thank you.  The sale

6    motion itself, the -- I want to know who the witnesses would

7    be because the Court's -- what the Court's contemplating is

8    I -- I hate to put the practical ahead of the metaphysical

9    but it would seem from a practical standpoint that it would

10   be in everybody's best interest to monetize the asset and

11   fight over the proceeds; 2 River Terrace disagrees, and

12   that's fine.  They're certainly entitled to do so.

13        If I held an evidentiary hearing on the sale

14   motion, I presume the Trustee's witnesses would be Mr.

15   Stanton, the broker who's provided a declaration, and Mr.

16   Ehrenburg, the Trustee?

17        MR. SCHARF:  I believe that would be correct, Your

18   Honor.

19        THE COURT:  All right.  Ms. Hadden, I didn't

20   notice --

21        MR. SCHARF:  And Your Honor, potentially Mr.

22   Pittinsky's client on the losses and ongoing expenses in the

23   apartment, and any issues raised by Ms. Hadden.  I'm not

24   putting your client on the spot, Mr. Pittinsky, but those

25   were issues that were raised.

```
 1            THE COURT:  Ms. Hadden, I didn't notice any
 2   affirmative witness declarations in the opposition.  Is 2
 3   River Terrace contemplating putting on any witnesses in an
 4   evidentiary hearing on a sale?
 5            MS. HADDEN:  In the event of an evidentiary
 6   hearing, Your Honor, I'd have to discuss it with my co-
 7   counsel on the criminal matter, but I would anticipate at
 8   least the possibility of calling Mr. Parmar for at least
 9   limited testimonial purposes.
10            THE COURT:  What about on the not enough money
11   aspect?  What I'm also trying to figure out is, is 2 River
12   Terrace contending that the purchase price is not fair
13   consideration?
14            MS. HADDEN:  Yes.
15            THE COURT:  All right.  Do you all have an expert
16   lined up to testify about the value of the unit or to
17   challenge whether or not the sale and marketing process was
18   adequate?
19            MS. HADDEN:  I do not, but we would retain one.
20            THE COURT:  All right.  Mr. Pittinsky, this is the
21   part where you again get to talk on behalf of your own
22   client.  Do you -- would the board contemplate putting on
23   evidence at a hearing on whether or not the sale
24   consideration is adequate and the process and procedures
25   that the Trustee -- liquidating Trustee went through were
```

1   appropriate for a sale of this type?

2          MR. PITTINSKY:  Your Honor, we would not really

3   take a position, I believe.  I would have to double check

4   with the board itself.  I don't have a client; I have a

5   board.

6          From my point of view, the price is not something

7   we would object to and the procedure is not something the

8   condominium board would object to.  If we were to do

9   objections, we would've put in papers on the motion itself.

10         THE COURT:  All right.  I'm not sure that whether

11  or not some person was told you can't go in there two years

12  ago or 17 months ago is really probative on whether or not -

13  - what the Court would be looking at, which is whether or

14  not the process the Trustee -- liquidating Trustee has gone

15  through in setting up a private sale process, whether or not

16  the property's been adequately marketed, your typical 363

17  type of issues.

18         Again, if 2 River Terrace wants to bring those in,

19  I take evidentiary objections as the question is asked

20  before the answer is given, but I don't really know that

21  that -- who shot John is particularly probative for me at

22  this -- at this stage.  From the Court's vantage point it's

23  really more of was the sale process -- was the sale process

24  appropriate and is the amount obtained as a result a fair

25  sales price.

1        On the procedural side of it, it seems to the

2    Court in managing my docket that the best way to go about

3    this is if -- if the liquidating Trustee wants the partial

4    judgment to be rendered a final judgement under Rule 54,

5    then the trustee can file papers and ask the Court to do

6    that.

7        That takes this dance over whether it's an

8    interlocutory appeal out if the Court were to grant it.  It

9    would again seem -- I'm not ruling on a motion that's not in

10    front of me, but since 2 River Terrace would like the

11    opportunity to challenge this Court's ruling on appeal, and

12    they're more than welcome to do so, it would seem

13    procedurally the only way to actually do that is to render

14    that judgment final, which I can do under Rule 54 but won't

15    do until somebody actually asks me to do so.

16        If 2 River Terrace wants a stay pending appeal,

17    which they're certainly entitled to ask for, that should be

18    before me and then as you all know the trial court makes the

19    first determination on whether and under what circumstances

20    to grant a stay pending appeal, and then that can be taken

21    to the district court.  There's a certain synchronicity

22    between the two of those as they then tie into whether or

23    not the Court would approve the sale and approve the sale at

24    the price which has been advanced by the Trustee.  I don't

25    see that -- I'm not a wine connoisseur, but like -- but what

1   I'm told about bottles of wine is some get better with age,

2   but litigation generally does not.

3           I don't -- I don't see that there is a need --

4   because these issues have been percolating for some time, I

5   don't see the reason to put any significant delay on these

6   issues, because I think the parties are fairly well-informed

7   and advised of what the disputes will be.

8           I'm prepared to give you all both an evidentiary

9   hearing on the sale motion as well as procedural hearings on

10  a 54B motion as well as a stay pending appeal motion on June

11  14th.  That's about 10 days from now.  And again, the issues

12  have been fairly well known and laid out.  I don't see a

13  reason to further delay this, and I have a standing protocol

14  and -- both a virtual platform standing protocol for how I

15  take witness testimony and the who can be in the room when

16  it happens kind of things.

17          As I think you all know from other practice before

18  me, I take all of my direct testimony from party-controlled

19  witnesses by affidavits exchanged in advance and then the

20  parties present here virtually for cross-examination.

21          That's how I'll run this trial.  I typically

22  require those affidavits to be exchanged seven days in

23  advance and then the supporting exhibits provided to the

24  Court in a format that my order will set out.

25          I would anticipate following essentially that

1    program.  I'll probably give you a little flex on the

2    affidavits seven days ahead of time, because there is no --

3    the only affidavit that I think the Court has is Mr.

4    Stanton's.

5              But then have you all, you know, ready to try

6    these issues or argue these issues on June 14th at 2:00

7    Eastern Standard Time.  Mr. Scharf, will the Trustee be

8    ready?

9              MR. SCHARF:  The Trustee can be ready.  He is not

10   in the courtroom right now.  Mr. Lev may know his schedule

11   better.

12             MR. LEV:  Your Honor, I've been texting Mr.

13   Ehrenburg, who unfortunately has another conflict and he

14   said he is available on June 14th.

15             THE COURT:  All right.  Ms. Hadden, will 2 River

16   Terrace be ready?

17             MR. LEV:  Ms. Hadden's on mute.

18             THE COURT:  Oh, Ms. Hadden.

19             MS. HADDEN:  Sorry about that.  I actually have a

20   conflict the afternoon of the 14th.  Is it possible to do

21   the 15th or the 16th?  Almost any other day that week I can

22   do.  Just the 14th I'm already in another courtroom at that

23   time.

24             THE COURT:  Mr. Lev, will you check with Mr.

25   Ehrenburg on June 16th?

1          MR. LEV:  What time, Your Honor?

2          THE COURT:  2:00 Eastern.

3          MS. HADDEN:  Thank you, Your Honor.

4          THE COURT:  All right.  Ms. Hadden, was -- didn't

5     2 River file a stay pending appeal with the district court?

6          MS. HADDEN:  No, Your Honor.  I had actually filed

7     somewhat informally in the course of my opposition to the

8     motion to sell.  I had added an application for a stay

9     within there, but I do need to file a separate application

10    for a stay to fully meet the Court's procedures.

11         THE COURT:  All right.

12         MS. HADDEN:  And obviously, I will file that

13    before Your Honor rather than in the district court.  I'm

14    aware it needs to be in the bankruptcy court first.

15         THE COURT:  All right.  Mr. Scharf, does the

16    liquidating trustee want to ask to sever the judgment -- the

17    partial judgement and render it final for appeal purposes?

18         MR. SCHARF:  I think I'm going to have to have a

19    substantive conversation with the Trustee about that but I

20    suspect we can -- I believe we can get an answer to that

21    tonight or tomorrow morning.

22         THE COURT:  All right.

23         MR. LEV:  Your Honor, Mr. Ehrenburg is available

24    June 16th, 2 p.m. Eastern time.

25         THE COURT:  Great.  So, we'll proceed --

```
1            MR. PITTINSKY:  Your Honor, part of the -- one --
2     some of the factors for a stay pending appeal include
3     showings of hardship.  We would ask that Mr. Parmar be
4     present to be cross-examined or to be examined by us on
5     those factors at the hearing rather than, you know, rather
6     than skate around whether or not he's relying on comments
7     made by counsel who's not put in an affidavit in connection
8     with that.
9            And or -- or Your Honor can direct if he does not
10    put an affidavit in that there's no -- that he doesn't get
11    another chance for an evidentiary hearing (indiscernible).
12            THE COURT:  Well, I'm going to go with the I'll
13    know what you all are asking me to do when I see it
14    approach.  So, rather than contemplate what's going to come
15    in, I'll decide based on what's actually in front of me.
16            I'll set the June 9th for -- to file whatever --
17    to file the motion seeking whatever relief the parties are
18    going to ask the Court to determine on June 16th at 2:00.
19    Those should be filed in the adversary proceeding.
20            Again, if it's a Rule 54B motion, if it's a stay
21    pending appeal, whatever it's going to be, file those by 5
22    p.m. on June the 9th and then any responses will be due by
23    noon on June the 14th.
24            I don't need replies on those types of issues.
25    There's -- I don't think there's going to be any Supreme
```

1    Court setting presidential issues for me to decide on those

2    types of issues.  So, June 9th at 5 p.m. for the motions,

3    June 14th at noon, and I'll know what you all are asking me

4    to do once it's been filed.

5         On the evidentiary portion of the hearing, I'm not

6    precluding taking evidence on a motion for a stay pending

7    appeal.  I don't know that I typically do, but whatever you

8    all are going to ask me to do, the standing rule still

9    remains, if there are -- if there are specific facts that

10   are in controversy the parties want me to consider, then I

11   need to have a sponsoring witness who would testify to those

12   facts.  That's the general rule for the motion practice as

13   well.

14        Any affidavits that the parties want the Court to

15   consider at the evidentiary hearing on the sale motions,

16   those affidavits also need to be filed and exchanged by June

17   9th at 5 p.m.

18        Mr. Stanton's is already there.  It doesn't need

19   to be refiled, but any other testifying witness whether for

20   the liquidating Trustee or for 2 River Terrace or should the

21   board decide to weigh in from an evidentiary standpoint,

22   those witness affidavits have to be filed and exchanged by

23   June 9th at 5 p.m. along with any exhibits, documents --

24   documentary evidence that the parties wish to rely on.  And

25   then objections to the affidavits and the documents also due

1   by June 14th at noon.

2            So, we'll have our full package from the court's

3   standpoint by June 14th at noon so that we can then do our

4   prep for the June 16 at 2:00 evidentiary hearing.  Again,

5   the witness affidavits constitute the direct testimony of

6   the witnesses and then I take live cross-examination of them

7   at the evidentiary.

8            In the event that there are evidentiary objections

9   to portions of the affidavits, I rule on those at the

10  beginning of that witness's testimony.  I don't expect any

11  motions in limine, but again, if you're going to object to

12  the other party's witness testimony or the other party's

13  exhibits, those will be due June 14th at noon.

14           This will all be laid out in the control order

15  that the Court will be issuing, but because the timeline is

16  a little bit tight, I wanted you to know today what those

17  issues are because it could be Monday before that order is

18  entered.

19           And then there'll be the protocol for how you

20  deliver the exhibits to each other and to the Court, and

21  again a -- I need to know who's in the room, anybody with

22  the witness, and from where the witness is testifying.  And

23  again, I have a protocol laid out for that that you'll see

24  in the order.

25           Anything else that you all want to address today

1    on the sale motion or the status in the Ehrenberg v.

2    Sartison adversary?

3          All right.

4          MR. NOLAN:  Your Honor?

5          THE COURT:  Yes.

6          MR. NOLAN:  Jeff Nolan on behalf of the plaintiff.

7    To the extent at the -- that a party submits an affidavit

8    and it is not objected to, would -- does the Court need to

9    have that witness present or is the affidavit sufficient for

10   the hearing?

11         THE COURT:  The affidavit is the direct testimony,

12   so the affiant is still subject to cross-examination.  If

13   you all work out an agreement that I'm not going to

14   challenge the affidavit of X and I waive cross-examination,

15   then I'll take the affidavit at face value, but the

16   affidavit is only the direct testimony.  It doesn't waive

17   the other side's right to cross-examine.

18         MR. NOLAN:  All right.  Thank you, Your Honor.

19         MS. HADDEN:  Thank you, Your Honor.

20         THE COURT:  All right.  So, then those of you who

21   are logged in for the sale motion or the Sartison adversary,

22   if you all -- you're all welcome to stay but you're also

23   free to go before we go to our other matter.

24         MS. HADDEN:  Thank you, Your Honor.

25         CLERK:  The next matter on the calendar is case

1   number -- adversary case number 20-8042, Howard Ehrenberg v.

2   Howard Schoor.

3            THE COURT:  All right.  And so, who is appearing

4   in that adversary proceeding?

5            MR. NOLAN:  Jeff Nolan appearing on behalf of the

6   plaintiff liquidating Trustee.

7            MR. CAMPBELL:  Good morning, Your Honor.  Don

8   Campbell from the law firm of Giordano Halleran & Ciesla on

9   behalf of Howard Schoor.

10           THE COURT:  All right.  Anyone else?

11           All right.  Bear with me, then, for one minute.

12  Have you all settled?

13           MR. CAMPBELL:  Unfortunately, no, Your Honor.

14           THE COURT:  All right.  So, then the Court has on

15  for today the ruling conference on the liquidating Trustee's

16  motion for summary judgment.  The Court will now render its

17  ruling.

18           The procedural history is as follows.  In this

19  adversary proceeding, 20-8042, the Trustee, Mr. Ehrenberg,

20  filed a complaint in March of 2020.  That complaint

21  essentially seeks to recover $160,000 that was paid to the

22  defendant, Mr. Schoor, in January of 2017.

23           The Trustee then moved for summary judgment on the

24  causes of actions set forth in the complaint and supported

25  that summary judgment motion with affidavits from Mr. Nolan

1  and Ms. Edith Wong, which are at docket items 29 and 30

2  along with numerous exhibits.

3           The parties under the Court's instructions had

4  also prepared and filed a joint statement of stipulated

5  facts as well as additional facts upon which the Trustee

6  relies.  That document is at docket 28.  The defendant, Mr.

7  Schoor, filed an objection to the summary judgment motion at

8  docket 33 but did not provide any summary judgment evidence

9  of his own.

10          The Court held a hearing on March 16th of this

11  year on the motion for summary judgment, which I'll just

12  refer to as the motion or the MSJ.  The Court allowed the

13  defendant additional time to seek and submit evidence in

14  opposition to the summary judgment and specifically allowed

15  the defendant to submit affidavits from either Mr. Parmar or

16  Mr. Zaharis, who we'll talk further about.

17          The Court did subsequently receive an affidavit of

18  the defendant, Mr. Schoor, at docket 41, that affidavit

19  details a conversation that Mr. Schoor says he had with Mr.

20  Parmar in April of 2021, but the defendant did not provide

21  any direct affidavit from Mr. Parmar, Mr. Zaharis, or any

22  person who worked for any of the Debtors with knowledge of

23  the facts relevant to the pending motion.

24          The Trustee then moved to strike the predominant

25  portions of the Schoor affidavit that are the objection and

1    the motion to strike is at docket 42.  The Court had set

2    today for a ruling conference, and for the reasons to

3    follow, the summary judgment motion will be granted.

4            The Court will detail now on the record a number

5    of facts relevant to the Court's determination.  There are

6    no genuine -- there is no genuine dispute as to any of these

7    facts.  In fact, the predominance of these facts have been

8    stipulated to by the parties.  Other of these facts are

9    drawn from the defendant's own deposition made a part of the

10   summary judgment record as well as the uncontroverted

11   evidence before the Court.

12           Starting back to 2001, between the years 2001 and

13   2006, Mr. Schoor was a neighbor and at least social

14   acquaintance or friend of Paul Parmar.  In June of 2009, at

15   Mr. Parmar's request, Mr. Schoor loaned him $600,000.  That

16   loan is evidenced by a promissory note executed by Mr.

17   Parmar in favor of Mr. Schoor.

18           At that time in 2009 Mr. Parmar was a

19   businessperson interested in a variety of ventures, but

20   relevant here he later became a principal of one or more of

21   the entities that are now Debtors before this Court or were

22   acquired by or merged into one or more of the Debtors before

23   this Court.  That list of Debtors is detailed in the

24   complaint and the summary judgment motion is uncontroverted.

25           In August of 2009, on August 31st, Mr. Schoor sent

1    a letter to Mr. Parmar advising that the repayment of the

2    $600,000 loan was late, and Mr. Schoor stated, quote, "You

3    clearly indicated your need was for a few weeks of payroll

4    while you resolved an IRS lien placed on multiple accounts

5    and freed up other assets.  Your request and my reply was

6    based on," quote, "'our friendship,'" close quote, "and not

7    a business deal."  That's stipulation 7 at docket 28.

8              In August of 2010, Mr. Schoor sent a follow-up e-

9    mail stating, "I would greatly appreciate payment on the

10   balance of your personal loan.  Again, I repeat, this loan

11   was done on the basis of our friendship, not as a business

12   investment."

13             Fast forwarding several years now to 2017, Mr.

14   Parmar on January 4, 2017 directed an e-mail to Mr. Zaharis

15   who at that time was a high-ranking officer of one or more

16   of the Debtors.  Mr. Parmar directed that the balance of his

17   loan owed to Mr. Schoor be repaid and be paid with money of

18   one or more of the Debtors.

19             The next day, on January 5, 2017, one or more of

20   the Debtors transferred $100,000 to Mr. Schoor to a Debtor

21   bank account.  The next day, January 6th, Mr. Schoor was

22   sent another $60,000 from a bank account owned by one or

23   more of the Debtors.  Those two payments, the $100,000 and

24   the $60,000, are the transfers at issue in this adversary

25   proceeding.

1          Questions were then raised internally at the

2     Debtors' specifically by an accounting manager as to why

3     these payments were made to Mr. Schoor from the Debtors.  In

4     response on May 20, 2017, Mr. Zaharis e-mailed Mr. Parmar

5     stating, "We need to come up with an invoice for a reason

6     for the payments made to Mr. Schoor."  That e-mail is part

7     of the summary judgment record attached to the affidavit of

8     Ms. Wong.

9          The next day on a Sunday, May 21, Mr. Zaharis

10    prepared a service and retainer agreement which identified

11    Mr. Schoor as a consultant of the Debtor and then told Mr.

12    Parmar that he, quote, "needed to beef up the deliverables

13    for the Howard Schoor agreement."  That e-mail is also

14    before the Court.

15         The next morning on May 22, 2017, Mr. Zaharis

16    forwarded a consulting agreement to Mr. Schoor.  That

17    consulting agreement was backdated to August 1, 2016 and

18    identified Mr. Schoor as a consultant for the Debtor.  That

19    e-mail is also before the Court as well as the document.

20    That document was never signed or authorized by Mr. Schoor.

21         It's undisputed that Mr. Schoor was never a vendor

22    of any of the Debtors.  He never sold product to Debtors.

23    He never performed services for any of the Debtors.  He

24    simply made a personal loan to Mr. Parmar in 2019.  When

25    that personal loan had been repaid in partial payments prior

1  to 2017, Mr. Schoor was paid personally by Mr. Parmar.

2  In December of 2019, the liquidated Trustee, Mr.

3  Ehrenberg, sent a letter to Mr. Schoor asking that he return

4  the $160,000.  Shortly thereafter in February of 2020, Mr.

5  Schoor e-mailed Mr. Parmar advising him of the Trustee's

6  demand letter and requested that Mr. Parmar, quote, "review

7  and advise of your thoughts about my/our defense," close

8  quote.

9  In addition, Mr. Schoor asked Mr. Parmar to

10  provide any details as to what companies or what operations

11  he had used the loan proceeds for back in 2009.  Mr. Parmar

12  never responded.

13  From this Court's review of the uncontroverted

14  evidence, there is no genuine issue of material fact as to

15  any of the allegations raised by the Trustee which are

16  necessary for the Court to determine in order to grant

17  summary judgment and therefore the Trustee is entitled to

18  judgment as a matter of law.

19  The competent summary judgment before the Court

20  demonstrates that the two payments made in January of 2017

21  were made with actual fraudulent intent by the Debtors.  The

22  standard is not what intent did Mr. Schoor have when he

23  received the payments.  The standard is what was the intent

24  -- what was the reason behind the Debtors, one or more of

25  the Debtors, making the payments at the time they were made.

 1          The Court -- because the Court has concluded that

 2     they were -- there is adequate evidence for the Court to

 3     determine that they were made with actual fraudulent intent,

 4     both transfers may be avoided under the Bankruptcy Code

 5     under Section 548(a)(1)(A) and under New York Debtor &

 6     Creditor Law, Section 276.

 7          In reaching these determinations, the Court is

 8     relying only on the competent summary judgment effort --

 9     evidence in the record.  As has been long clear, and this

10     was noted by the 2nd Circuit almost 50 years ago in Dressler

11     v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964), it is

12     necessary that the Court only rely on competent evidence to

13     reach its determinations because only in this way may the

14     underlying objective of the summary judgment procedure to

15     determine whether one side has no real support for its

16     versions of the facts can be satisfied.

17          Here, the plaintiff has well documented the

18     evidence in support of his motion through the affidavits and

19     the declarations and the exhibits provided, particularly

20     those of Mr. Nolan and its attachments and Ms. Wong and hers

21     as well as the stipulated facts submitted by the parties.

22          When a party such as the defendant offers facts to

23     support his contention that there are genuine issues of

24     material fact, it must company with Rule 56C which requires

25     that an affidavit or a declaration be used to oppose a

1    summary judgment motion as well as to support such a motion

2    be made on personal knowledge and set out facts that would

3    be admissible in evidence and show that the declarant is

4    competent to testify on the matters stated.

5            The only evidence submitted by the defendant, his

6    affidavit relating a conversation that he says he had with

7    Mr. Parmar in April of 2021, is classic hearsay.  Mr. Schoor

8    is attempting to provide testimony not based on what he

9    knows or could prove at trial but what -- but on what he

10   says Mr. Parmar would say if called to testify at trial.

11           That affidavit attempts to prove that the original

12   loan he made in 2009 was to be used to pay certain business

13   debts, but again, it's a hearsay statement and it fails to

14   provide any specificity as to what purported business debts

15   it would have been paying and is also in opposition to the

16   history of the e-mails and communications between Mr. Schoor

17   and Mr. Parmar.

18           For those reasons, the statements contained within

19   paragraph 7 through 14 of the -- of the Schoor affidavit are

20   stricken as not in compliance with Rule 56 and are

21   inadmissible.

22            Turning then specifically to Section 548(a)(1)(A)

23   of the Bankruptcy Code, in order to prevail on such a

24   fraudulent transfer claim, three elements must be

25   established.  The property at issue must have been property

1    in which the Debtor had an interest at the time transferred.

2    There's no controversy on that issue.

3            The transfer must have occurred within two years

4    prior to the petition date.  There's no controversy on that

5    issue, either.  And the third element that the transfer must

6    have been made with actual intent to hinder, delay, or

7    defraud a creditor.  See In Re: Bruno MacHinery Corp., 435

8    B.R. 819 (N.D.N.Y. 2010) and In Re: Bayou Group, 396 B.R.

9    810 (S.D.N.Y. Bankr. 2008).

10           Here, it's clear from the uncontroverted evidence

11   before the Court that Mr. Parmar and Mr. Zaharis attempted

12   to create a sham to disguise the reason why the Debtors made

13   the payments to Mr. Schoor on Mr. Parmar's personal debt.

14           This includes the e-mail string that the Court has

15   already referred to including specifically the May 20, 2017

16   statement of Mr. Zaharis to Mr. Parmar, "We need to come up

17   with an invoice for a reason to pay Schoor," and then the

18   creation of the back-dated consulting agreement, which

19   there's no evidence in the record to support there was any

20   business reason nor any evidence that it actually existed at

21   any time on or near 2016.

22           The fact that Mr. Zaharis and Mr. Parmar went to

23   lengths to fabricate a reason why the Debtors paid Mr.

24   Schoor is clear, convincing, and uncontroverted evidence

25   that the payments themselves were made with intent to

1    defraud creditors, one or more.

2          It's also uncontroverted that plaintiff has

3    provided evidence that there were creditors who existed in

4    January of 2017 when the payments were made who remained

5    unpaid at the time of the bankruptcy case and still remain

6    unpaid.

7          The Court has before it a judgment that was

8    entered in the Southern District of Texas for obligations

9    owing to Jack McBride and Alan Knottingham.  Those two

10    gentlemen also filed a claim in the case.  They claimed

11    10,000 and won.  That judgment and those -- that claim

12    remain unpaid.

13          The Court has determined that the liquidating

14    Trustee has also met his burden of proof under New York

15    Debtor & Creditor Law Section 276, which provides that every

16    conveyance made and every obligation incurred with actual

17    intent to hinder, delay, or defraud either present or future

18    creditors is fraudulent both as to present and future

19    creditors.  See In Re: MarketXT Holdings, 376 B.R. 390

20    (Bankr. S.D.N.Y.) as well as (indiscernible) Distributors.

21          The evidence again that this Court is relying on

22    are the fake consulting agreement which was attempted to be

23    backdated to create a business justification for one or more

24    of the Debtors having paid Mr. Parmar's personal obligation.

25    That document and the contemporaneous e-mails concerning the

1    creation of that document and the fact that that document or

2    those e-mails were wrote after an internal accounting

3    manager of one or more of the Debtors questioned the

4    payments to Mr. Schoor constitute clear and convincing

5    evidence of an actual fraudulent intent to pay Mr. Schoor

6    and thereby place those funds beyond the reach of legitimate

7    creditors of the Debtors.

8            This Court has also reviewed the badges of fraud

9    that many courts often look at to determine whether or not

10   an actual fraud or fraudulent transfer can be found, and in

11   those badges of fraud, as an alternative basis, the Court

12   could find a violation of Section 276.

13           I'll briefly discuss each of the six badges of

14   fraud typically cited.  First is gross inadequacy of

15   consideration.  Again, here the Debtors didn't owe any Mr.

16   Schoor any money yet the Debtors made the payments.  That

17   evidence is grossly inadequate consideration.

18           As far as a close relationship between the

19   transferor and transferee, certainly Mr. Schoor and Mr.

20   Parmar were neighbors and friends, at least in 2016 -- 2009

21   when the loan was made and apparently had an adequate

22   relationship in 2017 that Mr. Parmar set upon a course to

23   have one or more of the Debtors repay the balance of their

24   loan which was a personal loan and never a business loan.

25           As far as the third badge in solvency, the

1  evidence is not as strong on whether or not the Debtors were

2  or were rendered insolvent at the time of the transfers.

3  There's evidence before the Court that in January just

4  before the payments were made in 2017 the Debtors were

5  juggling their financial commitments and funds available and

6  had to, quote, "short pay" certain other creditors in order

7  to pay Mr. Schoor.  Specifically, it was asked if the

8  Debtors can short pay India and use the $160,000 to pay Mr.

9  Schoor and then pay the India obligation later.

10        It's not clear from the summary judgment record,

11  though, whether or not the juggled payments due to the India

12  vendor were ultimately paid or not, but again, insolvency is

13  not necessary to be established in an actual

14  fraud/fraudulent transfer.

15        With respect to the badge of whether or not the

16  transfer was in the ordinary course of business, this was

17  clearly -- these were clearly payments made outside the

18  ordinary course of the business of the Debtors.

19        As far as the fifth and sixth badges, the secrecy

20  of the transfer, the transfers were not kept secret.  In

21  fact, they were discovered and questioned by an internal

22  accounting manager.  Then finally as far as retention of

23  control over the property that does not appear to be an

24  issue here.

25        On balance, the Court would find there was

1    adequate evidence under the badges of fraud to conclude as a

2    matter of law that these transfers were actual fraudulent

3    transfers.

4           Finally, as I've partly noted, in an actual fraud

5    transfer under the New York DCL, it is not necessary to

6    prove insolvency or even prove unfair consideration.  As the

7    first appellate department noted in Wallstreet Associates v.

8    Brodsky, DCL 276, until Sections 273 and 275, concerns

9    actual fraud as opposed to constructive fraud and does not

10   require proof of unfair consideration or insolvency, 257

11   A.D.2d 526 (1st Dept 1999.)  See also Korea Deposit

12   Insurance Corp. v. Young, 59 (indiscernible) 442, Superior

13   Court New York County -- Supreme Court New York County 2017.

14          Under DCL 276, a transfer made with actual intent

15   to hinder, delay, or defraud present or future creditors is

16   fraudulent (indiscernible) such creditors whether or not the

17   Debtor receives fair consideration.  See United States v.

18   McCombs, 30 F.3d 310 (2d Cir. 1994.)

19          Finally, the Court notes that Mr. Schoor attempted

20   to allege that the funds that he advanced Mr. Parmar were

21   somehow used on expenses of one or more businesses.  There's

22   simply no evidence in the record, no competent evidence in

23   the record, to support that.

24          For the reasons stated on the record, summary

25   judgment is granted in favor of the liquidating Trustee for

1    recovery of the $160,000 plus post-judgment interest

2    thereon.

3          The Trustee in the motion had made a request but

4    did not brief or provide invoices on attorney's fees

5    incurred in connection with this litigation.  The Court will

6    use the following protocol to determine whether or not to

7    grant attorney's fees to the Trustee and if so in what

8    amount.

9          The Trustee has 14 days from today, so that's June

10   17th, to submit any invoices which can be redacted for

11   privilege or work product but should be submitted with a

12   summary attached concerning any legal fees or out-of-pocket

13   expenses incurred in connection with this litigation as well

14   as any case law or argument in support of the grant of

15   attorney's fees.

16         Mr. Schoor will then have 14 days thereafter to

17   file any response.  Again, on an issue of attorney's fees I

18   don't need a reply.  Because of the July 4th holiday, that

19   response will be due on January -- excuse me -- on July 7.

20         So, June 17 for any attorney's fee invoices and

21   summary as well as argument and support and then July 7 for

22   any response.  The Court is also awarding costs incurred in

23   connection with the litigation as provided under the rules.

24         Mr. Nolan, I'm going to -- I'm going to have your

25   office submit a form of judgment, but because I've taken the

1    attorney's fees portion on submission on this protocol, I'm

2    simply going to wait and enter one final judgment at the

3    end.  There's nothing else in the litigation to be resolved

4    other than whether or not to award attorney's fees unless

5    there's something that we haven't addressed today.

6              MR. NOLAN:  That's correct, Your Honor.  This is

7    just the -- just the two parties to the litigation, to the

8    dispute, and I believe I submitted a proposed order to the

9    motion.  I'll look to make sure that that was in fact the

10   case and that's acceptable to the Trustee.

11             THE COURT:  All right.  So, again, I'll be

12   entering one order.  My protocol, as well as many other

13   trial courts, I'll enter one order granting the motion and

14   then one judgment in the amounts that the Court has

15   determined, but I'm not going to enter a partial judgment

16   now and then a final judgment after I resolve attorney's

17   fees.  I'm just going to enter one order and one judgment at

18   the end.

19             MR. NOLAN:  That's -- understood, Your Honor.

20             THE COURT:  All right.  All right.  Mr. Campbell?

21             MR. CAMPBELL:  Yes, Your Honor.

22             THE COURT:  I -- anything that you want to address

23   or any questions about the timing mechanics?

24             MR. CAMPBELL:  Not at this time, Your Honor.

25   Thank you, Your Honor.

Page 43

```
 1              THE COURT:  All right.  All right, very well.  So,
 2    then we'll be adjourned on 20-8042.  I'm not going to set a
 3    further hearing because what remains to be resolved in the
 4    adversary proceeding will be on submission as of July 7th.
 5              MR. NOLAN:  Understood.
 6              THE COURT:  All right.  Very well.
 7              MR. CAMPBELL:  Thank you, Your Honor.
 8              THE COURT:  Thank you both.
 9              MR. NOLAN:  Thank you, Your Honor.
10              THE COURT:  So, that will conclude then the
11    Court's calendar for the morning of July the 3rd.  The Court
12    will be in recess and we'll go off the record.
13              (Whereupon these proceedings were concluded)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 44

1                          I N D E X

2

3                            RULINGS

4                                         Page      Line

5

6     Motion Granted                       14        32

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 14, 2021

**&**

**&**   4:3,18 5:1,8
  28:8 34:5 37:15

**0**

**07701**   5:4

**1**

**1**   32:17 34:5 35:22
**10**   21:11
**10,000**   37:11
**100,000**   31:20,23
**10007**   4:14
**10016**   4:22
**10017**   4:6 5:11
**10:11**   2:6
**11501**   45:23
**11722**   2:3
**12**   8:10
**125**   5:3
**12j**   6:21
**130**   34:11
**14**   35:19 41:9,16
  44:6 45:25
**14th**   21:11 22:6
  22:14,20,22 24:23
  25:3 26:1,3,13
**15th**   22:21
**16**   26:4
**160,000**   28:21
  33:4 39:8 41:1
**16th**   22:21,25
  23:24 24:18 29:10
**17**   19:12 41:20
**17th**   41:10
**18-71748**   1:3 6:8
**1964**   34:11
**1994**   40:18
**1999**   40:11
**1st**   40:11

**2**

**2**   4:12 6:20 7:11
  7:22 8:16 9:20
  13:10,22 17:11

18:2,11 19:18
  20:10,16 22:15
  23:5,24 25:20
**20**   32:4 36:15
**20-08042**   1:4
**20-8042**   28:1,19
  43:2
**20-8051**   6:11
**2001**   30:12,12
**2006**   30:13
**2008**   36:9
**2009**   30:14,18,25
  33:11 35:12 38:20
**2010**   31:8 36:8
**2016**   32:17 36:21
  38:20
**2017**   28:22 31:13
  31:14,19 32:4,15
  33:1,20 36:15
  37:4 38:22 39:4
  40:13
**2018**   12:15
**2019**   32:24 33:2
**2020**   28:20 33:4
**2021**   2:5 29:20
  35:7 45:25
**20th**   5:10
**21**   32:9
**22**   32:15
**232**   4:21
**257**   40:10
**27**   3:4
**273**   40:8
**275**   40:8
**276**   34:6 37:15
  38:12 40:8,14
**28**   29:6 31:7
**29**   29:1
**290**   2:2
**2d**   34:11 40:18
**2nd**   34:10

**3**

**3**   2:5
**30**   29:1 40:18
**300**   5:3 45:22
**310**   40:18
**31st**   30:25
**32**   44:6
**33**   29:8
**330**   45:21
**331**   34:11
**34th**   4:5
**363**   19:16
**376**   37:19
**390**   37:19
**396**   36:8
**3rd**   43:11

**4**

**4**   31:14
**4.8**   13:13,18
**41**   29:18
**42**   30:1
**43**   3:1
**435**   36:7
**442**   40:12
**4th**   41:18

**5**

**5**   24:21 25:2,17,23
  31:19
**50**   34:10
**526**   40:11
**54**   20:4,14
**548**   34:5 35:22
**54b**   21:10 24:20
**56**   35:20
**56c**   34:24
**59**   40:12

**6**

**60,000**   31:22,24
**600,000**   30:15
  31:2
**6th**   31:21

**3**

**3**   2:5
**30**   29:1 40:18
**300**   5:3 45:22
**310**   40:18
**31st**   30:25
**32**   44:6
**33**   29:8
**330**   45:21
**331**   34:11
**34th**   4:5
**363**   19:16
**376**   37:19
**390**   37:19
**396**   36:8
**3rd**   43:11

**7**

**7**   31:7 35:19 41:19
  41:21
**747**   5:10
**780**   4:5
**7th**   43:4

**8**

**8007**   9:25
**810**   36:9
**819**   36:8
**8500**   4:13

**9**

**906**   4:21
**9th**   24:16,22 25:2
  25:17,23

**a**

**a.d.2d**   40:11
**ability**   11:9
**able**   11:13 12:1
  15:10
**absolutely**   9:9
**absurd**   15:19
**acceptable**   42:10
**access**   12:5,14,20
  14:19,23,24
**account**   31:21,22
**accounting**   32:2
  38:2 39:22
**accounts**   31:4
**accrual**   13:24
**accurate**   45:4
**acquaintance**
  30:14
**acquired**   30:22
**action**   15:4
**actions**   28:24
**actual**   33:21 34:3
  36:6 37:16 38:5
  38:10 39:13 40:2
  40:4,9,14
**added**   23:8

**addition** 9:7 16:17 33:9
**additional** 29:5,13
**address** 26:25 42:22
**addressed** 42:5
**addressing** 9:21
**adduce** 8:25
**adequate** 18:18 18:24 34:2 38:21 40:1
**adequately** 19:16
**adjourned** 43:2
**admissible** 35:3
**adv** 1:4
**advance** 21:19,23
**advanced** 20:24 40:20
**adversary** 6:10,21 7:10,24 14:14 24:19 27:2,21 28:1,4,19 31:24 43:4
**advise** 33:7
**advised** 21:7
**advising** 31:1 33:5
**affiant** 27:12
**affidavit** 22:3 24:7,10 27:7,9,11 27:14,15,16 29:17 29:18,21,25 32:7 34:25 35:6,11,19
**affidavits** 21:19 21:22 22:2 25:14 25:16,22,25 26:5 26:9 28:25 29:15 34:18
**affirmative** 18:2
**afternoon** 22:20
**age** 21:1
**ago** 15:21 19:12 19:12 34:10

**agreement** 11:23 27:13 32:10,13,16 32:17 36:18 37:22
**ahead** 17:8 22:2
**al** 1:13 6:12
**alan** 2:22 6:3 37:9
**allegations** 33:15
**allege** 40:20
**allowed** 29:12,14
**allowing** 9:3
**alternative** 38:11
**amended** 3:1
**amount** 9:10 11:10 12:21 15:9 15:10 19:24 41:8
**amounts** 42:14
**amy** 6:2
**answer** 19:20 23:20
**anticipate** 18:7 21:25
**antsy** 14:16
**anybody** 13:16 26:21
**apart** 15:22
**apartment** 6:21 7:11,16,18 9:15 10:3,8,8,11,20 11:3 12:14 15:5 15:20,23 16:16,18 16:22,24,25 17:23
**apologize** 14:5
**apparently** 38:21
**appeal** 8:1,3,13,13 8:15,22,22 9:8,23 10:13,22 15:17,18 16:1,3,3 20:8,11 20:16,20 21:10 23:5,17 24:2,21 25:7
**appealable** 8:20 10:21

**appealed** 10:16
**appear** 7:22 39:23
**appearances** 6:9
**appearing** 6:12 28:3,5
**appears** 8:1 11:22
**appellate** 10:15 40:7
**application** 11:8 23:8,9
**appreciate** 31:9
**approach** 24:14
**appropriate** 9:16 19:1,24
**approve** 20:23,23
**april** 29:20 35:7
**arguably** 11:15
**argue** 22:6
**argument** 41:14 41:21
**arguments** 7:4 15:5
**arrears** 9:11,14 9:18 14:17 16:9 16:13
**arvind** 5:9
**aside** 13:19,22
**asked** 19:19 33:9 39:7
**asking** 10:24 24:13 25:3 33:3
**asks** 20:15
**aspect** 18:11
**asset** 9:13 10:14 10:25 11:15,18 14:6,7 16:10,12 17:10
**assets** 13:23 31:5
**associated** 9:15 16:7
**associates** 5:8 40:7

**ast** 1:3,4
**attached** 32:7 41:12
**attachments** 34:20
**attempt** 10:19 11:14 12:5
**attempted** 36:11 37:22 40:19
**attempting** 8:16 10:6 35:8
**attempts** 35:11
**attorneys** 4:4,12 4:19 5:2,9
**attorney's** 41:4,7 41:15,17,20 42:1 42:4,16
**august** 30:25,25 31:8 32:17
**authorized** 14:23 32:20
**available** 22:14 23:23 39:5
**avenue** 4:5,21 5:10
**avoided** 34:4
**avoiding** 13:24
**award** 42:4
**awarding** 41:22
**aware** 10:1,12 11:1 12:10 23:14

**b**

**b** 2:21
**b.r.** 36:8,8 37:19
**back** 8:6,23 30:12 33:11 36:18
**backdated** 32:17 37:23
**badge** 38:25 39:15
**badges** 38:8,11,13 39:19 40:1
**balance** 31:10,16 38:23 39:25

**bank** 5:4 31:21,22
**bankr** 36:9 37:20
**bankruptcy** 1:1
    2:1,23 6:24 10:12
    23:14 34:4 35:23
    37:5
**based** 7:6,6 8:24
    10:5 15:18 24:15
    31:6 35:8
**basis** 31:11 38:11
**bayou** 36:8
**bear** 28:11
**beef** 32:12
**beginning** 26:10
**behalf** 6:15,17,20
    11:22 13:17 14:23
    18:21 27:6 28:5,9
**believe** 17:17 19:3
    23:20 42:8
**believed** 10:17,17
**best** 17:10 20:2
**better** 10:7 13:12
    14:1 21:1 22:11
**beyond** 38:6
**bid** 15:9
**bit** 26:16
**board** 4:19 6:18
    9:12 11:19 12:20
    12:24 13:5,17
    14:16 18:22 19:4
    19:5,8 25:21
**bond** 9:10,17 11:8
    11:10 16:8
**bottles** 21:1
**brief** 8:9 41:4
**briefly** 38:13
**bring** 13:12 19:18
**brodsky** 40:8
**broker** 17:15
**bruno** 36:7
**build** 14:17
**building** 12:5,6

**burden** 37:14
**business** 31:7,11
    35:12,14 36:20
    37:23 38:24 39:16
    39:18
**businesses** 40:21
**businessperson**
    30:19

**c**

**c** 4:1 6:1 45:1,1
**calendar** 27:25
    43:11
**call** 6:6
**called** 35:10
**calling** 18:8
**campbell** 5:6 28:7
    28:8,13 42:20,21
    42:24 43:7
**capacity** 1:12
**case** 1:3,4 6:10,22
    11:13 12:11,18
    14:8,13 27:25
    28:1 37:5,10
    41:14 42:10
**catastrophic** 17:2
**caused** 9:12
**causes** 28:24
**center** 4:13
**central** 2:3
**certain** 20:21
    35:12 39:6
**certainly** 10:9
    11:11 12:10 13:15
    13:17 16:4 17:12
    20:17 38:19
**certified** 45:3
**challenge** 8:16
    18:17 20:11 27:14
**chance** 9:6,6
    24:11
**charged** 15:21
**charges** 12:16,23
    15:3 16:14

**check** 19:3 22:24
**chief** 6:3
**ciesla** 5:1 28:8
**cir** 34:11 40:18
**circuit** 34:10
**circumstances**
    20:19
**cited** 38:14
**claim** 14:19 16:23
    35:24 37:10,11
**claimed** 37:10
**classic** 35:7
**clear** 34:9 36:10
    36:24 38:4 39:10
**clearly** 31:3 39:17
    39:17
**clerk** 6:2,7 27:25
**client** 11:22 17:22
    17:24 18:22 19:4
**client's** 12:4 14:4
    14:5
**close** 31:6 33:7
    38:18
**cmecf** 8:3
**code** 10:12 34:4
    35:23
**come** 8:23 24:14
    32:5 36:16
**comments** 24:6
**commitments**
    39:5
**common** 15:3
**communications**
    35:16
**companies** 33:10
**company** 14:22
    14:22,24 34:24
**competent** 33:19
    34:8,12 35:4
    40:22
**complaint** 28:20
    28:20,24 30:24

**completely** 13:1
**compliance** 35:20
**concerning** 7:11
    37:25 41:12
**concerns** 40:8
**conclude** 40:1
    43:10
**concluded** 34:1
    43:13
**conditioned** 9:9
    9:17
**conditions** 16:7
**condo** 9:12 13:5
**condominium**
    4:20 6:18 19:8
**conference** 28:15
    30:2
**conflict** 22:13,20
**conjecture** 16:6
**connection** 24:7
    41:5,13,23
**connoisseur** 20:25
**consider** 25:10,15
**consideration**
    18:13,24 38:15,17
    40:6,10,17
**constitute** 26:5
    38:4
**constructive** 40:9
**consultant** 32:11
    32:18
**consulting** 32:16
    32:17 36:18 37:22
**contained** 35:18
**contemplate**
    18:22 24:14
**contemplating**
    17:7 18:3
**contemporaneous**
    37:25
**contend** 13:16
**contending** 18:12

contention 15:19
  34:23
continue 14:17
continued 13:24
continuing 14:1
control 26:14
  39:23
controlled 21:18
controversy 25:10
  36:2,4
conversation
  23:19 29:19 35:6
conveyance 37:16
convincing 36:24
  38:4
corp 36:7 40:12
correct 11:25
  17:17 42:6
cost 12:22,23
costs 11:18 13:24
  41:22
counsel 6:24 18:7
  24:7
country 45:21
county 40:13,13
couple 12:2,15
  15:14
course 23:7 38:22
  39:16,18
court 1:1 2:1 6:5,9
  7:3,6,13,20,21 8:1
  8:10,11 9:2,19
  10:11,25 11:10,12
  11:17 12:18,24
  13:3,11,14,19,21
  14:10,20 15:4,6
  15:12,15 17:5,19
  18:1,10,15,20
  19:10,13 20:2,5,8
  20:18,21,23 21:24
  22:3,15,18,24
  23:2,4,5,11,13,14
  23:15,22,25 24:12

24:18 25:1,14
  26:15,20 27:5,8
  27:11,20 28:3,10
  28:14,14,16 29:10
  29:12,17 30:1,4
  30:11,21,23 32:14
  32:19 33:16,19
  34:1,1,2,7,12
  36:11,14 37:7,13
  37:21 38:8,11
  39:3,25 40:13,13
  40:19 41:5,22
  42:11,14,20,22
  43:1,6,8,10,11
court's 8:6,11
  10:2 12:8 17:7,7
  19:22 20:11 23:10
courtroom 6:3
  22:10,22
courts 38:9 42:13
court's 26:2 29:3
  30:5 33:13 43:11
covered 16:15
create 36:12
  37:23
creation 36:18
  38:1
creditor 34:6 36:7
  37:15
creditors 37:1,3
  37:18,19 38:7
  39:6 40:15,16
criminal 18:7
cross 21:20 24:4
  26:6 27:12,14,17
current 13:13
  14:9 16:13
currently 8:17

**d**

d 6:1,16 44:1
damage 16:18,20
  16:21

dance 20:7
daniel 6:23
date 7:17 36:4
  45:25
dated 36:18
day 22:21 31:19
  31:21 32:9
days 8:10 21:11
  21:22 22:2 41:9
  41:16
dcl 40:5,8,14
deal 31:7
debt 36:13
debtor 1:10 31:20
  32:11,18 34:5
  36:1 37:15 40:17
debtors 29:22
  30:21,22,23 31:16
  31:18,20,23 32:3
  32:22,22,23 33:21
  33:24,25 36:12,23
  37:24 38:3,7,15
  38:16,23 39:1,4,8
  39:18
debtors' 32:2
debts 35:13,14
december 33:2
decide 24:15 25:1
  25:21
decision 13:22
declarant 35:3
declaration 17:15
  34:25
declarations 18:2
  34:19
defaulted 15:3
defendant 15:17
  28:22 29:6,13,15
  29:18,20 34:22
  35:5
defendants 1:17
  6:21

defendant's 30:9
defense 33:7
defraud 36:7 37:1
  37:17 40:15
delay 21:5,13 36:6
  37:17 40:15
deliver 26:20
deliverables
  32:12
demand 33:6
demonstrates
  33:20
denial 12:14,20
denied 14:23,24
deny 14:19
department 40:7
deposit 40:11
deposition 30:9
depreciation
  16:10,12
deprivation 12:22
  12:22
depriving 12:20
dept 40:11
deputy 6:3
detail 30:4
detailed 30:23
details 29:19
  33:10
determination
  11:16 20:19 30:5
determinations
  34:7,13
determine 8:12
  24:18 33:16 34:3
  34:15 38:9 41:6
determined 37:13
  42:15
didn't 17:19 23:4
  38:15
direct 14:12 16:15
  21:18 24:9 26:5
  27:11,16 29:21

**directed** 31:14,16
**disagrees** 17:11
**discovered** 39:21
**discuss** 18:6 38:13
**discussed** 13:4
**disguise** 36:12
**dismissed** 8:14,15
9:23
**dispute** 30:6 42:8
**disputes** 21:7
**distributors** 37:20
**district** 1:2 8:1,10
20:21 23:5,13
37:8
**docket** 8:3 20:2
29:1,6,8,18 30:1
31:7
**document** 29:6
32:19,20 37:25
38:1,1
**documentary**
25:24
**documented**
34:17
**documents** 25:23
25:25
**doesn't** 27:16
**dog** 14:12
**doing** 11:14
**don** 28:7
**donald** 5:6
**don't** 21:3 26:10
41:18
**double** 19:3
**doubt** 13:10
**drawn** 30:9
**dressler** 34:10
**due** 9:12 24:22
25:25 26:13 39:11
41:19

**e**

**e** 2:21,21 4:1,1 6:1
6:1 31:8,14 32:4,6
32:13,19 33:5
35:16 36:14 37:25
38:2 44:1 45:1
**easily** 11:5
**eastern** 1:2 22:7
23:2,24
**ecro** 2:25
**edith** 29:1
**effect** 9:22
**effort** 34:8
**ehrenberg** 1:12
3:2,5 27:1 28:1,19
33:3
**ehrenburg** 6:11
6:25 17:16 22:13
22:25 23:23
**either** 7:9 9:8
10:22 11:4 14:12
29:15 36:5 37:17
**element** 36:5
**elements** 35:24
**endeavor** 11:11
**ends** 7:19
**enforced** 16:2
**enter** 42:2,13,15
42:17
**entered** 7:24
26:18 37:8
**entering** 42:12
**entities** 30:21
**entitled** 17:12
20:17 33:17
**equal** 13:5
**essentially** 9:13
10:10 21:25 28:21
**established** 35:25
39:13
**estate** 9:14 10:14
10:14 13:8 15:22

**et** 1:13 6:12
**etcetera** 11:19
13:25
**event** 18:5 26:8
**everybody's**
17:10
**evidence** 18:23
25:6,24 29:8,13
30:11 33:14 34:2
34:9,12,18 35:3,5
36:10,19,20,24
37:3,21 38:5,17
39:1,3 40:1,22,22
**evidenced** 30:16
**evident** 15:21
**evidentiary** 17:13
18:4,5 19:19 21:8
24:11 25:5,15,21
26:4,7,8
**examination**
21:20 26:6 27:12
27:14
**examine** 27:17
**examined** 24:4,4
**exchanged** 21:19
21:22 25:16,22
**excuse** 41:19
**executed** 30:16
**executing** 13:7
**execution** 13:11
**exhibits** 21:23
25:23 26:13,20
29:2 34:19
**existed** 36:20 37:3
**exists** 13:24
**expect** 16:6 26:10
**expected** 15:25
**expense** 16:15
**expenses** 9:12,15
11:19 13:25 17:1
17:22 40:21 41:13
**experience** 12:4

**expert** 18:15
**extent** 27:7
**extremely** 14:16

**f**

**f** 2:21 45:1
**f.2d** 34:11
**f.3d** 40:18
**fabricate** 36:23
**face** 27:15
**fact** 9:24 12:1
15:5 30:7 33:14
34:24 36:22 38:1
39:21 42:9
**factors** 24:2,5
**facts** 8:25 25:9,12
29:5,5,23 30:5,7,7
30:8 34:16,21,22
35:2
**fails** 35:13
**fair** 18:12 19:24
40:17
**fairly** 21:6,12
**fake** 37:22
**fallow** 15:23
**far** 38:18,25 39:19
39:22
**fast** 31:13
**favor** 9:2 30:17
40:25
**february** 33:4
**federal** 2:2
**fee** 41:20
**fees** 11:19 12:23
41:4,7,12,15,17
42:1,4,17
**fifth** 39:19
**fight** 14:1 15:1
17:11
**fighting** 14:2
**figure** 18:11
**file** 9:25 20:5 23:5
23:9,12 24:16,17
24:21 41:17

**filed** 3:1,4 12:18
15:23 16:2,3,3,4
23:6 24:19 25:4
25:16,22 28:20
29:4,7 37:10
**filing** 16:5
**final** 7:24 8:19,19
10:17,18,21,23
11:16 20:4,14
23:17 42:2,16
**finally** 10:7 39:22
40:4,19
**financial** 11:9
39:5
**find** 38:12 39:25
**finding** 11:3
**fine** 17:12
**firm** 28:8
**first** 6:6,7 7:8,22
8:4 9:10,21 20:19
23:14 38:14 40:7
**fixing** 16:24
**flex** 22:1
**flood** 16:22
**floor** 4:5 5:10
**follow** 30:3 31:8
**following** 21:25
41:6
**follows** 28:18
**foregoing** 45:3
**form** 10:24 41:25
**format** 21:24
**forth** 11:8 28:24
**forward** 9:3 10:22
13:7 15:3,7
**forwarded** 32:16
**forwarding** 31:13
**found** 38:10
**frankly** 15:19
17:3
**fraud** 38:8,10,11
38:14 39:14 40:1
40:4,9,9

**fraudulent** 33:21
34:3 35:24 37:18
38:5,10 39:14
40:2,16
**free** 27:23
**freed** 31:5
**friend** 30:14
**friends** 38:20
**friendship** 31:6
31:11
**front** 8:10 13:13
20:10 24:15
**full** 8:9 9:10 26:2
**fully** 23:10
**funds** 38:6 39:5
40:20
**further** 8:23 16:9
16:21 21:13 29:16
43:3
**future** 9:9 37:17
37:18 40:15

**g**

**g** 6:1
**general** 6:24
25:12
**generally** 21:2
**gentlemen** 37:10
**genuine** 30:6,6
33:14 34:23
**getting** 7:15 14:16
**giordano** 5:1 28:8
**give** 21:8 22:1
**given** 9:14 17:3
19:20
**go** 10:22 12:5 13:7
15:7 19:11 20:2
24:12 27:23,23
43:12
**going** 6:9 9:3 13:8
15:3,8,10,20,23
23:18 24:12,14,18
24:21,25 25:8
26:11 27:13 41:24

41:24 42:2,15,17
43:2
**good** 6:2,13,16,19
6:23 28:7
**grant** 8:24 20:8
20:20 33:16 41:7
41:14
**granted** 9:7,16
30:3 40:25 44:6
**granting** 10:2
42:13
**great** 23:25
**greatly** 31:9
**gross** 38:14
**grossly** 38:17
**group** 4:11 6:20
36:8
**gyparakis** 5:14

**h**

**hadden** 4:16 6:19
6:20 7:13,14 9:19
9:21 11:25 13:15
14:4,21 17:19,23
18:1,5,14,19
22:15,18,19 23:3
23:4,6,12 27:19
27:24
**hadden's** 22:17
**half** 5:3
**halleran** 5:1 28:8
**handles** 16:20
**handling** 7:1
**happening** 17:2
**happens** 21:16
**hardship** 24:3
**hate** 17:8
**haven't** 42:5
**head** 12:9
**healthcorp** 1:8,13
6:8
**hearing** 3:1,4 6:4
7:2 17:13 18:4,6
18:23 21:9 24:5

24:11 25:5,15
26:4 27:10 29:10
43:3
**hearings** 7:7 13:5
21:9
**hearsay** 35:7,13
**held** 17:13 29:10
**he's** 24:6
**high** 31:15
**higher** 13:12
**hinder** 36:6 37:17
40:15
**history** 28:18
35:16
**hold** 13:2,4 14:18
**holding** 13:6
**holdings** 37:19
**holes** 16:19
**holiday** 41:18
**hon** 2:22
**honestly** 11:8
**honor** 6:14,19,23
7:12,14 8:8,21,23
8:24 9:7 14:15
15:13 16:11,17
17:4,18,21 18:6
19:2 22:12 23:1,3
23:6,13,23 24:1,9
27:4,18,19,24
28:7,13 42:6,19
42:21,24,25 43:7
43:9
**honorable** 6:3
**howard** 1:12,16
3:2,5 5:2 6:24
28:1,2,9 32:13
**hut** 14:12
**hyde** 3:25 45:3,8

**i**

**identified** 32:10
32:18
**ilan** 4:9 6:14

**inadequacy** 38:14
**inadequate** 38:17
**inadmissible** 35:21
**include** 24:2
**includes** 36:14
**including** 36:15
**incurred** 11:20 16:12 37:16 41:5 41:13,22
**india** 39:8,9,11
**indicated** 8:2 31:3
**indiscernible** 16:23 24:11 37:20 40:12,16
**informally** 23:7
**informed** 12:11 21:6
**initially** 9:24 12:16
**injudicious** 10:9
**injunctive** 8:24 9:9
**insolvency** 39:12 40:6,10
**insolvent** 39:2
**instructions** 29:3
**insurance** 16:23 40:12
**intent** 33:21,22,23 34:3 36:6,25 37:17 38:5 40:14
**interest** 7:23 17:10 36:1 41:1
**interested** 6:22 30:19
**interlocutory** 8:1 8:7,9,13,18 9:22 10:4,18 15:18 20:8
**internal** 38:2 39:21

**internally** 32:1
**investment** 31:12
**invoice** 32:5 36:17
**invoices** 41:4,10 41:20
**irs** 31:4
**islip** 2:3
**issue** 10:20 11:17 12:3 13:9 14:13 14:13 31:24 33:14 35:25 36:2,5 39:24 41:17
**issues** 9:20 17:23 17:25 19:17 21:4 21:6,11 22:6,6 24:24 25:1,2 26:17 34:23
**issuing** 26:15
**items** 29:1
**it's** 9:24 35:13 36:10 37:2
**i'll** 27:15 29:11 38:13 42:9,11,13
**i'm** 27:13 41:24 41:24 42:1,15,17 43:2
**i've** 40:4 41:25

**j**

**jack** 37:9
**january** 28:22 31:14,19,21 33:20 37:4 39:3 41:19
**jeff** 4:8 6:14 27:6 28:5
**john** 19:21
**joint** 29:4
**jones** 4:3 6:15
**joseph** 5:18
**judge** 2:23 6:3,7 6:16
**judgement** 20:4 23:17

**judges** 13:21
**judgment** 3:4 7:24 8:6,9,13,18 8:19,20 9:22 13:6 13:11,16,24 15:9 16:1,2 17:4 20:4 20:14 23:16 28:16 28:23,25 29:7,8 29:9,11,14 30:3,10 30:24 32:7 33:17 33:18,19 34:8,14 35:1 37:7,11 39:10 40:25 41:1 41:25 42:2,14,15 42:16,17
**juggled** 39:11
**juggling** 39:5
**july** 41:18,19,21 43:4,11
**june** 2:5 21:10 22:6,14,25 23:24 24:16,18,22,23 25:2,3,16,23 26:1 26:3,4,13 30:14 41:9,20 45:25
**justification** 37:23

**k**

**kept** 39:20
**kind** 21:16
**knew** 15:20
**knobs** 16:19
**knottingham** 37:9
**know** 9:13 11:2,6 11:9 14:10 17:6 19:20 20:18 21:17 22:5,10 24:5,13 25:3,7 26:16,21
**knowing** 15:4
**knowledge** 29:22 35:2
**known** 21:12

**knows** 35:9
**korea** 40:11
**kupetz** 6:24

**l**

**lack** 10:7 14:19
**laid** 21:12 26:14 26:23
**late** 31:2
**law** 4:11 6:20 11:5 28:8 33:18 34:6 37:15 40:2 41:14
**lawrence** 4:24 6:16
**leave** 8:16
**ledanski** 3:25 45:3 45:8
**legal** 41:12 45:20
**legitimate** 38:6
**lengths** 36:23
**letter** 31:1 33:3,6
**lev** 6:23,23 22:10 22:12,17,24 23:1 23:23
**liability** 14:22
**liable** 16:24
**lie** 15:23
**lien** 31:4
**likelihood** 9:6
**limine** 26:11
**limited** 14:22 18:9
**line** 44:4
**lined** 18:16
**liquidated** 33:2
**liquidating** 1:12 6:25 9:4 15:22 18:25 19:14 20:3 23:16 25:20 28:6 28:15 37:13 40:25
**list** 30:23
**litigation** 21:2 41:5,13,23 42:3,7
**little** 22:1 26:16

**live** 12:1 26:6
**living** 11:24,25
**llc** 6:21 7:16 10:10
  14:20 15:17
**llc's** 11:14
**llp** 4:3,18 5:8
**loan** 30:16 31:2
  31:10,10,17 32:24
  32:25 33:11 35:12
  38:21,24,24,24
**loaned** 30:15
**logged** 27:21
**long** 34:9
**look** 38:9 42:9
**looking** 19:13
**loss** 16:14
**losses** 9:15 16:12
  17:22
**lost** 13:8,9

**m**

**m** 1:12 3:2,5
**machinery** 36:7
**madison** 4:21
**mail** 31:9,14 32:6
  32:13,19 36:14
**mailed** 32:4 33:5
**mails** 35:16 37:25
  38:2
**main** 6:10,22
  14:13
**maintaining** 14:1
**maintenance**
  11:19 13:25
**making** 16:13
  33:25
**manager** 7:16
  14:5 32:2 38:3
  39:22
**managers** 4:19
  6:18
**managing** 20:2
**march** 8:6 28:20
  29:10

**marketed** 19:16
**marketing** 18:17
**marketxt** 37:19
**maryam** 6:19
**maryann** 4:16
**material** 33:14
  34:24
**matter** 1:6 6:7 7:7
  18:7 27:23,25
  33:18 40:2
**matters** 6:6,12
  13:2 35:4
**mcbride** 37:9
**mccombs** 40:18
**mechanics** 42:23
**meet** 23:10
**meets** 11:3
**merged** 30:22
**met** 37:14
**metaphysical**
  17:8
**midst** 7:17
**mile** 5:3
**million** 13:13,18
**mineola** 45:23
**minor** 16:18,20
**minute** 28:11
**missing** 16:19
**mister** 15:16
**mitigation** 12:13
**moment** 13:20,22
**monday** 26:17
**monetize** 17:10
**monetizing** 13:23
  14:2,6 15:1 16:24
**money** 14:3 15:2
  18:10 31:17 38:16
**monitoring** 6:25
**months** 19:12
**mooted** 8:22
**morning** 6:2,13
  6:16,19,23 23:21
  28:7 32:15 43:11

**motion** 3:1,4 6:10
  7:5 15:24 16:5
  17:6,14 19:9 20:9
  21:9,10,10 23:8
  24:17,20 25:6,12
  27:1,21 28:16,25
  29:7,11,12,23
  30:1,3,24 34:18
  35:1,1 41:3 42:9
  42:13 44:6
**motions** 25:2,15
  26:11
**move** 11:23
**moved** 28:23
  29:24
**msj** 29:12
**multiple** 31:4
**mute** 6:13 22:17
**mv** 34:11

**n**

**n** 4:1 6:1 44:1
  45:1
**n.d.n.y.** 36:8
**near** 36:21
**necessarily** 14:11
**necessary** 33:16
  34:12 39:13 40:5
**need** 21:3 23:9
  24:24 25:11,16,18
  26:21 27:8 31:3
  32:5 36:16 41:18
**needed** 32:12
**needs** 23:14
**neighbor** 30:13
**neighbors** 38:20
**never** 32:20,21,22
  32:23 33:12 38:24
**new** 1:2 2:3 4:6,14
  4:22 5:11 15:2
  34:5 37:14 40:5
  40:13,13
**nj** 5:4

**nolan** 4:8 6:14 7:1
  8:5 27:4,6,6,18
  28:5,5,25 34:20
  41:24 42:6,19
  43:5,9
**non** 6:17 7:24
**noon** 24:23 25:3
  26:1,3,13
**note** 16:11 30:16
**noted** 34:10 40:4
  40:7
**notes** 40:19
**notice** 3:1 17:20
  18:1
**notion** 15:16
**number** 28:1,1
  30:4
**numerous** 29:2
**ny** 4:6,14,22 5:11
  45:23

**o**

**o** 2:21 6:1 45:1
**object** 19:7,8
  26:11
**objected** 27:8
**objection** 29:7,25
**objections** 19:9,19
  25:25 26:8
**objective** 34:14
**obligation** 37:16
  37:24 39:9
**obligations** 37:8
**obtained** 19:24
**obviously** 10:11
  12:7 14:19 23:12
**occurred** 36:3
**offer** 13:13
**offers** 34:22
**office** 41:25
**officer** 31:15
**offset** 12:24
**oh** 6:7 22:18

**oit** 12:12
**old** 45:21
**once** 10:13,14
  25:4
**ongoing** 9:12,14
  13:2 16:13,14
  17:1,22
**operations** 33:10
**opportunity**
  20:11
**oppose** 34:25
**opposed** 14:2,6
  40:9
**opposing** 7:19
**opposite** 12:3
**opposition** 18:2
  23:7 29:14 35:15
**optimistic** 7:8
**orbach** 5:18
**order** 8:6 10:2,2,4
  10:17,18,18,21
  21:24 26:14,17,24
  33:16 35:23 39:6
  42:8,12,13,17
**ordinary** 39:16,18
**original** 35:11
**orion** 1:8,13 6:8
**outline** 7:5
**outside** 39:17
**outstanding** 10:20
**outweighed** 12:23
**overall** 7:9
**owe** 38:15
**owed** 12:23 31:17
**owing** 37:9
**owned** 14:21
  31:22
**owner** 15:2
**ownership** 10:3
  12:8

**p**

**p** 4:1,1 6:1
**p.c.** 5:1
**p.m.** 23:24 24:22
  25:2,17,23
**pachulski** 4:3
  6:14
**package** 26:2
**page** 44:4
**paid** 12:16 15:3
  28:21 31:17 33:1
  36:23 37:24 39:12
**papers** 19:9 20:5
**paragraph** 35:19
**paris** 5:14
**park** 4:20
**parlatore** 4:11
  6:20
**parmar** 9:8,16
  10:10 11:8 12:13
  14:21 18:8 24:3
  29:15,20,21 30:14
  30:17,18 31:1,14
  31:16 32:4,12,24
  33:1,5,6,9,11 35:7
  35:10,17 36:11,16
  36:22 38:20,22
  40:20
**parmar's** 30:15
  36:13 37:24
**part** 18:21 24:1
  30:9 32:6
**partial** 8:18 20:3
  23:17 32:25 42:15
**particular** 10:13
**particularly**
  19:21 34:19
**parties** 7:6 13:10
  21:6,20 24:17
  25:10,14,24 29:3
  30:8 34:21 42:7
**partly** 40:4

**partner** 14:25
**party** 6:17,22
  7:23 21:18 27:7
  34:22
**party's** 26:12,12
**pattinsky** 6:17
**paul** 30:14
**pay** 15:2 35:12
  36:17 38:5 39:6,7
  39:8,8,9
**paying** 9:11 11:20
  13:23 16:9 35:15
**payment** 9:18
  31:9
**payments** 16:13
  31:23 32:3,6,25
  33:20,23,25 36:13
  36:25 37:4 38:4
  38:16 39:4,11,17
**payroll** 31:3
**pending** 8:2 9:8
  15:17,25 20:16,20
  21:10 23:5 24:2
  24:21 25:6 29:23
**percolating** 21:4
**performed** 32:23
**permit** 15:6
**person** 19:11
  29:22
**personal** 7:15
  11:23 31:10 32:24
  32:25 35:2 36:13
  37:24 38:24
**personally** 33:1
**petition** 36:4
**piece** 11:1,2
**piittinsky** 4:24
**pittinsky** 4:18
  6:16,17 11:20
  12:2,9 14:10,15
  17:24 18:20 19:2
  24:1

**pittinsky's** 17:22
**place** 38:6
**placed** 31:4
**plaintiff** 3:2,4
  27:6 28:6 34:17
  37:2
**plaintiffs** 1:14
**platform** 21:14
**plaza** 2:2
**pleadings** 7:6
**plus** 41:1
**pocket** 41:12
**point** 10:11,19,22
  11:15 12:7 14:4
  14:20 19:6,22
**points** 15:14
**politely** 13:6
**portion** 25:5 42:1
**portions** 26:9
  29:25
**position** 8:5,8
  9:20 10:1,5,10
  11:7 12:4,17,17
  12:21 13:11 14:9
  16:4 19:3
**positions** 7:4
**possession** 16:16
**possibility** 10:13
  18:8
**possible** 22:20
**possibly** 11:5
**post** 41:1
**posting** 9:10 16:8
**potentially** 17:21
**practical** 17:8,9
**practice** 21:17
  25:12
**precluding** 25:6
**predominance**
  30:7
**predominant**
  29:24

**premature** 10:19
**premises** 11:3
**prep** 26:4
**prepared** 21:8
29:4 32:10
**present** 5:16
21:20 24:4 27:9
37:17,18 40:15
**presentment** 3:1
**preserve** 14:6
**presidential** 25:1
**presume** 17:14
**presuming** 11:13
**prevail** 10:23
35:23
**prevent** 8:25
**price** 15:8 18:12
19:6,25 20:24
**principal** 30:20
**prior** 7:7 32:25
36:4
**private** 15:11
19:15
**privilege** 41:11
**probably** 22:1
**probative** 19:12
19:21
**procedural** 20:1
21:9 28:18
**procedurally**
20:13
**procedure** 13:19
13:21 19:7 34:14
**procedures** 18:24
23:10
**proceed** 23:25
**proceeding** 6:11
7:25 12:25 13:1
24:19 28:4,19
31:25 43:4
**proceedings**
11:22 12:19 43:13
45:4

**proceeds** 17:11
33:11
**process** 18:17,24
19:14,15,23,23
**product** 32:22
41:11
**program** 22:1
**promissory** 30:16
**proof** 37:14 40:10
**property** 7:15
8:17 9:1,4,11 11:1
11:2,24 12:21
13:8 14:2 35:25
35:25 39:23
**property's** 19:16
**proposed** 42:8
**protect** 10:25
11:14
**protocol** 7:10
21:13,14 26:19,23
41:6 42:1,12
**prove** 35:9,11
40:6,6
**provide** 29:8,20
33:10 35:8,14
41:4
**provided** 17:15
21:23 34:19 37:3
41:23
**provides** 37:15
**purchase** 18:12
**purported** 35:14
**purpose** 8:12
**purposes** 18:9
23:17
**put** 12:10 13:1
17:8 19:9 21:5
24:7,10
**puts** 10:9
**putting** 13:19,21
17:24 18:3,22

**q**

**question** 7:8,9
9:21 19:19
**questioned** 38:3
39:21
**questions** 7:5,21
7:21 32:1 42:23
**quite** 11:21,21
**quote** 31:2,6,6
32:12 33:6,8 39:6

**r**

**r** 2:21 4:1 6:1 45:1
**raise** 8:4
**raised** 7:22 17:23
17:25 32:1 33:15
**ranking** 31:15
**reach** 15:10 34:13
38:6
**reached** 7:9 11:23
**reaching** 34:7
**ready** 22:5,8,9,16
**real** 9:14 10:14,14
12:21 34:15
**really** 19:2,12,20
19:23
**reason** 9:23,24
12:9,16 21:5,13
32:5 33:24 36:12
36:17,20,23
**reasonable** 9:6
**reasons** 30:2
35:18 40:24
**receive** 29:17
**received** 33:23
**receives** 40:17
**recess** 43:12
**record** 12:10 30:4
30:10 32:7 34:9
36:19 39:10 40:22
40:23,24 43:12
45:4
**recorded** 6:4

**recover** 28:21
**recovery** 41:1
**red** 5:4
**redacted** 41:10
**refer** 29:12
**referred** 36:15
**refiled** 25:19
**refrigerator**
16:20
**refused** 12:5
**relating** 35:6
**relationship**
38:18,22
**relevant** 29:23
30:5,20
**relief** 8:24 9:7,9
9:16 10:25 24:17
**relies** 29:6
**rely** 25:24 34:12
**relying** 24:6 34:8
37:21
**remain** 37:5,12
**remained** 37:4
**remains** 25:9 43:3
**remedy** 10:15
**render** 20:13
23:17 28:16
**rendered** 20:4
39:2
**repaid** 31:17
32:25
**repay** 38:23
**repayment** 31:1
**repeat** 31:10
**replies** 24:24
**reply** 31:5 41:18
**request** 15:6,24
15:25 30:15 31:5
41:3
**requested** 33:6
**require** 11:12
21:22 40:10

**requires** 34:24
**residential** 4:19
**resolve** 42:16
**resolved** 31:4 42:3
43:3
**respect** 9:8 39:15
**respond** 15:13
**responded** 33:12
**response** 32:4
41:17,19,22
**responses** 24:22
**result** 19:24
**retain** 18:19
**retainer** 32:10
**retention** 39:22
**return** 33:3
**review** 33:6,13
**reviewed** 38:8
**right** 6:5 7:3,4,20
7:23 8:11 9:19
14:10 17:5,19
18:15,20 19:10
22:10,15 23:4,11
23:15,22 27:3,17
27:18,20 28:3,10
28:11,14 42:11,20
42:20 43:1,1,6
**risk** 16:17,21 17:1
17:2
**river** 4:12 6:20
7:11,22 8:16 9:20
13:10,22 17:11
18:3,11 19:18
20:10,16 22:15
23:5 25:20
**riverhouse** 4:20
6:18
**road** 5:3 16:25
45:21
**rockefeller** 4:20
**room** 21:15 26:21
**roseburg** 4:18
6:17

**rosen** 5:8,13
**rule** 9:25 20:4,14
24:20 25:8,12
26:9 34:24 35:20
**rules** 41:23
**ruling** 20:9,11
28:15,17 30:2
**rulings** 44:3
**run** 21:21

**s**

**s** 2:22 4:1 6:1,3
**s.d.n.y.** 36:9 37:20
**sale** 6:10 7:11,18
8:25 10:8,13 13:8
14:13,13 15:6,8,8
15:11,23 16:1,5
17:5,13 18:4,17
18:23 19:1,15,23
19:23 20:23,23
21:9 25:15 27:1
27:21
**sales** 19:25
**sandpiper** 34:11
**sanford** 5:13
**sartison** 6:12 27:2
27:21
**satisfied** 34:16
**says** 29:19 35:6,10
**scenario** 10:24
11:6
**scharf** 6:13,14 7:1
7:12 8:4,8,21 9:5
15:13,16 17:17,21
22:7,9 23:15,18
**schart** 4:9
**schedule** 22:10
**schoor** 1:16 5:2
28:2,9,22 29:7,18
29:19,25 30:13,15
30:17,25 31:2,8
31:17,20,21 32:3
32:6,11,13,16,18
32:20,21 33:1,3,5

33:9,22 35:7,16
35:19 36:13,17,24
38:4,5,16,19 39:7
39:9 40:19 41:16
**scratches** 16:19
**second** 7:17 9:11
**secrecy** 39:19
**secret** 39:20
**section** 34:5,6
35:22 37:15 38:12
**sections** 40:8
**secure** 15:11
**see** 8:3 12:9 16:4
20:25 21:3,5,12
24:13 26:23 36:7
37:19 40:11,17
**seek** 8:23 15:17
29:13
**seeking** 8:12
12:24 14:5 24:17
**seeks** 28:21
**selecting** 7:17
**self** 15:21
**sell** 9:4 10:6,19
15:1 23:8
**selling** 15:22
**sense** 11:18
**sent** 30:25 31:8,22
33:3
**separate** 23:9
**service** 32:10
**services** 32:23
**set** 11:8,10 21:24
24:16 28:24 30:1
35:2 38:22 43:2
**setting** 19:15 25:1
**settled** 28:12
**settlement** 7:10
**seven** 21:22 22:2
**sever** 23:16
**shaking** 12:9
**sham** 36:12

**shelving** 13:20
**sheriff** 14:17
**sheriff's** 15:8
**short** 39:6,8
**shortly** 33:4
**shot** 19:21
**show** 35:3
**showings** 24:3
**side** 20:1 34:15
**sides** 12:3
**side's** 27:17
**signed** 32:20
**significant** 21:5
**significantly**
13:18
**simply** 32:24
40:22 42:2
**sit** 17:3
**situation** 10:16
**six** 38:13
**sixth** 39:19
**skate** 24:6
**social** 30:13
**sold** 8:18 10:11,14
15:7,20 32:22
**sole** 11:15
**solutions** 45:20
**solvency** 38:25
**somebody** 16:23
20:15
**somewhat** 23:7
**sonya** 3:25 45:3,8
**sorry** 6:7,13 16:12
22:19
**sought** 8:2
**southern** 37:8
**speak** 9:2 14:24
**speaking** 12:7
**specific** 25:9
**specifically** 29:14
32:2 35:22 36:15
39:7

specifications 11:4
specificity 35:14
sponsoring 25:11
spot 17:24
stage 19:22
standard 22:7 33:22,23
standing 21:13,14 25:8
standpoint 17:9 25:21 26:3
stang 4:3 6:15
stanton 17:15
stanton's 22:4 25:18
starting 30:12
state 12:18,24 13:11
stated 31:2 35:4 40:24
statement 29:4 35:13 36:16
statements 35:18
states 1:1 2:1 40:17
stating 31:9 32:5
status 6:11 14:14 27:1
stay 8:2 9:8,25 10:24 15:17,24,25 16:8 20:16,20 21:10 23:5,8,10 24:2,20 25:6 27:22
stipulated 29:4 30:8 34:21
stipulation 31:7
stricken 35:20
strike 29:24 30:1
string 36:14
strong 39:1

strongly 15:6
subject 7:25 8:17 13:3 27:12
submission 42:1 43:4
submit 29:13,15 41:10,25
submits 27:7
submitted 34:21 35:5 41:11 42:8
subsequently 29:17
substantial 13:17
substantially 15:8
substantive 23:19
success 9:7
sufficient 27:9
suite 4:13,21 5:3 45:22
sulmeyer 6:24
summary 3:4 28:16,23,25 29:7 29:8,11,14 30:3 30:10,24 32:7 33:17,19 34:8,14 35:1 39:10 40:24 41:12,21
sunday 32:9
superior 40:12
support 15:1 34:15,18,23 35:1 36:19 40:23 41:14 41:21
supported 28:24
supporting 21:23
suppose 7:21 12:13
supreme 15:4 24:25 40:13
sure 15:15 19:10 42:9
suspect 23:20

suspended 12:18
synchronicity 20:21

**t**

t 45:1,1
take 6:5,9 7:4 19:3,19 21:15,18 26:6 27:15
taken 20:20 41:25
takes 20:7
talk 16:11 18:21 29:16
talking 16:23
telephonically 5:16
temperate 11:21
tenorello 6:2,6
term 10:7
terms 7:18
terrace 4:12 6:20 7:11,23 8:16 13:22 17:11 18:3 18:12 19:18 20:10 20:16 22:16 25:20
terrace's 9:20 13:10
testify 18:16 25:11 35:4,10
testifying 25:19 26:22
testimonial 18:9
testimony 21:15 21:18 26:5,10,12 27:11,16 35:8
texas 37:8
texting 22:12
thank 9:19 15:12 17:5 23:3 27:18 27:19,24 42:25 43:7,8,9
that's 11:4 14:9 31:7 41:9 42:6,10 42:19

thereon 41:2
there'll 26:19
there's 24:25 36:2 36:4,19 39:3 40:21 42:3,5
thing 12:12
things 13:3,5,20 16:19 21:16
think 8:22 9:5 10:19 13:9,16 14:21 21:6,17 22:3 23:18 24:25
third 4:5 5:10 36:5 38:25
thoughts 33:7
three 35:24
tie 20:22
tight 26:16
time 16:3 21:4 22:2,7,23 23:1,24 29:13 30:18 31:15 33:25 36:1,21 37:5 39:2 42:24
timeline 26:15
timing 42:23
today 6:11 7:1 26:16,25 28:15 30:2 41:9 42:5
told 19:11 21:1 32:11
tomorrow 23:21
tonight 23:21
trade 4:13
transcribed 3:25
transcript 45:4
transfer 12:8 35:24 36:3,5 38:10 39:14,16,20 40:5,14
transferee 38:19
transferor 38:19
transferred 31:20 36:1

**transferring** 10:2
**transfers** 31:24
  34:4 39:2,20 40:2
  40:3
**trial** 13:21 20:18
  21:21 35:9,10
  42:13
**true** 45:4
**trust** 2:22 6:4
**trustee** 1:12 4:4
  6:15,25 9:3,4 10:3
  10:6,7,17 12:8
  15:10,21 16:13,15
  16:16 17:3,16
  18:25,25 19:14,14
  20:3,5,24 22:7,9
  23:16,19 25:20
  28:6,19,23 29:5
  29:24 33:2,15,17
  37:14 40:25 41:3
  41:7,9 42:10
**trustee's** 8:5 10:1
  11:7 17:14
**trustee's** 28:15
  33:5
**try** 22:5
**trying** 18:11
**turning** 35:22
**two** 6:6 19:11
  20:22 31:23 33:20
  36:3 37:9 42:7
**type** 19:1,17
**types** 24:24 25:2
**typical** 19:16
**typically** 21:21
  25:7 38:14

**u**

**u.s.** 2:23
**ultimately** 39:12
**unable** 12:14
**uncontroverted**
  30:10,24 33:13
  36:10,24 37:2

**underlying** 16:1
  34:14
**understanding**
  8:12
**understood** 42:19
  43:5
**undisputed** 32:21
**unfair** 40:6,10
**unfortunately**
  22:13 28:13
**unique** 11:1,2
**unit** 14:21 18:16
**united** 1:1 2:1
  40:17
**unknown** 2:25
**unoccupied** 16:18
**unpaid** 37:5,6,12
**untimely** 10:6
**unusual** 9:14
**upkeep** 11:19
  13:25
**use** 12:14 39:8
  41:6

**v**

**v** 1:15 6:12 27:1
  28:1 34:11 40:7
  40:12,17
**value** 9:11 13:12
  18:16 27:15
**vantage** 19:22
**variety** 30:19
**vendor** 32:21
  39:12
**ventures** 30:19
**veritext** 45:20
**versions** 34:16
**view** 19:6
**violation** 38:12
**virtual** 21:14
**virtually** 21:20
**vocal** 11:21

**w**

**wait** 42:2
**waive** 27:14,16
**walia** 5:9
**wallstreet** 40:7
**want** 6:6 14:12,20
  17:6 23:16 25:10
  25:14 26:25 42:22
**wanted** 26:16
**wants** 19:18 20:3
  20:16
**wasting** 9:13
  11:18
**way** 11:7 20:2,13
  34:13
**week** 22:21
**weeks** 15:21 31:3
**weigh** 14:12 25:21
**welcome** 20:12
  27:22
**went** 18:25 36:22
**we'll** 26:2 29:16
  43:2,12
**who's** 26:21
**wine** 20:25 21:1
**wish** 25:24
**witness** 18:2
  21:15 25:11,19,22
  26:5,12,22,22
  27:9
**witnesses** 17:6,14
  18:3 21:19 26:6
**witness's** 26:10
**won** 37:11
**wong** 29:1 32:8
  34:20
**work** 12:12 27:13
  41:11
**worked** 12:19
  29:22
**working** 7:15
**world** 4:13

**would've** 19:9
**wrote** 38:2

**x**

**x** 1:5,11,18 27:14
  44:1

**y**

**year** 29:11
**years** 12:2,15
  19:11 30:12 31:13
  34:10 36:3
**york** 1:2 2:3 4:6
  4:14,22 5:11 34:5
  37:14 40:5,13,23
**young** 40:12
**you'll** 26:23
**you're** 26:11
  27:22,22

**z**

**zaharis** 29:16,21
  31:14 32:4,9,15
  36:11,16,22
**ziehl** 4:3 6:15

**'**

**'** 31:6
**'our** 31:6

# EXHIBIT B



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910

FACSIMILE: 310/201 0760

Jeffrey P. Nolan                    December 9, 2019              jnolantz@pszjlaw.com

**REPLY REQUESTED BY**
**December 23, 2019**

Howard Schoor
Schoor Companies, LLC
655 Park Avenue, Ste. 2
Freehold, NJ  07728

Howard Schoor
174 Carmela Court
Jupiter, FL  33478

Howard Schoor
603 Mattison Avenue, Ste. 321
Ashbury Park, NJ  07712

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000

FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100

FACSIMILE: 302/652 4400

NEW YORK
780 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700

FACSIMILE: 212/561 7777

> Re:    **In re: Orion HealthCorp, Inc., et al.**
> **USBC Eastern Dist. of New York**
> **Case No. 18-71748 (AST)**

Dear Mr. Schoor:

This firm is counsel to Howard M. Ehrenberg (the "Liquidating Trustee"), in his capacity as the Liquidating Trustee under that Liquidating Trust Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc. and certain of their affiliates (collectively, the "Debtors" or "Debtor Entities"). On March 16, 2018, each of the Debtors except NYNM (the "Initial Debtors") filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.

On April 4, 2018, the Office of the United States Trustee appointed the Committee in the Initial Debtors' chapter 11 cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 82].  On July 5, 2018, NYNM filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  On July 26, 2018, the United States Trustee appointed the Committee in NYNM's case [Docket No. 433]. The Debtors' cases including NYNM's case are jointly administered for administrative purposes only [Docket Nos. 34 and 381].



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York entered an order (the "Confirmation Order") [Docket No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "Plan").

As of March 1, 2019, the Plan became effective (the "Effective Date"). As of the Effective Date, the Liquidating Trustee was tasked with, among other things, the prosecution of any cause of action of the Debtors' Estates not otherwise released under the Plan for the benefit of holders of Allowed Claims and Allowed Interests. The Liquidating Trustee has analyzed potential avoidance claims for recovery of transfers made by the Debtors. According to the Debtors' records, you received $100,000.00 from the Debtor on January 5, and $60,000 on January 6, 2017 (the "Transfer") (See bank documents attached hereto as Exhibit A). The Transfer was made on account of a personal loan to benefit Paul Parmar individually. (See email dated August 16, 2010, attached hereto as Exhibit B)

Transfers made to benefit third parties are not made for "fair" consideration under the bankruptcy code. Christian & Porter Aluminum Co., 584 F.2d 326, 337 (9th Cir. 1978) (a general assignment of a debtor's property must be considered fraudulent if not made solely for the benefit of creditors). Id. Citing to 4 Collier on Bankruptcy, P. 67.33. The transfer of $160,000 from funds of the Debtor went to satisfy a personal obligation of Parmar. In fact, the Debtor bounced payroll obligations such that the funds could be sent on this debt.

Secondly, even assuming arguendo the Transfer was not intentionally fraudulent under 11 USC 548(a)(1)(A), the Transfer was constructively fraudulent and avoidable under 11 USC 548(a)(1)(B) as the Transfer benefitted Parmar, not the creditors of the Debtor. The term "fraudulent transfer" as used in insolvency law does not necessarily signify an element of fraud. A fraudulent transfer is one in which the debtor, voluntarily or involuntarily, conveyed to a creditor or other person property for which the debtor received less than "reasonably equivalent value..." No intent of wrongdoing is required. William L. Norton, III and Roger G. Jones, Norton Creditors Possessive Rights Handbook, § 11:6, (November 2003)

To the extent that a transfer is avoided under section 548, the trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property from (1) the initial transferee of such transfer or the entity for whose benefit such transfer



PACHULSKI
STANG
ZIEHL
JONES
LAW OFFICES

was made. *In re John Ray Hurtado*, 342 F.3d 528, 532 (6th Cir., 2003). Under section 550(a)(1) an "initial transferee" is strictly liable for any fraudulent transfers they receive. Id. The "initial transferee" from the debtor is strictly liable, without regard to whether he colluded with the debtor or was innocent in an unwitting recipient of fraudulently transferred property. *In re Bauer*, 318 B.R. 697, 700 (D. Minn. 2005) (citing to *Circuit Alliance*, 228 B.R. 225, 232).

The Liquidating Trustee is interested in engaging in discussions aimed toward resolving the claim without the attendant time and expense of litigation. If you share this interest in informal discussions, please contact me within the next fourteen (14) days.

This confidential letter is provided for settlement purposes only; any statements herein are inadmissible pursuant to Federal Rules of Evidence 408 and Federal Rules of Bankruptcy Procedure 9017. Nothing herein should be construed as an admission of fact or law by the Liquidating Trustee, the Debtors or their representatives.

If you have any questions regarding this demand, please contact me by phone at (310) 277-6910 or by email at jnolan@pszjlaw.com. I look forward to hearing from you.

Very truly yours,

Jeffrey P. Nolan

JPN:mam
Enclosure

# EXHIBIT A

# ORION HEALTHCORP INC

J.P.Morgan

Payment Detail Report

**For Informational Purposes Only**

## PAYMENT INFORMATION

| | | | |
|---|---|---|---|
| Account Number | | Payment Method | Bank to Bank Transfer |
| ▮▮▮▮▮▮ | | Wire | No |
| Account Name | Branch Location | Beneficiary Bank Country | |
| ORION HEALTHCORP INC | JPMorgan Chase Bank, N.A. (TX) | UNITED STATES - US | |
| Bank Name | Bank Id | Payment Amount | |
| JPMORGAN CHASE BANK, N.A. | ▮▮▮▮▮▮▮ | USD   60,000.00 | |

Value Date:     01/06/2017

Status:    Completed

## ROUTING INFORMATION

### BENEFICIARY

Beneficiary ID Type
Account Number

Account Number
8049301783

Beneficiary Name
Howard Schoor

Country
UNITED STATES - US

Supplementary Bank ID Type
No ID

### BENEFICIARY BANK

Bank ID Type
United States FED ABA

United States FED ABA
031207607

Bank Name
PNC BANK, NATIONAL ASSOCIATION

City, State/Province, Zip/Postal Code
CHERRY HILL,NJ

Country
UNITED STATES - US

Supplementary Bank ID Type
No ID

---

Created On:    01/06/2017 04:51 PM EST

# ORION HEALTHCORP INC

### J.P.Morgan

Payment Detail Report

**For Informational Purposes Only**

---

## INTERMEDIARY BANK

Bank ID Type

No ID

---

## REFERENCE INFORMATION

### BANK TO BANK

| | |
|---|---|
| Charges | Priority |
| Remitter | No |

---

| Date Created | Payment ID | Bank Reference | Settlement Reference |
|---|---|---|---|
| 01/06/2017 03:30 PM EST | 31373005 | 4828500006JO0000 | FED Ref: 0106B1QGC08C007912 |

---

## RE: Support documents required for disbursements in 2017

From:
Sam Zaharis <'/o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=ee3b50afeb8b4c0f9b7150385ae45585-sam.zaharis">

To:
Ravi Chivukula <ravi.chivukula@orionhealthcorp.com>

Date:
Sun, 14 May 2017 23:20:27 -0400

| Document No | Check Date | Vendor Name | Amount | Base Curr |
|---|---|---|---|---|
| Wire 1/5/17 | 1/5/2017 | VN014751--Howard Schoor | 100,000.00 | USD |

From: Ravi Chivukula
Sent: Sunday, May 14, 2017 7:57 PM
To: Sam Zaharis <Sam.Zaharis@constellationhealthgroup.com>
Subject: Support documents required for disbursements in 2017

| Document No | Check Date | Vendor Name | Amount | Base Curr |
|---|---|---|---|---|
| Wire 1/5/17 | 1/5/2017 | VN014751--Howard Schoor | 100,000.00 | USD |

# EXHIBIT B

# Message from Howard Schoor

**From:**
Barbara Noviello <barbara@schoorcompanies.com>
**To:**
Paul Parmar <"/o=first organization/ou=first administrative group/cn=recipients/cn=pparmar">
**Date:**
Mon, 16 Aug 2010 12:46:26 -0400

Paul:

I would greatly appreciate payment on the balance of your personal loan. Again, I repeat that this loan was done on the basis of our "friendship" not as a business investment. I can certainly understand losses related to business endeavors where one invests dollars with anticipation of profits. We both know that this is not the instant case and you have an obligation to make good on your commitment which is long overdue.

I will be around for a while; when can I pick up a check?

Please advise.

Howard

*Thank you,*

*Barbara L. Noviello*

*On Behalf of Howard M. Schoor*

Schoor Companies LLC
655 Park Avenue, Suite 2
Freehold, NJ 07728
(732) 303-0040 (telephone)
(732) 409-7410 (fax)
barbara@schoorcompanies.com

# EXHIBIT C

Ilan D. Scharf
Jeffrey P. Nolan (Admitted Pro Hac Vice)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone:  (212) 561-7700
Facsimile:   (212) 561-7777
ischarf@pszjlaw.com
jnolan@pszjlaw.com

*Counsel for the Plaintiff,*
*Howard M. Ehrenberg in his capacity*
*as Liquidating Trustee of Orion Healthcorp, Inc., et al.,*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| Debtors. | (Jointly Administered) |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 20-08042 (AST) |
| Plaintiff, | |
| v. | |
| HOWARD M. SCHOOR, Defendant(s). | |

------------------------------------------

## PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE

TO:        Defendant, Howard M. Schoor

FROM:   Plaintiff, Howard M. Ehrenberg, Liquidating Trustee Of Orion Healthcorp, Inc.,
               et al.,

1

Pursuant to Federal Rules of Civil Procedure 36, made applicable by Federal Rule of Bankruptcy Procedure 7036, Plaintiff, by its undersigned attorneys, hereby propounds the following Requests For Admissions to Defendants. Plaintiff hereby requests that Defendant answer the following requests to admit facts, within thirty (30) days of the date of service hereof.

## DEFINITIONS

      1.     As used in these requests for admissions, the following words and terms shall mean and include the following:

      2.     The term "DOCUMENT(S)" means and includes, without limitation, the following: any and all writings of whatever kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise (including without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures), and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs, recordings).

2

2151

3.    "CONCERN" or "CONCERNING" means relate to, refer to, describe, evidence or constitute.

4.    "DEBTOR" means ORION HEALTHCORP, INC., Constellation Healthcare Technologies, Inc; NEMS Acquisition, LLC : Northeast Medical Solutions, LLC; NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC ; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC (unknown) Northstar FHA, LLC.; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC.; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; New York Network Management, LLC.

5.    "YOU" or "YOUR" or "DEFENDANT" means Defendant, Howard M. Schoor, and shall include his agents, representatives, attorneys, accountants, and all other persons acting on his behalf or under his control.

6.    "PERSON" means and includes natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

7.    "COMMUNICATION" means every manner or means of disclosure, transfer, or exchange of information, words, thoughts or ideas, whether orally or by document, whether face-to-face, by telephone, mail, personal delivery, electronic communication or otherwise.

3

8.　"COMPLAINT" means the pleading Complaint For Avoidance And Recovery Of: (1) Fraudulent Transfers; And (2) Recovery Of (2) Avoided Transfers Pursuant TO 11 U.S.C. §§ 544, 548 AND 550 filed in Adv. No. 20-08042.

9.　"ACTION" means the legal proceeding commenced herein with the Complaint filed against DEFENDANT in the United States Bankruptcy Court for the Eastern District of New York, Adv. No. 20-08042.

10.　"TRANSFERS" means any and all payments or credits made to YOU including to or on YOUR behalf.

11.　"ANSWER" means DEFENDANT'S answer to complaint and affirmative defenses filed in this adversary.

12.　PETITION DATE means March 16, 2018.

13.　PARMAR means Parmjit Parmar, a/k/a Paul Parmar.

## GENERAL PROVISIONS AND INSTRUCTIONS

IF YOU FAIL TO COMPLY WITH THE PROVISIONS OF FEDERAL RULES OF BANKRUPTCY PROCEDURE 7026 AND 7036, INCORPORATING THE PROVISIONS OF FEDERAL RULES OF CIVIL PROCEDURE 26 AND 36, WITH RESPECT TO THIS SET OF REQUESTS FOR ADMISSIONS, THE MATTERS ABOUT WHICH AN ADMISSION ARE REQUESTED SHALL BE DEEMED ADMITTED.

4

## REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Admit that YOU received those TRANSFERS identified on EXHIBIT "A" to the

COMPLAINT.

### REQUEST FOR ADMISSION NO. 2:

Admit that YOUR loan to PAMAR of $600,000 had no restrictions as to how the

funds could be used by PARMAR.

### REQUEST FOR ADMISSION NO. 3:

Admit that up to the time YOU loaned the money to PARMAR, YOU had

conducted no business or performed no services for the DEBTOR.

### REQUEST FOR ADMISSION NO. 4:

Admit that up to the time YOU received each TRANSFER identified on

EXHIBIT "A" to the COMPLAINT, YOU had conducted no business or performed no service

for the DEBTOR.

### REQUEST FOR ADMISSION NO. 5:

Admit that each TRANSFER identified on EXHIBIT "A" to the COMPLAINT,

was received by YOU in satisfaction of a debt PARMAR owed to YOU personally.

### REQUEST FOR ADMISSION NO. 6:

Admit that PARMAR advised YOU in 2009, he did not have the money to pay

back the loan.

### REQUEST FOR ADMISSION NO. 7:

Admit that PARMAR advised YOU in 2010, he did not have the money to pay

back the loan.

DOCS_LA:329283.2 65004/003

2154

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU sought collateral from PARMAR to secure the loan.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the Debtor received no value as a result of the loan in 2009 to

PARMAR.

Dated: May 1, 2020

PACHULSKI STANG ZIEHL & JONES LLP

Andrew W. Caine (Admitted *pro hac vice*)
Jeffrey P. Nolan (Admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

*Counsel for Plaintiff, the Rescap Liquidating Trust
and the duly authorized Liquidating Trust Manager,
Quest Turnaround Advisors, LLC*

6

## PROOF OF SERVICE

STATE OF CALIFORNIA )
                    )
COUNTY OF LOS ANGELES )

I, Sophia L. Lee, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4100.

On May 1, 2020, I caused to be served the **PLAINTIFF'S REQUEST FOR ADMISSIONS PROPOUNDED TO DEFENDANT, SET ONE** in this action by placing a true and correct copy of said document(s) in sealed envelopes in the U.S. mail addressed as follows:

Donald F. Campbell, Jr., Esq.
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, NJ 07701

☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☐ (BY PERSONAL SERVICE) By causing to be delivered by hand to the offices of the addressee(s).

☐ (BY OVERNIGHT DELIVERY) By sending by **FEDERAL EXPRESS** to the addressee(s) as indicated on the attached list.

I declare that I am employed in the office of a member of the bar of this Court at whose direction was made. Executed on May 1, 2020, at Los Angeles, California.

Sophia L. Lee

7

DOCS_LA:329283.2 65004/003

2156

# EXHIBIT D

Donald F. Campbell, Jr., Esq. (DC8924-NJ)
*(Admitted Pro Hac Vice)*
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701
Tel: (732) 741-3900
Fax: (732) 224-6599
dcampbell@ghclaw.com
*Counsel for Defendant, Howard M. Schoor*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK | |
| In Re: ORION HEALTHCORP, INC. | Case No: 18-71748 (AST) (Jointly Administered) Chapter: 11 Hearing Date: Judge: AST |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP. INC., et al. Plaintiff v. HOWARD M. SCHOOR Defendant | Adv. Pro. No. 20-08042 (AST) |

## DEFENDANT'S *RESPONSES* TO PLAINTIFF'S REQUEST FOR ADMISSIONS. SET ONE

TO:    Plaintiff, Howard M. Ehrenberg, Liquidating Trustee Of Orion Healthcorp, Inc., et al

FROM:  Defendant, Howard M. Schoor

1

2158

Defendant, Howard M. Schoor ("Defendant") responds to Plaintiff's, Howard M. Ehrenberg,

Liquidating Trustee Of Orion Healthcorp, Inc., et al, ("Plaintiff") Request for Admissions, Set

One.

## GENERAL OBJECTIONS

1. All responses are provided without admitting that they are relevant, material or admissible
   for purposes of the instant litigation. Defendant hereby reserve the right to object to the
   admissibility into evidence of any information provided pursuant to Plaintiff's Request for
   Admissions on said grounds of relevancy, materiality or admissibility or any other applicable
   grounds.

2. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek
   information that is irrelevant and not reasonably calculated to lead to the discovery of
   admissible evidence.

3. Defendant objects to Plaintiff's Request for Admissions to the extent that they are vague and
   ambiguous.

4. Defendant objects to Plaintiff's Request for Admissions to the extent that they are overly
   broad or unduly burdensome.

5. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek
   information already in the possession, custody and/or control of Plaintiff's or information
   that is as readily accessible to Plaintiff's as it is to Defendant.

6. Defendant objects on the grounds that a request for this category of information is unduly
   burdensome and that such duplicate production is expensive, time-consuming and not
   reasonably calculated to lead to the discovery of admissible evidence.

2159

7.  Defendant objects to Plaintiff's Request for Admissions to the extent that they request information in the possession or control of third parties.  The scope of Defendant's response will be limited to only that information within the possession, custody or control of Defendant.

8.  Defendant objects to Plaintiff's Request for Admissions to the extent that they seek to impose on Defendant obligations that are greater than those required by the Federal Rules of Civil Procedure.

9.  Defendant objects to Plaintiff's Request for Admissions to the extent that they seek information that is protected under the attorney-client privilege and/or work-product privilege.  Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of Defendant to object to the use of any such information in any proceeding.

10. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek information and/or documents prepared in anticipation of litigation and/or trial.  Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of Defendant to object to the use of any such information in any proceeding.

11. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek documents, which disclose opinions, mental impressions, conclusions, strategies or legal theories of Defendant, its counsel or other representatives.  Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for

3

objecting to discovery with respect to such information, nor shall such inadvertent production

waive the right of Defendant to object to the use of any such information in any proceeding.

2161

## *RESPONSES*

### REQUEST FOR ADMISSION NO. 1:

Admit that YOU received those TRANSFERS identified on EXHIBIT "A" to the COMPLAINT.

*RESPONSE: Admitted*

### REQUEST FOR ADMISSION NO. 2:

Admit that YOUR loan to PAMAR of $600,000 had no restrictions as to how the funds could be used by PARMAR.

*RESPONSE: Denied. They were intended to be used as a bridge loan for his business.*

### REQUEST FOR ADMISSION NO. 3:

Admit that up to the time YOU loaned the money to PARMAR, YOU had conducted no business or performed no services for the DEBTOR.

*RESPONSE: Admitted.*

### REQUEST FOR ADMISSION NO. 4:

Admit that up to the time YOU received each TRANSFER identified on EXHIBIT "A" to the COMPLAINT, YOU had conducted no business or performed no service for the DEBTOR.

*RESPONSE: Denied. Upon information and belief, the funds were used by the Debtor or one of the debtor's affiliated entities.*

### REQUEST FOR ADMISSION NO. 5:

Admit that each TRANSFER identified on EXHIBIT "A" to the COMPLAINT, was received by YOU in satisfaction of a debt PARMAR owed to YOU personally.

*RESPONSE: Admitted that I loaned the money, but denied that it was for Parmar personally. It was a loan to his business, which I believe is the Debtor or one of its affiliates.*

5

**REQUEST FOR ADMISSION NO. 6**:

Admit that PARMAR advised YOU in 2009, he did not have the money to pay back the loan.

*RESPONSE: Admitted; however, he stated neither he nor his businesses had the funds to repay the loan.*

**REQUEST FOR ADMISSION NO. 7**:

Admit that PARMAR advised YOU in 2010, he did not have the money to pay back the loan.

*RESPONSE: Admitted; however, he stated neither he nor his businesses had the funds to repay the loan.*

**REQUEST FOR ADMISSION NO. 8**:

Admit that YOU sought collateral from PARMAR to secure the loan.

RESPONSE:   Admitted.

**REQUEST FOR ADMISSION NO. 9**:

Admit that the Debtor received no value as a result of the loan in 2009 to PARMAR.

*RESPONSE: Denied.  Upon information and believe, the funds were used as a bridge loan by the Debtor and/or its affiliated entity.*

6

## CERTIFICATION

I hereby certify the foregoing statements made by me in these Request for Admissions are true.
To the extent any of the foregoing statements made by me are willfully false, I am subject to
punishment.

Dated: 10/13/2020

_____

HOWARD M. SCHOOR

Docs #4419812-v1

7

# EXHIBIT E

## POST DISCOVERY

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 10/14/2020 | J. Nolan | | 1 | $ 825.00 |
| 10/14/2020 | J. Nolan | | 0.8 | $ 660.00 |
| 10/14/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 10/14/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 10/20/2020 | J. Nolan | | 0.6 | $ 495.00 |
| 10/20/2020 | J. Nolan | | 0.7 | $ 577.50 |
| 11/4/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 11/11/2020 | J. Nolan | | 0.6 | $ 495.00 |
| 11/11/2020 | J. Nolan | | 1 | $ 825.00 |
| 11/11/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 11/11/2020 | J. Nolan | | 0.2 | $ 165.00 |
| 11/12/2020 | J. Nolan | | 1 | $ 825.00 |
| 11/12/2020 | J. Nolan | | 0.6 | $ 495.00 |
| 11/16/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 11/20/2020 | J. Nolan | | 0.4 | $ 330.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 11/20/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 11/20/2020 | J. Nolan | | 1 | $ 825.00 |
| 11/24/2020 | J. Nolan | | 0.8 | $ 660.00 |
| 11/25/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/2/2020 | J. Nolan | | 1.50 | $ 1,237.50 |
| 12/2/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/3/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/3/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/4/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/9/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/11/2020 | J. Nolan | | 2 | $ 1,650.00 |
| 12/11/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/11/2020 | L. Canty | | 2.2 | $ 1,012.00 |

LA Doc 338273

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 12/13/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/13/2020 | J. Nolan | | 0.8 | $ 660.00 |
| 12/14/2020 | J. Nolan | or | 1.2 | $ 990.00 |
| 12/15/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/16/2020 | J. Nolan | | 2.3 | $ 1,897.50 |
| 12/17/2020 | J. Nolan | | 1.4 | |
| 12/17/2020 | J. Nolan | | 3.6 | $ 2,970.00 |
| 12/17/2020 | L. Canty | | 4 | $ 1,840.00 |
| 12/21/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/21/2020 | J. Nolan | | 0.2 | $ 165.00 |
| 12/22/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/23/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/23/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/29/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/30/2020 | J. Nolan | | 0.9 | $ 742.50 |
| 12/31/2020 | J. Nolan | | 1.3 | $ 1,072.50 |

LA Doc 338273

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 1/14/2021 | J. Nolan | ███████████████████ | 0.8 | $ 740.00 |
| 1/14/2021 | J. Nolan | ███████████████████ | 0.4 | $ 370.00 |
| 1/14/2021 | J. Nolan | ███████████████████ | 0.2 | $ 185.00 |
| 1/14/2021 | I. Scharft | ███████████████████ | 0.5 | $447.50 |
| 1/15/2021 | J. Nolan | ███████████████████ | 0.5 | $ 462.50 |
| 1/18/2021 | J. Nolan | ███████████████████ | 0.6 | $ 555.00 |
| 1/18/2021 | J. Nolan | ███████████████████ | 0.4 | $ 370.00 |
| 1/18/2021 | L. Canty | ███████████████████ | 1.1 | $ 506.00 |
| 1/20/2021 | J. Nolan | ███████████████████ | 0.4 | $ 370.00 |
| 1/21/2021 | J. Nolan | ███████████████████ | 0.3 | $ 277.50 |
| 1/21/2021 | J. Nolan | ███████████████████ | 0.3 | $ 277.50 |
| 1/22/2021 | J. Nolan | ███████████████████ | 0.3 | $ 277.50 |
| 1/25/2021 | J. Nolan | ███████████████████ | 0.3 | $ 277.50 |
| 1/28/2021 | J. Nolan | ███████████████████ | 0.4 | $ 370.00 |
| 1/29/2021 | J. Nolan | ███████████████████ | 0.8 | $ 740.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 1/29/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 1/29/2021 | L. Canty | | 2.5 | $ 1,150.00 |
| 2/1/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/1/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 2/2/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/2/2021 | J. Nolan | | 2 | $ 1,850.00 |
| 2/10/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/10/2020 | J. Nolan | | 0.2 | $ 185.00 |
| 2/11/2021 | J. Nolan | | 1.6 | $ 1,480.00 |
| 2/11/2021 | J. Nolan | | 0.2 | $ 185.00 |
| 2/12/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 2/15/2021 | J. Nolan | | 3.5 | $ 3,237.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 2/16/2021 | J. Nolan | ███████████████████ | 2.5 | $ 2,312.50 |
| 2/16/2021 | J. Nolan | ███████████████ | 0.4 | $ 370.00 |
| 2/16/2021 | J. Nolan | ███████████████ | 0.3 | $ 277.50 |
| 2/16/2021 | J. Nolan | ███████████████ | 0.7 | $ 647.50 |
| 2/16/2021 | J. Nolan | ██████████ | 1.5 | $1,342.50 |
| 2/16/2021 | J. Nolan | ████████████ | 0.8 | $740.00 |
| 2/16/2021 | J. Nolan | ████████████ | 0.4 | $370.00 |
| 2/17/2021 | J. Nolan | █████████████ | 3 | $ 2,775.00 |
| 2/18/2021 | J. Nolan | ██████████████ | 1 | $ 925.00 |
| 2/19/2021 | J. Nolan | ███████████████ | 0.5 | $ 462.50 |
| 2/19/2021 | J. Nolan | ███████████████ | 0.5 | $ 462.50 |
| 2/26/2021 | J. Nolan | ███████████████ | 0.3 | $ 277.50 |
| 3/3/2021 | J. Nolan | ███████████████ | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | █████████████ | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | █████████████ | 3.5 | $ 3,237.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 3/5/2021 | J. Nolan | | 1.2 | $ 1,110.00 |
| 3/9/2021 | J. Nolan | | 1.3 | $ 1,202.50 |
| 3/16/2021 | J. Nolan | | 2.5 | $ 2,312.50 |
| 3/18/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 3/19/2021 | J. Nolan | | 0.3 | $ 277.50 |
| 3/19/2021 | L. Canty | | 1.3 | $ 598.00 |
| 4/6/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 4/6/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 4/7/2021 | J. Nolan | | 0.2 | $ 185.00 |
| 5/7/2021 | J. Nolan | | 0.4 | $370.00 |
| 5/7/2021 | J. Nolan | | 0.3 | $277.50 |
| 5/10/2021 | J. Nolan | | 0.3 | $277.50 |
| 5/12/2021 | J. Nolan | | 2.5 | $2,312.50 |
| 5/12/2021 | J. Nolan | | 0.5 | $462.50 |

LA Doc 338273

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 5/12/2021 | J. Nolan | ██████████████████████ ████ | 0.5 | $462.50 |
| 5/12/2021 | J. Nolan | ████████████████████████ | 0.3 | $277.50 |
| 5/13/2021 | J. Nolan | ███████████████████ | 0.4 | $370.00 |
| 5/13/2021 | J. Nolan | ████████████████████████ ███████████ | 0.4 | $370.00 |
| 5/13/2021 | L. Canty | ██████████████████████████ █████████████████████████ ████ | 1.9 | $1,334.00 |

95.1 $ 77,517.50

| Year | Hourly Rate | Billing Party |
|------|-------------|---------------|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2021 | $925.00 | Jeffrey P. Nolan |
| 2021 | $895.00 | Ilan D. Scharf |
| 2021 | $460.00 | La Asia Canty |

# EXHIBIT F

## DEPOSITION

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 11/20/2020 | J. Nolan | Meet and confer regarding deposition of Howard Schoor | 0.4 | $ 330.00 |
| 12/2/2020 | J. Nolan | Review pertinent documents; Telephone conference with Veritext regarding set-up of Schoor deposition; Review platform. | 1.50 | $ 1,237.50 |
| 12/2/2020 | J. Nolan | Draft correspondence to Defendant, Howard Schoor regarding deposition availability | 0.3 | $ 247.50 |
| 12/4/2020 | J. Nolan | Draft Notice of Deposition of Defendant, Schoor; Serve | 0.4 | $ 330.00 |
| 12/10/2020 | J. Nolan | Meet with Veritext regarding set-up for exhibits for Schoor deposition; Discuss with La Asia Canty | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | Draft Notice of Link of deposition of Schoor. | 0.3 | $ 247.50 |
| 12/11/2020 | J. Nolan | Review documents; Compile exhibits for deposition of H. Schoor; Upload to software | 2 | $ 1,650.00 |
| 12/11/2020 | J. Nolan | Preparation for Schoor deposition | 2.2 | $ 1,012.00 |
| 12/13/2020 | J. Nolan | Compile discovery documents for deposition of Defendant, Howard Schoor | 0.8 | $ 660.00 |
| 12/14/2020 | J. Nolan | Legal research ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ preparation for 12/.17/20 deposition of Defendant, Schoor | 1.2 | $ 990.00 |
| 12/16/2020 | J. Nolan | Preparation for 12/17/20 deposition of H. Schoor | 2.3 | $ 1,897.50 |
| 12/17/2020 | J. Nolan | Preparation for deposition of H. Schoor; Connect IT and Veritext for deposition and coordinate with witness | 1.4 | |
| 12/17/2020 | J. Nolan | Deposition of H. Schoor. | 3.6 | $ 2,970.00 |
| 12/17/2020 | L. Canty | Prepare for and assist at Schoor deposition. | 4 | $ 1,840.00 |
| 12/21/2020 | J. Nolan | Research ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding Schoor | 0.4 | $ 330.00 |
| 12/21/2020 | J. Nolan | Coordinate deposition transcript for Defendant, Schoor | 0.2 | $ 165.00 |
| | | | 21.5 | $ 14,319.50 |

| Year | Hourly Rate | Billing Party |
|------|-------------|---------------|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2020 | $425.00 | La Asia Canty |

# EXHIBIT G

## MOTION FOR SUMMARY JUDGMENT FEES

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 10/14/2020 | J. Nolan | Review Schoor written discovery responses; Prepare for 10/15/20 argument to set Summary Judgment hearing | 1 | $ 825.00 |
| 11/12/2020 | J. Nolan | Review case law regarding summary judgment motion against Defendant, Schoor | 0.6 | $ 495.00 |
| 12/3/2020 | J. Nolan | Compile documents for the Separate Statement of Facts in support of request for summary judgment hearing regarding Schoor | 1 | $ 825.00 |
| 12/3/2020 | J. Nolan | Draft Separate Statement of Facts with Defendant, Schoor | 1 | $ 825.00 |
| 12/15/2020 | J. Nolan | Revise Separate Statement of Facts for use in Schoor request for summary judgment | 1 | $ 825.00 |
| 12/23/2020 | J. Nolan | Draft correspondence to counsel for Defendant, Schoor regarding briefing schedule. | 0.3 | $ 247.50 |
| 12/23/2020 | J. Nolan | Revise Separate Statement of Fact for submission to court in Schoor adversary | 1 | $ 825.00 |
| 12/29/2020 | J. Nolan | Legal research case law to support Schoor summary judgment motion. | 1 | $ 825.00 |
| 12/30/2020 | J. Nolan | Legal research case law to support Schoor theory of liability. | 0.9 | $ 742.50 |
| 12/31/2020 | J. Nolan | Receipt deposition transcript of Defendant, Schoor; Review and revise Separate Statement of Fact in support of submission to Court; Forward to opposing counsel with comment. | 1.3 | $ 1,072.50 |
| 1/14/2021 | J. Nolan | Review intentional fraudulent conveyance claim versus Defendant, Schoor | 0.8 | $ 740.00 |
| 1/14/2021 | J. Nolan | Exchange correspondence with Defendant, Schoor regarding extension | 0.2 | $ 185.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|--------------|------------------------|------|--------|
| 1/15/2021 | J. Nolan | Revise Separate Statement of Facts in the Schoor adversary; Forward correspondence to opposing counsel | 0.5 | $ 462.50 |
| 1/18/2021 | J. Nolan | Revise and finalize Separate Statement of Fact for filing with Court in Schoor adversary on 1/21/21; Meet with Don Campbell; Finalize | 0.6 | $ 555.00 |
| 1/21/2021 | J. Nolan | Defendant correspondence to Defendant, Schoor with dates for briefing schedule | 0.3 | $ 277.50 |
| 1/29/2021 | J. Nolan | Revise Schoor briefing letter to the Court; Exchange copies with opposing counsel. | 0.8 | $ 740.00 |
| 1/29/2021 | J. Nolan | Review documents from Debtor regarding Redline litigation and good faith §548(c) so contradict Schoor good faith defense. | 0.6 | $ 555.00 |
| 2/11/2021 | J. Nolan | Draft Declaration of FTI in support of Schoor summary judgment motion; Compile and attach exhibits; Forward to FTI with comment | 1.6 | $ 1,480.00 |
| 2/11/2021 | J. Nolan | Review letter from Defendant, Schoor regarding extension | 0.2 | $ 185.00 |
| 2/12/2021 | J. Nolan | Meet with E. Wong regarding Affidavits in support of Schoor summary judgment motion; Revise Affidavit | 0.6 | $ 555.00 |
| 2/15/2021 | J. Nolan | Draft Motion for Summary Judgment versus Defendant, Schoor; Draft Request for Judicial Notice in support of Motion for Summary Judgment | 3.5 | $ 3,237.50 |
| 2/16/2021 | J. Nolan | Revise and supplement the Request for Judicial Notice; Revise Points and Authorities of Summary Judgment Motion versus Defendant, Schoor | 2.5 | $ 2,312.50 |
| 2/16/2021 | J. Nolan | Revise Declaration of Jeffrey P. Nolan in support of Summary Judgment Motion versus Defendant, Schoor | 0.4 | $ 370.00 |
| 2/16/2021 | I. Scharf | Review Schoor MSJ pleadings. | 1.5 | $1,342.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 2/16/2021 | J. Nolan | Meet with L. Forrester regarding additional law to support Motion for Summary Judgment. | 0.8 | $740.00 |
| 2/16/2021 | J. Nolan | Finalize Declaration of E. Wong; Forward to FTI with comment. | 0.4 | $370.00 |
| 2/17/2021 | J. Nolan | Revise and finalize Motion for Summary Judgment versus Defendant, Schoor | 3 | $ 2,775.00 |
| 3/3/2021 | J. Nolan | Review opposition of Defendant, Schoor to Motion for Summary Judgment | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | Legal research case law submitted by Defendant, Schoor in support of opposition | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | Draft Reply Brief in response to Defendant, Schoor Opposition; Draft Affidavit | 3.5 | $ 3,237.50 |
| 3/5/2021 | J. Nolan | Revise Reply in support of Summary Judgment Motion versus Defendant, Schoor | 1.2 | $ 1,110.00 |
| 3/9/2021 | J. Nolan | Review, finalize and file Reply brief in support of Schoor motion for summary judgment | 1.3 | $ 1,202.50 |
| 4/6/2021 | J. Nolan | Exchange correspondence ▮▮▮▮ regarding Schoor litigation ▮▮▮▮ ▮▮▮▮ | 0.4 | $ 370.00 |
| 4/6/2021 | J. Nolan | Meet and confer with Defendant, Schoor regarding extension and summary judgment motion | 0.4 | $ 370.00 |
| 5/7/2021 | J. Nolan | Receipt of opposition of Defendant, Schoor. | 0.4 | $ 370.00 |
| 5/10/2021 | J. Nolan | Review the transcript from 3/16/21 hearing regarding Schoor Sur-Reply. | 0.3 | $ 277.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 5/12/2021 | J. Nolan | Draft Reply and Motion to Strike the Certification of Howard Schoor in opposition to Summary Judgment Motion; Legal research case law; Finalize. | 2.5 | $ 2,312.50 |
| 5/12/2021 | J. Nolan | Review recording of Schoor and Parmar conversation submitted to Court. | 0.5 | $ 462.50 |
| 5/12/2021 | J. Nolan | Draft Affidavit of Jeffrey P. Nolan in support of Schoor Reply. | 0.5 | $ 462.50 |
| 5/13/2021 | J. Nolan | Finalize Motion to Strike regarding Schoor. | 0.4 | $ 370.00 |
| 5/13/2021 | L. Canty | Further revise Objection and Request to Strike the Certification of Howard M. Schoor, finalize, coordinate filing of same, and serve same. | 1.9 | $ 874.00 |
| | | | **41.9** | **$ 36,919.00** |

| Year | Hourly Rate | Billing Party |
|------|-------------|---------------|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2021 | $925.00 | Jeffrey P. Nolan |
| 2021 | $895.00 | Ilan D. Scharf |
| 2021 | $460.00 | La Asia Canty |

# EXHIBIT H

Account Number

424YJ459P
PACHULSKI
STANG ZIEHL
& JONES LLP
LOS
ANGELES
CA

4253Y4K2G
PACHULSKI
STANG ZIEHL
& JONES LLP -
COURTLINK
LOS
ANGELES
CA

| Date Range | Report Date |
|---|---|
| 11/01/2020 - | 6/16/2021 |

| | | | | | | | CONTRACT USE | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLIENT | USER NAME | DATE | PRICING CATEGORY | ACTIVITY DESCRIP | TYPE OF ( | QUANTITY | GROSS AM | ADJUSTME | NET AMOU | TOTAL BEF | TOTAL CHARGE | HIGH LEVEL CONTENT |
| 65004.003 | NOLAN, JEFFREY P. | APR-07-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -446.48 | 48.52 | 48.52 | 48.52 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | APR-07-2021 | LEXIS ANSWER CARD | LEXIS ANSWER CA | DOC ACC | 1 | 53 | -47.8 | 5.2 | 5.2 | 5.2 | US DERIVED CONTENT |
| 65004.003 | NOLAN, JEFFREY P. | APR-12-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.29 | 9.71 | 9.71 | 9.71 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | APR-14-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -448.45 | 46.55 | 46.55 | 46.55 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | APR-14-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -357.18 | 38.82 | 38.82 | 38.82 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | APR-15-2021 | LEXIS | SEARCH | ACCESS C | 10 | 990 | -896.92 | 93.08 | 93.08 | 93.08 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | DEC-13-2020 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -270.05 | 26.95 | 26.95 | 26.95 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-04-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -178.53 | 19.47 | 19.47 | 19.47 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-09-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.59 | 58.41 | 58.41 | 58.41 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-11-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -88.64 | 10.36 | 10.36 | 10.36 | N/A |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | ****NO PRICING CATEGOR | COURTLINK DOCK | DOCKET | 1 | 7 | -6.22 | 0.78 | 0.78 | 0.78 | N/A |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | DOCKETS | US DOCKETS | DOC ACC | 1 | 7 | -6.22 | 0.78 | 0.78 | 0.78 | US DOCKETS |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -176.04 | 21.96 | 21.96 | 21.96 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-12-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -177.26 | 20.74 | 20.74 | 20.74 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-15-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -265.91 | 31.09 | 31.09 | 31.09 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-16-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.59 | 58.41 | 58.41 | 58.41 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-16-2021 | LEXIS | SEARCH | ACCESS C | 8 | 792 | -709.07 | 82.93 | 82.93 | 82.93 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-17-2021 | LEXIS | SEARCH | ACCESS C | 13 | 1287 | -1152.24 | 134.76 | 134.76 | 134.76 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-23-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -265.91 | 31.09 | 31.09 | 31.09 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-04-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -448.44 | 46.56 | 46.56 | 46.56 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-06-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -358.74 | 37.26 | 37.26 | 37.26 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-07-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.68 | 9.32 | 9.32 | 9.32 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-20-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -179.38 | 18.62 | 18.62 | 18.62 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-28-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.68 | 9.32 | 9.32 | 9.32 | N/A |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 65004.003 | MORI, ROLANDA | JAN-29-2021 | DOCKETS | US DOCKETS | DOC ACC | 2 | 14 | -12.14 | 1.86 | 1.86 | 1.86 US DOCKETS |
| 65004.003 | MORI, ROLANDA | JAN-29-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -343.63 | 52.37 | 52.37 | 52.37 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-01-2021 | LEXIS | SEARCH | ACCESS C | 15 | 1485 | -1338.58 | 146.42 | 146.42 | 146.42 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-02-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.23 | 9.77 | 9.77 | 9.77 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-04-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -447.71 | 47.29 | 47.29 | 47.29 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-06-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.43 | 58.57 | 58.57 | 58.57 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-13-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.23 | 9.77 | 9.77 | 9.77 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-14-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -447.71 | 47.29 | 47.29 | 47.29 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-14-2021 | TREATISES, SECONDARY M/ | US TREATISES | DOC ACC | 1 | 53 | -47.92 | 5.08 | 5.08 | 5.08 US ANALYTICAL MATERIALS |
| 65004.003 | NOLAN, JEFFREY P. | JUN-14-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -178.47 | 19.53 | 19.53 | 19.53 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAR-03-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAR-07-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -183.54 | 14.46 | 14.46 | 14.46 N/A |
| 65004.003 | MORI, ROLANDA | MAR-09-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -183.54 | 14.46 | 14.46 | 14.46 N/A |
| 65004.003 | GRAY, ERIN | MAR-15-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | GRAY, ERIN | MAR-15-2021 | TREATISES, SECONDARY M/ | US TREATISES | DOC ACC | 4 | 380 | -352.23 | 27.77 | 27.77 | 27.77 US ANALYTICAL MATERIALS |
| 65004.003 | GRAY, ERIN | MAR-19-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-12-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -554.93 | 39.07 | 39.07 | 39.07 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-18-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.48 | 6.52 | 6.52 | 6.52 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-19-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -277.46 | 19.54 | 19.54 | 19.54 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-20-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -462.44 | 32.56 | 32.56 | 32.56 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-21-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -185.74 | 12.26 | 12.26 | 12.26 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-25-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.48 | 6.52 | 6.52 | 6.52 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-26-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -557.19 | 36.81 | 36.81 | 36.81 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-27-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.87 | 6.13 | 6.13 | 6.13 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-28-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -184.97 | 13.03 | 13.03 | 13.03 N/A |
| 65004.003 | MORI, ROLANDA | NOV-05-2020 | ****NO PRICING CATEGOR | COURTLINK DOCK | DOCKET | 2 | 14 | -12.78 | 1.22 | 1.22 | 1.22 N/A |
| 65004.003 | MORI, ROLANDA | NOV-05-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -361.37 | 34.63 | 34.63 | 34.63 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-09-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -347.79 | 48.21 | 48.21 | 48.21 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-11-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -87.34 | 11.66 | 11.66 | 11.66 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-12-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -87.34 | 11.66 | 11.66 | 11.66 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-13-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -349.35 | 46.65 | 46.65 | 46.65 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-17-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -86.96 | 12.04 | 12.04 | 12.04 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-24-2020 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -260.85 | 36.15 | 36.15 | 36.15 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-27-2020 | LEXIS | SEARCH | ACCESS C | 9 | 891 | -782.52 | 108.48 | 108.48 | 108.48 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-29-2020 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -173.9 | 24.1 | 24.1 | 24.1 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-30-2020 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -434.73 | 60.27 | 60.27 | 60.27 N/A |
| Total: | | | | | | | 19734 | -17829.43 | 1904.57 | 1904.57 | 1904.57 |

Billing data reports include estimated taxes. The official invoice includes taxes based on actual usage for usage-based services or/and default location for non-usage-based services at invoice period end.

# EXHIBIT I

## COSTS IN ADVERSARY
## ORION HEALTHCORP vs. HOWARD SCHOOR

| Date | Description | Cost |
|---|---|---|
| 3/12/2020 | Filing Fees | $350.00 |
| 12/31/2020 | Deposition of Howard Schoor | $2,282.55 |
| 10/14/20-5/13/21 | Lexis Research | $1,904.57 |
| | | $4,537.12 |

## David Feldman, A Veritext Corp - New York Region

Tel. 212-705-8585 Email: billing-dfw@veritext.com
Fed. Tax ID: 20-3132569



Bill To: Jeffrey Nolan Esq
Pachulski Stang Ziehl Young Jones & Weintraub LLP
10100 Santa Monica Blvd
Floor 13
Los Angeles, CA, 90067-4003

| | |
|---|---|
| **Invoice #:** | **4747053** |
| **Invoice Date:** | **12/31/2020** |
| **Balance Due:** | **$2,282.50** |

| Case: Orion Healthcorp v. Howard Schoor (1871748(AST)) | Proceeding Type: Depositions |
|---|---|

Job #: 4373627  |  Job Date: 12/17/2020  |  Delivery: Normal

| | |
|---|---|
| Location: | Miami, FL |
| Billing Atty: | Jeffrey Nolan Esq |
| Scheduling Atty: | Jeffrey Nolan Esq | Pachulski Stang Ziehl & Jones |

| Witness: Howard M. Schoor | Quantity | Amount |
|---|---|---|
| Original with 1 Certified Transcript | 139.00 | $632.45 |
| Attendance | 1.00 | $105.00 |
| Exhibits | 45.00 | $20.25 |
| Realtime Services - Remote | 139.00 | $312.75 |
| Rough Draft | 139.00 | $271.05 |
| Veritext Virtual Primary Participants | 1.00 | $295.00 |
| Litigation Package (all Electronic Files) | 1.00 | $75.00 |
| Production & Processing | 1.00 | $48.00 |
| Concierge Technical Support | 1.00 | $150.00 |
| Exhibit Share | 1.00 | $345.00 |
| Electronic Delivery and Handling | 1.00 | $28.00 |

| Notes: | | |
|---|---|---|
| | **Invoice Total:** | **$2,282.50** |
| | **Payment:** | **$0.00** |
| | **Credit:** | **$0.00** |
| | **Interest:** | **$0.00** |
| | **Balance Due:** | **$2,282.50** |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

---

Please remit payment to:
Veritext
P.O. Box 71303
Chicago IL 60694-1303
Fed. Tax ID: 20-3132569

To pay online, go to www.veritext.com

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

| | |
|---|---|
| **Invoice #:** | **4747053** |
| **Invoice Date:** | **12/31/2020** |
| **Balance Due:** | **$2,282.50** |

30558

# EXHIBIT J

**In re Orion**
**Howard Ehrenberg v. Howard M. Schoor**
**Adv. Proc. No. 20-0842**
**Attorneys Fees**

| Date | Atty | Description | Time | Cost |
|------|------|-------------|------|------|
| 12/3/2019 | JPN | | 0.1 | $79.50 |
| 12/5/2019 | JPN | | 1 | $ 795.00 |
| 12/6/2019 | JPN | | 0.9 | $ 715.50 |
| 12/9/2019 | JPN | | 0.7 | $ 556.50 |
| 12/9/2019 | MAM | | 0.4 | $ 150.00 |
| 12/9/2019 | MAM | | 0.2 | $ 75.00 |
| 12/24/2019 | JPN | | 0.6 | $ 477.00 |
| 1/3/2020 | JPN | | 1.3 | $ 1,072.50 |
| 1/3/2020 | MAM | | 1.2 | $ 474.00 |
| 1/19/2020 | JPN | | 1.5 | $ 1,237.50 |
| 1/28/2020 | JPN | | 0.3 | $ 274.50 |
| 1/29/2020 | JPN | | 0.3 | $ 274.50 |
| 1/29/2020 | MAM | | 0.3 | $ 118.50 |
| 2/12/2020 | JPN | | 0.5 | $ 412.50 |
| 2/12/2020 | JPN | | 0.3 | $ 247.50 |
| 3/6/2020 | JPN | | 0.5 | $ 412.50 |
| 3/6/2020 | JPN | | 0.5 | $ 412.50 |
| 3/6/2020 | MAM | | 0.2 | $ 79.00 |
| 3/9/2020 | JPN | | 1.3 | $ 1,072.50 |
| 3/10/2020 | JPN | | 1 | $ 825.00 |
| 4/13/2020 | JPN | | 0.4 | $ 330.00 |

LA Doc No. 338273

| Date | | | Hours | Amount |
|------|---|---|-------|--------|
| 4/13/2020 | JPN | | 0.3 | $ 247.50 |
| 4/13/2020 | JPN | | 0.8 | $ 660.00 |
| 4/16/2020 | JPN | | 0.3 | $ 247.50 |
| 4/30/2020 | JPN | | 1.2 | $ 990.00 |
| 4/30/2020 | JPN | | 1.5 | $ 1,237.50 |
| 4/30/2020 | JPN | | 1.3 | $ 1,072.50 |
| 5/1/2020 | JPN | | 0.5 | $ 412.50 |
| 5/28/2020 | JPN | | 0.2 | $ 165.00 |
| 7/8/2020 | JPN | | 0.3 | $ 247.50 |
| 8/13/2020 | JPN | | 0.2 | $ 165.00 |
| 8/18/2020 | JPN | | 0.3 | $ 247.50 |
| 8/26/2020 | JPN | | 0.3 | $ 247.50 |
| 8/26/2020 | JPN | | 0.3 | $ 247.50 |
| 9/8/2020 | JPN | | 0.4 | $ 330.00 |
| 9/21/2020 | JPN | | 0.2 | $ 165.00 |
| 10/5/2020 | JPN | | 0.4 | $ 330.00 |
| 10/6/2020 | JPN | | 0.4 | $ 330.00 |
| 10/7/2020 | JPN | | 1 | $ 825.00 |
| 10/8/2020 | JPN | | 0.4 | $ 330.00 |
| 10/9/2020 | JPN | | 0.4 | $ 330.00 |
| 10/14/2020 | JPN | | 1 | $ 825.00 |
| 10/14/2020 | JPN | | 0.8 | $ 660.00 |
| 10/14/2020 | JPN | | 0.5 | $ 412.50 |
| 10/14/2020 | JPN | | 0.5 | $ 412.50 |
| 10/20/2020 | JPN | | 0.6 | $ 495.00 |
| 10/20/2020 | JPN | | 0.7 | $ 577.50 |
| 11/4/2020 | JPN | | 0.4 | $ 330.00 |

LA Doc No. 338273

| Date | | | Hours | Amount |
|---|---|---|---|---|
| 11/11/2020 | JPN | | 0.6 | $ 495.00 |
| 11/11/2020 | JPN | | 1 | $ 825.00 |
| 11/11/2020 | JPN | | 0.5 | $ 412.50 |
| 11/11/2020 | JPN | | 0.2 | $ 165.00 |
| 11/12/2020 | JPN | | 1 | $ 825.00 |
| 11/12/2020 | JPN | | 0.6 | $ 495.00 |
| 11/16/2020 | JPN | | 0.3 | $ 247.50 |
| 11/20/2020 | JPN | | 0.4 | $ 330.00 |
| 11/20/2020 | JPN | | 0.5 | $ 412.50 |
| 11/20/2020 | JPN | | 1 | $ 825.00 |
| 11/24/2020 | JPN | | 0.8 | $ 660.00 |
| 11/25/2020 | JPN | | 0.4 | $ 330.00 |
| 12/2/2020 | JPN | | 1.50 | $ 1,237.50 |
| 12/2/2020 | JPN | | 0.3 | $ 247.50 |
| 12/3/2020 | JPN | | 1 | $ 825.00 |
| 12/3/2020 | JPN | | 1 | $ 825.00 |
| 12/4/2020 | JPN | | 0.4 | $ 330.00 |
| 12/9/2020 | JPN | | 0.5 | $ 412.50 |
| 12/10/2020 | JPN | | 0.5 | $ 412.50 |
| 12/10/2020 | JPN | | 0.3 | $ 247.50 |
| 12/11/2020 | JPN | | 2 | $ 1,650.00 |

| Date | Code | | Hours | Amount |
|------|------|---|-------|--------|
| 12/11/2020 | JPN | | 0.3 | $ 247.50 |
| 12/11/2020 | LSC | | 4.2 | $ 1,932.00 |
| 12/13/2020 | JPN | | 1 | $ 825.00 |
| 12/13/2020 | JPN | | 0.8 | $ 660.00 |
| 12/14/2020 | JPN | | 1.2 | $ 990.00 |
| 12/15/2020 | JPN | | 1 | $ 825.00 |
| 12/16/2020 | JPN | | 2.3 | $ 1,897.50 |
| 12/17/2020 | JPN | | 1.4 | |
| 12/17/2020 | JPN | | 3.6 | $ 2,970.00 |
| 12/17/2020 | LSC | | 4 | $ 1,840.00 |
| 12/21/2020 | JPN | | 0.4 | $ 330.00 |
| 12/21/2020 | JPN | | 0.2 | $ 165.00 |
| 12/22/2020 | JPN | | 0.5 | $ 412.50 |
| 12/23/2020 | JPN | | 0.3 | $ 247.50 |
| 12/23/2020 | JPN | | 1 | $ 825.00 |
| 12/29/2020 | JPN | | 1 | $ 825.00 |
| 12/30/2020 | JPN | | 0.9 | $ 742.50 |
| 12/31/2020 | JPN | | 1.3 | $ 1,072.50 |
| 1/14/2021 | JPN | | 0.8 | $ 740.00 |
| 1/14/2021 | JPN | | 0.4 | $ 370.00 |

| Date | Code | | Hours | Amount |
|------|------|---|-------|--------|
| 1/14/2021 | JPN | | 0.2 | $ 185.00 |
| 1/14/2021 | IDS | | 0.5 | $447.50 |
| 1/15/2021 | JPN | | 0.5 | $ 462.50 |
| 1/18/2021 | JPN | | 0.6 | $ 555.00 |
| 1/18/2021 | JPN | | 0.4 | $ 370.00 |
| 1/18/2021 | LSC | | 1.1 | $ 506.00 |
| 1/20/2021 | | | 0.4 | $ 370.00 |
| 1/21/2021 | | | 0.3 | $ 277.50 |
| 1/21/2021 | JPN | | 0.3 | $ 277.50 |
| 1/22/2021 | JPN | | 0.3 | $ 277.50 |
| 1/25/2021 | JPN | | 0.3 | $ 277.50 |
| 1/28/2021 | JPN | | 0.4 | $ 370.00 |
| 1/29/2021 | JPN | | 0.8 | $ 740.00 |
| 1/29/2021 | JPN | | 0.6 | $ 555.00 |
| 1/29/2021 | LSC | | 2.5 | $ 1,150.00 |
| 2/1/2021 | JPN | | 0.4 | $ 370.00 |
| 2/1/2021 | JPN | | 0.5 | $ 462.50 |
| 2/2/2021 | JPN | | 0.4 | $ 370.00 |
| 2/2/2021 | JPN | | 2 | $ 1,850.00 |
| 2/10/2021 | JPN | | 0.4 | $ 370.00 |

| Date | Type | | Hours | Amount |
|------|------|---|-------|--------|
| 2/10/2020 | JPN | | 0.2 | $ 185.00 |
| 2/11/2021 | JPN | | 1.6 | $ 1,480.00 |
| 2/11/2021 | JPN | | 0.2 | $ 185.00 |
| 2/12/2021 | JPN | | 0.6 | $ 555.00 |
| 2/15/2021 | JPN | | 3.5 | $ 3,237.50 |
| 2/16/2021 | JPN | | 2.5 | $ 2,312.50 |
| 2/16/2021 | JPN | | 0.4 | $ 370.00 |
| 2/16/2021 | JPN | | 0.3 | $ 277.50 |
| 2/16/2021 | JPN | | 0.7 | $ 647.50 |
| 2/16/2021 | IDS | | 1.5 | $1,342.50 |
| 2/16/2021 | JPN | | 0.8 | $740.00 |
| 2/16/2021 | JPN | | 0.4 | $370.00 |
| 2/17/2021 | JPN | | 3 | $ 2,775.00 |
| 2/18/2021 | JPN | | 1 | $ 925.00 |
| 2/19/2021 | JPN | | 0.5 | $ 462.50 |
| 2/19/2021 | JPN | | 0.5 | $ 462.50 |
| 2/26/2021 | JPN | | 0.3 | $ 277.50 |
| 3/3/2021 | JPN | | 0.6 | $ 555.00 |
| 3/4/2021 | JPN | | 0.6 | $ 555.00 |

| Date | Type | | Hours | Amount |
|---|---|---|---|---|
| 3/4/2021 | JPN | | 3.5 | $ 3,237.50 |
| 3/5/2021 | JPN | | 1.2 | $ 1,110.00 |
| 3/9/2021 | JPN | | 1.3 | $ 1,202.50 |
| 3/16/2021 | JPN | | 2.5 | $ 2,312.50 |
| 3/18/2021 | JPN | | 0.5 | $ 462.50 |
| 3/19/2021 | JPN | | 0.3 | $ 277.50 |
| 3/19/2021 | LSC | | 1.3 | $ 598.00 |
| 4/6/2021 | JPN | | 0.4 | $ 370.00 |
| 4/6/2021 | JPN | | 0.4 | $ 370.00 |
| 4/7/2021 | JPN | | 0.2 | $ 185.00 |
| 5/7/2021 | JPN | | 0.4 | $370.00 |
| 5/7/2021 | JPN | | 0.3 | $277.50 |
| 5/10/2021 | JPN | | 0.3 | $277.50 |
| 5/12/2021 | JPN | | 2.5 | $2,312.50 |
| 5/12/2021 | JPN | | 0.5 | $462.50 |
| 5/12/2021 | JPN | | 0.5 | $462.50 |
| 5/12/2021 | JPN | | 0.3 | $277.50 |
| 5/13/2021 | JPN | | 0.4 | $370.00 |
| 5/13/2021 | JPN | | 0.4 | $370.00 |
| 5/13/2021 | LSC | | 1.9 | $1,334.00 |
| | | | 121.3 | $ 97,356.50 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------

In re: : Chapter 11
:
ORION HEALTHCORP, INC[1]. : Case No. 8-18-71748 (AST)
:
_____ Debtors. _____ : (Jointly Administered)

HOWARD M. EHRENBERG IN HIS CAPACITY :
AS LIQUIDATING TRUSTEE OF ORION : Adv. Pro. No. 8-20-8049 (AST)
HEALTHCORP, INC., ET AL., :
:
Plaintiff, : Trial:  July 24, 2024
: Time:  1:30 p.m.
: Place:  Courtroom 960
v. :         U.S. Bankruptcy Court
:         290 Federal Plaza
ARVIND WALIA; NIKNIM MANAGEMENT :         Islip, NY
INC., :
: Final PTC: July 17, 2024
Defendants. : Time:  1:30 p.m.
:
: Judge:  Hon. Alan S. Trust

--------------------------------------

## JOINT PRE-TRIAL MEMORANDUM AND PRE-TRIAL SUBMISSIONS

Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp, Inc.,

*et al.*, plaintiff in this adversary proceeding ("Plaintiff") and Arvind Walia and NIKNIM

Management Inc. ("NIKNIM"), defendants in this adversary proceeding ("Defendants"), submit

the following Joint Pre-Trial Memorandum and Pre-Trial Submissions through their respective

counsels pursuant to Local Bankruptcy Rule 701.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

## I.    PROCEDURAL POSTURE

1.    The Parties filed Motions for Summary Judgment or, in the alternative, Summary Adjudication, with the Court.  As established at the April 10, 2024, conference announcing the Court's rulings (the "Ruling Conference"), certain facts and issues are deemed admitted for trial pursuant to Rule 56(g) and the law of the case. (Notice of Ruling; "NOR")

2.    As to the Second Transfer, the Court avoided the Second Transfer  as against Defendant NIKNIM, as to the Plaintiff's First Cause of Action to Avoid an Intentionally Fraudulent Transfer under 11 U.S.C. §§544 and 548(a)(1)(A) and N.Y. Debtor and Creditor Law §276, and Second Cause of Action to Avoid a Constructively Fraudulent Transfer under 11 U.S.C. §544 and N.Y. Debtor and Creditor Law §§272-275 and §273-a.

3.    The Court denied the Plaintiff's Motion for Summary Judgment on the relief requested as questions of fact remained for trial.  The Court denied Defendants' motion for summary judgment and the relief requested.

## II.    FACTS ADMITTED REQUIRING NO PROOF (BUT AS TO WHICH OBJECTIONS TO RELEVANCE ARE NOT WAIVED)

### A.    Pursuant to the Ruling Conference, and the Parties, the following facts require no proof:

4.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

5.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409.

6.    The First Amended Complaint seeks the return of $4,020,000. It is undisputed that the transfers at issue involved an interest of certain of the Debtors in property, that was made on or within two years before the date of the filing of the petition in bankruptcy.

2

7. Parmar and Defendant Walia served in the highest level of officer positions at the debtors Orion and CHT. At the time of each transfer, Mr. Walia was an insider. (NOR, pg 39, lns 3-5)

### The First Transfer (April 15, 2016):     $2,500,000

8. The Debtors were an enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices.

9. In 2015, Paul Parmar was the Chief Executive officer of CHT and looking to acquire a medical billing company. He became interested in purchasing Porteck Corporation. ("Porteck")

10. Porteck was a technology services company in the healthcare industry incorporated, owned and controlled by Defendant Walia who acted as its CEO.

11. At the time, Porteck consisted of two business lines: AHMS and PC Advantage ("PCA") which were both medical billing companies.

12. In March 2015, the debtor entity Physicians Practice Plus acquired the assets of Porteck pursuant to an Asset Purchase Agreement ("APA"). The Sellers were Walia, Porteck, and the Janaminder Trust. Mr. Walia executed the APA on behalf of himself, Porteck and the Janaminder Trust. The Walia Trust never signed the APA. (NOR, pg 27, lns 10-16)

13. Mr. Parmar executed the APA on behalf of the Debtor, Physicians Practice.

14. The APA, provides for a purchase price of $12.8 million for the sale of Porteck even though Mr. Walia had agreed in writing to sell the Porteck assets for $10.8 million. The purchase price was juiced upwards because Mr. Parmar told Walia he needed to add an additional 2MM to the APA as "deal fees". (NOR, pg 27, lns 18-24)

3

15.     Mr. Walia testified that he paid no attention to what Mr. Parmar was doing when the APA purchase price was set at $2 million more than the agreed purchase price. Per his testimony, as long as Walia's share did not change, it did not concern me. (NOR, pg 28, lns 2-14)

16.     The evidence in the record, the actual deal fees paid to the broker, Abstract business advisors, was $192,500, or one-tenth or so of the nearly $2 million by which the purchase price was juiced up. (NOR, pg 28, lns 15-18)

17.     In terms of the value of the assets acquired by the debtor entity, the net asset value of AHMS in 2015 was $1.35 million. The assets were valued at $2,350,000 less a 1MM liability, a promissory note paid off by the Debtor at acquisition. The assets of PCA were valued at $2,546,246 but there was 1.9 MM in loans outstanding. The net asset value of PCA recorded at time of purchase by the Debtor was $474,000. The actual value of the assets acquired from Porteck at the time they were acquired was $1.824 million being the net asset value of AHMS and the net asset value of PCA. (NOR, pg 28-29, lns 2-14)

18.     Despite the written record of the asset valuation, Mr. Parmar and Mr. Walia agreed to the value of the assets being $10.8 million and apparently was five times the 204 EBITDA of $2.2 million. And again, that five times multiple is before the $2 million was added into the transaction. (NOR, pg 29, lns 4-8)

19.     Bank records provided evidence memorializing a wire of $9.8 million from the debtor Constellation Healthcare Technologies to the IOLTA account at Robinson Brog, which was used to close the Porteck sale. (NOR, pg 29, lns 9-13)

4

20. Of the $9.8 million, $6.8 million was wired on to Mr. Walia and $3 million went sideways in the vernacular to another non-debtor entity controlled by Mr. Parmar called First United Health. (NOR, pg 29, lns 14-17)

21. Once the Porteck deal closed shortly thereafter in June of 2015, Mr. Walia was installed as the chief executive officer of the Debtor's main operating company, Orion Health Co., and became the chief technology officer of Constellation Healthcare Technologies. He continued to serve in those capacities through the fall of 2018.

22. While Mr. Walia was CEO of Orion and CTO of Constellation Health Technologies, on or about April 15 of 2016, the debtor, Constellation Health Technologies, transferred $2.5 million from its JP Morgan account to NIKNIM.

23. Mr. Walia testified that the stated purpose of the escrow arrangement was to protect the rights of Physicians Practice, the actual acquirer, as purchaser under the Porteck APA to receive $2.5 million to the extent such funds were required to indemnify Physicians Practice though as a practical matter, the arrangement was not necessary to protect the buyer because it simply withheld payment of the $2.5 million.

24. The written agreement in Section 1.6 of the APA provides that for purposes of partially-securing the seller's obligations, the amount of $2,500,000 shall be delivered by the buyers at closing to the escrow agent by wire transfer of immediately available funds pursuant to an escrow agreement substantially in the form attached as Exhibit A to the APA.

25. Section 1.6 clearly required certain conditions of the escrow including that it be established and that it be funded upon occurrence of certain events. However, no escrow agreement was ever executed and no escrow account was ever established. (NOR, pg 31, lns 9-13)

5

26.     Despite Walia's assertion that the $2.5 million was owed to him or his company, the books and records of the Debtor reflect no antecedent debt at the year ending December. There is no antecedent debt reflected on the books and records as being owed to Walia or NIKNIM. The Debtor's books and records reflect no debt being owed as a result of the Porteck transaction as of the end of 2015. (NOR, pg 31, lns 14-21-8)

27.     The Debtor's 2016 books and records did not evidence the satisfaction of any antecedent debt of $2.5 million or any increase in the net assets of the Debtors as a result of that $2.5 million transfer.

28.     The Trustee asserts that the $2.5 million transfer was fraudulent based in part on an email that Mr. Parmar sent to Mr. Walia on the date of the transfer, stating, "I am willing to give you $3.5 million in return for you to allow me to structure it properly internally, which requires I close the file with the $2 million payment." (NOR, pg 32, lns 1-6)

29.     On the same day as that email, the Debtor transferred $2.5 million from its M&T account, the M&T account of CHT to the JP Morgan account of NIKNIM.

### The Second Transfer (June 28, 2017):     $1,520,000.

30.     The second transfer at issue involves a 2017 transaction and agreement under which Mr. Walia agreed to sell to Mr. Parmar or a designated entity a software company that Mr. Walia indirectly owned called AllRad Direct LLC.  Object Tech Holding LLC was a shell company that Allrad owned.

31.     The sale was memorialized by a membership interest purchase agreement, or "MIPA", dated June 2017 between Object Tech as seller and Physicians Healthcare Network Management Solutions as buyer.  Physicians Network Solutions, is not and was not one of the Debtors, but was again a third party entity owned or controlled by Mr. Parmar.

6

32.     The MIPA required a due diligence report and the negotiations required the diligence report to be prepared in connection with the sale, but the due diligence report was never completed.

33.     The MIPA required various schedules to be provided.  Those schedules were never completed, such as 1.3, earnout payments; 1.4, discharge of debts and liabilities, maintenance of working capital.

34.     The MIPA also called for certain revenue projections, balance sheets or statements of assets and liabilities to be provided.  Those were never provided.

35.     State and federal tax returns that were called for under the MIPA from the sellers were never provided. And the Debtor's board of directors never approved the purchase.

36.     Despite these deficiencies, the MIPA sale closed in June of 2017 and Debtor's funds, $1,520,000, was wired out of the Robinson Brog IOLTA account to the NIKNIM bank account at JP Morgan Chase. (NOR, pg 33, lns 17-20)

37.     Correspondingly, all of the shares of AllRad were transferred, but transferred to the non-debtor entity, Physicians Network Solutions.  No assets were ever transferred in connection with the AllRad Objecttech transaction to any of the Debtors. (NOR, pg 33, lns 20-24)

38.     At no point during 2017 did any of the debtors' books and records evidence an antecedent debt of $1,520,000 or any other debt owed to either of the defendants in connection with Object Tech or AllRad.

39.     The debtors' books and records do not evidence the satisfaction of any antecedent debt or increase in net assets of the debtors through the acquisition of the interest in Object Tech or AllRad.

7

40. The second transfer occurred within eight months prior to the petition date, well within the two- year period.

**Defendant NIKNIM Management, Inc. and Its Operations**

41. Defendant NIKNIM is a corporation formed under the laws of the State of New York with its principal place of business at Walia's residence at 27 Kettlepond Road, Jericho, New York.

42. NIKNIM was incorporated in 2015, and at all times Walia owned and managed NIKNIM as the sole employee, officer, and shareholder.

43. NIKNIM is an S corp. formed by Walia to manage his consulting work, personal investments, and that of his family trust.

44. Walia established a family trust, the *Janaminder Virk Irrecovable Trust* in 2012 (the "Janaminder Trust"), where he acts as the Trustee and his daughters the beneficiaries.

45. Walia established the *Arvin Walia Irrecovable Trust* (the "Walia Trust") as part of his estate planning where his wife acts as the Trustee.

46. NIKNIM was paid part of Walia's annual salary from the Debtor as a personal accommodation to Walia for tax purposes.

47. NIKNIM followed no corporate formalities and maintained no resolutions of shareholders or minutes.

48. NIKNIM was capitalized with a small amount of one or two thousand dollars.

49. Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either the NIKNIM or his personal checking account.

50. In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account.

8

51.     Walia personally requested that the Transfers identified in the Complaint be deposited into the NIKNIM bank account at JP Morgan Chase.

## III.    QUESTION OF FACT TO BE DETERMINED BY COURT AT TRIAL

### A.    <u>Pursuant To The Ruling Conference, The Remaining Questions Of Facts To Be Determined Are The Following</u>:

<u>FIRST TRANSFER</u>:

52.     Did Parmar misstate the purchase price in the APA in order to divert millions of dollars to his solely owned and controlled entity, FUH?

53.     Did Walia participate in the overstatement of the purchase price in the APA?

54.     Was the APA governed by New York state law?

55.     Was an escrow agreement executed between the buyer and seller of the APA and $2.5 M deposited into the escrow account pursuant to the APA?

56.     Was there a close relationship between Parmar & Walia as of the date of the Transfers?

57.     Was the First Transfer a secret and/or hasty transaction made outside the normal course of business?

58.     Was the First Transfer concealed from creditors?

59.     Did the Debtor, CHT receive fair consideration in exchange for the making of the First Transfer?

60.     Did relevant judgment creditors exist at the time of the First Transfer and did they remain unsatisfied as of the petition date?

61.     Was the relevant Debtor insolvent at the time of the First Transfer?

62.     Did Walia take the First Transfer in accordance with 11 USC 550 (b)(1)?

63.     Did Walia take the Second Transfer in accordance with 11 USC 550 (b)(1)?

9

64. Did Defendant Walia direct the Transfers be made to NIKINIM for his personal convenience?

65. Did Defendant Walia benefit as a result of the Transfers made by the Debtor to NIKNIM?

66. Did Defendant Walia so dominate the affairs of Defendant NIKNIM such that the corporate identity of NIKNIM was to transact the personal affairs of Walia.?

**B.** **GOOD FAITH FACTUAL DISAGREEMENT BETWEEN PARTIES**

67. Defendants submit the additional factual issue:

**SECOND TRANSFER:**

**Did any of the Debtors have knowledge of the limited asset value of Niknim?**

68. Plaintiff does not agree to the insertion.

**IV.** **ISSUES OF LAW TO BE DETERMINED BY COURT AT TRIAL**

**FIRST TRANSFER:**

69. Was the First Transfer made with actual intent to hinder, delay or defraud any entity or creditors?

70. Did the relevant Debtor receive any consideration for the Payment of the First Transfer?

71. Was the value received by the relevant Debtor "reasonably equivalent" or "Fair consideration" relative to the payment of the First Transfer?

72. Was the relevant Debtor Insolvent on the date of the First Transfer or rendered Insolvent by the Making of the First Transfer?

73. Did Parmar/Debtor and Defendants make the First Transfer in good faith?

**SECOND TRANSFER:**

74. As to remaining <u>questions of fact</u> for trial;

10

75.     Did Defendant Walia participate in the Second Transfer and what was the extent of his role?

76.     Did Defendant Walia benefit from the Second Transfer to Defendant NIKNIM?

## A.    GOOD FAITH DISAGREEMENT BETWEEN PARTIES ON ADDITIONAL LEGAL ISSUES

**Defendants submit the additional legal issue related to the additional factual issues**:

77.     Can the Trustee challenge the First Transfer as a fraudulent conveyance where the APA, under which the First Transfer was made, itself is not subject to attack as a fraudulent conveyance?

78.     Does the Debtors' knowledge of Niknim's limited asset value preclude the Trustee's claim to pierce Niknim's corporate veil?

Plaintiff does not agree to the insertion of these legal issues.

## RECOVERY: SUBSEQUENT TRANSFEREE LIABILITY UNDER 550(B)(1):

79.     Did Defendant Walia participate in the alleged Fraudulent Transfers to Defendant NIKNIM?

80.     Did Defendant Walia benefit from the alleged Fraudulent Transfers to Defendant NIKNIM?

81.     Is Defendant NIKNIM liable as the initial transferee of the First Transfer and Defendant Walia liable as the subsequent transferee?

82.     Is Defendant Walia liable as the subsequent transferee of the Second Transfer to Defendant NIKNIM?

83.     Did Walia, as subsequent transferee take in good faith, and without knowledge of the voidability of the transfer?

## ALTER EGO THEORY:

11

84. Did Defendant Walia so dominate the affairs of Defendant NIKNIM and was there such an absence of adherence to corporate formalities such that equity and the law requires that Defendant Walia be liable for the corporate obligation of Defendant NIKNIM?

85. Would recognizing the corporate form of NIKNIM in the circumstances surrounding the present Transfers allow Defendant Walia to effectuate a fraud and/or inequity against legitimate creditors of the Debtors' estate?

## V.    EXHIBITS TO BE OFFERED BY EACH PARTY AND OBJECTIONS TO EXHIBITS

A.    See Plaintiff's exhibit list as attached hereto and marked numerically.

B.    See Defendant's exhibit list as attached hereto and marked alphabetically.

## VI.    WITNESSES TO BE OFFERED BY EACH PARTY

A.    **PLAINTIFF:**

Craig Jacobson (expert)

Maxwell Mitchell (expert)

Arvind Walia

Frank Lazarra

Edith Wong

B.    **DEFENDANT:**

Arvind Walia

## VII.    MOTIONS IN LIMINE;

Plaintiff filed Motion in Limine #1 to Exclude Expert Testimony of Charles Lunden

12

## VIII.  <u>EXHIBITS</u>

The Parties exchanged exhibits in accordance with the Pretrial Scheduling Order on or

before July 3, 2024.


Dated:  July 10, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**
Attorneys for Plaintiff Howard M. Ehrenberg,
in his capacity as Liquidating Trustee of Orion
Healthcorp, Inc., *et al.*

By:  ___Jeffrey P. Nolan_____
    Ilan D. Scharf, Esq.
    Jeffery P. Nolan, Esq., (*pro hac vice*)
    780 Third Avenue, 34th Floor
    New York, NY 10017
    Tel: (212) 561-7700
    Email: ischarf@pszjlaw.com

**ROSEN & ASSOCIATES P.C.**
Attorneys for Defendants Arvind Walia and
NIKNIM Management Inc.


By:  /s/Sandford Rosen_____
    Sanford P. Rosen, Esq.
    747 Third Avenue
    New York, NY 10017-2803
    Tel:  (212) 223-1100


    ____/s/ Eugene Scheiman_____
    Eugene R. Scheiman, Esq.
    LAW OFFICES OF EUGENE R.
    SCHEIMAN, PLLC
    570 Lexington Avenue
    New York, NY 10022
    Phone: (646) 280-9000
    Email:
    eugene.scheiman@scheimanlaw.com


**SO ORDERED:**

13

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC.,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 18-71748-ast |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>        Plaintiff,<br><br>     - against -<br><br>ARVIND WALIA; NIKNIM MANAGEMENT, INC.,<br><br>        Defendant. | Adversary Proc. No. 20-08049-ast |

## PLAINTIFF'S EXHIBIT LIST

Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion

HealthCorp, Inc., ("Plaintiff") in this adversary proceeding Submits the following Exhibit List

through his respective counsel pursuant to Local Bankruptcy Rule 7016-1(b)(2).

     PLAINTIFF OFFERS:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

4856-7905-9647.5 65004.003

## FIRST TRANSFER

| Exhibit | Description | Admitted into Evidence |
|---|---|---|
| 1. | Letter dated February 20, 2015 from Abstract Business Advisors to Arvind Walia, Exhibit 9 to Walia Deposition | |
| 2. | Ledger with Comments, Bates Nos. EHREN-WALIA 005149-EHREN-WALIA 005172, Exhibit 10 to Walia Deposition | |
| 3. | Asset Purchase Agreement March, 2015 Physician's Practice Plus, LLC, Porteck Corporation, Exhibit 1 to Walia Depo; Ehren-Walia 00002 | |
| 4. | Disbursement Authorization and Itemization Ehren-Walia 000084-85 | |
| 5. | Email from Arvind Walia to Paul Parmar, Ravi Chivukula, and Sam Zaharis dated April 8, 2016 re Post Closing Payment Calculation – Porteck, Exhibit 4 to Walia Depo | |
| 6. | Calculations Email, Exhibit 6 to Walia Deposition | |
| 7. | Arvind Calculations, Porteck Corporation Statement of Cash Flows December, 2013; Exhibit 7 to Walia Deposition | |
| 8. | Letter dated April 15, 2016 from Paul Parmar to Arvind Walia; AWNK003013-14 | |
| 9. | Email from Paul Parmar to Arvind Walia dated April 15, 2016; Exhibit 11 to Walia Deposition; AWNK003010 | |
| 10. | Email dated April 8, 2016 from Arvind Walia to Paul Parmar, Ravi Chivukula, Sam Zaharis; EHREN-WALIA 000079-83 | |
| 11. | Constellation Press Coverage email from Harriet Lynch to Sam Zaharis dated March 23, 2016, Exhibit 14 to Walia Deposition | |
| 12. | Constellation Healthcare Technologies, M&T Bank Statement dated February 1-February 29, 2016; EHREN-WALIA 00138-00139 | |
| 13. | Constellation Healthcare Technologies, M&T Bank Statement dated August 1-August 31, 2016; EHREN-WALIA 00147-00148 | |

| 14. | Orion HealthCorp., Inc., Chase Bank Statement dated March 1, 2017-March 31, 2017; EHREN-WALIA 00149-154 | |
|-----|------------------------------------------------------------------------------------------------------------|--|
| 15. | Agreement and General Release dated January 31, 2017 between Physician's Practice Plus, Constellation Healthcare and Porteck, Arvind Walia, Exhibit 13 to Walia Deposition, F05024-E0006-00000268 | |
| 16. | JP Morgan Chase Bank N.A. Subpoena to Testify at a Deposition in Civil Action dated September 1, 2021; Chart of Bank Statements from 2015-2017; documents EHREN-NIKNIM CHASE 000001-290 | |
| 17. | Proof of Claim file date October 29, 2020, Claim No. 0000010141, Exhibit 29 | |
| 18. | Craig Jacobsen at B. Riley Advisory Services Expert Report dated January 10, 2022 and related documents | |
| 19. | Maxwell Miller at Grant Thornton LLP Expert Report dated January 8, 2022 and related documents | |

## SECOND TRANSFER

| 20. | Email from Ted Brindamour to Arvind Walia dated May 4, 2017, Exhibit 16 to Walia Deposition | |
|-----|------------------------------------------------------------------------------------------------|--|
| 21. | Allrad Documents email from Arvind Walia to Paul Parmar dated May 7, 2017, Exhibit 17 to Walia Deposition | |
| 22. | Email from Ted Brindamour to Paul Parmar dated May 17, 2017 and AllRad Direct Due Diligence Findings | |
| 23. | Email from Paul Parmar to Arvind Walia dated May 31, 2017; EHREN-WALIA 00406 | |
| 24. | Email from Arvind Walia to Paul Parmar dated May 31, 2017; EHREN-WALIA 004003-4005 | |
| 25. | Email from Arvind Walia to Paul Parmar dated May 31, 2017 re Allrad Direct Diligence Report – 5-18-2017 Draft; EHREN-WALIA 004019 | |
| 26. | Email from Arvind Walia to Sam Zaharis dated June 21, 2017 re Updated Documents; EHREN-WALIA 004972 | |

3

| 27. | Membership Interests Purchase Agreement dated June, 2017 of Physicians Healthcare Network Management Solutions, LLC, Objecttech Holdings, LLC., Exhibit 15 to Walia Deposition | |
|---|---|---|
| 28. | Email from Arvind Walia to Paul Parmar dated June 19, 2017 re various document – marked up; EHREN-WALIA 004519-4608; Exhibit 0025 | |
| 29. | Email from Arvind Walia to Sam Zaharis dated June 21, 2017 re updated documents; EHREN-WALIA 004972; Exhibit 0026 | |
| 30. | Plaintiff's Request for Admissions Propounded to Defendant, Niknim Management, Inc., Set One | |
| 31. | Defendant Niknim Management, Inc.'s Responses and Objections to Plaintiff's First Request for Admissions | |

Dated: July 10, 2024

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Jeffrey P. Nolan
Jeffrey P. Nolan
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone:  310-277-6910
Facsimile:   310-201-0760

*Counsel to Plaintiff, Howard M. Ehrenberg*

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 18-71748-ast |
| HOWARD M. EHRENBERG IN HIS CAPACITY<br>AS LIQUIDATING TRUSTEE OF ORION<br>HEALTHCORP, INC., ET AL.,<br><br>               Plaintiff,<br><br>      - against -<br><br>ARVIND WALIA; NIKNIM MANAGEMENT,<br>INC.,<br><br>               Defendant. | Adversary Proc. No. 20-08049-ast |

## DEFENDANTS' EXHIBIT LIST

       Arvind Walia and Niknim Management, Inc. ("**Defendants**") in this adversary

proceeding submit the following Exhibit List through their counsel pursuant to Local Bankruptcy

Rule 7016-1(b)(2).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

DEFENDANTS OFFER:

| Exhibit | Description | Admitted into Evidence |
|---------|-------------|------------------------|
| A | Expert Report Prepared by Charles S. Lunden, CPA | |

Dated: New York, New York
      July 3, 2024

                                ROSEN & ASSOCIATES, P.C.
*Counsel to Arvind Walia and*
*Niknim Management Inc.*
By: /s/ Sanford P. Rosen
       Sanford P. Rosen
PO Box 1274
Shelter Island Heights, NY 11965
(212) 223-1100

LAW OFFICES OF EUGENE R. SCHEIMAN, PLLC
*Co-counsel to Arvind Walia and*
*Niknim Management Inc.*
570 Lexington Avenue, Suite 1600
New York, NY 10022
(646) 280-9000

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
------------------------------------------  :
In re:                                      :  Chapter 11
                                            :
ORION HEALTHCORP, INC.¹                     :  Case No. 18-71748 (AST)
                                            :
                    Debtors.                :  (Jointly Administered)
                                            :
------------------------------------------  :
HOWARD M. EHRENBERG IN HIS CAPACITY AS      :  Adv. Pro. No. 20-08049 (AST)
LIQUIDATING TRUSTEE OF ORION                :
HEALTHCORP, INC., ET AL.,                   :
                                            :  Trial:  July 24, 2024
                    Plaintiff,              :  Time:   9:30 a.m.
                                            :  Place:  Courtroom 960
                    v.                      :          U.S. Bankruptcy Court
                                            :          290 Federal Plaza
ARVIND WALIA; NIKNIM MANAGEMENT, INC.,      :          Islip, NY
                                            :
                    Defendants.             :  Final PTC:  July 17, 2024
                                            :  Time:  1:30 p.m.
                                            :
                                            :  Judge:  Hon. Alan S. Trust
                                            :
------------------------------------------  :
```

## PLAINTIFF'S CONCLUSIONS OF LAW

COMES NOW, Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of

Orion Healthcorp, Inc., *et al.* ("Plaintiff"), and submits his Conclusions of Law, in support of

Plaintiff's Trial Brief:

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

4888-1824-1991.7 65004.003

| A. *Intentional Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| 1.  Section 548(a)(1)(A) of the Bankruptcy Code. Section 548(a)(1)(A) provides as follows:  The trustee may avoid any transfer of an interest of the debtor in property,…if the debtor voluntarily or involuntarily—  <br><br>"(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity . . .." | Bankruptcy Code § 548(a)(1)(A). |
| 2.  NYDCL Section 276 provides that "Every Conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors" | N.Y. Debt & Credit Law §276 ("NYDCL"). |
| 3.  The standard set forth in New York state law regarding actual fraudulent conveyances essentially overlaps with the Bankruptcy Code. | *Barnard v Albert (In re Janitorial Close-Out City Corp.),* 2013 Bankr LEXIS 523 (Bankr. E.D.N.Y. Feb. 8, 2013). |
| 4.  Unlike NYDCL Sections 273 and 275, under NYDCL Section 276, a transferor does not need to receive fair consideration for a conveyance to be fraudulent("where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given.") | *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co.,* 910 F. Supp 0913, 934 (S.D.N.Y. 1995) (citing *to HBE Leasing,* 48 F.3d. 623, 639 (2nd Cir. 1995); *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2nd Cir. 2005). |
| 5.  Actual fraudulent intent under NYDCL §278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design. | 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff,* 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930); *In re Roco Corp.,* 701 F.2d 978, 984-85 (1st. Cir. 1983). |
| 6.  False statements, misrepresentations and backdating documents is evidence of | *United States v. Maciejewski,* 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y. 1999) |

2217

| A. *Intentional Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| intent to defraud as an effort to make an illegitimate transaction appear legitimate. | |
| 7. Because providing actual intent under NYDCL section 276 or Section 548 is difficult to establish through direct evidence . . . the relevant intent may be inferred from the facts and circumstances surrounding the transfer. | *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),* 650 B.R. 602 611-612 (Bankr. S.D.N.Y. 2023) |
| 8. These so-called badges of fraud are facts and circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent" | *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2nd Cir. 2005); *5 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),* 650 B.R. 602 611-612 (Bankr. S.D.N.Y. 2023) |
| 9. Courts frequently look to "badges of fraud" to establish an inference of fraudulent intent in cases brought under an actual intent theory. : 1) the lack or inadequacy of consideration; 2) the family, friendship or close associate relationship between the parties; 3) the retention of possession, benefit, or use of the property in question; 4) the financial condition of the party sought to be charged both before and after the transaction in question; 5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; 6) the general chronology of the events and transactions under inquiry; 7) a questionable transfer not in the usual course of business; and 8) the secrecy, haste, or unusualness of the transaction. | *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),* 650 B.R. 602 611-612 (Bankr. S.D.N.Y. 2023) citing to *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.),* 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005); *In re Kaiser,* 722 F.2d 1574, 1583(2nd Cir. 1983). |
| 10. The presence or absence of any single badge of fraud is not conclusive; rather, the inquiry focuses on what factors are present, as well as the context for the badges of fraud. | *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),* 650 B.R. 602, 611-612 (Bankr. S.D.N.Y. 2023) citing to *Halperin v. Morgan Stanley Inv. Mgmt., Inc. (In re Tops Holding II Corp.),* 646 B.R. 617, 675 (Bankr. S.D.N.Y. 2022), |

| A. *Intentional Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| 11. Although "badges of fraud" are not conclusive and are more or less strong or weak according to their nature and the number occurring in the same case, "'a concurrence of several badges always make out a strong case'". | *Gafco, Inc. v. H. D. S. Mercantile Corp.*, 47 Misc. 2d 661, 665, N.Y.S.2d 109 (Civ. Ct. 1965). |
| 12. Inadequacy of the consideration is considered a "particularly important" badge establishing a fraudulent conveyance. | *Est. of Tawil v. Sutton*, 2024 N.Y. Misc. LEXIS 839, Kings County Supreme Court (2024) (citing to *Axginc Corporation v. Plaza Automall Ltd.*, 2022 U.S. Dist. LEXIS 90477, 2022 WL 2135474 (E.D.N.Y, 2022)); *Messer v. Wei Chu (In re Xiang Yong Gao)*, 560 B.R. 50, 64 (Bankr. E.D.N.Y. 2016). |

| 1A. **Deceptive Contracts Are Not A Basis For Consideration In New York And Not Enforceable** | *Legal Authorities* |
|---|---|
| 13. The courts will not recognize contracts which rest upon an illegal consideration, and will not order restitution in so far as one has been performed, but may interfere and prevent the arrangement being further consummated in case of partial performance. | *Di Tomasso*, 250 A.D. 206, 209, 293 N.Y.S. 912, 916 (App. Div. 2nd Dept. 1937); *RTC Mort. Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001). |
| 14. A contract is void in New York and unenforceable as a matter of public policy when its performance would practice fraud or deception on a third party. | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 86 (2d Cir. 1982) (Oakes, C.J. concurring and dissenting) |
| 15. As a matter of public policy, fraud and deception practiced on a third party . . . will invalidate a New York contract, at least where there is a 'direct connection between the illegal transaction . . . and the obligation sued upon. | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) (quoting *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 471, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960)) |
| 16. "[E]ven where a contract is not itself unlawful, the bargain may still be illegal under New York law if it is closely connected with an unlawful act."). | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, |